**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

In re: WHIRLPOOL CORP. FRONT-
LOADING WASHER PRODUCTS
LIABILITY LITIGATION

1:08-wp-65000
MDL No. 2001
Class action
Judge: James S. Gwin

**MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL
MOTION TO DISMISS PLAINTIFF'S MASTER CLASS ACTION COMPLAINT**

Table of Contents <span>Page</span>

Table of Authorities ................................................................................................ iv

STATEMENT OF FACTS ........................................................................................ 3

    A.    Plaintiffs' Alleged Experiences with Their Duet Washers ........................ 4

    B.    Whirlpool's Alleged Misrepresentations and Material Omissions ............ 4

    C.    Plaintiffs' Duet Washers' Warranty Provisions ......................................... 5

ARGUMENT ............................................................................................................ 6

I.      LEGAL STANDARD ..................................................................................... 6

II.    THE ALLISON AND SCHAEFFER PLAINTIFFS ARE NOT PARTIES TO
      ANY OF THE UNDERLYING ACTIONS AND SHOULD BE DISMISSED
      FROM THE MASTER COMPLAINT ......................................................... 7

III.   PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF
      THE RELEVANT CONSUMER PROTECTION STATUTES ........................... 8

    A.    Plaintiff Strong Fails to State a Claim Under the Arizona Consumer
          Fraud and Deceptive Business Practices Act ............................................. 8

          1.    Plaintiff Strong fails to plead with particularity any false or
                misleading statement by Whirlpool .................................................. 9

          2.    Plaintiff Strong's allegation that Whirlpool did not disclose the
                alleged defect in her Duet washer is not sufficiently particular
                to state an Arizona Fraud Act claim ................................................ 11

    B.    Plaintiffs Fail to Plead with Particularity Their Claims Under the
          Consumer Fraud Statutes of California, Florida, Illinois, Maryland,
          New Jersey, North Carolina, Ohio, and Texas ......................................... 14

    C.    Plaintiffs Glazer and Chris and Trina Allison Fail to State a Claim for
          Violation of Ohio's Consumer Sales Practices Act ................................... 15

          1.    Plaintiffs' OCSPA class claim fails because they did not plead
                facts showing that Whirlpool's conduct previously had been
                determined to be deceptive or unconscionable ............................... 15

i

2.    Plaintiffs Glazer and Chris and Trina Allison fail to plead any conduct by Whirlpool that would constitute an unfair or deceptive act.................................................................. 17

D.    Plaintiffs Glennon and Cohen Fail to State a Claim Under the New York General Business Law ........................................................ 19

E.    Plaintiff Schaeffer Fails to State a Claim under California's Unfair Competition Law ...................................................................... 20

1.    Plaintiff Schaeffer Fails to Allege Any Predicate Statutory Violation Sufficient to State a UCL Claim for "Unlawful" Business Practices........................................................... 20

2.    Plaintiff Schaeffer Fails to Allege an "Unfair" Business Practice........................................................................ 22

3.    Plaintiff Schaeffer Fails to State a Claim for "Fraudulent" Business Practices ........................................................ 23

IV.    PLAINTIFFS FAIL TO STATE ACTIONABLE CLAIMS FOR BREACH OF WRITTEN OR IMPLIED WARRANTY........................................................ 24

A.    Under Ohio's Choice-of-Law Rules, the Laws of Plaintiffs' Respective Home States Apply to Their Warranty Claims ...................... 24

B.    Plaintiffs Do Not Allege Privity with Whirlpool, as Required to State an Implied-Warranty Claim in Arizona, California, Florida, Illinois, New York, North Carolina, and Ohio ...................................................... 28

C.    Plaintiffs Hollander, Bicknell, Schaeffer, Nordan, and Strong Fail to State an Express-Warranty Claim Because They Have Not Alleged Privity.................................................................................. 32

D.    Plaintiffs Werman, Glazer, Hollander, Beierschmitt, and Gardner's Express-Warranty Claims Fail Because They Have Not Alleged a Violation of Any Specific Warranty Provision......................................... 32

E.    Plaintiff Schaeffer's Song-Beverly Act/Breach of Implied-Warranty Claim Fails Because It Arose After the Implied Warranty Expired .......... 35

V.    PLAINTIFFS FAIL TO STATE CLAIMS FOR UNJUST ENRICHMENT........ 36

VI.   PLAINTIFFS GLAZER AND CHRIS AND TRINA ALLISON'S CLAIMS
      FOR NEGLIGENT DESIGN AND FAILURE TO WARN ARE BARRED
      BECAUSE THEY SEEK TO RECOVER ONLY ECONOMIC LOSSES ........... 39

CONCLUSION ................................................................................................. 40

Table of Authorities

<u>Cases</u>                                                                                                                                       <u>Page</u>

*Abraham v. Volkswagen of Am., Inc.,*
795 F.2d 238 (2d Cir. 1986)...................................................................................... 35

*All W. Elecs., Inc. v. M-B-W, Inc.,*
75 Cal. Rptr. 2d 509 (Cal. Ct. App. 1998) ............................................................ 25n,32n

*Am. Suzuki Motor Corp. v. Super. Ct.,*
44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) ............................................................ 28n

*Anunziato v. eMachines, Inc.,*
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................................. 28

*Arikat v. JP Morgan Chase & Co.,*
430 F. Supp. 2d 1013 (N.D. Cal. 2006) ................................................................. 21

*Ass'n for Betterment of Black News Employees v. Evening News Ass'n,*
No. 4-70680, 1975 WL 268 (E.D. Mich. Oct. 1, 1975) ...................................... 8n

*Assoc. Commercial Corp. v. Wallia,*
511 A.2d 709 (N.J. Super. Ct. App. Div. 1986) .................................................. 37n

*Atkinson v. Elk Corp. of Tex.,*
48 Cal. Rptr. 3d 247 (Cal. Ct. App. 2006) .......................................................... 35-36

*Austin Hatcher Realty, Inc. v. Arnold,*
No. COA07-1377, 2008 WL 2246675 (N.C. Ct. App. June 3, 2008) ............... 37n

*Avery Dennison Corp. v. Soliant LLC,*
No. 1:04CV1865, 2005 WL 2035511 (N.D. Ohio Aug. 23, 2005) ................... 39

*Bank of Am. Corp. v. Gibbons,*
918 A.2d 565 (Md. Ct. App. 2007)....................................................................... 37n

*Bardin v. Daimlerchrysler,*
39 Cal. Rptr. 3d 634 (Cal. Ct. App. 2006) .......................................................... 23,24

*Bayh v. Sonnenburg,*
573 N.E.2d 398 (Ind. 1991) ................................................................................. 37n

*Bell Atl. Corp. v. Twombly,*
127 S. Ct. 1955 (2007)......................................................................................... 6,19,22

iv

*Berryman v. Merit Prop. Mgmt., Inc.,*
62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ........................................................ 21

*Beshears v. Provident Life & Accident Ins. Co.,*
No. CV-07-00292, 2007 WL 1438738 (D. Ariz. May 15, 2007) ...................... 8,9,11

*Bettua v. Sears, Roebuck & Co.,*
No. 08 C 1832, 2009 WL 230573 (N.D. Ill. Jan. 30, 2009) ............................. 2,11,13, 38

*Bishop v. Lucent Techs., Inc.,*
520 F.3d 516 (6th Cir. 2008) ............................................................................ 6

*Bower v. I.B.M.,*
495 F. Supp. 2d 837 (S.D. Ohio 2007) ............................................................ 16

*Cannon v. Metro Ford, Inc.,*
242 F. Supp. 2d 1322 (S.D. Fla. 2002) ............................................................ 14n

*Carlson v. Gen. Motors Corp.,*
883 F.2d 287 (4th Cir. 1989) ............................................................................ 27n

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
973 P.2d 527 (Cal. 1999) .................................................................................. 20

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.,*
537 N.E.2d 624 (Ohio 1989) ............................................................................ 39-40

*Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.,*
656 F. Supp. 49 (S.D. Ohio 1986) .................................................................... 40

*Cipollone v. Liggett Group, Inc.,*
505 U.S. 504 (1992) .......................................................................................... 33

*Clemens v. DaimlerChrysler Corp.,*
534 F.3d 1017 (9th Cir. 2008) .......................................................................... 27n,30, 34

*Cole v. Mileti,*
133 F.3d 433 (6th Cir. 1998) ............................................................................ 24,26n

*Continental Cas. Co. v. Honeywell Int'l, Inc.,*
No. 1:08-CV-1410, 2009 WL 313127 (N.D. Ohio Feb. 6, 2009) ...................... 33

*Cooper v. Samsung Elecs. Am., Inc.,*
No. 07-3853 (JLL), 2008 WL 4513924 (D.N.J. Sept. 30, 2008) ...................... 35

*Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*,
576 F. Supp. 312 (D. Md. 1983) ........................................................................ 26n,32n

*Curl v. Volkswagen of Am., Inc.*,
871 N.E.2d 1141 (Ohio 2007).............................................................................. 25,28-29,30

*Daugherty v. Am. Honda Motor Co.*,
51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006) .......................................................... 21-24

*Dewey v. Volkswagen AG*,
558 F. Supp. 2d 505 (D.N.J. 2008) ..................................................................... 26

*Ellis v. Allstate Ins. Co.*,
No. 06 C 4571, 2006 WL 3524409 (N.D. Ill. Dec. 5, 2006) ............................... 14n

*ExxonMobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*,
328 F. Supp. 2d 443 (S.D.N.Y. 2004) ................................................................. 19

*Farris v. State Farm Ins. Co.*,
No. 1:07 CN 2477, 2008 WL 1752142 (N.D. Ohio, Apr. 14, 2008) ................... 26n

*Ferron v. Zoomego, Inc.*,
No. 2:06-CV-751, 2007 WL 1974946 (S.D. Ohio July 3, 2007)......................... 14n,18

*Finch v. Ford Motor Co.*,
327 F. Supp. 2d 942 (N.D. Ill. 2004) ................................................................... 29

*Firemen's Annuity & Benefit Fund v. Mun. Employees', Officers', & Officials'
Annuity & Benefit Fund*, 579 N.E.2d 1003 (Ill. App. Ct. 1991) ......................... 37n

*First Specialty Ins. Corp. v. Maine Coast Marine Constr., Inc.*,
No. 06-119-B-K, 2007 WL 2556237 (D. Me. Aug. 31, 2007) ............................ 8

*Flory v. Silvercrest Indus., Inc.*,
633 P.2d 383 (Ariz. 1981).................................................................................... 25n,32n

*Gordon v. Ford Motor Co.*,
657 N.Y.S.2d 43 (N.Y. App. Div. 1997) .............................................................. 25n

*Gregory v. Atrium Door & Window Co.*,
415 S.E.2d 574 (N.C. Ct. App. 1992) ................................................................. 25n

*Grismore v. Capitol One F.S.B.*,
No. CV 05-2460-PHX-SMM, 2007 WL 841513 (D. Ariz. Mar. 16, 2007) .......... 10

*Hambleton v. R.G. Barry Corp.*,
465 N.E.2d 1298 (Ohio 1984).............................................................................. 36

*Hartless v. Clorox Co.*,
   No. 06CV2705 JAH(CAB), 2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ...................... 30

*Heisner ex rel. Heisner v. Genzyme Corp.*,
   No. 08-C-593, 2008 WL 2940811 (N.D. Ill. July 25, 2008) ............................................ 33

*Hoffer v. Cooper Wiring Devices, Inc.*,
   No. 1:06CV763, 2007 WL 1725317 (N.D. Ohio June 13, 2007)................................... 15,16n, 17,38

*Hyundai Motor Am., Inc. v. Goodin*,
   822 N.E.2d 947 (Ind. 2005) ........................................................................................ 25n

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
   251 F.R.D. 689 (N.D. Ga. 2008)................................................................................. 24

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
   Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ................... 27

*In re Welding Fume Prods. Liab. Litig.*,
   245 F.R.D. 279 (N.D. Ohio 2007) .............................................................................. 24

*Intergraph Corp. v. Stearman*,
   555 So. 2d 1282 (Fla. Dist. Ct. App. 1990) ................................................................. 32n

*IWOI, LLC v. Monaco Coach Corp.*,
   581 F. Supp. 2d 994 (N.D. Ill. 2008) .......................................................................... 31

*Johnson v. Microsoft Corp.*,
   834 N.E.2d 791 (Ohio 2005)...................................................................................... 38

*Johnson v. Wheeler*,
   492 F. Supp. 2d 492 (D. Md. 2007) ............................................................................ 14n

*Kowalke v. Bernard Chevrolet, Inc.*,
   No. 99 C 7980, 2000 WL 656660 (N.D. Ill. Mar. 23, 2000) ............................................ 30n,31

*Kron Med. Corp. v. Collier Cobb & Assocs., Inc.*,
   420 S.E.2d 192 (N.C. Ct. App. 1992) .......................................................................... 14n

*Kuehn v. Stanley*,
   91 P.3d 346 (Ariz. Ct. App. 2004).............................................................................. 9

*Lantz v. Am. Honda Motor Co.*,
   No. 06 C 5932, 2007 WL 1424614 (N.D. Ill. May 14, 2007) ............................................ 30-31

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
326 F. Supp. 2d 434 (S.D.N.Y. 2004)................................................................. 19,20,
31

*Lee v. Chrysler Corp.*,
No. 2004CA00164, 2005 WL 449762 (Ohio Ct. App. Feb. 22, 2005)............................ 40

*Lichoff v. CSX Transp., Inc.*,
218 F.R.D. 564 (N.D. Ohio 2003) ............................................................... 26

*Lyons v. Coxcom, Inc.*,
No. 08-CV-02047-H (CAB), 2009 WL 347285 (S.D. Cal. Feb. 6, 2009)....................... 14n

*Malkamaki v. Sea Ray Boats, Inc.*,
411 F. Supp. 2d 737 (N.D. Ohio 2005)............................................................ 35

*Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*,
No. 04 C 6631, 2005 WL 2284305 (N.D. Ill. Sept. 15, 2005) ................................ 2n

*Marrone v. Philip Morris USA, Inc.*,
850 N.E.2d 31 (Ohio 2006)........................................................................ 15

*Mezibov v. Allen*,
411 F.3d 712 (6th Cir. 2005) .................................................................... 6

*Munch v. Sears, Roebuck & Co.*,
Nos. 06 C 7023, 07 C 412, 2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) ..................... 2,11,13,
14-15

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
79 F. Supp. 2d 494 (D.N.J. 2000) ............................................................... 14n

*Nobility Homes of Tex., Inc. v. Shivers*,
557 S.W.2d 77 (Tex. 1977)........................................................................ 25n

*Ocana v. Ford Motor Co.*,
992 So. 2d 319 (Fla. Dist. Ct. App. 2008) ...................................................... 31

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................................... 24

*Ohayon v. Safeco Ins. Co.*,
747 N.E.2d 206 (Ohio 2001)....................................................................... 26

*Osborne v. Subaru of Am., Inc.*,
243 Cal. Rptr. 815 (Cal. Ct. App. 1988) ........................................................ 30n,31

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995) ........................................................................ 19

*Owens Transp. Serv., Inc. v. Int'l Truck & Engine Corp.*,
No. 1:05 CV 2897, 2006 WL 3545109 (N.D. Ohio Dec. 8, 2006) .................. 35

*Paikai v. Gen. Motors Corp.*,
No. CIV. S-07-892, 2009 WL 275761 (E.D. Cal. Feb. 5, 2009) ..................... 16

*Parrish v. Nat'l Football League Players Ass'n*,
534 F. Supp. 2d 1081 (N.D. Cal. 2007) ....................................................... 14n

*Patel v. Holiday Hospitality Franchising, Inc.*,
172 F. Supp. 2d 821 (N.D. Tex. 2001) ......................................................... 14n

*Peterson v. Cellco P'ship*,
80 Cal. Rptr. 3d 316 (Cal. Ct. App. 2008) .................................................... 37n

*Picker Int'l, Inc. v. Mayo Found.*,
6 F. Supp. 2d 685 (N.D. Ohio 1998) ............................................................ 39

*Plagens v. Nat'l RV Holdings*,
328 F. Supp. 2d 1068 (D. Ariz. 2004) .......................................................... 29

*Radford v. Daimler Chrysler Corp.*,
168 F. Supp. 2d 751 (N.D. Ohio 2001) ........................................................ 18

*Rentas v. DaimlerChrysler Corp.*,
936 So. 2d 747 (Fla. Dist. Ct. App. 2006) .................................................... 31

*Rothe v. Maloney Cadillac, Inc.*,
518 N.E.2d 1028 (Ill. 1988) ........................................................................ 25n

*Sanders v. City of Fresno*,
No. CIV F 05-0469 AWl SMS, 2006 WL 1883394 (E.D. Cal. July 7, 2006) ......... 28

*Sanderson v. HCA-The Healthcare Co.*,
447 F.3d 873 (6th Cir. 2006) ...................................................................... 10

*Schwartz v. Liberty Mut. Ins. Co.*,
539 F.3d 135 (2d Cir. 2008) ........................................................................ 26n

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*,
899 So. 2d 1222 (Fla. Dist. Ct. App. 2005) .................................................. 37n

*Sichel v. Unum Provident Corp.*,
230 F. Supp. 2d 325 (S.D.N.Y. 2002) .......................................................... 19

*Simmons v. Stryker Corp.*,
No. 08-3451 (JAP), 2008 WL 4936982 (D.N.J. Nov. 17, 2008) ........................................ 33n

*Spring Motors Distribs., Inc. v. Ford Motor Co.*,
489 A.2d 660 (N.J. 1985) ........................................................................................... 25n

*St. Clair v. Kroger Co.*,
581 F. Supp. 2d 896 (N.D. Ohio 2008) ........................................................................ 16

*Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.*,
21 F. Supp. 2d 664 (E.D. Tex. 1998) ........................................................................... 37n

*Trustmark Ins. Co. v. Bank One, Ariz., NA*,
48 P.3d 485 (Ariz. Ct. App. 2002) ............................................................................... 36n

*T.W.M. v. Am. Med. Sys., Inc.*,
886 F. Supp. 842 (N.D. Fla. 1995) ............................................................................... 25n

*Ultimax, Inc. v. Mercedes-Benz USA, LLC*,
No. 2:06-cv-951, 2008 WL 974036 (S.D. Ohio Apr. 8, 2008) ...................................... 30n

*Vantassell-Matin v. Nelson*,
741 F. Supp. 698 (N.D. Ill. 1990) ................................................................................ 26n

*Varney v. Ford Motor Co.*,
No. 8:06-cv-295-T-24TGW, 2007 WL 2780566 (M.D. Fla. Sept. 15, 2007) ................... 30

*Voelker v. Porsche Cars N. Am., Inc.*,
353 F.3d 516 (7th Cir. 2003) ...................................................................................... 29

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986) ................................................................................... 27

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) .................................................................................... 19,20

*Weiner v. Klais & Co.*,
108 F.3d 86 (6th Cir. 1997) ........................................................................................ 6

*Whitman Realty Group, Inc. v. Galano*,
838 N.Y.S.2d 585 (N.Y. App. Div. 2007) ..................................................................... 37n

*Williamson v. Allstate Ins. Co.*,
204 F.R.D. 641 (D. Ariz. 2001) ................................................................................... 12

<u>Statutes and Regulations</u>

28 U.S.C. § 1407 ...................................................................................................... 7

Fed. R. Civ. P. 8 ........................................................................................... 19

Fed. R. Civ. P. 9 ........................................................................................... *passim*

Fed. R. Civ. P. 12 ......................................................................................... 19

Ariz. Rev. Stat. §§ 44-1521 *et. seq.* ........................................................ 8

Cal. Bus. & Prof. Code § 17200 ................................................................ 20

Cal. Civ. Code § 1668 .................................................................................. 22

Cal. Civ. Code § 1709 .................................................................................. 21

Cal. Civ. Code § 1710 .................................................................................. 21n

Cal. Civ. Code § 1790.3 ............................................................................... 28n

Cal. Civ. Code § 1791.1 ............................................................................... 35,36

Cal. Comm. Code § 2313 ............................................................................. 21,22,
28n

Cal. Comm. Code § 2314 ............................................................................. 28n

Cal. Comm. Code § 2315 ............................................................................. 28n

Md. Code, Com. Law § 2-314 ..................................................................... 26n

N.Y. Gen. Bus. Law § 349 ........................................................................... 19

Ohio Admin. Code § 109.4-3-10 ................................................................ 17

Ohio Rev. Code § 1345.01 ........................................................................... 15

Ohio Rev. Code Ann. § 1345.02 ................................................................. 17,18

Ohio Rev. Code Ann. § 1345.09 ................................................................. 15,16n,
17

Ohio Rev. Code § 2307.71 ........................................................................... 39n

<u>Other Authorities</u>

7 Charles Allen Wright et al., Federal Practice & Procedure § 1688 (2008) .................... 8n

Plaintiffs Gina Glazer, Chris and Trina Allison, Pramila Gardner, Jeff Glennon, Mara

Cohen, Karen Hollander, Rebecca Nordan, Maggie O'Brien, Tracie Snyder, Andrea Strong, Jane

Werman, Sonja Sandholm-Pound, Shannon Schaeffer, Bonnie Beierschmitt, Phil Torf, and

Sylvia Bicknell ("Plaintiffs") filed a putative class action complaint ("Complaint") against

Whirlpool Corporation ("Whirlpool") purportedly on behalf of purchasers of Duet®, Duet HT®,

and Duet Sport® high efficiency front-loading washing machines (collectively, "Duet washers"

or "Duets") who reside in Plaintiffs' respective home states.  (Compl. ¶¶ 1-2.)  Plaintiffs allege

that Duet washers contain "serious design defects" that cause them to accumulate mold and

mildew and associated odors.  (*Id.* ¶ 2.)  Plaintiffs further allege that Whirlpool made "false and

misleading statements" about the Duet washers, "concealed material facts regarding" the alleged

defects, and failed to "warn" consumers about the alleged defects.  (*Id.* ¶¶ 35, 38, 42.)  Based on

these allegations, Plaintiffs assert claims for violation of all but one of Plaintiffs' respective

home states' consumer protection statutes, violation of the Magnuson-Moss Warranty Act,

breach of written and implied warranties, violation of the Song-Beverly Act, unjust enrichment,

tortious breach of warranty, and negligent design and failure to warn.[1]

The Court should dismiss Plaintiffs' statutory fraud claims pursuant to Federal Rule of

Civil Procedure 9(b) ("Rule 9(b)") for failing to plead those claims with particularity.

Specifically, Plaintiffs fail to plead with particularity Whirlpool's allegedly false or misleading

---

[1]  Plaintiffs claim that Whirlpool is obligated to repair, replace, or recall <u>every</u> Duet washer
because of the alleged non-safety defect, regardless of whether the washers manifest the defect
during the warranty period; indeed, regardless of whether they <u>ever</u> manifest the alleged defect.
(Compl. ¶¶ 51h, 163, 164, 192, 193.)  If Plaintiffs' theory were true, every manufacturer of a
consumer product would be obligated to preemptively service or recall every unit sold whenever
some percentage—no matter how small—required service.  That is not the law.

statements concerning the washers, and Plaintiffs include only vague and conclusory allegations concerning the existence and nature of the alleged design defects.[2]

Judge Lefkow's recent orders dismissing nearly identical consumer fraud act claims in three putative class actions pending against Sears, Roebuck and Company ("Sears actions") are directly on point. As here, the plaintiffs in the Sears actions allege that Whirlpool-manufactured front-loading washing machines contain design defects that cause the machines to accumulate mold and associated odors. Judge Lefkow dismissed claims brought pursuant to the consumer protection statutes of 16 states because the plaintiffs in the Sears actions, like Plaintiffs in this case, failed to plead any specific statement or representation that was allegedly false or misleading, and failed to provide an adequate description of the alleged defect that Sears allegedly failed to disclose. *See Munch v. Sears, Roebuck & Co.*, Nos. 06 C 7023, 07 C 412, 2008 WL 4450307, at *6, *8 (N.D. Ill. Sept. 30, 2008) (dismissing with prejudice claims brought pursuant to the consumer fraud statutes of Illinois, California, Kentucky, Minnesota, Michigan, New Jersey, New York, Washington, and Indiana); *Bettua v. Sears, Roebuck & Co.*, No. 08 C 1832, 2009 WL 230573, at *3 (N.D. Ill. Jan. 30, 2009) (dismissing claims brought pursuant to the consumer fraud statutes of Arizona, Colorado, Florida, Ohio, Pennsylvania, Wisconsin, and Oklahoma.). Because the allegations in this case are nearly identical to the allegations in the

---

[2] Plaintiffs' Complaint illustrates the need to impose heightened pleading standards in a consumer fraud case such as this one. That is because every line of mass-produced product of any complexity will have some percentage of units that require maintenance or repair during the life of the product. Absent a requirement that plaintiffs plead with particularity that such maintenance or repair was caused by the defendant's having fraudulently sold a defective product, virtually every product launch could be followed by baseless, expensive, and extortionate class litigation. *See, e.g., Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*, No. 04 C 6631, 2005 WL 2284305, at *2 (N.D. Ill. Sept. 15, 2005) ("The purpose of Rule 9(b) in regards to fraud claims, 'is to minimize the extortionate impact that a baseless claim of fraud can have . . . .'" (citations omitted)).

Sears actions, this Court should likewise dismiss Plaintiffs' consumer fraud act claims for failure to satisfy Rule 9(b).

The Court also should dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' claims for consumer fraud, breach of warranty, negligent design, and unjust enrichment. Plaintiffs' claims for breach of written and implied warranties fail because the allegations in the Complaint establish that certain Plaintiffs lack the required privity necessary to state a warranty claim under applicable law. Certain Plaintiffs' claims for breach of express warranty fail because the Complaint does not plead any representation of fact by Whirlpool that could be construed as creating an express warranty, nor does it plead facts showing that Whirlpool breached the terms of its limited warranties. Plaintiff Schaeffer's implied-warranty claim fails because her claim arose after the statutory term of her implied warranty expired under the Song-Beverly Act. Plaintiffs' unjust enrichment claims fail because they have not adequately alleged that Whirlpool's conduct was wrongful in any way, and because certain Plaintiffs admit that they did not enter into any transaction with Whirlpool. Finally, Plaintiffs' claims for negligent design is barred because claims for purely economic losses cannot be recovered in tort.

## STATEMENT OF FACTS

Plaintiffs allege that their Duet washers are defective because they "(a) accumulate mold and mildew and/or residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes, (c) produce a mold or mildew odor on clothes and other items washed in the Machines, (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew, and associated found odors; and (e) [are] unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed and sold." (Compl. ¶ 2.) Plaintiffs allege that the purported design defects create "an excessive propensity"

3

for Duet washers to accumulate mold and mildew (*id.* ¶ 36), and allege further that "virtually every machine" will eventually develop such problems (*id.* ¶ 31). Plaintiffs further contend that Whirlpool "concealed material facts regarding" these alleged problems with the Duet washers, failed to "warn" consumers about these alleged problems, and "failed to implement a recall to adequately announce, remedy, and correct the defects." (*Id.* ¶¶ 35, 38, 51h.)

### A.    Plaintiffs' Alleged Experiences with Their Duet Washers

Plaintiffs allege that they bought their Duet washers between May 2003 and August 2006, and that their Duets subsequently developed problems with mold or mildew. (Compl. ¶¶ 55-96.) [3] Plaintiffs do not allege that, before they bought their Duet washers, they personally saw, heard, read, or received from Whirlpool any representation or statement regarding the Duet washer's reliability, durability, or lack of need for repair within any particular period of time. (*See id.* ¶¶ 1-311.)

Plaintiffs allege that they have suffered economic damages because Whirlpool's alleged conduct "[c]aused Plaintiffs and Class members to pay premium prices for a defective product," "[r]educed the value of the Washing Machines," and "[c]aused reasonable consumers like Plaintiffs and Class members to spend money for attempted repairs and other purported remedies of the defects." (Compl. ¶ 52.)

### B.    Whirlpool's Alleged Misrepresentations and Material Omissions

Plaintiffs allege that, "in conjunction with each sale" of a Duet washer, Whirlpool has "marketed, advertised and warranted" that the Duets "were free from defects, or at a minimum

---

[3]  In the interest of space, to the extent Plaintiffs' individual allegations concerning their purchase of and experience with their Duet washers (*id.* ¶¶ 55-96) are relevant to this Motion, those allegations will be discussed in the applicable argument sections below.

would not cause Mold Problems." (Compl. ¶ 29.)  The 311 paragraphs of the Complaint,

however, do not identify a single statement by Whirlpool—much less "the who, what, when,

where, and how"—that was either false or misleading due to the omission of a material fact.

(*See id.* ¶¶ 1-311.)  Plaintiffs allege further that, contrary to these unspecified statements,

Whirlpool "knew and was aware, or should have known and been aware, before marketing and

selling the machines" (*id.* ¶ 38), that "serious design defects" cause the Duets to accumulate

mold and mildew and produce associated odors (*id.* ¶ 2).  Plaintiffs also allege that Whirlpool

knew when it made its unidentified statements that the Duet washers were "substantially likely to

experience Mold Problems."  (*Id.* ¶ 38.)

In addition to the alleged (but unspecified) affirmative misrepresentations, Plaintiffs

plead that Whirlpool "failed to warn consumers of the Design Defects inherent in the Washing

Machines or the Mold Problems which would result from the alleged defects" (*id.* ¶ 38) and

"[c]ontinued to represent expressly or by implication that the Washing Machines . . . were

dependable, cost effective, and providing outstanding cleaning and performance as washing

machines when it knew that these statements were false" (*id.* ¶ 51).

## C.     Plaintiffs' Duet Washers' Warranty Provisions

With respect to Whirlpool's written warranties, Plaintiffs allege in pertinent part that

Whirlpool provides "an express one-year factory warranty" that "[f]or one year from the date of

purchase . . . [Whirlpool] will pay for Factory Specified Parts and repair labor to correct defects

in materials or workmanship" (*id.* ¶ 27), as well as a "'limited lifetime warranty on the stainless

steel drum' for most of the Whirlpool Duet and Duet HT Machines" (*id.* ¶ 28).  Plaintiffs do not

and cannot allege that Whirlpool provided a lifetime warranty on the stainless steel drum for the

Duet Sport® washers.  (*Id.*)  Plaintiffs also admit that only certain of the Duet® and Duet HT®

models are covered by a lifetime limited warranty on the stainless steel drum.  (*Id.*)  In fact,

5

Whirlpool did not offer the lifetime limited warranty on the stainless steel wash drum for Duet HT[®] washers sold after August 2005 or for Duet[®] washers sold after September 2005.[4] Accordingly, Plaintiffs Glazer, Allison, Glennon, Cohen, Hollander, and Bicknell would not have received a lifetime warranty on the stainless steel drum because they all purchased either Duet Sport[®] washers or they purchased their Duet washers after September 2005.  (Compl. ¶¶ 55, 56, 57, 61, 64, 80.)

## ARGUMENT

### I.   LEGAL STANDARD

A court should grant a motion to dismiss where, as here, the complaint fails to set forth allegations sufficient to make out all the material elements of a cause of action. *Weiner*, 108 F.3d at 88.  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  The "'[f]actual allegations must be enough to raise a right to relief above the speculative level'; they must 'state a claim to relief that is plausible on its face.'" *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

---

[4]  (*See* Duet[®] Use & Care Guide at 23, Sept. 2005, attached hereto as Ex. 1, *and* Duet HT[®] Use & Care Guide at 25, Sept. 2005, attached hereto as Ex. 2.)  The Duets' various owner's manuals are properly before the Court because Plaintiffs refer to the owner's manuals—and the written warranty contained therein—in their pleading (*e.g.*, Compl. ¶¶ 48, 53), and the limited nature of the written warranties is central to Plaintiffs' claims. *See, e.g.*, *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.").

## II.   THE ALLISON AND SCHAEFFER PLAINTIFFS ARE NOT PARTIES TO ANY OF THE UNDERLYING ACTIONS AND SHOULD BE DISMISSED FROM THE MASTER COMPLAINT

Plaintiffs Chris and Trina Allison and Shannon Schaeffer were improperly added to the Master Class Action Complaint.  They are not named plaintiffs in any of the underlying actions that were transferred to this district by the Judicial Panel on Multidistrict Litigation.  Pursuant to 28 U.S.C. § 1407(a), the underlying actions must be remanded to their respective transferor districts at the conclusion of pretrial proceedings.  *See* 28 U.S.C. § 1407(a).  Because these three new Plaintiffs are not parties to any of the underlying actions, their claims will not attach to any of the underlying actions when they are remanded to their respective transferor districts, and their participation in these consolidated proceedings serves no purpose.

Furthermore, Plaintiffs' attempt to add parties at this juncture is procedurally improper. With respect to Plaintiffs Chris and Trina Allison, whom Plaintiffs would presumably seek to add to the underlying *Glazer* action because they are Ohio residents and the *Glazer* action included a putative Ohio class, the deadline set by this Court for adding additional parties has already passed.[5]  Under this Court's September 10, 2008 Scheduling Order, Plaintiff Glazer had until September 17, 2008 to add parties or amend the pleadings.  (*See* Sept. 10, 2008 Scheduling Order § I(1).)  Plaintiff Glazer in fact amended her complaint on September 17, 2008, but she did not add any additional parties.  Thus, by adding the Allisons to this Master Class Action Complaint, Plaintiffs are now trying to accomplish what they could not have done in the

---

[5]  It is not clear what underlying case Plaintiff Schaeffer, a resident of California, would have been added to assuming Plaintiffs had followed appropriate procedures.  Only the *Sandholm-Pound* case, filed in the District of New Jersey, purports to bring claims by a California plaintiff (Victoria Poulsen) on behalf of a California class.  However, the Master Class Action Complaint drops Plaintiff Poulsen.  Thus, it appears that there is no longer any underlying action with a putative California subclass and California claims to which Plaintiff Schaeffer could be added.

underlying *Glazer* case absent a showing of excusable neglect.  *See First Specialty Ins. Corp. v. Maine Coast Marine Constr., Inc.*, No. 06-119-B-K, 2007 WL 2556237, at *1 (D. Me. Aug. 31, 2007) ("The exercise of such [judicial] discretion [on a motion for leave to join a party] unfavorably to the movant is insulated considerably where the motion is filed after a deadline set in a scheduling order and the movant fails to make a presentation of excusable neglect.").[6]

## III.   PLAINTIFFS FAIL TO PLEAD COGNIZABLE CLAIMS UNDER ANY OF THE RELEVANT CONSUMER PROTECTION STATUTES

Plaintiffs purport to assert claims under the consumer protection statutes of Arizona, California, Florida, Illinois, Maryland, New Jersey, New York, North Carolina, Ohio, and Texas, alleging that Whirlpool made affirmative misrepresentations and material omissions concerning the alleged defects in Duet washers.  (Compl. ¶¶ 106-18, 219-311.)  For the reasons set forth below, Plaintiffs' vague and conclusory allegations regarding Duet washers' alleged defects and Whirlpool's alleged misrepresentations and omissions about such alleged defects fail to state a claim under any of the relevant consumer protection statutes.

### A.   Plaintiff Strong Fails to State a Claim Under the Arizona Consumer Fraud and Deceptive Business Practices Act

A claim under the Arizona Consumer Fraud Act ("Arizona Fraud Act"), Ariz. Rev. Stat. §§ 44-1521, *et seq.*, must be pled with particularity under Rule 9(b).  *See Beshears v. Provident Life & Accident Ins. Co.*, No. CV-07-00292, 2007 WL 1438738, at *3 (D. Ariz. May 15, 2007)

---

[6]  Plaintiffs' attempt to add new Plaintiffs is also improper because they did not first seek leave of court.  *See Ass'n for Betterment of Black News Employees v. Evening News Ass'n*, No. 4-70680, 1975 WL 268, at *2 (E.D. Mich. Oct. 1, 1975).  ("[I]t is well-settled that when the amendment involves new parties, it is subject to R. 21 . . . .  Therefore, leave of court has generally been held to be necessary to add parties, even at a time when an amendment may be filed as of right."); 7 Charles Allen Wright et al., Federal Practice & Procedure § 1688 (2008) ("Most courts have held . . . that an amendment changing parties requires leave of court even though made at a time when Rule 15 indicates it could be done as of course.").

(dismissing Arizona Fraud Act claim and finding that "Plaintiff has not described the allegedly false promises or misrepresentations with the particularity required by Rule 9(b)").[7]  Plaintiff Strong claims that Whirlpool violated the Arizona Fraud Act by representing, "through its advertising, marketing, and other express representations," that the Duet washers were of a certain standard or quality when they were not (Compl. ¶ 295), and by "fraudulently concealing from and/or intentionally failing to disclose" material information about the Duet washers (*id.* ¶ 296).  As set forth below, Plaintiff Strong's Arizona Fraud Act claim is not pled with particularity, and must be dismissed. *See Beshears*, 2007 WL 1438738, at *3.

**1.     Plaintiff Strong fails to plead with particularity any false or misleading statement by Whirlpool**

To the extent that Plaintiff Strong bases her Arizona Fraud Act claim on any allegedly false or misleading statement contained in Whirlpool's "advertising, marketing, and other express representations" (Compl. ¶ 295), she has not pled her claim with the particularity required by Rule 9(b).  That is because the Complaint does not identify <u>any</u> specific statement or representation "made in connection with the sale or advertisement" of Duet washers to which she personally was exposed that was allegedly false or misleading. *Kuehn*, 91 P.3d at 352.  Instead, Plaintiff Strong pleads only highly generalized allegations that Whirlpool claimed "through its advertising, marketing, and other express representations, that the [Duet washers] were of a certain quality or standard when they were not."[8]  (Compl. ¶ 295.)  Such vague and conclusory

---

[7]  To state a claim under the Arizona Fraud Act, a plaintiff must plead:  (1) "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise," and (2) "consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004).

[8]  The only specific "express representations" that Plaintiffs allege are that Whirlpool sold the Duet washers as "High Efficiency" and labeled the washers as "ENERGY STAR" compliant.  (Compl. ¶ 30.)  However, Plaintiffs do not allege that these statements are actually false, only

allegations fall far short of the particularity required by Rule 9(b). *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("'Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud.'") (citation omitted). The Complaint does not specify the time, place, or medium in which any allegedly false or misleading statement was communicated, nor does the Complaint contain any specific allegations concerning the content of any allegedly false or misleading statement. (*See* Compl. ¶¶ 1-311.) Plaintiff Strong also fails to identify any statement that she personally read, heard, or otherwise received, let alone that such statement actually deceived her and thus proximately caused her harm. (*See id.*) As a result, Plaintiff Strong has not pled her Arizona Fraud Act claim with the particularity required by Rule 9(b). *See, e.g., Beshears*, 2007 WL 1438738, at *2-3 ("Plaintiff only once refers to an allegedly fraudulent statement made before he purchased his policy . . . . But Plaintiff never explains the details behind this statement, including its content, how it was communicated, or why it was false. . . . Plaintiff's complaint . . . does not plead fraud with particularity."); *Grismore v. Capitol One F.S.B.*, No. CV 05-2460-PHX-SMM, 2007 WL 841513, at *6-7 (D. Ariz. Mar. 16, 2007) (dismissing Arizona Fraud Act claim because the complaint "failed to plead the times, dates, places, and other details surrounding the allegedly fraudulent conduct").

Judge Lefkow's recent orders dismissing nearly identical consumer fraud act claims in the Sears actions pending in the Northern District of Illinois are directly on point.[9] As here, the

---

that they <u>might</u> be misleading. (*Id.* alleging "on information and belief" that the Energy Star rating does "not tak[e] into account the extra loads run through the Machines to try to clean the Machines").)

[9] The Sears actions include three putative class actions captioned *Munch v. Sears, Roebuck &Co.*, Case No. 06-CV-7023, *Seratt v. Sears, Roebuck &Co.*, Case No. 07-CV-0412, and *Bettua v. Sears, Roebuck &Co.*, Case No. 08-CV-1832. All three actions have since been consolidated, but not before Judge Lefkow issued two rulings on motions to dismiss filed in the *Munch* and *Seratt* actions, and one ruling on a motion to dismiss the *Bettua* complaint.

plaintiffs in the Sears actions, who purport to represent sixteen statewide subclasses, allege that Whirlpool-manufactured front-loading washing machines contain design defects that cause the machines to accumulate mold, mildew, and associated odors. *Compare Bettua*, 2009 WL 230573, at *2 (listing putative statewide subclasses asserted in the Sears actions), with Compl. ¶¶ 4-19.

In *Munch*, Judge Lefkow dismissed <u>with prejudice</u> the plaintiffs' claims brought pursuant to the consumer fraud statutes of Illinois, California, Kentucky, Minnesota, Michigan, New Jersey, New York, Washington, and Indiana. *See Munch*, 2008 WL 4450307, at *6, *8. As here, the complaint in *Munch* did not identify any specific statement or representation that was alleged to be false or misleading, but instead included only highly generalized assertions that Sears marketed the washers as innovative, cost effective and dependable when they allegedly are not. The district court rejected the *Munch* plaintiffs' theory of deception:

> [T]he deception in this case was conveyed to the plaintiffs only through a "totality of the message" that the washers were "highly dependable and effective. . . . [A] generalized marketing campaign is not the basis for a materially deceptive practice. . . . It follows from this conclusion that plaintiffs' fraud claims must be dismissed.

*Id.* at *6 (dismissing claims asserted under nine consumer fraud statutes).

Plaintiffs' misrepresentation allegations in this case are in all material respects indistinguishable from those dismissed with prejudice in *Munch*, and are likewise insufficient to plead an Arizona Fraud Act claim. *See, e.g., Beshears*, 2007 WL 1438738, at *2-3.

**2.    Plaintiff Strong's allegation that Whirlpool did not disclose the alleged defect in her Duet washer is not sufficiently particular to state an Arizona Fraud Act claim**

Plaintiff Strong also purports to base her Arizona Fraud Act claim on Whirlpool's alleged nondisclosure of material information about the Duets. (Compl. ¶¶ 296, 298.) The Complaint alleges that Whirlpool failed to disclose that the Duet washers have a "serious design defect" that

causes mold-mildew accumulation (*id.* ¶ 2), and that Whirlpool failed to disclose that consumers were "substantially likely" to experience mold accumulation (*id.* ¶ 38).

To state an Arizona Fraud Act claim based on an alleged omission, Plaintiff Strong must plead with particularity the material fact(s) that Whirlpool allegedly knew and did not disclose. *See Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001) ("[I]n order for a complaint to allege fraud with the requisite particularity . . . the plaintiff must set forth an explanation as to why the . . . omission complained of was false or misleading" (quotation marks and citation omitted)). Plaintiffs' allegations concerning the alleged design defect and the alleged risk or likelihood of its manifestation are far too vague and conclusory to satisfy the requirements of Rule 9(b).

First, the Complaint does not contain any technical description of the alleged defect. Plaintiffs allege—"[u]pon information and belief"—only that the stainless steel wash drums "play a role" in the alleged defect because they "do not fully or properly drain in connection with each and every wash cycle" and that unspecified defects in the door seal also "play a role" because the door seal "does not fully or properly drain and/or remove residues and growths after each wash." (Compl. ¶ 37.) Plaintiffs plead no specific allegations explaining the mechanism(s) through which the Duet washers drain themselves, let alone plead any facts indicating why the washers fail to drain or drain incompletely. Far from providing an engineering explanation for the defect, these allegations consist only of conclusion and conjecture. (*Id.* ¶¶ 1-311.)

Judge Lefkow's ruling in the related Sears actions is once again instructive. In *Bettua*, Judge Lefkow dismissed a virtually identical Arizona Fraud Act claim (as well as consumer fraud claims under Florida and Ohio law, among others) based on the same allegation made in this case; namely, that Sears failed to disclose the alleged design defect in Whirlpool-

manufactured front-loading washers. *See Bettua*, 2009 WL 230573, at *3. Judge Lefkow held

that the allegations in that case were "insufficiently specific . . . to permit an inference of

materiality . . . and fail to provide an engineering explanation for the alleged defect." *Id.*; *see*

*also Munch*, 2008 WL 4450307, at *6 (dismissing consumer fraud claims in part because the

plaintiffs failed to allege "an engineering explanation for the two alleged defects"). The *Bettua*

plaintiffs' "insufficient[]" allegations were nearly verbatim to Plaintiffs' allegations here:

> The complaint states that "the [machine's] stainless steel drums, . . . among other
> things, play a role in the accumulation of mold and mildew within the Washing
> Machines by, inter alia, not fully or properly draining in connection with each and
> every wash cycle" and that "[a]lso playing a role in the accumulation of mold,
> mildew and/or foul odors is the door seal ('boot'), which, among other things,
> does not fully or properly drain."

*Bettua*, 2009 WL 230573, at *3 n.3. Based on those allegations, Judge Lefkow observed that

"[f]ar from a meaningful engineering explanation for the defects, however, such allegations are,

by their own terms, vague and indeterminate." *Id.*

Second, the Complaint contains no particularized allegation that, if true, would prove that

the alleged risk of mold and mildew buildup was so "serious" that Whirlpool owed Plaintiffs a

duty to disclose that risk. Instead, Plaintiffs make conclusory allegations—based solely on a

reference to an Internet website—that "thousands" of consumers have posted complaints about

the alleged defects (Compl. ¶ 43), and that consumers are "substantially likely" to experience

mold-mildew problems (*id.* ¶ 38). Plaintiffs do not allege how many such failures Whirlpool

was aware of at any given point of time (particularly in relation to the number of units sold

during the same period). (*Id.* ¶¶ 1-311.) Nor do Plaintiffs make any effort to define what they

consider to be an acceptable complaint or repair rate as compared to a rate that is so "high" as to

impose on Whirlpool a duty to disclose the rate. The absence of such particularized allegations

requires dismissal here. *See, e.g., Bettua*, 2009 WL 230573, at *3 (dismissing Arizona Fraud Act

claim, holding that the plaintiffs' allegations that "the Machines had a *heightened rate* of failure" and "that consumer complaints attributable to these defects were *significant*" were "insufficiently specific to . . . permit an inference of materiality" (emphasis in original)).

### B.   Plaintiffs Fail to Plead with Particularity Their Claims Under the Consumer Fraud Statutes of California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, and Texas

The above analysis applies with equal force to Plaintiffs' claims for violations of the consumer protection statutes of California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, and Texas, because claims asserted under those statutes also must be pled with particularity.[10] Accordingly, for the reasons stated above with respect to the Arizona Fraud Act, Plaintiffs' claims under the consumer protection statutes of California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, and Texas fail as a matter of law. *See Munch,*

---

[10] *See, e.g., Lyons v. Coxcom, Inc.,* No. 08-CV-02047-H (CAB), 2009 WL 347285, at *11 (S.D. Cal. Feb. 6, 2009) (dismissing California Consumer Legal Remedies Act for failure to plead the defendant's fraudulent conduct with particularity); *Parrish v. Nat'l Football League Players Ass'n,* 534 F. Supp. 2d 1081, 1093 (N.D. Cal. 2007) (holding that Rule 9(b)'s heightened pleading standard applies to Unfair Competition Law claims that are grounded in fraud); *Cannon v. Metro Ford, Inc.,* 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002) (dismissing Florida Deceptive and Unfair Trade Practices Act claim for failure to plead fraud with particularity); *Ellis v. Allstate Ins. Co.,* No. 06 C 4571, 2006 WL 3524409, at *7 (N.D. Ill. Dec. 5, 2006) (dismissing claim under the Illinois Fraud Act for failure to plead violation with particularity); *Johnson v. Wheeler,* 492 F. Supp. 2d 492, 509 (D. Md. 2007) (dismissing Maryland Consumer Protection Act claim; plaintiffs are "obliged to identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments"); *Naporano Iron & Metal Co. v. Am. Crane Corp.,* 79 F. Supp. 2d 494, 512 (D.N.J. 2000) (dismissing New Jersey Consumer Fraud Act claim for "failure to plead fraud with sufficient particularity"); *Kron Med. Corp. v. Collier Cobb & Assocs., Inc.,* 420 S.E.2d 192, 196-97 (N.C. Ct. App. 1992) (holding that a defendant's failure to disclose a material fact may be actionable under the North Carolina Unfair and Deceptive Trade Practices Act, but such nondisclosure "must, under the conditions existing, amount to fraud"); *Ferron v. Zoomego, Inc.,* No. 2:06-CV-751, 2007 WL 1974946, at *3 (S.D. Ohio July 3, 2007) ("[T]he elevated standards of Rule 9(b) will be applied to Plaintiff's claims under the [Ohio] Unfair and Deceptive Sales Act."); *Patel v. Holiday Hospitality Franchising, Inc.,* 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the [Texas Deceptive Trade Practices - Consumer Protection Act] are subject to the requirements of Rule 9(b).").

2008 WL 4450307, at *6 n.9 (because the plaintiffs failed to plead with particularity a violation

of one state's consumer fraud statute, the remaining consumer fraud claims also failed).

**C.**    **Plaintiffs Glazer and Chris and Trina Allison Fail to State a Claim for Violation of Ohio's Consumer Sales Practices Act**

Plaintiffs' claim for violation of the Ohio Consumer Sales Practice Act, Ohio Rev. Code

Ann. § 1345.01 *et seq.* (the "OCSPA"), fails for the additional reasons that Plaintiffs do not

adequately allege that Whirlpool had prior notice that its alleged conduct violated the OCSPA,

which is a necessary prerequisite to maintaining an OCSPA claim as a class action, and because

Plaintiffs have not pled any act or omission by Whirlpool that would constitute an unfair or

deceptive act.

**1.**    **Plaintiffs' OCSPA class claim fails because they did not plead facts showing that Whirlpool's conduct previously had been determined to be deceptive or unconscionable**

Plaintiffs cannot maintain an OCSPA claim on behalf of a putative class unless the

Complaint identifies either (i) a rule adopted by the Ohio Attorney General declaring the alleged

act or practice deceptive or unconscionable or (ii) a decision of an Ohio court holding the act or

practice to be deceptive or unconscionable that the Ohio Attorney General has made available for

public inspection. *See* Ohio Rev. Code Ann. § 1345.09(B); *see, e.g.*, *Hoffer v. Cooper Wiring*

*Devices, Inc.*, No. 1:06CV763, 2007 WL 1725317, at *3 (N.D. Ohio June 13, 2007) (holding that

the plaintiff must identify a specific judicial decision that has declared acts or practices deceptive

or unconscionable that are "substantially similar to the alleged violation at issue"); *Marrone v.*

*Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006) ("A consumer may qualify for class-

action certification under Ohio's CSPA only if the defendant's alleged violation of the Act is

substantially similar to an act or practice previously declared to be deceptive by one of the

methods identified in R.C. 1345.09(B)."). "For class certification to be proper, the prior decision

or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated the CSPA." *Bower v. I.B.M.*, 495 F. Supp. 2d 837, 841 (S.D. Ohio 2007).

Such prior decisions or previously promulgated rules must be identified in the pleading. *See St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 901 (N.D. Ohio 2008) ("Because plaintiff's complaint neither refers to a rule or judgment placing Kroger on notice of its deceptive act, her class action shall be dismissed."); *Paikai v. Gen. Motors Corp.*, No. CIV. S-07-892, 2009 WL 275761, at *8 (E.D. Cal. Feb. 5, 2009) (dismissing OCSPA class action because "[a]lthough Ohio plaintiff cites to specific Ohio court opinions in his opposition, he does not do so in his complaint").

In support of their purported class OCSPA claim, Plaintiffs Glazer and Chris and Trina Allison allege that "it is well established in CSPA jurisprudence that material omissions and misrepresentations concerning a product constitutes a violation of the statute" (Compl. ¶ 111), but they do not cite any specific case. Plaintiffs' failure to identify any prior decision by an Ohio court declaring as deceptive or unconscionable any act or practice substantially similar to Whirlpool's alleged conduct in this case is fatal to Plaintiffs' class claim. *See St. Clair*, 581 F. Supp. 2d at 901.[11]

Plaintiffs further allege that "[i]t is also considered a deceptive act or practice for purposes of the CSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact," citing Ohio Administrative Code section 109:4-3-10(A).

---

[11] Nor do Plaintiffs show that the unspecified "jurisprudence" was made available for public inspection by the Ohio Attorney General, *see* Ohio Rev. Code Ann. § 1345.09(B), which deficiency is also fatal to Plaintiffs' purported class claim. *See Hoffer*, 2007 WL 1725317, at *3 (dismissing OCSPA class claim because "Plaintiff's complaint fail[ed] to refer to any rule promulgated by the Ohio Attorney General or any publicly available court decision").

(Compl. ¶ 111.)  Plaintiffs' citation to Ohio Administrative Code section 109:4-3-10(A) cannot save their putative class claim.[12]  The Ohio Supreme Court has specifically held that a complaint's reference to Ohio Admin. Code section 109:4-3-10 alone is not sufficient to provide the required notice.  *See, e.g., Marrone*, 850 N.E.2d at 36 ("[Ohio Admin. Code 109.4-3-10] is insufficient to provide prior notice under R.C. 1345.09(B) because it does not refer to any particular act or practice.  A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice.").  In any event, Plaintiffs have not adequately pled that Whirlpool made any false or misleading statement about the Duet washers, so the administrative rule Plaintiffs have identified is inapposite.  Because Plaintiffs have pled no applicable administrative rule declaring any alleged act or omission of Whirlpool to be deceptive under the OCSPA, Plaintiffs' purported class claim should be dismissed.  *See Hoffer*, 2007 WL 1725317, at *3.

> ## 2.     Plaintiffs Glazer and Chris and Trina Allison fail to plead any conduct by Whirlpool that would constitute an unfair or deceptive act

In support of their OCSPA claim, Plaintiffs Glazer and Chris and Trina Allison allege in conclusory fashion only that Whirlpool's alleged "material omissions and misrepresentations concerning" the Duet washers violate the OCSPA.  (Compl. ¶ 111.)  These conclusory allegations do not plead "unfair or deceptive acts or practices" under the OCSPA.

Subsections 1345.02(B)(1)-(10) of the OCSPA identify specific acts or practices that are deceptive.  Although Plaintiffs' allegations do not explicitly tie Whirlpool's alleged conduct to any of these statutory provisions, it appears that Plaintiffs Glazer and Chris and Trina Allison are

---

[12]  That rule declares that it is deceptive for a supplier to "[m]ake any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true" when they are not true.  Ohio Admin. Code § 109:4-3-10(A).

contending that by allegedly representing, "in conjunction with each sale" of a Duet washer, that the Duet washers "would not cause Mold Problems" (Compl. ¶ 29), Whirlpool was representing that the washers are "of a particular standard, quality, grade, style, prescription, or model," when they allegedly are not. *See* Ohio Rev. Code Ann. § 1345.02(B)(2). As set forth above in Section III.A, however, Plaintiffs do not identify with specificity the alleged statement made by Whirlpool, where Whirlpool allegedly made this statement, to whom, in what medium, or when, or even whether Plaintiffs Glazer and Chris and Trina Allison personally received such statement. (*See* Compl. ¶¶ 1-311.) Accordingly, Plaintiffs' bald misrepresentation allegations cannot support a claim for violation of the OCSPA. *See Ferron*, 2007 WL 1974946, at *3 ("Plaintiff's Complaint fails to state with specificity the intent of Defendants, the times (dates) of the offenses, or exact content of the offending transmissions.").

As to Plaintiffs' allegation that Whirlpool failed to disclose that the washers suffer from an alleged drainage defect, that allegation also does not specify any conduct that has been deemed actionable under the OCSPA. Under Ohio law, "[m]ere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the [OCSPA]." *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (dismissing OCSPA claim based on failure to disclose that vehicle contained an allegedly defective instrument panel). Accordingly, because Plaintiffs Glazer and the Allisons have failed to allege any facts showing that Whirlpool committed any act or omission that is actionable under the OCSPA, their OCSPA claim must be dismissed.

**D.    Plaintiffs Glennon and Cohen Fail to State a Claim Under the New York General Business Law**

Plaintiffs Glennon and Cohen have failed to plead a violation of the New York General

Business Law, N.Y. Gen. Bus. Law § 349 ("New York Fraud Act").[13] "[T]o state a claim under

[§ 349] plaintiff must allege with <u>some specificity</u> the allegedly deceptive acts or practices that

form the basis for the claim." *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434,

438 (S.D.N.Y. 2004) (emphasis added); *see also id.* ("conclusory allegations . . . are not

sufficient to state a claim under Section 349 <u>in the absence of factual allegations in support</u>

<u>thereof</u>" (emphasis added)); *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 330-31

(S.D.N.Y. 2002) (dismissing a section 349 claim where the pleading was stated in wholly

conclusory terms); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing

New York Fraud Act claim because it was "pleaded upon information and belief, lacked

specificity, and alleged mere conclusions"); *accord Bell Atl. Corp.*, 127 S. Ct. at 1965-66

(dismissing an inadequately pled claim under Federal Rules of Civil Procedure 8(a) and 12(b)(6);

"a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do").

Plaintiffs Glennon and Cohen allege that Whirlpool violated the New York Fraud Act by

"failing to disclose and/or concealing" that the Duets contain "Design Defects that caused Mold

---

[13] "To state a cause of action under § 349, a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *ExxonMobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004). A defendant's actions qualify as "deceptive acts and practices" only if they are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).

Problems to occur with normal use and/or created a substantial risk of Mold Problems." (Compl. ¶ 238.) As shown above, however, Plaintiffs' conclusory "design flaw" allegations are asserted only on "information and belief" (*id.* ¶ 37), and the Complaint lacks any specific facts in support of the claim that Duets share a design defect that should have been disclosed to consumers (*id.* ¶¶ 1-311). Likewise, the Complaint pleads no specific facts that, if true, would prove that the Duet washers were "substantially likely" to accumulate mold or mildew and that such risk was known or should have been known by Whirlpool before Plaintiffs Glennon and Cohen bought their washers. (*Id.*) The absence of any such factual allegations is fatal to Plaintiffs' New York Fraud Act claim. *See Lava Trading*, 326 F. Supp. 2d at 438; *Weaver*, 172 F.R.D. at 100.

### E.   Plaintiff Schaeffer Fails to State a Claim under California's Unfair Competition Law

In addition to the reasons stated above in Section III.A-B, Plaintiff Schaeffer's purported claim for violation of the California Unfair Competition Law ("UCL") fails because Plaintiff Schaeffer has not sufficiently pled any unlawful, unfair, or fraudulent business practice to state a claim under the UCL. California's UCL defines "unfair competition" as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (internal quotation marks omitted). There are three varieties of unfair competition: practices that are unlawful, unfair, or fraudulent. *Id.* at 540.

#### 1.   Plaintiff Schaeffer Fails to Allege Any Predicate Statutory Violation Sufficient to State a UCL Claim for "Unlawful" Business Practices

Plaintiff Schaeffer alleges that "Whirlpool's acts and practices are unlawful because they violate Cal. Code §§ 1668, 1709, 1710 . . . [and] violate the Song-Beverly Warranty Act and Cal.

Commercial Code § 2313." (Compl. ¶ 259.) Plaintiff fails to state a claim under the "unlawful" prong of the UCL, however, because she has failed to plead facts that, if true, would show that Whirlpool violated the underlying statutes. *See Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 186 (Cal. Ct. App. 2007) (dismissing UCL claim because the complaint "fails to plead facts to support its allegations that Merit has violated each of these statutes"); *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 128 (Cal. Ct. App. 2006) ("Daugherty cannot state a violation of the UCL under the 'unlawful' prong predicated on a violation of either statute, as there were no violations.").

First, Plaintiff Schaeffer's UCL claim based on section 1709 fails because that section sounds in fraud,[14] and Plaintiff has not pled any fraud allegations with the particularity required by Rule 9(b).[15] As shown in Sections III.A-B above, the Complaint does not identify any specific statement or representation that Plaintiff Schaeffer was personally exposed to, or that such statement was false or misleading, or that she was actually deceived and injured thereby. (*See* Compl. ¶¶ 1-311.) Instead, Plaintiff Schaeffer alleges conclusionally that Whirlpool violated the UCL by "intentionally failing to disclose and/or concealing these known defects and risks." (*Id.* ¶ 254.) Such vague allegations fall far short of the particularity required by Rule 9(b). *See, e.g.*, *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1022-23 (N.D. Cal. 2006) ("Plaintiffs' allegations in support of their fraud claim are further deficient in failing to allege specific facts regarding how each defendant has committed fraud upon plaintiffs.").

---

[14] *See* Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.").

[15] Plaintiff cannot rely on section 1710 as a predicate statute because that section does not create a cause of action. Section 1710 merely sets forth the definition of "deceit" for purposes of section 1709. *See* Cal. Civ. Code § 1710.

Second, section 1668 prohibits a party from contracting away liability for fraudulent or intentional acts. Cal. Civ. Code § 1668. Plaintiffs do not allege anywhere in the Complaint that Whirlpool attempted to contract away liability (Compl. ¶¶ 1-311), and therefore, this statute cannot be deemed a predicate law for purposes of maintaining a UCL claim.

Third, for the reasons stated below, Plaintiff is unable to state a claim for violation of the Song-Beverly Warranty Act or California Commercial Code section 2313.

### 2.   Plaintiff Schaeffer Fails to Allege an "Unfair" Business Practice

A business practice is unfair "if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty*, 51 Cal. Rptr. 3d at 129. Plaintiff must allege facts to support all three elements of a claim under the "unfair" prong. *Id.*

Plaintiff's sole allegation in support of the "unfair" prong is a conclusional restatement of the standard:

> The injury to consumers by this conduct is greatly outweighed by any alleged countervailing benefit to consumers or competition under all of the circumstances. Moreover, in light of Whirlpool's exclusive knowledge of the defects, the injury is not one that Plaintiff Schaeffer or the other members of the California Class could have reasonably avoided."

(Compl. ¶ 258.) This allegation is insufficient to sustain her claim for unfair business practices. *See Bell Atl. Corp.*, 127 S. Ct. at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). The only factual allegation that Plaintiff Schaeffer provides to support this formulaic recitation is that Whirlpool had "exclusive knowledge of the defects." (*Id.* ¶ 258.) However, as explained above, Plaintiffs failed to adequately plead Whirlpool's "knowledge" of the defects: they do not allege when Whirlpool supposedly learned of the unspecified design defect or how many such failures Whirlpool was

aware of at any given point of time (particularly in relation to the number of units sold during the same period).

### 3. Plaintiff Schaeffer Fails to State a Claim for "Fraudulent" Business Practices

To state a claim under the "fraudulent" prong of the UCL, Plaintiff must allege facts that, if true, show that members of the public are "likely to be deceived." *Daugherty*, 51 Cal. Rptr. 3d at 128. Rule 9(b)'s heightened pleading standard applies to these allegations. *Parrish*, 534 F. Supp. 2d at 1093.

Plaintiff alleges only that "Whirlpool's acts and practices have deceived and/or are likely to deceive members of the consuming public and the members of the California Class." (Compl. ¶ 256.) That conclusion is insufficient to state a claim. *See Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 647-48 (Cal. Ct. App. 2006). In *Bardin* the court affirmed dismissal of the plaintiff's claim under the "fraudulent" prong for failure to plead facts with sufficient particularity:

> The second amended complaint stated, "[b]ecause [DaimlerChrysler] ha[d] omitted and concealed material facts about the exhaust manifolds from the public, members of the public were likely to have been deceived about the quality, performance, and durability of these manifolds." But this statement merely concludes the public would likely be deceived, without pleading any facts showing the basis for that conclusion.

*Id.* at 647-48. Plaintiff's Complaint should meet the same result here.

Moreover, merely alleging a failure to disclose a product's latent defect does not constitute a fraudulent business practice. In *Daugherty*, for example, the plaintiffs argued that Honda's failure to disclose a defect in the engine at the time of sale and failure to give proper notice of the potential for oil leaks were "likely to deceive those customers into believing that no such defect exists." 51 Cal. Rptr. 3d at 128 (quotation marks omitted). The court disagreed, stating:

> We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is "likely to deceive" anyone within the meaning of the UCL. . . . Honda did nothing that was likely to deceive the general public by failing to disclose that its F22 engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak.

*Id.* at 128-29; *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing UCL claim based on allegations that the defendant concealed material information regarding a design defect).

Like the *Bardin* and *Daugherty* plaintiffs, Plaintiff Schaeffer has failed to allege that Whirlpool made any representation regarding the predicted longevity or reliability of her washer. (Compl. ¶¶ 1-311.) She also does not plead that Whirlpool engaged in any conduct that led her to believe that her Duet washer was guaranteed to function, without repair, for any specific period. Therefore, the Complaint does not state facts that, if true, would show that Whirlpool engaged in conduct "likely to deceive" members of the public within the meaning of the UCL.

## IV.  PLAINTIFFS FAIL TO STATE ACTIONABLE CLAIMS FOR BREACH OF WRITTEN OR IMPLIED WARRANTY

### A.  Under Ohio's Choice-of-Law Rules, the Laws of Plaintiffs' Respective Home States Apply to Their Warranty Claims

Plaintiffs assert claims for breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act ("MMWA"), and violation of the Song-Beverly Act. (Compl. ¶¶ 137-79, 186-218). The Court, sitting in diversity, must apply the forum state's choice-of-law rules to determine which state's or states' laws apply to Plaintiffs' warranty claims. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). In MDL cases, the forum state is the state in which the action was initially filed before being transferred to the MDL court. *See In re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D. Ga. 2008); *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 295 n.90 (N.D. Ohio 2007). Here, the applicable choice-of-law rules of Ohio, Illinois, New Jersey, and New York—the four

transferor courts—require the application of eleven jurisdictions' warranty laws to Plaintiffs'
claims for breach of warranty claims, including those brought pursuant to the MMWA.

Choice-of-law principles are only applied where a genuine conflict exists. Here, although
Ohio and the ten other states at issue in this lawsuit have adopted the Uniform Commercial
Code, the states vary considerably regarding the application of warranty laws, particularly with
respect to the privity requirement. For example, Ohio, Illinois, New York, and North Carolina
require privity of contract to bring a claim for breach of implied warranty, but have abandoned
the privity requirement for express-warranty claims.[16] By contrast, Arizona, Florida, and
California require privity to assert a claim for implied _or_ express warranty.[17] Still further,
Indiana, New Jersey, and Texas do not appear to require privity for certain warranty claims.[18]

---

[16] See *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988) (a plaintiff must be
in vertical privity with the seller in order to file a claim for economic damages for breach of
implied warranty under Illinois' UCC); *Gordon v. Ford Motor Co.*, 657 N.Y.S.2d 43, 43 (N.Y.
App. Div. 1997) ("Defendant correctly argues that there can be no implied warranty absent
privity between itself and plaintiffs[.]"); *Gregory v. Atrium Door & Window Co.*, 415 S.E.2d
574, 575 (N.C. Ct. App. 1992) ("[T]he general rule is that privity is required to assert a claim for
breach of an implied warranty involving only economic loss."); *Curl v. Volkswagen of Am., Inc.*,
871 N.E.2d 1141, 1147 (Ohio 2007) ("[L]ongstanding Ohio jurisprudence provides that
purchasers . . . may assert a contract claim for breach of implied warranty only against parties
with whom they are in privity.").

[17] See *Flory v. Silvercrest Indus., Inc.*, 633 P.2d 383, 387 (Ariz. 1981) (lack of vertical privity
precludes recovery for breach of express and implied warranty brought under Arizona's UCC);
*All W. Elecs., Inc. v. M-B-W, Inc.*, 75 Cal. Rptr. 2d 509, 514 (Cal. Ct. App. 1998) (noting the
"general rule is that privity of contract is required in an action for breach of either express or
implied warranty"); *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) ("The
law of Florida is that to recover for the breach of a warranty, either express or implied, the
plaintiff must be in privity of contract with the defendant." (citations omitted)).

[18] See *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005); *Spring Motors
Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985); *Nobility Homes of Tex., Inc. v.
Shivers*, 557 S.W.2d 77, 80-81 (Tex. 1977).

Maryland, on the other hand, bars claims for breach of express warranty in the absence of privity, but statutorily eliminated the privity requirement for breach of implied warranty.[19]

Where, as here, there are conflicts of law among the various jurisdictions, Ohio, Illinois, New Jersey, and New York all subscribe to the Restatement (Second) of Conflict of Laws' "most significant relationship" approach to ascertain which law to apply.[20]  Under this approach, the law of the state with the most significant relationship to the transaction and the parties will be applied.  The factors to be considered in determining which state has the most significant relationship to the transaction are: "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 573 (N.D. Ohio 2003) (quoting *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206 (Ohio 2001)); *see also Dewey*, 558 F. Supp. 2d at 516.

Pursuant to these rules, the laws of the states of purchase apply to Plaintiffs' breach of warranty claims.  Plaintiffs acquired their respective Duet washers in their respective home states.  They presumably experienced a problem, if at all, and were exposed to Whirlpool's marketing and sales activity, if any, within their home states' borders.  Lastly, Whirlpool and Plaintiffs encountered each other in each Plaintiff's respective home state; Plaintiffs did not need

---

[19] *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 323 (D. Md. 1983) ("Maryland does not recognize this exception to the privity requirement when the claim of breach of express warranty does not involve a claim of personal injury . . . ."); Md. Code, Com. Law § 2-314 ("Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer [for breach of implied warranty of merchantability].").

[20] *See Cole*, 133 F.3d at 437; *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 151 (2d Cir. 2008); *Farris v. State Farm Ins. Co.*, No. 1:07 CN 2477, 2008 WL 1752142, at *4 (N.D. Ohio, Apr. 14, 2008); *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 702-03 (N.D. Ill. 1990); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 516 (D.N.J. 2008).

to travel to or contact Whirlpool in Michigan to buy their washers. Thus, the most important factors in this case—the place of sale, delivery, use, and alleged injury, and the center of the parties' relationship—show that each of the eleven jurisdictions has the strongest interest in applying its own warranty laws to disputes between its residents and Whirlpool.

The district court's decision in *In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litigation*, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006), is instructive here. There, citizens of several states, on behalf of themselves and others throughout the United States, sued Sears for alleged deceptive marketing of its Craftsman tools. *Id.* at *1. Ruling on Sears' motion to dismiss the unjust enrichment claim, the Court concluded that it was required to apply the laws of the various states where the plaintiffs bought their tools:

> The place of the injury here . . . is the plaintiffs' home states where they purchased Sears's tools. The place where the parties' relationship is centered is the plaintiffs' home states as well. Plaintiffs saw the allegedly misleading advertising in those states, and they purchased the tools (which were located there) in those states as well. . . . The relationship arose from plaintiffs' purchases of Craftsman tools, which occurred in plaintiffs' home states.

*Id.* at *2 (citation omitted). The court thus found that the plaintiffs' respective home states have the greatest interest in regulating the business that takes place within their borders. *Id.* at *3.

Moreover, each state's warranty laws apply to Plaintiffs' claims for violation of the MMWA. That is because the MMWA "calls for the application of state written and implied warranty law, not the creation of additional federal law." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986).[21]

---

[21]  *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]he claims under the Magnuson-Moss Act stand or fall with his express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (holding that state law applies in breach of warranty actions as to both implied and written warranty claims under Magnuson-Moss, except as expressly stated by that

**B.     Plaintiffs Do Not Allege Privity with Whirlpool, as Required to State an Implied-Warranty Claim in Arizona, California, Florida, Illinois, New York, North Carolina, and Ohio**

As noted above, Arizona, California, Florida, Illinois, New York, North Carolina, and Ohio require plaintiffs suing for breach of implied warranty to establish vertical privity between themselves and the defendant.[22] (*See* Argument, Section IV.A & accompanying notes, *supra*.) Dismissal of warranty claims is appropriate where privity does not exist between a consumer and manufacturer. *See, e.g.*, *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005); *Sanders v. City of Fresno*, No. CIV F 05-0469 AWI SMS, 2006 WL 1883394, at *19 (E.D. Cal. July 7, 2006) ("[A] demurrer is properly sustainable in an action predicated upon a breach of an implied warranty when lack of privity between plaintiff and defendant is disclosed on the fact of the complaint.").

Privity is also required to assert warranty claims under the MMWA based on these states' substantive laws:

> Because the [MMWA] does not alter state law regarding implied warranty claims, nothing in the Act obviates state law privity requirements for these actions, and, where necessary, a party is required to establish privity to maintain a claim. Therefore, "whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson-Moss Act . . . hinges entirely on the applicable state law."

---

act); *Curl*, 871 N.E.2d at 1144 ( "The Act does not . . . establish new implied warranties or otherwise modify the implied warranties existing according to state law. Instead, the Act looks to the governing state law and adopts the implied warranty protections already established.").

[22] Because the Song-Beverly Act merely supplements, rather than supersedes, the provisions of the California Uniform Commercial Code by broadening a consumer's remedies for breach of warranty and does not modify or eliminate the privity requirement, privity is an essential element of a claim brought under both California commercial law and the Song-Beverly Act. *See* Cal. Civ. Code § 1790.3; *Am. Suzuki Motor Corp. v. Super. Ct.*, 44 Cal. Rptr. 2d 526, 528 n.2 (Cal. Ct. App. 1995) (noting that the Song-Beverly Act incorporates sections 2314 and 2315 of the California UCC and expands the available warranty remedies to include costs, attorneys' fees, and civil penalties).

*Curl*, 871 N.E.2d at 1145 (holding that the plaintiff could not successfully pursue a claim for breach of implied warranty under the MMWA because the buyer lacked privity with the manufacturer as required under Ohio law); *see also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (affirming dismissal of MMWA claim because "it is undisputed that Voelker lacks privity of contract with Porsche" as required under Illinois law); *Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942, 946 (N.D. Ill. 2004) ("As the Finches purchased the vehicle from Rosen, not directly from Ford, they lack the necessary privity of contract for a claim of breach of implied warranty under Magnuson-Moss."); *Plagens v. Nat'l RV Holdings*, 328 F. Supp. 2d 1068, 1074 (D. Ariz. 2004) ("Thus, it is uncontested that no contractual privity exists between Plaintiffs and Defendant.  Consequently, Plaintiffs cannot recover for breach of implied warranty of merchantability under the MMWA.").

Plaintiffs generically allege that they "are in privity with Whirlpool in that they purchased their Washing Machines directly from Whirlpool, or from an actual or apparent agent of Whirlpool such as Whirlpool's authorized dealers . . . [or] by virtue of the contractual relationship stemming from Whirlpool's manufacturer's warranty."  (Compl. ¶¶ 153-54, 173-74.) These allegations, however, are insufficient to establish privity with Whirlpool, and are contradicted elsewhere in the Complaint.

The Complaint definitively shows that Plaintiffs are <u>not</u> in privity with Whirlpool because they allege they purchased their machines from third-party retailers, not directly from Whirlpool.  (*E.g.*, Compl. ¶ 55 ("Plaintiff Glazer bought a new Duet Sport washing machine . . . from a Best Buy store in Ohio in 2006."); *see also id.* ¶¶ 56, 57, 61, 68, 73, 89, 93.)  Moreover, Plaintiffs Torf and Bicknell fail to plead any facts that, if true, show that they were in privity of contract, or had any business dealings, with Whirlpool.  (Compl. ¶¶ 79-80.)  They do not claim

that they bought their Duet washers directly from Whirlpool or had any direct contact with Whirlpool related to the sale of their washers.

It is well-established law that "vertical privity exists only between immediate links in the distribution chain." *Curl*, 871 N.E.2d at 1148 (dismissing implied-warranty claim under Ohio law and rejecting argument the plaintiff was in privity with the manufacturer Volkswagen when the plaintiff purchased the vehicle from a dealership). Thus, "an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Clemens*, 534 F.3d at 1023 (dismissing implied-warranty claim where the plaintiff purchased the vehicle from a DaimlerChrysler dealership, not DaimlerChrysler).[23]

Whirlpool's issuance of a written warranty does not change this fact. *See, e.g., Hartless v. Clorox Co.*, No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *2 (S.D. Cal. Nov. 2, 2007) ("[T]his Court finds plaintiff's reliance upon the manufacturer's warranty . . . to avoid dismissal based on lack of privity is unavailing."); *Varney v. Ford Motor Co.*, No. 8:06-cv-295-T-24TGW, 2007 WL 2780566, at *3 (M.D. Fla. Sept. 15, 2007) ("Plaintiffs argue that the express written warranty Ford provided is sufficient to establish privity for the implied warranty claim. The Court rejects this argument."); *Lantz v. Am. Honda Motor Co.*, No. 06 C 5932, 2007 WL

---

[23] *See also Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 820 n.6 (Cal. Ct. App. 1988) ("[T]he distributor is normally in vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer. But if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense."); *see, e.g., Ultimax, Inc. v. Mercedes-Benz USA, LLC*, No. 2:06-cv-951, 2008 WL 974036, at *8 (S.D. Ohio Apr. 8, 2008) ("Defendant did not directly sell the Vehicle to Plaintiff. Rather, Plaintiff bought the Vehicle from an intermediary, Germain. Plaintiff is in privity with Germain, but not with Defendant. This lack of privity between Plaintiff and Defendant dooms Plaintiff's implied warranty claim."); *Kowalke v. Bernard Chevrolet, Inc.*, No. 99 C 7980, 2000 WL 656660, at *5 (N.D. Ill. Mar. 23, 2000) ("GM is a manufacturer and Kowalke bought from an independent dealer, Bernard. Because GM was not the immediate seller in this case, there is no contractual privity between GM and Kowalke based on the sale of the automobile.").

1424614, at *11 (N.D. Ill. May 14, 2007) (rejecting the plaintiff's argument that privity rule did

not apply where the manufacturer extended a written warranty and granting motion to dismiss

implied-warranty claim under Illinois law for lack of privity); *Rentas v. DaimlerChrysler Corp.*,

936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006) (granting motion to dismiss warranty claim where

there was no privity notwithstanding issuance of written warranty to ultimate user).

     In addition, Plaintiffs' attempt to plead the existence of vertical privity through an agency

theory fails because they have pled no facts to establish the existence of an agency relationship

(either actual or apparent) between Whirlpool and the retailers who sold Plaintiffs their washers.

Merely asserting agency, without more, is insufficient to "execute an end-run around [the]

historic privity requirement." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326-27 (Fla. Dist.

App. 2008) (holding that complaint was "devoid of any allegation of some of the tell-tale signs

of a principal-agent relationship" and rejecting allegations that Ford permitted the dealer to hold

itself out as an "authorized dealer" as being sufficient to establish apparent agency); *see also*

*IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000-01 (N.D. Ill. 2008) ("[B]are

allegations of an agency relationship between the manufacturer and dealer are insufficient. . . .

Plaintiff's effort to create such a rule of privity is merely an effort to 'constitute an end around

the privity requirement'" (citation omitted)); *Lantz*, 2007 WL 1424614, at *11 (rejecting agency

argument because "[t]he Complaint . . . sets forth no allegations suggesting that any such agency

relationship exists"); *Kowalke*, 2000 WL 656660, at *3 ("A plaintiff who relies on agency theory

to support a claim must plead facts in her complaint which, if proved, can establish the existence

of an agency relationship. The mere legal conclusion of agency is insufficient.").

     Accordingly, the Court should dismiss Plaintiffs Glazer, Chris and Trina Allison,

Glennon, Cohen, Hollander, Bicknell, Werman, Torf, Schaeffer, and Strong's implied-warranty

claims as a matter of law, as well as Plaintiff Schaeffer's claim for violation of the Song-Beverly

Act, and the MMWA claim for breach of implied warranty for Duets sold in Arizona, California,

Florida, Illinois, New York, North Carolina, and Ohio.

> **C.      Plaintiffs Hollander, Bicknell, Schaeffer, Nordan, and Strong Fail to State an Express-Warranty Claim Because They Have Not Alleged Privity**

Under the laws of Arizona, Florida, California, and Maryland, Plaintiffs are required to

allege privity of contract to assert a claim for express warranty.[24]  As shown above, there is no

contractual privity between Whirlpool and Plaintiffs Hollander, Bicknell, Schaeffer, and Strong.

(*See* Argument, Section IV.B, *supra*.)  In addition, Plaintiff Bicknell cannot allege privity with

Whirlpool because she admits that she purchased her Duet washer "from ABC Appliance Sales

& Services, Inc. in Edgewater, Maryland." (Compl. ¶ 81.)  Accordingly, Plaintiffs' express-

warranty claims against Whirlpool under the laws of Arizona, California, Florida, and Maryland

and pursuant to the Song-Beverly Act should be dismissed.

> **D.      Plaintiffs Werman, Glazer, Hollander, Beierschmitt, and Gardner's Express-Warranty Claims Fail Because They Have Not Alleged a Violation of Any Specific Warranty Provision**

Plaintiffs' claim for existence of an express warranty rests on the vague and conclusory

allegation that "Whirlpool made affirmations of fact and promises to Plaintiffs and members of

the Classes which . . . became part of the basis of the bargain between the parties" (Compl.

¶¶ 160-61) and that these "affirmations of fact and promises created an express warranty that the

Washing Machines would conform to Whirlpool's affirmations and promises" (*id.* ¶ 161).  Aside

---

[24]  *See, e.g., Flory,* 633 P.2d at 387 (lack of vertical privity precludes recovery for breach of express warranty brought under Arizona's U.C.C.); *All W. Elecs.,* 75 Cal. Rptr. 2d at 514 (noting that privity is required in an action for breach of express warranty); *Intergraph Corp. v. Stearman,* 555 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); *Copiers Typewriters Calculators, Inc.,* 576 F. Supp. at 323 (requiring privity of contract to assert claim for breach of express warranty under Maryland law).

from this conclusory assertion, Plaintiffs do not plead <u>any</u> statement or affirmation of fact by Whirlpool that reasonably could be construed as creating an express warranty here. (*See id.* ¶¶ 1-311.) Plaintiffs baldly allege that Whirlpool "warranted that the defective Washing Machines . . . were free from defects, or at a minimum would not cause Mold Problems." (*Id.* ¶ 29.) But Plaintiffs do not allege when, where, in what context, or to whom Whirlpool made that statement. These generic allegations, are not sufficient to plead the existence or breach of an express warranty. *See, e.g.*, *Simmons v. Stryker Corp.*, No. 08-3451 (JAP), 2008 WL 4936982, at \*2 (D.N.J. Nov. 17, 2008) (holding that the plaintiff failed to allege "factual matter" to support the alleged existence and breach of an express warranty); *Heisner ex rel. Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811, at \*9 (N.D. Ill. July 25, 2008) (dismissing express-warranty claim where the plaintiff "offered nothing more than a formulaic recitation of the elements required to prevail on a claim and has alleged no facts at all that suggest an express warranty existed").

To the extent Plaintiffs rely on the "one-year written warranty" and "limited lifetime warranty on the stainless steel drum" as the basis of their express-warranty claims, the terms of those warranty provisions do not support Plaintiffs Glazer, Hollander, Werman, Beierschmitt, and Gardner's claims. Because express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the parties. *See Continental Cas. Co. v. Honeywell Int'l, Inc.*, No. 1:08-CV-1410, 2009 WL 313127, at \*9 (N.D. Ohio Feb. 6, 2009) ("The Supreme Court has held that a manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.") (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992)).

Here, each Duet washer comes with a written warranty that provides, in pertinent part, that "[f]or one year from the date of purchase, . . . Whirlpool Corporation . . . will pay for FSP replacement parts and repair labor costs to correct defects in materials or workmanship." (Compl. ¶ 27.)  The warranty does not state that the Duet washer would be free from defects or would not cause mold-mildew problems.  The warranty further provides that customers who "need service" are to call Whirlpool at the number provided.  (Ex. 1 at 23; Ex. 2 at 25.)  In addition, select Duet® and Duet HT® models covered by a limited lifetime warranty on the stainless steel wash drum to pay for replacement parts.  (Compl. ¶ 28.)  Plaintiffs admit that none of the Duet Sport® models covered by this lifetime warranty and that only certain of the Duet® and Duet HT® models are covered by a lifetime limited warranty.  (*Id.*).  As noted above, none of the Duet® and Duet HT® models are covered by the limited lifetime warranty after September 2005 and August 2005, respectively.  (*E.g.*, Ex. 1 at 23; Ex. 2 at 25.)

However, Plaintiff Glazer, who admits that she purchased a Duet Sport® model, does not allege that she ever contacted Whirlpool regarding alleged mold-mildew problems within one year of purchase.  Indeed, she admits that she did not "complain[]" to Whirlpool until January 9, 2008—more than one year after her 2006 purchase.  (Compl. ¶ 55.)  Plaintiff Hollander admits that she purchased her Duet washer in January 2006—after the date that any Duet model provided a limited lifetime warranty on the stainless steel drum—but that she did not contact Whirlpool until December 2007.  (*Id.* ¶ 65.)  Because the Complaint fails to include any facts that, if true, would show that Plaintiffs Glazer and Hollander contacted Whirlpool within the one-year warranty period, Plaintiffs Glazer and Hollander fail to state an actionable express-warranty claim.  *See Clemens*, 534 F.3d at 1023 ("The repairs in this case were made after the warranty period expired.  Therefore, we affirm the dismissal of the express warranty claims.");

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) ("The general rule is that an express warranty does not cover repairs made after the applicable time . . . periods have elapsed.").

Moreover, Plaintiffs Werman, Beierschmitt, and Gardner do not allege that they ever called and spoke with anyone at Whirlpool to request repair to their Duet washers. (Compl. ¶¶ 70, 78, 92.) Whirlpool cannot be deemed to have breached its written warranty if it was never notified of the alleged problem during the warranty period nor requested to service the machine in compliance with its alleged warranty obligations. *See Malkamaki v. Sea Ray Boats, Inc.*, 411 F. Supp. 2d 737, 745 (N.D. Ohio 2005) ("Under both the UCC and Magnuson-Moss, [Defendant] must be given a reasonable opportunity to repair the alleged defect."). Thus, Plaintiffs fail to state an actionable express-warranty claim because the Complaint does not include any facts that, if true, would show that Whirlpool breached any identifiable warranty provision. *See, e.g., Owens Transp. Serv., Inc. v. Int'l Truck & Engine Corp.*, No. 1:05 CV 2897, 2006 WL 3545109, at *4 (N.D. Ohio Dec. 8, 2006) ("Plaintiff's breach of express warranty claim fails as to defendant International for the simple reason that plaintiff cannot establish any breach of the provision [of the written warranty]."); *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853 (JLL), 2008 WL 4513924, at *4 (D.N.J. Sept. 30, 2008) (dismissing express warranty claim where the plaintiff never brought the problem to Samsung's attention as required by the terms of the warranty).

### E. Plaintiff Schaeffer's Song-Beverly Act/Breach of Implied-Warranty Claim Fails Because It Arose After the Implied Warranty Expired

Section 1791.1 of the Song-Beverly Act provides, in pertinent part, that "in no event shall such implied warranty [of merchantability] have a duration of . . . more than one year following the sale of new consumer goods to a retail buyer." Cal. Civ. Code § 1791.1; *see Atkinson v. Elk*

*Corp. of Tex.*, 48 Cal. Rptr. 3d 247, 259-60 (Cal. Ct. App. 2006) (noting that implied warranties under the Song-Beverly Act expire after a maximum of one year).

Plaintiff Schaeffer alleges that she bought her Duet washer in February 2005, but does not allege that she experienced a problem with her washer within the first year.  (Compl. ¶¶ 73-77.)  Rather, she admits that she did not contact Whirlpool regarding the alleged mold-mildew problem until January 6, 2009—nearly <u>four years</u> after she purchased her washer.  (*Id.* ¶ 77.)  Because Plaintiff Schaeffer does not allege that the mold-mildew problems that form the basis of her implied-warranty claim arose during the implied-warranty period, her implied-warranty claim under the Song-Beverly Act and MMWA fails.  *See* Cal. Civ. Code § 1791.1; *Atkinson*, 48 Cal. Rptr. 3d at 259-60 (holding that claim for breach of implied warranty of merchantability against manufacturer under MMWA was governed by the Song-Beverly Act's one-year implied-warranty period).

## V.   PLAINTIFFS FAIL TO STATE CLAIMS FOR UNJUST ENRICHMENT

Although the relevant states have formulated the elements and required proof to support a claim for unjust enrichment differently, generally speaking, Plaintiffs must prove that Whirlpool collected money or a benefit from each of them and that it would be "wrong," "inequitable," or "unjust" for Whirlpool to retain that benefit.  *See Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984) (to establish a claim for unjust enrichment, the plaintiff must plead "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment").[25]  Here, Plaintiffs' unjust enrichment claims fail because

---

[25] *See Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002) ("To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an

Plaintiffs have not pled any facts to show that Whirlpool's conduct was "wrongful" in any

meaningful way.  In addition, the Allison, Glazer, and Sandholm-Pound Plaintiffs do not allege

that they conferred a benefit on Whirlpool, as required under Ohio and New Jersey law.

Plaintiffs' unjust enrichment claims are based on the theory that Whirlpool "unjustly"

collected money from them.  (Compl. ¶¶ 130-36, 180-85.)  Specifically, Plaintiffs claim that

Whirlpool should disgorge profits because it "failed to disclose this knowledge [of the Duet's

---

impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy."); *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008) (the elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005) ("The elements of a cause of action for unjust enrichment are:  (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." (quotation marks omitted)); *Firemen's Annuity & Benefit Fund v. Mun. Employees', Officers', & Officials' Annuity & Benefit Fund*, 579 N.E.2d 1003, 1007 (Ill. App. Ct. 1991) ("[A] plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience."); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) ("To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."); *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 569 (Md. Ct. Spec. App. 2007) ("Under Maryland law, '[a] claim of unjust enrichment is established when:  (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.'" (citation omitted) (alteration in original)); *Assoc. Commercial Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986) ("To recover under this doctrine, the plaintiff must prove that the defendant 'received a benefit, and that retention of the benefit without payment therefor would be unjust.'"); *Whitman Realty Group, Inc. v. Galano*, 838 N.Y.S.2d 585, 587 (N.Y. App. Div. 2007) ("To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefited at the plaintiff's expense and that equity and good conscience require restitution."); *Austin Hatcher Realty, Inc. v. Arnold*, No. COA07-1377, 2008 WL 2246675, at *5 (N.C. Ct. App. June 3, 2008) ("To state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous."); *Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) ("The plaintiff must establish that the defendant received money 'which in equity and good conscience belongs to the plaintiff.'" (citation omitted)).

defective nature] and misled . . . Plaintiffs . . . regarding the nature and quality of the Washing Machines while profiting from this deception." (*Id.* ¶ 134.) For the reasons stated above, however, the Complaint contains no well-pled <u>facts</u> that, if true, would show that Whirlpool's conduct was "wrongful" in any meaningful way. (*See* Argument, Section III, *supra*.) Absent particularized allegations that Whirlpool engaged in some wrongful conduct, Plaintiffs' unjust enrichment claims fail as a matter of law. *See, e.g., Bettua*, 2009 WL 230573, at *5.

Furthermore, with respect to Plaintiffs Chris and Tina Allison, Glazer, and Sandholm-Pound, the Complaint does not allege facts showing they purchased their Duet washers directly from Whirlpool, as required under Ohio and New Jersey law. The Allison and Glazer Plaintiffs admit that they purchased their Duet washers from retailers Best Buy and hhgregg, respectively (Compl. ¶¶ 55, 56), and Sandholm-Pound does not identify where she purchased her washer (*id.* ¶ 71). Under Ohio and New Jersey law, Plaintiffs must have engaged in a transaction directly with Whirlpool in order to state an unjust enrichment claim. *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (dismissing unjust enrichment claim where the plaintiff did not directly purchase the goods from the defendant manufacturer); *Hoffer*, 2007 WL 1725317, at *4 (same); *Cooper*, 2008 WL 4513924, at *10 ("[A]lthough Cooper alleges that Samsung was unjustly enriched through the purchase of the television, there was no relationship conferring any direct benefit on Samsung through Cooper's purchase, as the purchase was through a retailer, Ultimate Electronics. Cooper, therefore, did not confer a benefit on Samsung within the meaning of New Jersey's doctrine of unjust enrichment."). Because the Complaint is devoid of factual allegations that the Allison, Glazer, and Sandholm-Pound Plaintiffs personally conferred a benefit on Whirlpool, the Court should dismiss their unjust enrichment claims.

VI.   **PLAINTIFFS GLAZER AND CHRIS AND TRINA ALLISON'S CLAIMS FOR NEGLIGENT DESIGN AND FAILURE TO WARN ARE BARRED BECAUSE THEY SEEK TO RECOVER ONLY ECONOMIC LOSSES**

Plaintiffs allege that Whirlpool may be held liable in negligence because it owed them a duty to warn about the mold-mildew problem, repair the Duet washers, or recall the machines. (Compl. ¶ 124.)  This duty allegedly arises because the Duet washers present "health hazards" (*id.* ¶ 125) and are a "danger to children" (*id.* ¶ 123).  However, Plaintiffs do not allege that they personally have experienced any health problems as a result of the alleged mold-mildew problems or suffered any physical injuries due to leaving the washer doors open.  Rather, the only injuries alleged are purely economic losses:  Plaintiffs allege that the Duet washers are diminished in value (*id.* ¶ 52) and that they "will have to spend money to repair and/or replace the defective Washing Machines" (*id.* ¶ 128).[26]

"In Ohio it is well established that a party cannot bring a cause of action in tort . . . for economic losses.  In the absence of injury to persons or damage to property, economic losses cannot be recovered in tort."  *Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 688-89 (N.D. Ohio 1998) (Gwin, J.) (holding that Ohio's economic loss rule bars claim for negligent misrepresentation when all alleged damages were economic losses); *see also Avery Dennison Corp. v. Soliant LLC*, No. 1:04CV1865, 2005 WL 2035511, at *2 (N.D. Ohio Aug. 23, 2005) ("The economic loss rule limits one's ability to recover tort damages for purely economic losses."); *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624 (Ohio 1989).  The Ohio Supreme Court in *Chemtrol Adhesives, Inc.* explained the reason behind this rule:

---

[26]  To the extent Plaintiffs attempt to allege that they have suffered non-economic losses, their "negligent design" and failure to warn claims have been abrogated by the Ohio Products Liability Act, Ohio Rev. Code Ann. § 2307.71(B).

> In negligence, the law imposes upon the manufacturer of a product the duty of reasonable care. That duty protects the consumer from physical injury, whether to person or property. However, the law of negligence does not extend the manufacturer's duty so far as to protect the consumer's economic expectations, for such protection would arise not under the law but rather solely by agreement between the parties.

*Chemtrol Adhesives, Inc.*, 537 N.E.2d at 630-31. Economic losses includes the loss attributable to any decreased value of the product itself as a result of an alleged defect, as well as the cost to repair or replace the allegedly defective product. *See Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 56 (S.D. Ohio 1986); *Chemtrol Adhesives, Inc.*, 537 N.E.2d at 629.

Because Plaintiffs Glazer and Chris and Trina Allison allege only economic losses, Plaintiffs' cannot state a claim for negligent design and failure to warn. *See Hoffer*, 2007 WL 1725317, at *8 (dismissing claim for breach of implied warranty in tort because the plaintiff did not allege that he personally experienced any property damage or personal injury as a result of allegedly defective product); *Lee v. Chrysler Corp.*, No. 2004CA00164, 2005 WL 449762, at *3 (Ohio Ct. App. Feb. 22, 2005) (affirming dismissal of consumer's negligence claim against car manufacturer where the plaintiffs sought only damages for economic loss).

## CONCLUSION

Whirlpool requests that the Court dismiss Counts I, III and IV; Count V to the extent brought by Plaintiffs Werman, Glazer, Chris and Trina Allison, Hollander, Beierschmitt, and Gardner; Count VI, to the extent brought by Plaintiffs Glazer, Chris and Trina Allison, Glennon, Cohen, Hollander, Bicknell, Werman, Torf, Schaeffer, and Strong; Count VII, to the extent brought by Plaintiffs Werman, Glazer, Chris and Trina Allison, Hollander, Beierschmitt, Bicknell, Schaeffer, Nordan, Strong, and Gardner; Count VIII, to the extent brought by Plaintiffs Glazer, Chris and Trina Allison, Glennon, Cohen, Hollander, Bicknell, Werman, Torf, Schaeffer, and Strong; and Counts IX-XXI.

Dated:  March 13, 2009

Respectfully submitted,

/s/ Michael T. Williams
Michael T. Williams   (Colorado Bar No. 33172)
Malcolm E. Wheeler   (Colorado Bar No. 21200)
Galen D. Bellamy      (Colorado Bar No. 31705)
Evan B. Stephenson    (Colorado Bar No. 37183)
Allison R. Cohn       (Colorado Bar No. 39748)
Joel Neckers   (Illinois Bar. No. 6283609)
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Telephone - (303) 244-1800
Facsimile - (303-244-1879)
wheeler@wtklaw.com
williams@wtklaw.com
bellamy@wtklaw.com
stephenson@wtklaw.com
cohn@wtklaw.com
neckers@wtklaw.com

Gregory R. Farkas     (0069109)
Lindsey A. Carr       (0074182)
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
Telephone - (216) 515-1660
Facsimile - (216) 515-1650
gfarkas@frantzward.com
lcarr@frantzward.com

Attorneys for Defendant Whirlpool Corp.

41

## CERTIFICATE OF COMPLIANCE

I do hereby certify that *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, MDL No. 2001, has been recommended for assignment to the complex track pursuant to LR 16.3(a).

I further certify that the Memorandum in Support of Defendant's Partial Motion to Dismiss adheres to the forty (40) page limitation set out in this Court's February 26, 2009, Order at Section VI.C.

/s/ Michael T. Williams
One of the Attorneys for Defendant
Whirlpool Corporation

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on March 13, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- **Galen D. Bellamy**
  bellamy@wtklaw.com

- **Natalie Finkelman Bennett**
  nfinkelman@sfmslaw.com

- **Richard J. Burke**
  rich@richardjburke.com,debs@richardjburke.com

- **Lindsey A. Carr**
  lcarr@frantzward.com,dlbeatrice@frantzward.com

- **Mark P. Chalos**
  mchalos@lchb.com

- **Allison R. Cohn**
  cohn@wtklaw.com

- **Gregory R. Farkas**
  gfarkas@frantzward.com,dlbeatrice@frantzward.com

- **Scott A. George**
  sgeorge@seegerweiss.com

- **George K. Lang**
  george@freedweiss.com

- **Karen M. Leser-Grenon**
  kleser@sfmslaw.com

- **James E. Miller**
  jmiller@sfmslaw.com

- **Joel Neckers**
  neckers@wtklaw.com

- **Brian G. Ruschel**
  bruschel@aol.com

- **Mark Schlachet**
  mschlachet@clevelandnet.com

- **Steven A. Schwartz**
  sas@chimicles.com

- **Jonathan D. Selbin**
  jselbin@lchb.com

- **James C. Shah**
  jshah@sfmslaw.com

- **Jonathan Shub**
  jshub@seegerweis.com

- **Evan B. Stephenson**
  stephenson@wtklaw.com,wallace@wtklaw.com

- **Paul M. Weiss**
  paul@freedweiss.com,ecf@freedweiss.com,george@freedweiss.com,sherrie@freedweiss.com

- **Malcolm E. Wheeler**
  wheeler@wtklaw.com

- **Michael Timothy Williams**
  williams@wtklaw.com,mallett@wtklaw.com,kemezis@wtklaw.com

- **Steven L. Wittels**
  swittels@nydclaw.com,amelzer@nydclaw.com,sgarcia@nydclaw.com,jpark@nydclaw.com,jjulie@nydclaw.com,jheisler@nydclaw.com,dsanford@nydclaw.com,hpark@nydclaw.com

/s/ Michael T. Williams _____
Michael T. Williams, Esq.
Attorney for Defendant Whirlpool Corp.
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Telephone: (303) 244-1800
Facsimile: (303) 244-1879
Email: williams@wtklaw.com