**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: WHIRLPOOL CORP. **FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION** | **1:08-wp-65000** **MDL No. 2001** **Class Action** **Judge:  James S. Gwin** |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S PARTIAL**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' MASTER CLASS ACTION COMPLAINT**</u>

807077.8

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ............................................................................................. 2

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT ................................................................................................................. 4

I.     The Allison and Schaeffer Plaintiffs Were Properly Added to the MCAC ........... 4

II.    Plaintiffs Have Alleged Viable Claims Under Each Relevant Consumer Protection Statute ........................................................................................ 6

    A.    Plaintiff Strong States a Claim Under Arizona Law ................................ 10

    B.    The Claims Under California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, And Texas Consumer Protection Statues Are Properly Pled ....................................................................... 11

    C.    Plaintiffs Glazer and the Allisons State a Claim for Violation of Ohio's Consumer Sales Practice Act ........................................................ 12

    D.    Plaintiff Glennon Has Stated a Valid Claim Under New York Law ....... 16

    E.    Plaintiff Schaeffer Has Stated a Claim Under California Law ................ 17

        1.    Plaintiff Schaeffer Has Alleged That Whirlpool Engaged in "Unlawful" Business Practices .................................................... 17

        2.    Plaintiff Schaeffer Has Alleged That Whirlpool Has Engaged in "Unfair" Business Practices ..................................... 18

        3.    Plaintiff Schaeffer Has Adequately Alleged That Whirlpool Engaged in Fraudulent Trade Practices ....................................... 20

III.    Breach of Written or Implied Warranty ............................................................. 22

    A.    The Ohio Plaintiffs Are Not in Privity Under Ohio Law ........................ 22

    B.    Plaintiffs Have Alleged Constructive Privity With Whirlpool Sufficient to Sustain Warranty Claims in Arizona, California, Florida, Illinois, New York, And North Carolina ................................... 22

    C.    The Express Warranty Claims of the Arizona, Florida, California and Maryland Plaintiffs Are Not Subject To Dismissal For Lack of Privity .................................................................................................... 25

    D.    Plaintiffs Werman, Glazer, Hollander, Beierschmitt and Gardner State  Valid Express Warranty Claims ................................................... 25

        1.    Plaintiffs' Factual Allegations Support Their Breach of Express Warranty Claims ........................................................... 27

# TABLE OF CONTENTS
## (continued)

Page

2.   Whirlpool's Limitation on Remedies in Its Written Warranty Is Unenforceable Because it Fails in Its Essential Purpose ........................................................................................ 31

3.   The One-Year Limitation in Whirlpool's Written Washer Warranty Does Not Apply To the Other Express Warranties ...... 31

E.   Plaintiff Schaeffer's Song Beverly Act/Breach of Implied Warranty Claims Did Not Arise After the Expiration of the Implied Warranty ................................................................................ 33

IV.   The Economic Loss Rule Does Not Bar the Ohio Plaintiffs' Claims ................. 34

V.   Plaintiffs Have Sufficiently Pled Facts To State Their Unjust Enrichment Claims .......................................................................................... 37

A.   A Showing That Whirlpool's Conduct Was Wrongful Is Not Required ................................................................................. 37

B.   Plaintiffs the Allisons, Glazer and Sandholm-Pound's Engaged in Economic Transactions with Whirlpool ................................................. 39

VI.   Conclusion .......................................................................... 40

807077.8

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abco Metals Corp. v. J.W. Imports Co., Inc.*,
560 F. Supp. 125 (N.D. Ill. 1982) ................................................................. 23

*Abele v. Bayliner Marine Corp.*,
11 F. Supp. 2d 955 (N.D. Ohio 1997) ........................................................... 31

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ....................................................................................... 22

*Amato v. Gen. Motors Corp.*,
463 N.E.2d 625 (Ohio Ct. App. 1982) .................................................... 13, 15

*Anthony v. Gen. Motors Corp.*,
33 Cal. App. 3d 699 (1973) ........................................................................... 19

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................................ 24

*Atkinson v. Elk Corp. of Texas*,
142 Cal. App. 4th 212 (2006) .................................................................. 23, 33

*Avery Dennison Corp. v. Soliant LLC*,
2005 WL 2035511 (N.D. Ohio Aug. 23, 2005) ........................................... 35

*Bardin v. DaimlerChrylser*,
136 Cal. App. 4th 1255 (2006) ............................................................... 18, 21

*Bell Atl. Corp. v. Twombly*,
127 U.S. 1955 (2007) ...................................................................................... 4

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ..................................................................... 17

*Beshears v. Provident Life and Acc. Ins. Co.*,
2007 WL 1438738 (D. Ariz. May 15, 2007) ................................................. 9

*Bettua v. Sears, Roebuck & Co.*,
2009 WL 230573 (N.D. Ill. Jan. 30, 2009) ............................................ 10, 38

*Bower v. I.B.M.*,
495 F. Supp. 2d 837 (S.D. Ohio 2007) ........................................................ 14

*Boyas Excavating, Inc. v. Powerscreen of Ohio, Inc.*,
139 Ohio App. 3d 201 (Ohio Ct. App. 2000) .............................................. 27

*Brooklyn Life Ins. Co. v. Dutcher*,
95 U.S. 269 (1877) ........................................................................................ 31

*Brown v. SBC Commc'ns, Inc.*,
2007 WL 684133 (S.D. Ill. March 1, 2007) ................................................ 11

*Budd v. Quinlan*,
860 N.Y.S. 2d 802 (N.Y. Sup. Ct. 2008) ..................................................... 25

# TABLE OF AUTHORITIES
## (continued)

Page

*California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.,*
142 Cal. App. 4th 21 (2006) ............................................................. 18

*Cannon v. Metro Ford, Inc.,*
242 F. Supp. 2d 1322 (S.D. Fla. 2002) ............................................ 11

*Carpinone v. Zucker,*
241 A.D.2d 596 (N.Y. App. Div. 1997) ............................................ 25

*Carrel v. Allied Prods. Corp.,*
677 N.E.2d 795 (Ohio 1997) ............................................................ 35

*Castro v. NYT Television,*
851 A.2d 88 (N.J. App. Div. 2004) .................................................... 37

*Chamberlan v. Ford Motor Co.,*
2003 WL 25751413 (N.D. Cal. Aug. 6, 2003) .................................. 20

*Chemtrol Adhesives, Inc v. American Manufacturers Mutual Insurance Co.,*
537 N.E.2d 624 (Ohio 1989) ............................................................ 35

*Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.,*
656 F. Supp. 49 (S.D. Ohio 1986) .................................................... 36

*Cipollone v. Liggett Group, Inc.,*
893 F.2d 541 (3d Cir. 1990) ............................................................. 28

*Circle Finance Co. v. Peacock,*
399 So. 2d 81 (Fla. App. 1981) ......................................................... 37

*City of Cincinnati v. Beretta U.S.A. Corp.,*
768 N.E.2d 1136 (Ohio 2002) ..................................................... 34, 35

*City of Painesville, Ohio v. First Montauk Fin. Corp.,*
178 F.R.D. 180 (N.D. Ohio 1998) ...................................................... 7

*Community Television Servs., Inc. v. Dresser Indus., Inc.,*
586 F.2d 637 (8th Cir. 1978) ............................................................ 32

*Cooper v. Samsung Electronics America, Inc.,*
2008 WL 4513924 (D.N.J. 2008) ...................................................... 31

*Cornick v. Hi Grade Cleanser, Inc.,*
595 F. Supp. 718 (N.D. Ill. 1984) .................................................... 11

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh,*
217 Cal. App. 2d 492 (1963) ............................................................ 26

*Crank v. Firestone Tire & Rubber Co.,*
692 S.W.2d 397 (Mo. App. Ct. 1985) .............................................. 28

*Crest Container Corp. v. R. H. Bishop Co.,*
445 N.E.2d 19 (Ill. App. Ct. 1982) .................................................. 23

807077.8

# TABLE OF AUTHORITIES
## (continued)

Page

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006) ............................................................. 17, 18, 21

*Davis v. Powertel, Inc.*,
  776 So.2d 971 (Fla. Dist. Ct. App. 2001) .............................................. 12

*Day v. AT&T Corp.*,
  63 Cal. App. 4th 325 (1998) ................................................................. 21

*Delahunt v. Cytodyne Techs.*,
  241 F. Supp. 2d 827 (S.D. Ohio 2003) ........................................... 13, 15

*Dewey v. Volkswagen, AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008) ...................................................... 24

*Duall Bldg. Restoration, Inc. v. 1143 East Jersey Ave. Assocs., Inc.*,
  652 A.2d 1225 (N.J. Super. Ct. 1995) .................................................. 23

*Dunkin' Donuts, Inc. v. Middletown Donut Corp.*,
  495 A. 2d 66 (N.J. 1985) ........................................................................ 38

*Einhorn v. Ford Motor Co.*,
  548 N.E.2d 933 (Ohio 1990) ................................................................ 13

*Elliott Graphics, Inc. v. Stein*,
  660 F. Supp. 378 (N.D. Ill. 1987) ........................................................... 9

*Ellis v. Allstate Ins. Co.*,
  479 F. Supp. 2d 782 (N.D. Ill. Dec. 5, 2006) ...................................... 12

*Engalla v. Permanente Med. Group, Inc.*,
  15 Cal. 4th 951 (1997) .......................................................................... 21

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch.*,
  428 F.3d 223 (6th Cir. 2005) .................................................................. 4

*F.D.I.C. v. Dintino*,
  167 Cal.App.4th 333 (Cal. App. 2008) ................................................ 37

*F.H. Prince & Co. v. Towers Fin. Corp.*,
  656 N.E. 2d 142 (Ill. App. 1995) .......................................................... 37

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................ 7, 20, 21

*First Fin. Sav. Bank v. Am. Bankers Ins. Co.*,
  1990 WL 260541 (E.D.N.C. July 5, 1990) ........................................... 12

*Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*,
  2008 WL 746669 (N.D. Ohio March 18, 2008) .................................... 36

*Flynn v. Everything Yogurt*,
  1993 WL 454355 (D. Md. Sept. 14, 1993) ............................................. 8

*Fortech L.L.C. v. R.W. Dunteman Co., Inc.*,
  366 Ill. App.3d 804 (Ill. App. 2006) .................................................... 37

# TABLE OF AUTHORITIES
## (continued)

Page

*Gable v. Silver*,
258 So.2d 11 (Fla. App. Ct. 1972) .................................................. 32

*Gelco Corp. v. Duval Motor Co.*,
2002 WL 31875537 (N.D. Ill. Dec. 26, 2002) ................................ 9

*GMAC Real Estate LLC v. Prindle Real Estate, Inc.*,
2007 WL 4570578 (S.D. Ohio Dec. 24, 2007) ................................ 7

*Gooch v. E.I. Du Pont de Nemours & Co.*,
40 F. Supp. 2d 863 (W.D. Ky. 1999) .............................................. 28

*Grismore v. Capitol One F.S.B.*,
2007 WL 841513 (D. Ariz. March 16, 2007) ................................. 9

*GT & MC, Inc. v. Texas City Ref., Inc.*,
822 S.W.2d 252 (Tex. App. Ct. 1991) ............................................ 32

*Harper v. LG Elec. USA, Inc.*,
595 F. Supp. 2d 486 (D.N.J. 2009) ......................................... passim

*HDM Flugservice GMBH v. Parker Hannifin Corp.*,
332 F.3d 1025 (6th Cir. 2003) ........................................................ 36

*Heat Exchangers, Inc. v. Aaron Friedman, Inc.*,
421 N.E.2d 336 (Ill. App. Ct. 1981) .............................................. 32

*Heisner ex rel. Heisner v. Genzyme Corp.*,
2008 WL 2940811 (N.D. Ill. July 25, 2008) .................................. 27

*Hentz v. Hargett*,
71 F.3d 1169 (5th Cir. 1996) .......................................................... 31

*Hill v. James Walker Mem. Hosp.*,
407 F.2d 1036 (4th Cir. 1969) ........................................................ 23

*Hininger v. Case Corp.*,
23 F.3d 124 (5th Cir. 1994) ............................................................ 23

*Hirsch v. Bank of America*,
132 Cal.Rptr.2d 220 (Cal. App. 2003) ........................................... 37

*Hoffer v. Cooper Wiring Devices, Inc.*,
2007 WL 1725317 (N.D. Ohio June 13, 2007) ......................... 13, 14

*Howard v. Norman's Auto Sales*,
2003 WL 21267261 (Ohio Ct. App. Jun. 3, 2003) ........................ 15

*Hungerford & Terry, Inc. v. Waterlink Separations, Inc.*,
2007 WL 2050320 (N.J. App. Div. 2007) ...................................... 27

*Hyundai Motor Am., Inc. v. Goodin*,
822 N.E.2d 947 (Ind. 2005) ............................................................ 23

*In re Apple & AT & TM Antitrust Litig.*,
2008 WL 4810067 (N.D. Cal. Oct. 1, 2008) ................................... 7

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab.*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...................................................... 26

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
    2008 WL 4126264 (D.N.J. 2008) ...................................................... 28, 38

*In re HP Inkjet Printer Litig.*,
    2006 WL 563048 (N.D. Cal. Mar. 07, 2006) ...................................................... 26

*In re Repco Prods. Corp.*,
    100 B.R. 184 (Bankr. E.D. Pa. 1989) ...................................................... 32

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 351 (N.D. Ill. 2005) ...................................................... 31

*Indust-Ri-Chem Lab., Inc. v. Par-Pak Co., Inc.*,
    602 S.W.2d 282 (Tex. Civ. App. 1980) ...................................................... 28

*ISK Biotech Corp. v. Douberly*,
    640 So.2d 85 (Fla. App. Ct. 1994) ...................................................... 27

*Islip v. Mercedes-Benz USA, Inc.*,
    155 Cal. App. 4th 19 (2007) ...................................................... 19

*IWOI, LLC v. Monaco Coach Corp.*,
    581 F. Supp. 2d 994 (N.D.Ill. 2008) ...................................................... 24

*Jackson v. 2109 Brandywine, LLC*,
    952 A.2d 304 (Md. Spec. App. 2008) ...................................................... 37

*Johnson v. Wheeler*,
    492 F. Supp. 2d 492 (D. Md. 2007) ...................................................... 12

*Kasky v. Nike Inc.*,
    27 Cal. 4th 939 (2002) ...................................................... 17

*Keith v. Buchanan*,
    173 Cal. App. 3d 13 (1975) ...................................................... 29

*Kel-Keef Enters., Inc. v. Quality Components Corp.*,
    316 Ill. App. 3d 998 (Ill. App. 2000) ...................................................... 32

*Kelleher v. Marvin Lumber & Cedar Co.*,
    152 N.H. 813 (2005) ...................................................... 28

*Kerby v. Mortgage Funding Corp.*,
    992 F. Supp. 787 (D. Md. 1998) ...................................................... 12

*Khan v. Shiley Inc.*,
    217 Cal. App. 3d 848 (1990) ...................................................... 21

*Klein v. Earth Elements, Inc.*,
    59 Cal. App. 4th 965 (1997) ...................................................... 19, 20

*Kowalke v. Bernard Chevrolet, Inc.*,
    2000 WL 656660 (N.D. Ill. 2000) ...................................................... 25

# TABLE OF AUTHORITIES
## (continued)

Page

*Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*,
446 F. Supp. 2d 551 (E.D. Va. 2006) .............................................................. 28, 29

*Lady Di Fishing Team, LLC v. Brunswick Corp.*,
2007 WL 3202715 (M.D. Fla. Oct. 29, 2007) ...................................................... 24

*Lantz v. American Honda Motor Co., Inc.*,
2007 WL 1424614 (N.D. Ill. 2007) ................................................................... 24

*LaPuma v. Collinwood Concrete*,
661 N.E.2d 714 (Ohio 1996) ........................................................................... 35

*Lauria v. Ford Motor Co.*,
312 S.E.2d 190 (Ga. Ct. App. 1983) ................................................................. 23

*Lee v. Chrysler Corp.*,
2005 WL 449762 (Ohio Ct. App. Feb. 22, 2005) ................................................ 37

*Liberty Lincoln Mercury, Inc. v. Ford Motor Co.*,
171 F.3d 818 (3d Cir. 1999) ........................................................................... 28

*Lifelink Pharm., Inc. v. NDA Consulting, Inc.*,
2007 WL 2292461 (N.D. Ohio Aug. 7, 2007) ................................................... 4, 7

*Lindemann v. Eli Lilly & Co.*,
816 F.2d 199 (5th Cir. 1987) .......................................................................... 28

*Marrone v. Philip Morris U.S.A., Inc.*,
850 N.E.2d 31 (Ohio 2006) ........................................................................ 13, 14

*Metowski v. Traid Corp.*,
28 Cal. App. 3d 332 (1972) ............................................................................ 26

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
848 F.2d 674 (6th Cir. 1988) .................................................................. 6, 10, 11

*Midwest Ford, Inc. v. C.T. Taylor Co.*,
694 N.E.2d 114 (Ohio Ct. App. 1997) ............................................................. 35

*Milgard Tempering Inc. v. Selas Corp. of Am.*,
902 F.2d 703 (9th Cir. 1990) .......................................................................... 31

*Morris v. Osmose Wood Preserving*,
667 A.2d 624 (Md. Ct. App. 1995) .................................................................. 23

*Mowbray v. Avery*,
76 S.W.3d 663 (Tex. App. 2002) .................................................................... 38

*Munch v. Sears, Roebuck & Co.*,
2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) .................................................... 10

*Murdock-Bryant Constr. Inc. v. Pearson*,
703 P. 2d 1197 (Ariz. 1985) ........................................................................... 37

*Mydlach v. DaimlerChrysler Corp.*,
875 N.E.2d 1047 (Ill. 2007) ........................................................................... 27

# TABLE OF AUTHORITIES
## (continued)

Page

*Nessle v. Whirlpool Corp.*,
2008 WL 2967703 (N.D. Ohio July 25, 2008) ....................................................... 13, 14, 37

*New York v. Feldman*,
210 F. Supp. 2d 294 (S.D.N.Y. 2002) ................................................................... 16

*Norcold, Inc. v. Gateway Supply Co.*,
798 N.E.2d 618 (Ohio Ct. App. 2003) ................................................................. 35

*Ocana v. Ford Motor Co.*,
992 So.2d 319 (Fla. App. Ct. 2008) .................................................................... 24

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................. 21

*Oregel v. Am. Isuzu Motors, Inc.*,
90 Cal. App. 4th 1094 (2001) ............................................................................ 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995) .............................................................................. 16

*Owens Transp. Serv. Inc. v. Int'l Truck & Engine Corp.*,
2006 WL 3545109 (N.D. Ohio 2006) .................................................................. 31

*Pack v. Damon Corp.*,
434 F.3d 810 (6th Cir. 2006) ............................................................................. 28

*Phillips Petro. Co. v. Shutts*,
472 U.S. 797 (1987) ......................................................................................... 22

*Picker Int'l, Inc. v. Mayo Foundation*,
6 F. Supp. 2d 685 (N.D. Ohio 1998) ................................................................... 36

*PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. Partnership*,
146 S.W.3d 79 (Tex. 2004) ............................................................................... 28

*Prata v. Superior Court*,
91 Cal. App. 4th 1128 (2001) ............................................................................ 20

*Progressive American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*,
647 S.E.2d 111 (N.C. App. 2007) ....................................................................... 38

*Radford v. DaimlerChrysler Corp*,
168 F. Supp. 2d 751 (N.D. Ohio 2001) ............................................................... 15

*Ressallat v. Burglar & Fire Alarms, Inc.*,
606 N.E.2d 1001 (Ohio Ct. App. 1992) ............................................................... 32

*Reveles v. Toyota by the Bay*,
57 Cal. App. 4th 1139 (1997) ............................................................................ 33

*Rite Aid Corp. v. Levy-Gray*,
391 Md. 608 (2006) ......................................................................................... 28

*Rothstein v. DaimlerChrysler Corp.*,
2005 WL 3093573 (M.D. Fla. Nov. 18, 2005) ...................................................... 7

# TABLE OF AUTHORITIES
## (continued)

Page

*Rush v. Whirlpool Corp.*,
2008 WL 509562 (W.D. Ark. Feb. 22, 2008) ....................................................... 21

*Sanders v. City of Fresno*,
2006 WL 1883394 (E.D. Cal. 2006) .................................................................... 24

*Sanderson v. HCA- The Healthcare Co.*,
447 F.3d 873 (6th Cir. 2006) ................................................................................. 7

*Saunders v. Super. Ct.*,
27 Cal. App. 4th 832 (1994) ................................................................................ 18

*S-C Indus. v. Am. Hydroponics Sys.*,
468 F.2d 852 (5th Cir. 1972) ......................................................................... 28, 32

*Scripps Clinic v. Super. Ct.*,
108 Cal. App. 4th 917 (2003) .............................................................................. 18

*See Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F. 3d 508 (2d Cir. 2005).............................................................................. 16

*Sharp v. Kosmalski*,
351 N.E.2d 721 (N.Y. 1976)................................................................................ 38

*Sharrard, McGee & Co., P.A. v. Suz's Software, Inc.*,
396 S.E.2d 815 (N.C. App. Ct. 1990)................................................................. 28

*Simmons v. Stryker Corp.*,
2008 WL 4936982 (D.N.J. 2008) ........................................................................ 27

*Singer Co. v. E. I. du Pont de Nemours & Co.*,
579 F.2d 433 (8th Cir. 1978) .............................................................................. 32

*Smith v. Chase Manhattan Bank, USA*,
293 A.D.2d 598 (N.Y. App. Div. 2002) ............................................................. 38

*Smith v. State Farm Mut. Auto. Ins. Co.*,
93 Cal. App. 4th 700 (2001) ............................................................................... 18

*Sovel v. Richardson*,
1995 WL 678558 (Ohio Ct. App. Nov. 15, 1995) .............................................. 15

*State Farm Mutual Automobile Insurance Co. v. Kia Motors America, Inc.*,
828 N.E.2d 701 (Ohio Ct. App. 2005) ................................................................ 34

*Timberland Consol. P'ship v. Andrews Land & Timber*, Inc.,
818 So.2d 609 (Fla. App.2002)........................................................................... 37

*Trgo v. Chrysler Corp.*,
34 F. Supp. 2d 581 (N.D. Ohio 1998)................................................................. 36

*Tucson Util. Supplies, Inc. v. Gallagher*,
433 P.2d 629 (Ariz. 1967).................................................................................. 32

*U.S. v. Ford Motor Co.*,
532 F.3d 496 (6th Cir. 2008) .......................................................................... 7, 15

## TABLE OF AUTHORITIES
### (continued)

Page

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir. 2008) ............................................................ 20

*Williams v. National Housing Exchange Inc.*,
 949 F. Supp. 650 (N.D.Ill. 1996) ....................................................... 38

*Williamson v. Allstate*,
 204 F.R.D. 641 (D. Ariz. 2001) .......................................................... 10

## STATUTES

28 U.S.C. § 1332(a) ................................................................................. 5

28 U.S.C. § 1332(d) ................................................................................. 5

28 U.S.C. § 1407 ...................................................................................... 5

28 U.S.C. § 1407(b) ................................................................................. 5

Arizona's Consumer Fraud Act,
 A.R.S. §§ 44-1251 ................................................................................ 10

Cal. Civ. Code § 1791.1 .......................................................................... 33

Cal. Code § l668 ............................................................................... 17, 18

Cal. Code § l709 ............................................................................... 17, 18

Cal. Code § l710 ............................................................................... 17, 18

Cal. Com. Code § 2313 ........................................................................... 17

California Consumer Legal Remedies Act ("CLRA") ............................. 17

Fla. Stat. § 501.204(1) ............................................................................ 11

Fla. Stat. Ann. § 672.313 ........................................................................ 27

New York General Business Law,
 N.Y. Gen. Bus. Law Section 349 ......................................................... 16

Ohio Admin. Code §§ 109.4-3-10(A) ..................................................... 13

Ohio Rev. Code Ann. § 1345.02(A) ....................................................... 13

Song Beverly Consumer Warranty Act,
 Cal. Civil Code § 1790 .......................................................................... 17

U.C.C. § 2-313(1) .................................................................................... 27

U.C.C. § 2-313(2) .................................................................................... 28

U.C.C. § 2-317 ........................................................................................ 31

Defendant Whirlpool Corporation ("Whirlpool") has expressly acknowledged that "nearly all" of the front-loading washing machines at issue here produce odors resulting from mold, mildew, and/or other build-up in the machines.  Anthony Hardaway, a Whirpool microbiologist and engineer, stated in an interview that "[t]he cause of that odor is actually the build-up of soils and residue in your machine" which "creates a nice warm environment that will allow odors to grow from the soil and residue that are building up in your washer."  (Ex. 1 at 2.)[1] He also stated that the problem "is very common with nearly all front load washers or high efficiency washers . . . ."  (*Id.* at 6.)  Notably, Hardaway made those statements while describing Whirlpool's Affresh™ product, which Whirlpool developed and sells to consumers like Plaintiffs to remedy those very odor problems.

Whirlpool concedes that tens of thousands of consumers have experienced these problems to such a degree that they have complained to and/or made a warranty claim with Whirlpool.  Whirlpool blames its customers for causing the odor problems.  Plaintiffs believe – and have properly alleged viable legal claims asserting – that the problems experienced by Whirlpool's customers result from a uniform and common design defect.

Whirlpool's motion relies on hyper-technical arguments to prevent a fact-finder from deciding the merits of Plaintiffs' claims.  Its arguments fall generally into five categories:

- Customers – including those residing in Ohio – who have experienced problems with their Whirlpool washers cannot file a lawsuit in this Court;

- Plaintiffs have not alleged facts specific enough to assert consumer protection claims under statutes designed to protect them from just such conduct;

- Plaintiffs have failed to properly plead that Whirlpool's defective machines breached implied and express warranties;

- Plaintiffs cannot recover damages for the economic harm that Whirlpool's defective machines caused; and

---

[1] The MCAC incorporates, by reference to the affresh.com website, the statements contained on that website as part of the MCAC's allegations.  (MCAC ¶¶ 46-47.)

- Whirlpool was not unjustly enriched by its sale of defective washers.

Plaintiffs respectfully submit that these arguments – which are not supported by the law, and raise issues of fact not properly resolved on a motion to dismiss – should be rejected. This Court is an appropriate forum for customers seeking compensation for the economic harm Whirlpool has caused. Plaintiffs have adequately pled their claims under the various States' laws, and have more than satisfied the requirements of notice pleading under the Federal Rules of Civil Procedure. Particularly in view of Whirlpool's admission that the mold and odor problem is widespread, these cases should be decided on the merits, not a motion to dismiss.

## STATEMENT OF FACTS

Plaintiffs filed their Master Class Action Complaint ("MCAC") on February 13, 2009, in which they make the following allegations.

Whirlpool advertises, markets, and sells Whirlpool Duet, Duet HT, Duet Sport, and other front-loading automatic washing machines ("Washing Machines" or "Machines"), with a uniform design defect that results in the creation of mold, mildew, residue, growth, and/or bacteria, and the production of foul odors ("Mold Problems"). (MCAC ¶¶ 2, 23, 25-26, 35-37.) While expert analysis of the precise nature of the defect is ongoing, Plaintiffs believe the defect includes the inability to properly drain water, avoid lingering moisture, properly rinse away the recommended amounts of high efficiency ("HE") detergent and liquid fabric softener, and/or utilize proper fill lines for detergents. (*Id.* ¶ 36.) The stainless steel drum and door seal also do not properly drain with each wash cycle. (*Id.* ¶ 37.) In short, the Machines fail to clean themselves of moisture, residual growth, and bacteria that lead to the formation of mold, mildew, and associate fouls odors. (*Id.* ¶ 2(d).)

Whirlpool issued express written warranties to each end-user consumer, including Plaintiffs, with each of the Machines, including lifetime warranties on the stainless steel drum

and a one-year warranty for parts and labor.  (*Id.* ¶¶ 27-30, 37.)  Whirlpool's warranty provides coverage for repairs to correct defects relating to materials or workmanship during the warranty period.  (*Id.* ¶¶ 27-29.)  Whirlpool also made express representations at the point of sale concerning the dependability and quality of the Machines, including labeling them as "ENERGY STAR" compliant.  (*Id.* ¶¶ 30, 35.)  Whirlpool also impliedly warranted that the Washing Machines were of merchantable quality, fit for the ordinary purpose for which such goods are used, and free from defects.  (*Id.* ¶ 29.)

Whirlpool's customers, including Plaintiffs, complained of these Mold Problems to Whirlpool, directly or through a Whirlpool authorized dealer.  (*Id.* ¶¶ 39-40, 43-44.)  As a result of the avalanche of consumer complaints regarding the defect, Procter & Gamble and several independent entrepreneurs have created products designed to treat, eliminate, and/or minimize these Mold Problems.  (*Id.* ¶¶ 43-45.)  Whirlpool has attempted to profit from its defective Machines by developing a product called Affresh™.  (*Id.* ¶¶ 46-48.)  Whirlpool acknowledges, on its sales website at affresh.com, that newer front-loading high efficiency Machines are prone to build up residue that lead to odors.[2]  (*Id.* ¶ 50.)  Despite representations to the contrary, however, Affresh does not prevent and/or ameliorate the Mold Problems.  (*Id.* ¶¶ 46-48.)

Whirlpool has directly profited by its misrepresentations and concealment of the defect by inducing Plaintiffs and consumers like them to purchase the Washing Machines at a premium

---

[2] In a recent interview that was posted on affresh.com, Anthony Hardaway, a Whirlpool microbiologist and fabric-care engineer, acknowledged and even described the Mold Problems in Whirlpool's Machines.  In responding to a question about the odor "emanating from high efficiency front loaders," Hardaway responded:  "The cause of that odor is actually the build-up of soils and residue in your machine and because the machine is so efficient, there's very little air exchange so it creates a nice warm environment that will allow odors to grow from the soil and residue that are building up in your washer."  (Ex. 1 at 2.)  He further stated that the build-up of soils applies to "all high efficiency washers".  (*Id.* at 3.)  In response to the questioner's comment that her washer does not have an odor problem, Hardaway responded:  "Well, you're very fortunate because this is very common with nearly all front load washers or high efficiency washers . . . ."  (*Id.* at 6.)

price, and pay Whirlpool for repair services and ineffective products like Affresh.  (*Id.* ¶¶ 41-42,

48, 52.)  As a result of Whirlpool's conduct, Plaintiffs and consumers like them purchased

Washing Machines they would not have purchased had they known of the defects, and thereby

have been – and continue to be – injured by Whirlpool.  (*Id.* ¶ 52.)

## LEGAL STANDARD

"When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon

which relief may be granted, the Court must construe the complaint in the light most favorable to

the plaintiff, accept its allegations as true and draw all reasonable inferences in the pleader's

favor."  *Lifelink Pharm., Inc. v. NDA Consulting, Inc.,* 2007 WL 2292461, at *2 (N.D. Ohio Aug.

7, 2007) (Gwin, J.) (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch.*, 428

F.3d 223, 228 (6th Cir. 2005)).  "A complaint does not need detailed factual allegations to

survive a Rule 12(b)(6) motion, but it 'requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl.*

*Corp. v. Twombly*, 127 U.S. 1955, 1965 (2007)).  "'Factual allegations must be enough to raise a

right to relief above the speculative level,' assuming all allegations in the complaint are true,

even if doubtful."  *Id.*  (quoting *Twombly*, 127 U.S. at 1965).  "The plaintiff must provide enough

facts to state a claim to relief that is 'plausible on its face' and not merely 'conceivable.'"  *Id.*

(quoting *Twombly*, 127 U.S. at 1965) .

## ARGUMENT

### I.     The Allison and Schaeffer Plaintiffs Were Properly Added to the MCAC

Whirlpool argues that the Allison and Schaeffer Plaintiffs were improperly added to the

MCAC because they were not parties to the cases originally consolidated before this Court.

Whirlpool's approach is manifestly inefficient and accomplishes nothing but delay – indeed, it

argues that the Allisons were improperly added, even though they are residents of Ohio and one

-4-

of the original cases in this MDL action was filed in this Court by Ms. Glazer.  In particular,
Whirlpool's argument fails for three reasons.

First, Plaintiffs filed the MCAC on February 13, 2009 pursuant to the Joint Planning
Report, wherein the parties proposed that date as the deadline for "adding parties or amending
pleadings[.]"  (Doc. 4, at 5.)  Whirlpool itself therefore acknowledged, without objection, that
additional parties could be added.[3]

Second, the Court has inherent authority to allow new parties to be added.  The JPML –
upon *Whirlpool's motion* – centralized these cases before this Court "for coordinated or
consolidated pretrial proceedings . . . "  (Doc. 1.)  Pursuant to 28 U.S.C. § 1407(b), "coordinated
or consolidated pretrial proceedings *shall* be conducted by a judge or judges to whom such
actions are assigned by the judicial panel on multidistrict litigation."  *Id.* (emphasis added).
Thus, Whirlpool's argument that the Allisons were not properly added based on the deadline in
the individual *Glazer* action is irrelevant because, pursuant 28 U.S.C. § 1407, the Court has the
authority to conduct "coordinated or consolidated pretrial proceedings" – including the addition
of new parties.  There is no doubt – and Whirlpool does not dispute – that this Court has
diversity jurisdiction over the claims asserted by the Allison (Ohio) and Schaeffer (California)
Plaintiffs, 28 U.S.C. § 1332(a), or that their claims would subject to CAFA, 28 U.S.C.
§ 1332(d).[4]

Third, the Court should exercise its authority to allow the addition of the Allison and
Schaeffer Plaintiffs in the interest of efficiency.  The JPML's transfer order states that

---

[3] At the case management conference conducted on March 27, 2009, the Court extended that
deadline to April 30, 2009.  (Doc. 34 at 3.)

[4] Whirlpool likewise does not dispute that it is subject to personal jurisdiction in this forum. To
the extent that Whirlpool believes that there is a more appropriate venue for the claims of the
Allison and Schaeffer Plaintiffs, at the conclusion of the centralized pre-trial proceedings in this
Court, Whirlpool can move for a transfer of venue pursuant to 28 U.S.C. 1404, which permits
this Court to transfer a civil action "to any other district or division where it might have been
brought."

"[c]entralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings (particularly with respect to class certification), and conserve the resources of the parties, their counsel and the judiciary."  (Doc. 1.)  Although Whirlpool criticizes the addition of new parties through the MCAC, it proposes no alternative.  Unless individuals not already named plaintiffs in the MCAC are somehow barred from filing claims, they would be forced to file elsewhere and await the inevitable transfer here.  That approach would result only in delay, not a change in outcome.

## II.    Plaintiffs Have Alleged Viable Claims Under Each Relevant Consumer Protection Statute

Whirlpool argues that it is not on fair notice of the consumer protection claims Plaintiffs assert, arguing for dismissal under Rule 9(b) with respect to Plaintiffs' consumer protection claims under Arizona, California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, and Texas statutes.  That argument strains credulity.

"It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.  Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).  That is especially true in a case like this, where essentially all of the relevant information rests exclusively within the defendant's control.  *Id.* at 681.  Plaintiffs' allegations here are as detailed as they can be in such circumstances.  This is not a case about a specific misrepresentation in a particular document by a particular individual on a specific date.  It is focused on Whirlpool's *omission of material facts* in *every* communication and at *all* times.  In similar class litigation regarding LG front-loading washing machines, the

district court rejected these same Rule 9(b) arguments.  *Harper v. LG Elec. USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009).[5]

Although Rule 9(b) generally requires that a plaintiff allege facts with particularity, the requirement must be read together with the liberal notice pleading standard of Rule 8, which requires only a short and plain statement of a plaintiff's claim.  *Sanderson v. HCA- The Healthcare Co.*, 447 F.3d 873, 876-77 (6th Cir. 2006); *see also U.S. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008)[6]; *Lifelink Pharm.*, 2007 WL 2292461, at *2.  The particularity demanded by Rule 9(b) must reflect the nature of the alleged unlawful conduct.  *See City of Painesville, Ohio v. First Montauk Fin. Corp.,* 178 F.R.D. 180, 188 (N.D. Ohio 1998) (denying motion to dismiss in Section 10(b) securities claim after observing that "because most securities manipulation claims arise out of longer-term schemes that are largely unknown to the investor, specific characteristics or details of the scheme remain undetected," and "specific details such as the time, place, and actors involved with the scheme are typically more difficult to discover or plead").  "[C]learly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (internal quotation marks omitted); *see also In re Apple & AT & TM Antitrust Litig.*, 2008 WL 4810067, at *16 (N.D. Cal. Oct. 1, 2008) (pleading requirement is lowered for claims based on omissions given the reduced ability "to specify the time, place, and specific content"); *Rothstein v. DaimlerChrysler Corp.*, 2005 WL 3093573, at *2 (M.D. Fla. Nov. 18, 2005)

---

[5] Three firms serving as Lead Counsel in *Harper* are members of the Executive Committee in this action.  The MCAC provides significantly more detail than the amended complaint filed nine months earlier in *Harper*.  *See* Civ. No. 08-00051 (D.N.J.), Doc. No. 31 (filed May 6, 2008).
[6] Here, where Whirlpool has prepared an informed responsive pleading to Plaintiffs' allegations, including those sounding in fraud, there is little doubt that Rule 9(b)'s requirements have been met.  *See GMAC Real Estate LLC v. Prindle Real Estate, Inc.,* 2007 WL 4570578, at *1 (S.D. Ohio Dec. 24, 2007).

(denying motion to dismiss FDUTPA claim based on alleged omissions in a case where manufacturer knew or should have known of alleged defect); *Flynn v. Everything Yogurt,* 1993 WL 454355, at *8-9 (D. Md. Sept. 14, 1993) (omissions pled with sufficient particularity).

Here, Plaintiffs have met and even exceeded the particularity requirements of Rule 9(b) based on their allegations concerning Whirlpool's misrepresentations and omissions of material facts.  Plaintiffs have specifically alleged the following facts:[7]

- Whirlpool knowingly sold defective products to Plaintiffs and the members of the proposed Classes while simultaneously representing its Machines in advertising or point of sale materials as being of superior quality and energy efficient quality.  (MCAC ¶¶ 25, 27, 29-30, 35, 51.)

- Whirlpool knew that the Machines have a design defect that include the failure to: properly drain water; avoid lingering moisture; properly rinse away the recommended amounts of HE detergent and liquid fabric softener; and/or utilize proper fill lines for detergents.  (*Id.* ¶¶ 36-38.)

- Whirlpool was aware of the defects as early as the initial marketing and sale of the Machines, but concealed material facts regarding the Washing Machines, including the alleged design defect that cause the Mold Problems, and refused to advise consumers of the defect inherent in the Washing Machines or to remedy the problems.  (*Id.* ¶¶ 38-39, 46, 51, 53.)

- Whirlpool failed to inform consumers through the Use & Care Guides, provided after the purchase and/or installation of the Washing Machines, or through any other written disclosure, that Mold Problems will occur with virtually every machine due to the inherent design defect regardless of whether consumers follow the recommended Washing Machine maintenance or use only HE detergent.  (*Id.* ¶¶ 31-32, 38, 51(k).)

- Whirlpool was contacted directly and indirectly by significant numbers of consumers about the defects, but denied and continues to deny that the Machines had problems when notified of such defects, and offered nothing but illusory "solutions," none of which worked but instead allowed Whirlpool to unjustly enrich itself through the sale of it Affresh products.  (*Id.* ¶¶ 43-44, 46-48, 51, 52.)

---

[7] In addition to these allegations, Plaintiffs have identified the dates of their purchases; the prices they paid; the Whirlpool authorized dealers/retailers who sold them the Machines; the extensive Mold Problems they experienced; any repair or other costs they incurred; the dates when they put Whirlpool on notice with respect to the Mold problems; and their unsuccessful attempts to try the ineffective solutions offered by Whirlpool in response to the Mold Problems.  (MCAC ¶¶ 39, 52-53, 55-96.)

- As a result of the avalanche of consumer complaints regarding the defects that Whirlpool would not and/or could not remedy, Whirlpool, Proctor & Gamble and several entrepreneurs created and marketed products such as Whirlpool's Affresh, P&G's Tide Washing Machine Cleaner, SmellyWasher, and NuFreshNow designed to treat, eliminate, and/or minimize the Mold Problems caused by the design defect in the Washing Machines. (*Id.* ¶¶ 45-47.)

In *Harper v. LG Elec. USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009), plaintiffs brought suit on behalf of thirteen statewide subclasses and a nationwide class of persons who purchased front loading washing machines sold by LG with a "common drainage defect that causes the proliferation of mold and mildew, as well as foul odors in the machines and on clothing washed in the machine."[8] *Id.* at 491. LG sought dismissal of the fraud claims under Rule 9(b). The court ruled that plaintiffs adequately pled claims of fraud by alleging "LG marketed defective washing machines as providing superior quality, and knowingly failed to disclose the defects in an attempt to sell more washing machines" – nearly identical to Plaintiffs' allegations here. (*Compare* MCAC ¶¶ 35-36, 38, 41-42, 50-52.) Those allegations were sufficient to put LG on notice of the "precise misconduct" with which it was charged. *Harper*, 595 F. Supp. 2d at 491; *see also Elliott Graphics*, *Inc. v. Stein,* 660 F. Supp. 378, 380 (N.D. Ill. 1987) (plaintiffs need not specify the exact time and particular place of each and every omission or misrepresentation when there are multiple transactions over a long period of time); *Gelco Corp. v. Duval Motor Co.*, 2002 WL 31875537, at *6 (N.D. Ill. Dec. 26, 2002).[9]

---

[8] The *Harper* plaintiffs alleged that all of LG's front load washing machines possessed a common design defect in the dryer drum and/or door gasket that caused water to not fully or properly drain after each wash cycle, so that remaining water caused the proliferation of mold and mildew. *Harper*, 595 F. Supp. 2d at 491.

[9] Whirlpool relies on *Beshears v. Provident Life and Acc. Ins. Co.,* 2007 WL 1438738 (D. Ariz. May 15, 2007). But the complaint there failed to provide any information about which one of the multiple defendants made false statements to the plaintiff or any  description of the allegedly false statements. *Id.* at *2. In *Grismore v. Capitol One F.S.B.,* 2007 WL 841513 (D. Ariz. March 16, 2007), the *pro se* plaintiff did not set forth which law the defendant had violated, or details concerning the time, place, or manner surrounding the fraud. *Id.* at *6-7. The MCAC contains much greater detail than the complaints in those cases.

Whirlpool's Rule 9(b) argument is particularly baseless because its development of Affresh, which purports to address the Mold Problems, demonstrates its awareness of the very defect it failed to disclose.  (*See* MCAC ¶¶ 46-48.)  Whirlpool now admits on its website that its front-loading Machines are more prone than its top-loading washers to building residue that leads to odors.  (*Id.* ¶ 50.)

## A.    Plaintiff Strong States a Claim Under Arizona Law

Whirlpool argues that Plaintiff Strong's claim under Arizona's Consumer Fraud Act, A.R.S. §§ 44-1251, *et seq.*, ("ACFA"), fails because she does not sufficiently identify specific false or misleading statements.  However, claims for nondisclosure of material facts are actionable under the ACFA and plaintiffs must only "set forth an explanation why the . . . omission complained of was false or misleading" to satisfy the particularity requirement. *Williamson v. Allstate,* 204 F.R.D. 641, 644 (D. Ariz. 2001).  Plaintiff Strong does so.  (MCAC ¶¶ 25, 27, 29-32, 35, 38-39, 46, 51, 53.)

Whirlpool's citation to *Munch v. Sears, Roebuck & Co.*, 2008 WL 4450307 (N.D. Ill. Sept. 30, 2008), and *Bettua v. Sears, Roebuck & Co.*, 2009 WL 230573 (N.D. Ill. Jan. 30, 2009), is unpersuasive.  Plaintiffs' allegations here are far more detailed than the complaints in those cases.  (*Compare* First Am. Compl. in *Munch* (Civ. No. 06-7023 (N.D. Ill.), Doc. 66) ¶¶ 17-37 and in *Bettua* (Civ. No. 08-1832 (N.D. Ill.), Doc. 23) ¶¶ 20-46 *with* MCAC ¶¶ 25-54.)

Whirlpool argues that Plaintiffs must allege a precise technical "description of the alleged defect," provide a technical dissertation on why the Machines fail to drain, an explanation of the mechanism(s) through which the Duet washers drain, a precise statistical analysis of the nature and scope of the failures, and an "engineering explanation."  (Whirlpool Br. at 12.)  The Sixth Circuit does not require such detail at the pleading stage.  *See Michaels Bldg.*, 848 F.2d at 680 ("Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the

fraud be pled with enough specificity to put defendants on notice as to the nature of the claim").

Although expert work is underway, Plaintiffs require more time as well as discovery from

Whirlpool to ascertain the technical details concerning the design defect, and their claims should

not be dismissed on this basis.  *See id.*  ("It is a principle of basic fairness that a plaintiff should

have an opportunity to flesh out her claim through evidence unturned in discovery"); *see also*

*Brown v. SBC Commc'ns, Inc.*, 2007 WL 684133, at *6 (S.D. Ill. March 1, 2007) ("Rule 9(b) is

not to be applied in a manner that penalizes a plaintiff for lack of access to information through

discovery."); *Cornick v. Hi Grade Cleanser, Inc.,* 595 F. Supp. 718, 721 (N.D. Ill. 1984) (details

of technical and mechanical aspects of complaint to be acquired through discovery); *Oregel v.*

*Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1102 n.8 (2001) ("We do not interpret the statute

as depriving a consumer of a remedy if he cannot do what the manufacturer, with its presumably

greater expertise, was incapable of doing, *i.e.* identify the source of the leak").

### B.   The Claims Under California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, And Texas Consumer Protection Statues Are Properly Pled

Although Whirlpool seeks dismissal of Plaintiffs' claims under the consumer protection

statutes of several states, it specifically addresses only Arizona.  Whirlpool does not address the

California, Florida, Illinois, Maryland, New Jersey, North Carolina, Ohio, or Texas statutes, or

argue that Plaintiffs have failed to allege any elements of these such claims.  (*See* Whirlpool Br.

at 14-15.)  Instead, Whirlpool merely refers to its argument regarding ACFA, *i.e.*, its Rule 9(b)

argument.  The only cases Whirlpool cites do not support dismissal here, and stand for the

general proposition that such claims must be pled with particularity.  *See, e.g., Cannon v. Metro*

*Ford, Inc*., 242 F. Supp. 2d 1322, 1332 (S.D. Fla. 2002) (failure to plead any circumstances

constituting a purported fraud);[10] *Ellis v. Allstate Ins. Co.,* 479 F. Supp. 2d 782, 790 (N.D. Ill.

---

[10] The Florida statute ("FDUTPA") allows any aggrieved party to bring an action against a
company that has engaged in unconscionable, unfair, or deceptive acts or practices.  Fla. Stat.
§ 501.204(1).  A plaintiff need not prove the elements of fraud to sustain an action under the

Dec. 5, 2006) (fraud claims rested on statements of intention of future conduct, which are not actionable in Illinois without a scheme to defraud, which was not pled); *Johnson v. Wheeler,* 492 F. Supp. 2d 492, 509 (D. Md. 2007) (failure to allege any facts as to the who, what, when, and where of the fraud).

Notably, all of the States for which Whirlpool seeks dismissal of the consumer protection claims recognize omission-based claims.  *See Harper*, 595 F. Supp. 2d at 488, 491 (upholding consumer protection claims based on manufacturer's alleged omissions pursuant to laws of numerous states, including California, Florida, New Jersey, Illinois, North Carolina, Ohio, and Texas); *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 799 (D. Md. 1998) (denying motion to dismiss where plaintiffs adequately alleged, for purposes of Rule 9(b), the "circumstances" surrounding the false representation, by an agent of defendant, that defendant would provide the lowest mortgage rate); *First Fin. Sav. Bank v. Am. Bankers Ins. Co.*, 1990 WL 260541, at *3 (E.D.N.C. July 5, 1990) (denying motion to dismiss claims of fraud since such alleged claims of fraud adequately identified the particulars of the alleged fraud as required by Rule 9(b)).

**C.      Plaintiffs Glazer and the Allisons State a Claim for Violation of Ohio's Consumer Sales Practice Act**

Whirlpool argues that the Glazer and Allison Plaintiffs ("Ohio Plaintiffs") have failed to state a claim (individually and also on a class basis) under the Ohio Consumer Sales Practice Act ("OCSPA").

---

statute, "because the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances."  *Motorola* at *1 (*quoting Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2001).  Thus, for example, the allegation that an action arose from the "deceptive and unlawful conduct in designing, manufacturing, distributing and selling defectively designed Razr cellular phones" is sufficient to state a cause of action under FDUTPA.  *Id.* at *2.

The OCSPA prohibits unfair or deceptive acts or practices in connection with consumer transactions.  Ohio Rev. Code Ann. § 1345.02(A). The OCSPA is "a remedial law which is designed to compensate for traditional consumer remedies and must be liberally construed, *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935 (Ohio 1990), and has been interpreted to prohibit material omissions and misrepresentations regarding a product.  *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 838 (S.D. Ohio 2003) (plaintiff stated claim for violation of OCSPA where label affixed to products sold by defendant contained misstatements and omitted material information); *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 632-33 (Ohio Ct. App. 1982) (plaintiff's claims fell within the OCSPA in a suit involving misrepresentations and omissions in advertising relating to the sale of motor vehicles).  Pursuant to Ohio Admin. Code §§ 109.4-3-10(A), it is a deceptive act or practice to make representations, claims, or assertions of fact in the absence of a reasonable basis in fact.  (MCAC ¶ 111.)

For a class claim to be upheld under the OCSPA, "there must be a substantial similarity between a defendant's alleged violation of the Act and an act or practice previously declared deceptive by either a rule promulgated by the Attorney General *or a court decision that was publicly available when the alleged violation occurred*."  *Marrone v. Philip Morris U.S.A., Inc.*, 850 N.E.2d 31, 36 (Ohio 2006) (emphasis added); *see also Hoffer v. Cooper Wiring Devices, Inc.*, 2007 WL 1725317, at *3 (N.D. Ohio June 13, 2007).

This Court recently held, in another case against Whirlpool, that allegations of the very conduct Plaintiffs allege here – omitting and misrepresenting material information regarding a consumer product – is sufficient to state a claim under the OCSPA.  *See Nessle v. Whirlpool Corp.*, 2008 WL 2967703 (N.D. Ohio July 25, 2008).  In *Nessle*, the plaintiff alleged that Whirlpool sold defective refrigerators under the "Gold" label, which she alleged falsely implied that the machines would be free from defects and were worth purchasing at a premium.  *Id.* at *1.

Plaintiff also alleged Whirlpool had prior knowledge of the defect in the ice makers, and failed to disclose same to consumers.  *Id.* at *2.   Whirlpool sought dismissal of the OCSPA claim, arguing that it did not have prior notice that the alleged conduct was unlawful.

The Court rejected Whirlpool's argument that it was not on statutory notice of its wrongful conduct because the list of enumerated wrongful acts under the OCSPA was by "no means exclusive," and it was possible that plaintiff could later prove that Whirlpool was on notice.  *Id.* at *2-3.   The Court also rejected Whirlpool's notice argument because the plaintiff's citation to several published cases with similar facts (as Plaintiffs here have done) was sufficient to demonstrate that Whirlpool had notice that its conduct was wrongful.  *Id.*   *Compare Harper*, 595 F. Supp. 2d at 491 *with* MCAC ¶¶ 35-36, 38, 41-42, 50-52.

Whirlpool argues that the Ohio Plaintiffs cannot assert their OCSPA claims on a class basis because they do not identify any available court decision that was publicly available at the time of the alleged conduct that prohibited its conduct.  In *Bower v. I.B.M.*, 495 F. Supp. 2d 837 (S.D. Ohio 2007), however, the court gave no indication that the plaintiff had identified the requisite court decision in the course of briefing the motion to dismiss, as Plaintiffs have done here.  *See* 495 F. Supp. 2d at 840-41.  *Marrone*, 850 N.E.2d 31, meanwhile, concerned cigarette smokers who asserted claims against a manufacturer in connection with the sale of light cigarettes.  *Id.* at 33.   The *Marrone* court found that there was an absence of prior rules or court decisions that addressed the cigarette industry.  *Id*. at 36-37.   Similarly, in *Hoffer*, 2007 WL 1725317, the Court did not permit the plaintiff to maintain his OCPSA allegation as a class claim because "Plaintiff . . . cannot find any rule by the Attorney General or publicly available court decision which satisfies the requirement of declaring an act or practice substantially similar to the alleged violation at issue deceptive."  *Id.* at *3.

Here, unlike in *Bower*, *Marrone*, or *Hoffer*, there were numerous publicly-available cases concerning the conduct giving rise to the Ohio Plaintiffs' OCSPA claims, *i.e.*, the omission and misrepresentation of material facts regarding consumer products. *See, e.g.*, *Harper*, 595 F. Supp. 2d at 491; *Amato*, 463 N.E.2d at 632-33; *Delahunt*, 241 F. Supp. 2d at 838 (plaintiff stated claim for violation of OCSPA where product label contained misstatements and omitted material information); *Howard v. Norman's Auto Sales*, 2003 WL 21267261, at *5 (Ohio Ct. App. Jun. 3, 2003) (OCSPA violation where car salesman falsely represented that vehicle was in good condition and would not require repair for six to eight months); *Sovel v. Richardson*, 1995 WL 678558, at *1-3 (Ohio Ct. App. Nov. 15, 1995) (seller of a refrigerator that began malfunctioning shortly after the sale, and who failed to repair or replace the refrigerator despite his promises to the contrary, violated the OCSPA).  The Ohio Plaintiffs allege that Whirlpool engaged in acts and practices prohibited by such publicly-available court decisions, and therefore have adequately asserted their OCSPA claims.[11]  (*See* MCAC ¶¶ 35-36, 38, 41-42, 50-52.)

*Radford v. DaimlerChrysler Corp*, 168 F. Supp. 2d 751 (N.D. Ohio 2001) is distinguishable.  There, the plaintiff asserted a claim pursuant to the OCSPA based on the defendant's alleged failure to disclose that her vehicle's instrument panel was defective. *Id.* at 754.  The court dismissed the claim because "[m]ere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the Act." *Id.* .  Here, however, Plaintiffs have alleged much more than non-disclosure.  In addition to their allegations concerning Whirlpool's omission of material information, Plaintiffs also have alleged that Whirlpool:  has represented in advertising or point of sale materials that its Machines are of superior quality and energy efficient; was aware of the design defect and attendant Mold

---

[11] Whirlpool's argument regarding the specificity of the Ohio Plaintiffs' allegations is simply another rehashing of its Rule 9(b) argument and fails for the reasons set forth above.  *See also U.S. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (holding that overarching purpose of Rule 9(b) is to ensure that a defendant possesses sufficient information to respond to allegations).

Problems as early as the initial marketing and sale of the Machines; denied and continues to deny problems with the Machines when notified of the defect by its customers; and profited by its sale of its Affresh product.  (MCAC ¶¶ 25, 27, 29-32, 35, 38-39, 46-48, 51, 53.)  The Court should deny Whirlpool's motion to dismiss the OCSPA claims.

### D.      Plaintiff Glennon Has Stated a Valid Claim Under New York Law

The "expansive" language of New York General Business Law, N.Y. Gen. Bus. Law Section 349 ("§ 349") was intended to encompass circumstances "far beyond the reach of common law fraud."  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002).  To assert a § 349 claim, a plaintiff is not subject to the particularity requirements of Rule 9(b), and instead merely must satisfy the "bare bones notice-pleading requirements of Rule 8(a)."  *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. 3d 508, 511 (2d Cir. 2005).  The requirement that a plaintiff plead a "consumer-oriented act" under § 349 is construed liberally. Allegations that a defendant directed acts of deception at a broad group of individuals are sufficient.  *See Feldman*, 210 F. Supp 2d at 301.

The "deceptive" conduct requirement for § 349 is defined objectively, looking to whether a representation is likely to mislead a reasonable consumer acting reasonably under the circumstances, and can include omissions as well as affirmative misstatements.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995).  A plaintiff adequately pleads deception under § 349 by alleging that defendant failed to disclose material information.  *Id.*  In *Harper*, the court denied LG's motion to dismiss the plaintiffs' § 349 claims.  595 F. Supp. 2d at 489 n.4, 491.

Whirlpool's argument fares no better.  Glennon alleges that Whirlpool knew about the design defect in the Washing Machines that causes the Mold Problems, made misrepresentations about the quality of the Machines, and omitted material facts concerning the defect.  (MCAC ¶¶

-16-

25, 27, 29-32, 35-39, 46, 51-53.)  His experiences mirror those of thousands of owners of the

Machines as reflected on numerous Internet postings and confirmed by Whirlpool's service

technicians and the creation/sales of remediation products.  (*Id.* ¶¶ 43-47, 58.)[12]

### E.   Plaintiff Schaeffer Has Stated a Claim Under California Law

Whirlpool argues that Plaintiff Schaeffer's claim under California's Unfair Competition

Law ("UCL") should be dismissed because she fails to allege conduct that is (1) unlawful, (2)

unfair, or (3) fraudulent.  Whirlpool ignores Plaintiffs' detailed allegations of  its conduct

violating all three prongs of the UCL.  (MCAC ¶¶ 25, 27, 29-32, 35-39, 46, 51-53.)

### 1.   Plaintiff Schaeffer Has Alleged That Whirlpool Engaged in "Unlawful" Business Practices

Plaintiff Schaeffer has adequately stated claims under – and Whirlpool has not moved to

dismiss – *inter alia*, the California Consumer Legal Remedies Act ("CLRA") and Cal. Code

§§ l668, 1709-1710, as well as under the Song Beverly Consumer Warranty Act, Cal. Civil Code

§ 1790, *et seq*., and Cal. Com. Code § 2313.[13]  If Plaintiff proves Whirlpool violated these

statutes, she will have proven all that is required to prevail upon the "unlawful" prong of his

UCL claim.[14]  *See Kasky v. Nike Inc.*, 27 Cal. 4th 939, 949 (2002) ("By defining unfair

---

[12] Whirlpool argues that Plaintiffs have not alleged facts indicating that Whirlpool knew or should have known that the Duet washers were "substantially likely" to accumulate mold or mildew.  (*See* Whirlpool Br. at 19.)  This characterization is undercut by Whirlpool's creation and marketing of the Affresh product designed to combat the exact condition of which Whirlpool claims it was unaware.  (*See* MCAC ¶¶ 45-48 (describing Affresh and Whirlpool's acknowledgment that Mold Problems in its Washing Machines were widespread).)

[13] Of these, the only claim which Whirlpool has sought to dismiss is Plaintiff Schaeffer's Song Beverly claim. (Whirlpool Br. at 35-36.)  Even with respect to that claim, Whirlpool's argument is a technical one based on the timing of her purchase – Whirlpool does not argue that her allegations fail to adequately state the elements for a Song Beverly claim.  Plaintiffs address the merits of that argument *infra* Part III.F.

[14] Whirlpool's reliance on *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) and *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007), is misplaced. In both *Daugherty* and *Berryman*, the courts found that plaintiffs could not maintain UCL claims under the "unlawful" prong of the UCL because they had not pled facts to support findings of

-17-

competition to include any '*unlawful* . . . business act or practice,'... .  The UCL permits

violations of other laws to be treated as unfair competition that is independently actionable").

### 2.   Plaintiff Schaeffer Has Alleged That Whirlpool Has Engaged in "Unfair" Business Practices

California courts recognize two standards for assessing unfairness under the UCL.  *See*

*Bardin v. DaimlerChrylser*, 136 Cal. App. 4th 1255, 1264-73 (2006).  One standard comes from

*Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917 (2003), and provides that the offending

conduct "must be 'tethered' to specific constitutional, statutory or regulatory provisions."

*Bardin*, 136 Cal. App. 4th at 1271.  California's UCL "borrows violations of other laws and

treats them as unlawful practices that the unfair competition law makes independently

actionable."  *California Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.,*

142 Cal. App. 4th 21, 27 (2006).  The second standard comes from *Smith v. State Farm Mut.*

*Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001), and provides that "[a]n 'unfair' business practice

occurs when that practice offends an established public policy or when the practice is immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Bardin*, 136 Cal.

App. 4th at 1268.

An "unfair" practice under the UCL is one "whose harm to the victim outweighs its

benefits."  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 839 (1994).  To demonstrate that

conduct is unfair under the UCL, consumers need only show an alleged practice where "the

consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or

to competition, and is not an injury the consumers themselves could reasonably have avoided."

*Daugherty*, 144 Cal. App. 4th at 839.

---

such violations.  In contrast, Plaintiffs here have unquestionably alleged violations of numerous
statutes, including, *inter alia*, the CLRA and Cal. Code §§ l668, 1709 and 1710.

Whirlpool ignores Schaeffer's allegations that Whirlpool knew of the design defect plaguing the Washing Machines and failed to disclose the defect to consumers, resulting in consumers sustaining economic damages.  (MCAC ¶¶ 35, 39, 50-51.)  Moreover, she alleges Whirlpool's knowledge of the defect and its failure to disclose the true nature of the defect or otherwise remedy the defect.  (*Id.* ¶¶ 35, 44-46, 51.)

Based on these allegations, Schaeffer satisfies the *Saunders* factors.  First, the injury was substantial – consumers spent thousands of dollars for Washing Machines that have Mold Problems and are essentially useless for the purposes for which they were purchased.  *See Islip v. Mercedes-Benz USA, Inc.*, 155 Cal. App. 4th 19, 22-23 (2007) (car's defects, including smoke from exhaust pipe, rendered it unfit for the ordinary use for which the car was intended).  These alleged injuries clearly constitute "substantial injury" and are sufficiently pled at this stage of the litigation.  *See Hicks*, 89 Cal. App. 4th at 922 (*citing Anthony v. Gen. Motors Corp.*, 33 Cal. App. 3d 699 (1973) ("The defect [in the truck wheels] did not *cause* the plaintiffs' injury; the defect *was* the injury") (emphasis in original).

Second, the injury to consumers is not outweighed by any countervailing benefits to consumers or competition.  Schaeffer alleges that Whirlpool knowingly sold and distributed the defective Machines and failed to disclose the defect to consumers.  The only "benefit" of such conduct inures to Whirlpool itself, as it has attempted to profit from the defect by selling additional products to consumers who are forced to take (ineffective) corrective actions.

In *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965 (1997), the California Court of Appeals engaged in a balancing of equities under the "unfair" prong of the UCL.  The court found that the defendant's conduct was not "unfair" because of its prompt and over-inclusive recall of its defective products, as well as public announcements concerning the defects and

recall.  *Id.* at 967-70.  The proactive conduct in *Klein* stands in stark contrast to the allegations regarding Whirlpool's conduct here.

Third, consumers here could not have reasonably avoided their injuries here.  Only Whirlpool could have done that.

### 3.   Plaintiff Schaeffer Has Adequately Alleged That Whirlpool Engaged in Fraudulent Trade Practices

Whirlpool argues that Schaeffer does not plead fraud under the UCL with sufficient specificity.  To state a cause of action under the fraudulent prong of the UCL, Plaintiff need only allege that the challenged conduct presents the likelihood of public deception.  *Williams v. Gerber Prods. Co.¸* 552 F.3d 934, 938 (9th Cir. 2008) (UCL claims "are governed by the 'reasonable consumer' test," whereby a plaintiff must show that "members of the public are likely to be deceived"); *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1146 (2001).

Here, as detailed above, Schaeffer alleges that despite its knowledge that its Machines caused Mold Problems, Whirlpool made misrepresentations and omitted material facts concerning the quality of its Machines.  (*See supra* Part II.)  These allegations are sufficiently specific to survive Whirlpool's motion to dismiss.  *See Chamberlan v. Ford Motor Co.*, 2003 WL 25751413, at *4 (N.D. Cal. Aug. 6, 2003) (refusing to dismiss UCL claim for purported lack of specificity where the complaint alleged that (1) defendant was aware of the defect; (2) defendant actively concealed the defect; and (3) defendant's conduct did not meet the reasonable expectations of consumers.).

In addition, Schaeffer alleges facts demonstrating that the defect is material and that Whirlpool intentionally concealed the defect from consumers.  (MCAC ¶¶ 25, 27, 29-32, 35, 38-39, 46, 51, 53.)  Taken together, Whirlpool's material omissions and affirmative misrepresentations clearly are "likely to deceive."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007).  Had Plaintiffs and consumers like them known of the design

-20-

defect and the Mold Problems, they would not have purchased the Machines.  (MCAC ¶¶ 39, 52.)

Plaintiffs' detailed factual allegations differentiate this case substantially from *Daugherty*, 144 Cal. App. 4th 824,[15] *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006), and *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008).  Reasonable consumers have basic, common sense expectations about the functions of a washing machine.  Such expectations patently include the fact that the machine will not befoul the very clothes it is supposed to clean.  This fact is indisputably material, and Whirlpool had a duty to disclose it. *See Rush v. Whirlpool Corp.*, 2008 WL 509562, at *5 (W.D. Ark. Feb. 22, 2008) (plaintiff adequately stated UCL claim based on Whirlpool's failure to disclose defect); *Falk*, 496 F. Supp. 2d at 1095-98 (allegations of failure to disclose known defects stated a cause of action under the fraudulent prong of the UCL); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998) (failure to disclose relevant facts may be fraudulent within the meaning of the UCL); *Khan v. Shiley Inc.*, 217 Cal. App. 3d 848, 858 (1990) ("a manufacturer of a product may be liable for fraud when it conceals material product information from potential users . . . whether the product is a mechanical heart valve or frozen yogurt").  Moreover, inasmuch as "materiality is generally a question of fact," *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 977 (1997), whether Whirlpool's alleged misrepresentations and omissions establish liability pursuant to the UCL should not be decided on a motion to dismiss.

---

[15] For instance, as described by the California Court of Appeal, the plaintiffs in *Daugherty* sought redress for defendant's failure "to disclose an engine defect that did not cause malfunctions in the automobiles *until long after the warranty expired*."  *Daugherty*, 144 Cal. App. 4th at 827 (emphasis added).  Indeed, the plaintiffs in *Daugherty* sought damages for engine defects in vehicles that dated back nearly 14 years.  *Id.* at 828.  Moreover, most of the plaintiffs had purchased the vehicles at issue used and, in some instances, had driven the vehicles as much as *169,000 miles*.  *Id.* at 828 (emphasis added) .  Here, on the contrary, Plaintiff Schaeffer specifically alleges that her Washing Machine failed shortly after the expiration of her warranty.  (MCAC  ¶¶ 73-74.)

III.   **Breach of Written or Implied Warranty**

    A.   **The Ohio Plaintiffs Are Not in Privity Under Ohio Law**

Plaintiffs agree that the Ohio Plaintiffs and the Ohio Class members are not in privity

and, for that reason, plead *tortious* breach of warranty.  To the extent the MCAC contains

allegations of *contractual* breach of warranty with respect to the Ohio Plaintiffs, Plaintiffs seek

leave to amend the MCAC to withdraw those allegations.[16]

    B.   **Plaintiffs Have Alleged Constructive Privity With Whirlpool Sufficient to
Sustain Warranty Claims in Arizona, California, Florida, Illinois, New York,
And North Carolina**

Whirlpool argues that Plaintiffs lack privity in Arizona, California, Florida, Illinois, New

York, and North Carolina, and therefore their implied warranty claims in those states should be

dismissed.  (Whirlpool Br. at 28.)[17]  It also argues that Arizona, Florida, and California require

privity for either implied or express warranty claims, and that the express warranty claims for

those states also should be dismissed.  (*Id.* at 32.)

Plaintiffs acknowledge that none of them is in literal privity with Whirlpool. That is, none

engaged in a direct transaction with Whirlpool to purchase the Machines. That fact, however, is

not dispositive of the privity issue in many states. Many states recognize the doctrine of

constructive privity (or apply its equivalent, a relaxed privity requirement) where, as here, a

manufacturer reaches out and expressly warrants a product to a remote consumer.  *See, e.g.*,

---

[16] Whirlpool argues that the laws of each Plaintiff's respective home state should govern that
Plaintiff's claims because that is where the individual Plaintiff purchased his/her Duet washer
and experienced problems with the washer.  (Whirlpool Br. at 26-27.)  Choice of law analysis is
flexible, *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 823 (1987), and a choice to apply a
particular State's law is permissible so long as it is "neither arbitrary nor fundamentally unfair,"
*Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981).  Plaintiffs have asserted their claims
pursuant to the laws of each Plaintiff's respective home state.  Plaintiffs agree that the
application of the laws of each Plaintiff's respective home state would constitute a permissible
choice of law.

[17] Whirlpool concedes that there is no privity requirement for implied warranty claims that
Plaintiffs assert pursuant to the laws of Indiana, New Jersey, and Texas.  (Whirlpool Br. at 25.)

*Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (2006) (manufacturer who expressly warrants its product to ultimate consumer brings itself into privity with that consumer for implied warranty claims); *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005) ("Indiana law does not require vertical privity between a consumer and a manufacturer as a condition to a claim by the consumer against the manufacturer for breach of the manufacturer's implied warranty of merchantability"); *Duall Bldg. Restoration, Inc. v. 1143 East Jersey Ave. Assocs., Inc.*, 652 A.2d 1225, 1229 (N.J. Super. Ct. 1995) (stating that New Jersey law "demands elimination of privity" for "suit[s] against a remote seller on an implied warranty of fitness for a particular purpose"); *Crest Container Corp. v. R. H. Bishop Co.*, 445 N.E.2d 19, 25 (Ill. App. Ct. 1982) ("privity is not required when the remote manufacturer knows 'the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements'"); *Abco Metals Corp. v. J.W. Imports Co., Inc.*, 560 F. Supp. 125, 128 (N.D. Ill. 1982) (privity requirement is satisfied where manufacturer has provided a written warranty with product); *Hininger v. Case Corp.*, 23 F.3d 124, 128 (5th Cir. 1994) (observing that Texas has "dispensed with the privity requirement and permitted a purchaser to assert an implied warranty claim for economic loss against a remote manufacturer of a finished product"); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 637 (Md. Ct. App. 1995) (under Maryland's UCC, "'vertical' privity, has been abolished for actions by the buyer," and "the buyer of goods can sue anyone listed in § 2-314(1)(a), which includes essentially the entire distribution chain"); *Lauria v. Ford Motor Co.*, 312 S.E.2d 190, 192 (Ga. Ct. App. 1983) (where an automobile manufacturer issues to a purchaser of one of its new automobiles a warranty as part of the sale, "certainly an implied warranty of merchantability is in effect despite the lack of actual privity"); *Hill v. James Walker Mem. Hosp.*, 407 F.2d 1036, 1040 n.4 (4th Cir. 1969) ("The rule in North Carolina in that

situation is that the warranty is addressed to the ultimate consumer, and lack of privity will not defeat the consumer's action for breach of warranty").

Thus, as to Plaintiffs in these states other than Ohio, constructive privity applies and their claims survive. Each has a contractual relationship stemming from Whirlpool's manufacturer's warranty, which Whirlpool provided in conjunction with the purchase of the Machines at issue in this case.  (MCAC ¶¶ 27-30, 51.)  Whirlpool marketed the Machines directly to them, and acted as an informational clearinghouse by providing its customers with information pertinent to the defective product, through its website.  Whirlpool has undertaken an implied warranty regarding the merchantability of its Machines directly to the public through its sale of machines, as well as through its website and other marketing means.  (*Id.* ¶¶ 25-30, 35, 51.)  Whirlpool is in constructive privity with these Plaintiffs based on its ongoing dealings with them, including by selling products to them and directing repair personnel to their homes, purportedly to rectify the mold problem which Whirlpool itself caused.  (*Id.* ¶¶ 43-51.)  The foregoing facts, as alleged in detail in MCAC, will be more fully developed through discovery.[18]  As a result, the non-Ohio Plaintiffs can assert claims for breach of implied warranty in all of the non-Ohio States,[19] and Whirlpool's motion to dismiss those claims should be denied.[20]

---

[18] Given the fact-intensive nature of the inquiry into the existence of privity, it is sufficient that Whirlpool has been put on notice of the existence of privity by the MCAC, and dismissal at the pleading stage would be premature.  *See, e.g.*, *Dewey v. Volkswagen, AG*, 558 F. Supp. 2d 505, 524 n.17 (D.N.J. 2008) (denying motion to dismiss warranty claims under New York law because "the issue of privity . . . involves issues of fact not appropriate for resolution at the motion to dismiss stage"); *Lady Di Fishing Team, LLC v. Brunswick Corp.*, 2007 WL 3202715, at *6 (M.D. Fla. Oct. 29, 2007) (even where privity is required, allegations of privity need be only minimal to survive motion to dismiss).

[19] In addition, inasmuch as the Court allows Plaintiffs to proceed with their implied warranty claims, Plaintiffs have a sufficient basis for their claims under the Magnuson-Moss Act.

[20] Whirlpool cites numerous cases that are distinguishable because they do not concern constructive privity.  *See Sanders v. City of Fresno*, 2006 WL 1883394 (E.D. Cal. 2006); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005); *Ocana v. Ford Motor Co.*, 992 So.2d 319 (Fla. App. Ct. 2008); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994 (N.D.Ill. 2008); *Lantz v. American Honda Motor Co., Inc.*, 2007 WL 1424614 (N.D. Ill. 2007);

-24-

In addition, Plaintiffs have alleged sufficient facts to establish an agency relationship between Whirlpool and the authorized retailers from whom Plaintiffs and members of the proposed Classes purchased their Machines.  (*See* MCAC ¶¶ 25-26, 43.)  Such a relationship, if proven, is an alternative to privity that establishes the requisite connection between the non-Ohio Plaintiffs and Whirlpool, even in the absence of literal privity.  *See, e.g.*, *Budd v. Quinlan*, 860 N.Y.S. 2d 802, 804 (N.Y. Sup. Ct. 2008) (privity requirement satisfied when the defendant is "in business" with the buyer's immediate seller, where the seller is an authorized dealer).

### C.     The Express Warranty Claims of the Arizona, Florida, California and Maryland Plaintiffs Are Not Subject To Dismissal For Lack of Privity

Whirlpool also argues for dismissal of Plaintiffs' *express* warranty claims under the laws of Arizona, Florida, California and Maryland based on a lack of privity.  As argued above, with the exception of the Ohio Plaintiffs, Plaintiffs have pled facts sufficient to establish constructive privity under the laws of each State.  It would be an odd rule indeed that allowed a manufacturer to expressly warrant its product in writing to a consumer and then deny that consumer and recovery based on a lack of literal privity.

### D.     Plaintiffs Werman, Glazer, Hollander, Beierschmitt and Gardner State Valid Express Warranty Claims

Whirlpool moves to dismiss the express warranty claims asserted by Plaintiffs Werman, Glazer, Hollander, Beierschmitt, and Gardner, arguing that they merely list the boilerplate elements of a breach of express warranty.  (Whirlpool Br. at 32.)  Plaintiffs, however, have made numerous specific allegations supporting their express warranty claims, which are based upon the following five sets of factual allegations:

---

*Kowalke v. Bernard Chevrolet, Inc.*, 2000 WL 656660 (N.D. Ill. 2000); *Carpinone v. Zucker*, 241 A.D.2d 596 (N.Y. App. Div. 1997).

- Whirlpool provided a written one-year warranty that it would repair any defects in the workmanship or materials in the Washing Machines, and a written limited lifetime warranty to repair or replace the stainless steel drum (MCAC ¶¶ 27-28);

- Whirlpool marketed and advertised the Washing Machines as being free of Mold Problems and other defects (*Id.* ¶ 9);

- The Washing Machines' "ENERGY STAR" labels inform customers that the Machines meet particular regulatory specifications and are energy and water efficient (*Id.* ¶ 30);

- Whirlpool's "Use & Care Guides" instructed customers that Mold Problems would be avoided or eliminated through (a) use of the recommended HE detergent as well as (b) leaving the door open between uses (*Id.* ¶¶ 31-32); and

- Whirlpool represented that its Affresh product would remedy the Mold Problems.  (*Id.* ¶¶ 46-47.)

Plaintiffs allege that Whirlpool's failure to remedy the Mold Problems, despite ample notice, constitutes a breach of each of these express warranties.  Moreover, notice is not required where the breach of warranty "arises independently of a contract of sale between the parties." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492, 514 (1963); *see also In re HP Inkjet Printer Litig.*, 2006 WL 563048, at *5 (N.D. Cal. Mar. 07, 2006) ("[E]ven if Plaintiffs did not give timely notice of breach of express warranty to [Defendant], the claim is not barred" because "Plaintiffs bought their . . . printers from retail sellers" and "[Defendant's] express warranties were not contained in the contract of sale between the Plaintiffs and the retail sellers, but instead were created independently in [Defendant's] brochure"); *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) ("statutory demand for notice might be satisfied by proof of complaints from some but not all of the buyers of the product," and relieving remote consumers of an individual notice requirement "might be particularly appropriate where the failure of the merchandise to conform to express warranties was known to or reasonably discoverable by the seller at the time of the sales"); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab.*, 155 F. Supp. 2d 1069, 1111 (S.D. Ind. 2001) (adequacy of notice "involves the resolution of questions of fact").

-26-

Whirlpool further argues for dismissal based upon the fact that these five Plaintiffs' failed to contact Whirlpool during the limitations period on its one-year washer warranty (Warranty # 1).  This argument fails for two reasons.  First, Whirlpool's persistent inability to alleviate the Class Members' Mold Problems rendered the limited remedies available under the one-year written warranty – repair of the Machines by a designated Whirlpool service technician – a nullity and the limitations imposed by that warranty unenforceable.  Second, the five categories of express warranties alleged in the MCAC are independent and cumulative, and the one-year limitation on Warranty # 1 therefore does not apply to the remaining four.

### 1.   Plaintiffs' Factual Allegations Support Their Breach of Express Warranty Claims[21]

An express warranty can be created in three basic ways:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

U.C.C. § 2-313(1).  *See, e.g.*, *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057 (Ill. 2007); *Hungerford & Terry, Inc. v. Waterlink Separations, Inc.*, 2007 WL 2050320, at *3 (N.J. App. Div. 2007); *ISK Biotech Corp. v. Douberly*, 640 So.2d 85, 87 (Fla. App. Ct. 1994); *Boyas*

---

[21] Plaintiffs' detailed factual allegations, incorporated by reference into the express warranty claim (MCAC ¶¶ 157, 159), clearly distinguish this case from *Simmons v. Stryker Corp.*, 2008 WL 4936982 (D.N.J. 2008) and *Heisner ex rel. Heisner v. Genzyme Corp.*, 2008 WL 2940811 (N.D. Ill. July 25, 2008), cited by Whirlpool.  In those cases, plaintiffs' breach of warranty claims were "devoid of any 'factual matter' to support the existence of an express warranty" and simply recited the elements of a claim in conclusory fashion.  *Simmons*, 2008 WL 4936982 at *2; *Heisner*, 2008 WL 2940811 at *8.

*Excavating, Inc. v. Powerscreen of Ohio, Inc.*, 139 Ohio App. 3d 201, 209 (Ohio Ct. App. 2000); Fla. Stat. Ann. § 672.313.

Affirmations of fact, promises, and descriptions of goods can take many forms and still create an express warranty. A seller does not have to use any specific or formal language to create an express warranty. U.C.C. § 2-313(2); *see also Liberty Lincoln Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 825 (3d Cir. 1999).

Whirlpool's written factory warranty provides that within one year of purchase, Whirlpool will "pay for any Factory Specified Parts and repair labor to correct defects in materials or workmanship" (Warranty #1 – which Whirlpool concedes is an express warranty).[22] (MCAC ¶ 27.) In addition, each of the above categories of representations may create an express warranty under these standards. These include: advertising and promotional materials,[23] labeling,[24] product specifications,[25] and user manuals and instructions.[26] Express warranties can

---

[22] *See, e.g., Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).

[23] *See, e.g. In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 WL 4126264, at *4 (D.N.J. 2008) (in applying the law of Alabama, Arkansas, California, Illinois, and New Jersey, denied motion to dismiss claim for breach of express warranty when Plaintiff claimed that Defendant's advertisements created an express warranty); *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 100 (Tex. 2004) (advertisement in a magazine could create an express warranty, even if the parties never discussed it and omitted it from the extensive written contracts); *Crank v. Firestone Tire & Rubber Co.*, 692 S.W.2d 397, 401 (Mo. App. Ct. 1985). The brochure or advertisement does not need to specifically guarantee or warrant that the goods will conform to the descriptions and affirmations of fact; all that is required is that the description of the goods would naturally induce the purchase of the product, and no particular reliance by the buyer on the statement needs to be shown. *Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 841 (2005) (*citing Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 563 (3d Cir. 1990)).

[24] *See, e.g., Gooch v. E.I. Du Pont de Nemours & Co.*, 40 F. Supp. 2d 863, 869 (W.D. Ky. 1999); *Indust-Ri-Chem Lab., Inc. v. Par-Pak Co., Inc.*, 602 S.W.2d 282, 288 (Tex. Civ. App. 1980) ("we perceive no distinction between furnishing samples to induce the purchase, and inducing purchase by representing the quality of goods in advertising and on labels accompanying the goods."); *Lindemann v. Eli Lilly & Co.*, 816 F.2d 199, 202 (5th Cir. 1987).

[25] *See, e.g., S-C Indus. v. Am. Hydroponics Sys.*, 468 F.2d 852, 854-55 (5th Cir. 1972); *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 570-72 (E.D. Va. 2006).

[26] *See, e.g., Sharrard, McGee & Co., P.A. v. Suz's Software, Inc.*, 396 S.E.2d 815, 818 (N.C. App. Ct. 1990); *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 625 (2006) (instructions to take

even be formed when the buyer is not aware of the affirmation at the time of the sale.  *See, e.g.*, *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 625 (Md. 2006) (express warranties may be formed prior to the completion of the sale or *even after the sale has been consummated*") (emphasis added).  Whether a particular representation creates an express warranty is generally a question of fact.  *See, e.g.*, *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 570-71 (E.D. Va. 2006); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 23-24 (1975) (a written warranty is presumed to be part of the bargain between the purchaser of the goods and the seller, and defendant has the burden of proving that "the resulting bargain *does not rest at all* on the representations of the seller") (emphasis added).

Plaintiffs allege that Whirlpool "marketed, advertised, and warranted that the defective Washing Machines were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects, *or at least at a minimum would not cause Mold Problems.*"  (*Id.* ¶ 29 (emphasis added).)  Despite its knowledge of these defects and of the Mold Problems they caused, and despite a barrage of complaints from its customers, Whirlpool failed to correct the defect.  (*Id.* ¶¶ 38-53.)  Plaintiffs allege that the Machines do suffer from Mold Problems, and ruin clothes and therefore do not conform to the descriptions and affirmations made in Whirlpool's marketing and advertising.

Whirlpool expressly held out its Machines as energy-efficient, and labeled the Machines with an "ENERGY STAR" logo, which indicates that they meet specific efficiency standards set forth by the U.S. Department of Energy (DOE) and Environmental Protection Agency (EPA).  (*Id.* ¶ 30.)  The DOE and EPA make affirmative representations regarding the economic and environmental benefits of ENERGY STAR qualified washers.[27]  Labeling the Washing

---

medication with food and milk created an express warranty that the medication was compatible with food or milk).

[27]  See www.energystar.gov/index.cfm?c=clotheswash.clothes_washers_save_money:

807077.8

Machines with the "ENERGY STAR" logo, then, is an affirmation of fact about the goods, and further incorporates the statements proffered by the DOE and EPA.

Plaintiffs allege that given Whirlpool's representations, "Members of the Class have purchased the Washing Machines in part, on the basis that the Machines would save money and energy." (*Id.*)  However, in order to address the well-known and pervasive Mold Problems, Whirlpool has recommended that Plaintiffs and the members of the proposed Classes run empty cycles on a regular basis.[28]  (*Id.*)  Taking into account these additional cycles, the warranted efficiency benefits of the Washing Machines are greatly reduced.  (*Id.*)

In its Use & Care Guides, Whirlpool provided Plaintiffs and Class Members instructions on how to operate the Machines.  These guides indicate that the Machines will not experience Mold Problems if operated correctly – namely, if HE detergent is used and/or the door is left open when the machines are not in use.  Contrary to what the guides state, however, those who followed these instructions nevertheless experienced persistent Mold Problems.  (*Id.* ¶¶ 31-32.)

Whirlpool also warranted to Plaintiffs and consumers that Affresh would remedy the Mold Problems.  The packaging for Affresh tablets reads: "[r]emoves the odor-causing residue in HE Washers" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers."  (*Id.* ¶ 46.)  After these tablets failed

---

• "Purchasing an ENERGY STAR qualified model rather than a non-qualified model will save you an average of $50 a year on your utility bills.  Over the life of your new washer, you'll save enough money to pay for the matching dryer."

• "New ENERGY STAR qualified clothes washers use advanced technology to dramatically reduce water use. If you buy a non-qualified clothes washer, you'll use 18 more gallons of water every time you wash a load."

• "ENERGY STAR qualified clothes washers use less energy and help us reduce our impact on the environment. By reducing water consumption, ENERGY STAR qualified washers also help protect our lakes, streams, and oceans."

[28] In addition, Plaintiffs and Class Members have had to wash articles of clothing multiple times as a result of the odors created by the Mold Problems.  (MCAC ¶ 40)

to remedy the Mold Problems, Whirlpool created and marketed an Affresh Washing Cleaner Kit, which proved equally futile.  (*Id.* ¶ 47.)

### 2.   Whirlpool's Limitation on Remedies in Its Written Warranty Is Unenforceable Because it Fails in Its Essential Purpose

Whirlpool argues that Plaintiffs Werman, Glazer, Hollander, Biereschmitt, and Gardner cannot rely upon its written Washer Warranty (Warranty # 1) as a basis for their express warranty claim as they did not complain to Whirlpool within the one-year period imposed by Warranty # 1.  However, a limitation of remedies contained within a warranty is unenforceable where the remedies provided are ineffectual and fail in their essential purpose.[29]

As Plaintiffs have explained, Whirlpool has long-standing actual knowledge of the pervasive and uniform Mold Problems affecting its Washing Machines and persistently has been unable to proffer conforming goods.[30]  (*See supra* Part II.)  Whirlpool's suggested remedies do not address the inherent defect in the Machines and are wholly ineffective.[31]  Whirlpool has had more than adequate opportunity to cure the defective Machines, yet continues to fail to do so.[32]

---

[29] *See, e.g.*, *Milgard Tempering Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 707-08 (9th Cir. 1990) (contractual limitation of remedies fails when breaching manufacturer or seller is unable to make corrective repairs within a reasonable period); *Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 960-61 (N.D. Ohio 1997) (exclusive remedy of repair or replacement of defective parts fails of its essential purpose after numerous unsuccessful attempts to repair).

[30] In addition, Whirlpool's cited cases also can be distinguished.  In *Owens Transp. Serv. Inc. v. Int'l Truck & Engine Corp.*, 2006 WL 3545109 (N.D. Ohio 2006), the plaintiff was specifically seeking to recover for failure to repair items which were expressly "non-covered" under the written terms of the contract.  In *Cooper v. Samsung Electronics America, Inc.*, 2008 WL 4513924 (D.N.J. 2008), the relevant warranty contained an explicit notice element.

[31] *See also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 356 (N.D. Ill. 2005) (citing *Brooklyn Life Ins. Co. v. Dutcher*, 95 U.S. 269, 272 (1877) ("The law never requires an idle thing to be done"); *Hentz v. Hargett*, 71 F.3d 1169, 1174 (5th Cir. 1996) ("no one should be required to do a useless act").

[32] If the Court concludes that additional allegations are required to support Plaintiffs' unenforceability argument, Plaintiffs can – and hereby seek leave to – amend the MCAC to include such allegations.

### 3.   The One-Year Limitation in Whirlpool's Written Washer Warranty Does Not Apply To the Other Express Warranties

Warranties are to be construed as independent and cumulative whenever possible.

U.C.C. § 2-317; *see, e.g.*, *Kel-Keef Enters., Inc. v. Quality Components Corp.*, 316 Ill. App. 3d

998, 1015-16 (Ill. App. 2000).  Courts have held that restrictions on warranties for certain defects

do *not* apply to other express or implied warranties.[33]  Even if it is enforceable, the one-year

limitation governs *only* the specific written warranty in which it appears, *i.e.*, Warranty # 1.  It

does not apply to other express warranties, such as the representations made in Whirlpool's

advertising, labeling, user guides, or product specifications.  *See, e.g.*, *S-C Indus. v. Am.*

*Hydroponics Sys.*, 468 F.2d 852, 855-56 (5th Cir. 1972); *Community Television Servs., Inc. v.*

*Dresser Indus., Inc.*, 586 F.2d 637, 642-43 (8th Cir. 1978); *Gable v. Silver*, 258 So.2d 11 (Fla.

App. Ct. 1972) (implied warranty claim survived despite express warranty containing one-year

limitation).

Here, "the language in [Whirlpool's Washer Warranty] expressly limited [Plaintiffs']

recovery only for defects in materials or workmanship . . . .  No mention was made in the

guarantee of remedies for design defect; therefore, remedies for breach of the express warranty

related to design requirements were neither limited nor disclaimed."  *GT & MC, Inc. v. Texas*

---

[33] *See, e.g.*, *Ressallat v. Burglar & Fire Alarms, Inc.*, 606 N.E.2d 1001, 1006-07 (Ohio Ct. App. 1992) (implied warranties exist unless conspicuously disclaimed); *Singer Co. v. E. I. du Pont de Nemours & Co.*, 579 F.2d 433, 437 (8th Cir. 1978) (under the UCC, express warranty and implied warranty of fitness are not necessarily mutually exclusive); *In re Repco Prods. Corp.*, 100 B.R. 184, 196 (Bankr. E.D. Pa. 1989) (where express warranty is found and has in no conceivable manner been excluded or modified, it is almost axiomatic that breach of pertinent implied warranty of merchantability will be found as well); *Heat Exchangers, Inc. v. Aaron Friedman, Inc.*, 421 N.E.2d 336, 338 (Ill. App. Ct. 1981) (where purchase order for heat pumps contained one year warranty stating that seller's obligation was to repair all defects at its own expense and seller's engineering manual contained consistent, more limited one year warranty stating that seller was fully obligated to furnish replacement parts, the more extensive obligation contained in purchase order warranty controlled so that seller's obligation under contract during first year after delivery of heat pumps was to repair all defects at its own expense); *Tucson Util. Supplies, Inc. v. Gallagher*, 433 P.2d 629, 634 (Ariz. 1967) (implied warranties of merchantability and fitness may exist in addition to any express warranties not inconsistent).

*City Ref., Inc.*, 822 S.W.2d 252, 257 (Tex. App. Ct. 1991).  Here, Plaintiffs allege that inherent design defect that were not repairable through replacement parts or servicing, and that Whirlpool has not remedied the defects.  Whirlpool's written Washer Warranty does not limit recovery for breach of the other express warranties alleged in the MCAC.

### E.   Plaintiff Schaeffer's Song Beverly Act/Breach of Implied Warranty Claims Did Not Arise After the Expiration of the Implied Warranty

Under the Song Beverly Act, all purchases are accompanied by an implied warranty that the goods are "fit for the ordinary purposes for which such goods are used."  Cal. Civ. Code § 1791.1.  The statute is "manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action."  *Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1157-58 (1997).  Here, Plaintiffs allege that, at the time of their purchases, Whirlpool knew or should have known that its Washing Machines:  (a) contained inherent material defects; (b) were not of merchantable quality; and (c) would result in the formation of mold, mildew, residue or growth and moldy/mildewy and other foul odors, even when used as instructed.  (MCAC ¶ 50.)  Thus, at the time of sale, Plaintiff Schaeffer's Washing Machine was not fit for the ordinary purposes for which such products are used and was not substantially free of defects.

Whirlpool cites *Atkinson v. Elk Corp. Of Texas*, 142 Cal. App. 4th 212 (2006), a case which undermines rather than supports its argument.  Applying the statute of limitations rather than the expiration of the implied warranty, the court observed that "ordinarily, any breach of the implied warranty of merchantability would have accrued at the time of the sale . . . ."  *Id.* at 229.  The same holds true here.  Plaintiff Schaeffer's Machine was defective when Whirlpool sold it to her, and her claim for breach of implied warranty arose at the time of the purchase.  Whirlpool's motion to dismiss her warranty claims should be denied.

**IV.**   **The Economic Loss Rule Does Not Bar the Ohio Plaintiffs' Claims**

Whirlpool argues that the Ohio Plaintiffs cannot assert their claims based on negligent design and failure to warn because the economic loss rule prohibits such claims.  Courts applying Ohio law, however, repeatedly have allowed consumers to assert such claims.  *State Farm Mutual Automobile Insurance Co. v. Kia Motors America, Inc.*, 828 N.E.2d 701 (Ohio Ct. App. 2005), addressed and rejected the same economic loss argument Whirlpool makes.  The plaintiff, an insurance company, brought suit for losses sustained by its insureds, who had purchased a motor vehicle from the defendant which caught fire and was destroyed.  828 N.E.2d at 704.  The plaintiff sued for damage to the vehicle, alleging that the defendant "negligently designed, manufactured, distributed, marketed or sold [the vehicle]," it "negligently failed to warn of the dangers of the product," "the product was unsafe for its reasonably foreseeable intended use," the defendant "breached express and implied warranties," "the risks inherent in the design outweighed the benefits," and the defendant "failed to design and manufacture the vehicle in conformity with industry standards . . . ."  *Id.*  The only claim which the trial court dismissed was the plaintiff's statutory claim based on Ohio's Products Liability Act.  *Id.*  The remaining claims proceeded to trial, and the jury entered judgment against the defendant.  *Id.* at 704-05.

On appeal, the defendant argued that the plaintiff could not assert its common law products defect claims because Ohio law precludes such claims for economic damages only – the same argument which Whirlpool makes here.  *Id.* at 707.  The court rejected the argument, observing that "'[t]he failure to allege other than economic damages does not necessarily destroy the right to pursue common-law product liability claims.'"  *Id.* (quoting *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1146 (Ohio 2002)).  According to the court, "although a plaintiff may be precluded from asserting its claims under Ohio's Products Liability Act, it can still assert its common-law negligent-design claims."  *Id.* at 707 (internal quotation marks omitted).  "A plaintiff may also bring a common-law failure-to-warn claim."  *Id.*  After

-34-

observing that the counts which the defendant sought to dismiss "essentially allege common-law negligent-design and failure-to-warn claims" – the same claims which Whirlpool argues the economic loss rule prohibits – the court held that those claims were available to the plaintiff and affirmed the trial court's judgment. *Id.* at 708. *See also Beretta*, 768 N.E.2d at 1145, 1147 ("although appellant is precluded from asserting its claims [for economic damages only] under Ohio's Product Liability Act, it can still assert its common-law negligent design claims" and its "common-law failure-to-warn claim"); *Carrel v. Allied Prods. Corp.*, 677 N.E.2d 795, 800 (Ohio 1997) ("The common-law action of negligent design survives the enactment of the Ohio Products Liability Act").

Moreover, although the economic loss rule prohibits *commercial* parties that have entered a contract from asserting tort claims to recover purely economic losses, "Ohio courts continue to permit product liability claims by *individual consumers* for purely economic losses." *Avery Dennison Corp. v. Soliant LLC*, 2005 WL 2035511, at *2 (N.D. Ohio Aug. 23, 2005) (emphasis added); *see also Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 627 (Ohio Ct. App. 2003) (observing "the existence of a noncommercial consumer plaintiff's common-law products liability claim, based upon implied-warranty theory, to recover purely economic damages from a product supplier with whom the plaintiff [is] not in privity"); *Midwest Ford, Inc. v. C.T. Taylor Co.*, 694 N.E.2d 114, 117 (Ohio Ct. App. 1997) (same); *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996) (holding that the plaintiffs could assert a claim of breach of implied warranty for economic damages only).

Whirlpool's reliance upon *Chemtrol Adhesives, Inc v. American Manufacturers Mutual Insurance Co.*, 537 N.E.2d 624 (Ohio 1989), is off-point; the Sixth Circuit has distinguished *Chemtrol* as applying only to *commercial* buyers. In *HDM Flugservice GMBH v. Parker*

*Hannifin Corp.*, 332 F.3d 1025 (6th Cir. 2003), the Sixth Circuit reviewed the district court's

dismissal of a commercial plaintiff's negligence claim, and wrote:

> The district court found, based on the cautionary dicta in *Chemtrol*, that
> parties lacking privity might be subject to the economic loss rule under
> some circumstances and that commercial parties lacking privity, *as
> opposed to non-commercial parties*, would be foreclosed from recovering
> economic losses.  We agree.

332 F.3d at 1029-30 (emphasis added).  *See also Trgo v. Chrysler Corp.*, 34 F. Supp. 2d 581, 594

(N.D. Ohio 1998) ("Thus, whether privity exists or not, *commercial* parties cannot recover for

solely economic loss in tort under Ohio law") (emphasis added).

    This Court recently held that consumers may assert implied warranty claims under Ohio

common law purely for economic losses.  *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*,

2008 WL 746669, at *8-9 (N.D. Ohio March 18, 2008) (observing that the plaintiff's implied

warranty claim against manufacturer for defective pre-fabricated houses "sounds in tort" and

denying motion to dismiss that claim).[34]

    None of the cases Whirlpool cites resemble the present one:  a lawsuit by consumer

purchasers for negligent design, failure to warn, and/or breach of implied and express warranties.

Whirlpool's cases involve sophisticated commercial parties that entered contracts, *see Picker

Int'l, Inc. v. Mayo Foundation*, 6 F. Supp. 2d 685, 688-89 (N.D. Ohio 1998) (negligent

misrepresentation claim asserted by a software licensor against its licensee); *Cincinnati Gas &

Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 60 (S.D. Ohio 1986) (claims to recover economic

loss where there was "written contract between sophisticated parties"), and/or involve claims that

the Ohio Plaintiffs do not assert, *see Picker*, 6 F. Supp. 2d at 688-89; *Lee v. Chrysler Corp.*, 2005

---

[34] Although the Court in *Flex Homes* dismissed the plaintiff's warranty claims pursuant to Ohio's
version of the U.C.C. as well as the negligence claims pursuant to Pennsylvania law, the Ohio
Plaintiffs do not assert those claims in this case.  *See* 2008 WL 746669, at *8-10.

WL 449762, at *2-3 (Ohio Ct. App. Feb. 22, 2005) (statutory claims based on Ohio's Lemon

Law, R.C. 1345.76).

Moreover, inasmuch as Whirlpool's economic loss argument is based on the privity

requirements under Ohio law, this Court has held that this issue cannot be decided on a motion to

dismiss:  "It is premature at this stage to determine [on a motion to dismiss] whether any

contractual arrangement Plaintiff may have had with Whirlpool will serve to bar Plaintiff's claim

for implied warranty in tort.  The Court cannot yet conclude Plaintiff is unable to prove any set

of facts in support of her claim for breach of implied warranty in tort."  *Nessle v. Whirlpool

Corp.*, 2008 WL 2967703, at *5 (N.D. Ohio July 25, 2008).

**V.      Plaintiffs Have Sufficiently Pled Facts To State Their Unjust Enrichment Claims**

      **A.      A Showing That Whirlpool's Conduct Was Wrongful Is Not Required**

Whirlpool argues that Plaintiffs' unjust enrichment claims should be dismissed because

Plaintiffs have not pled any facts showing that Whirlpool's conduct was "wrongful."  (Whirlpool

Br. at 38).  That, however, is not a requirement for establishing unjust enrichment.

Each of the Class States follows or has cited with approval the definition of unjust

enrichment set forth in the *Restatement (First) of Restitution*, which provides that a "person who

has been unjustly enriched at the expense of another is required to make restitution to the other."

Under the laws of each of these States, and following the *Restatement* definition, a plaintiff must

establish that (1) the defendant received a benefit (2) at the plaintiffs' expense (3) under

circumstances that make it unjust or inequitable for the defendant to retain the benefit.[35]

---

[35] *See, e.g., Murdock-Bryant Constr. Inc. v. Pearson*, 703 P. 2d 1197, 1202 (Ariz. 1985);
*F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 356-57 (2008); *Hirsch v. Bank of America*, 107 Cal.
App. 4th 708, 721 (2003); *Timberland Consol. P'ship v. Andrews Land & Timber*, Inc., 818
So.2d 609, 611 (Fla. Dist. Ct. App.2002); *Circle Fin. Co. v. Peacock*, 399 So.2d 81, 84 (Fla.
Dist. Ct. App. 1981); *Fortech L.L.C. v. R.W. Dunteman Co., Inc.*, 852 N.E.2d 451, 463 (Ill. App.
Ct. 2006); *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E. 2d 142, 151 (Ill. App. Ct. 1995);
*Jackson v. 2109 Brandywine, LLC*, 952 A.2d 304, 327 (Md. Spec. App. 2008); *Castro v. NYT
Television*, 851 A.2d 88, 95 (N.J. Super. Ct. App. Div. 2004); *Dunkin' Donuts, Inc. v.*

Wrongful conduct is not an element of unjust enrichment.[36]  *See, e.g.*, *Williams v. National Housing Exchange Inc.*, 949 F. Supp. 650, 652-653 (N.D.Ill. 1996) (applying Illinois law, the action need not contain an allegation of wrongful conduct by the defendant.).

Plaintiffs have alleged that Whirlpool was enriched at Class Members' expense through sales of its Washing Machines, Affresh products, and from repair and maintenance services. (MCAC ¶ 52).  This enrichment is unjust because Whirlpool designed, marketed, and sold defective Machines at full price, and induced Plaintiffs to buy useless Affresh products to address the Mold Problems and pay for unsuccessful repair attempts.  These allegations are sufficient to state a claim for unjust enrichment.  For example, in *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2008 WL 4126264 (D.N.J. 2008), the district court applied the state laws of Alabama, Arkansas, California, Illinois, and New Jersey.  The court denied a motion to dismiss Plaintiffs' unjust enrichment claim when Plaintiffs alleged that they purchased a defective product that was marketed and sold by Ford for the price of a non-defective product and that, as a consequence, Ford received a benefit from the sales at the plaintiffs' expense.  Plaintiffs also alleged that Ford obtained additional benefits in the form of revenues from repairs to E350 vans that failed after the expiration of the 90-day "Limited Warranty."  Based on these allegations, the court denied the motion to dismiss the unjust enrichment claims.

Whirlpool cites *Bettua v. Sears, Roebuck and Co.*, 2009 WL 230573 (N.D.Ill. 2009) in arguing that Plaintiffs have not pled facts with sufficient particularity to sustain their unjust enrichment claims.  *Bettua*, however, concerned unjust enrichment claims that sounded in fraud,

---

*Middletown Donut Corp.*, 495 A. 2d 66, 75 (N.J. 1985); *Smith v. Chase Manhattan Bank, USA*, 293 A.D.2d 598, 600 (N.Y. App. Div. 2002); *Sharp v. Kosmalski*, 351 N.E. 2d 721, 724 (N.Y. 1976); *Progressive American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 647 S.E.2d 111, 116 (N.C. Ct. App. 2007); *Dixon*, 695 N.E.2d 284, 289 (Ohio Ct. App. 1997); *Mowbray v. Avery*, 76 S.W.3d 663, 678 (Tex. App. 2002).
[36] Even if it were, however, Plaintiffs have adequately alleged that Whirlpool's misrepresentations and omissions constitute "wrongful" conduct.  (MCAC ¶¶ 9, 30, 38-39, 41-46, 80-83.)

and the court dismissed the unjust enrichment claims based on its dismissal of the consumer

protection statute claims.  *Id.* at 5.  For reasons previously set forth, however, Plaintiffs' have

adequately stated their consumer protection claims, which are premised on allegations that are

more detailed than the *Bettua* complaint.  (*See supra* Part II.)  Plaintiffs have adequately alleged

facts satisfying the elements of unjust enrichment pursuant to the laws of each Class State, and

the Court should deny Whirlpool's motion to dismiss those claims.

    **B.**    **Plaintiffs the Allisons, Glazer and Sandholm-Pound's Engaged in  Economic Transactions with Whirlpool**

Whirlpool argues that Plaintiffs the Allisons and Sandholm-Pound did not purchase their

Washing Machines directly from Whirlpool (but from independent retailers), that there was no

economic transaction between them and  Whirlpool, and that Ohio and New Jersey law requires

such an economic transaction for unjust enrichment claims, and that those claims therefore

should be dismissed.  (Whirlpool Br. at 36-38.)

> The MCAC alleges that:
> Whirlpool has profited, either directly or indirectly, by concealing the
> nature of the Design Defects and misrepresenting the cause of the Mold
> Problems associated with the defects, which have enabled it (a) to sell the
> Washing Machines at premium prices, (b) to profit on repair services
> purportedly to fix the Mold Problems, (c) and to sell Whirlpool Washing
> Machine-related products such as Affresh (from which Whirlpool earns a
> profit) which it misrepresented as capable of addressing and resolving the
> Mold Problems arising from the defects at issue.

(MCAC ¶ 41.)  Plaintiffs also allege that they purchased Affresh brand products from Whirlpool

and/or had Whirlpool send employees to service the defective machines.  (*Id.* ¶¶ 56, 71).  The

Allisons and Sandholm-Pound have had economic transactions with Whirlpool,[37] and

Whirlpool's motion to dismiss their unjust enrichment claims should be denied.

---

[37] Plaintiffs reiterate their concession that the Ohio Plaintiffs, including the Allisons, do not have
privity with Whirlpool, and that the economic transactions alleged in the MCAC do not establish
privity pursuant to Ohio law.

## VI.  Conclusion

For these reasons, Plaintiffs respectfully request that the Court deny Whirlpool's motion to dismiss.  In the event the Court decides to grant Whirlpool's motion in any respect, Plaintiffs further request leave to amend the MCAC to address any deficiency which the Court might find.

Dated:  April 3, 2009                    Respectfully submitted,


By:_____*/s/ Jonathan D. Selbin*_____
            Jonathan D. Selbin

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592



By:_____*/s/ Mark P. Chalos*_____
            Mark P. Chalos

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN  37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965



By:_____*/s/ George Lang*_____
            George Lang

FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, IL  60602
Telephone:  (312) 220-0000
Facsimile:  (312) 220-7777

By:     */s/ James C. Shah*
           James C. Shah

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State Street
Media, PA  19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883

By:     */s/ Steven A. Schwartz*
           Steven A. Schwartz

CHIMICLES & TIKELLIS LLP
One Haverford Centre
Haverford, PA  19041
Telephone:  (610) 645-4720
Facsimile:  (610) 649-3633

By:     */s/ Steven Wittels*
           Steven Wittels

SANFORD WITTELS & HEISLER, LLP
950 Third Avenue, 10th Floor
New York, NY  10022
Telephone:  (646) 723-2454
Facsimile:  (646) 723-2948

By:     */s/ Jonathan Shub*
           Jonathan Shub

SEEGER WEISS LLP
1515 Market Street
Philadelphia, PA  19102
Telephone:  (215) 564-2300
Facsimile:  (215) 851-8029

807077.8

By:_____*/s/ Brian Ruschel*_____
           Brian Ruschel

925 Euclid Avenue, Suite 660
Cleveland, OH  44115
Telephone:  (216) 621-3370
Facsimile:  (216) 621-3371

By:_____*/s/ Mark Schlachet*_____
           Mark Schlachet

LAW OFFICE OF MARK SCHLACHET
3637 South Green Road, 2nd Floor
Beachwood, OH  44122
Telephone:  (216) 896-0714
Facsimile:  (216) 514-6406

*Attorneys for Plaintiffs and the Proposed Class*

807077.8

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2009, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

*/s/ Mark P. Chalos*
Mark P. Chalos
LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN  37219
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965
mchalos@lchb.com

807077.8