UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **In re: WHIRLPOOL CORP. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION** | **1:08-wp-65000**<br><br>**MDL No. 2001**<br><br>**Class Action**<br><br>**Judge:  James S. Gwin** |

## SECOND AMENDED MASTER CLASS ACTION COMPLAINT

Plaintiffs Gina Glazer, Trina Allison, Jeff Glennon, Mara Cohen, Karen P. Hollander, Jane Werman, Sonja Sandholm-Pound, Shannon Schaeffer, Paula Call, Bonnie Beierschmitt, Phil Torf, Sylvia Bicknell, Rebecca Nordan, Maggie O'Brien, Andrea Strong, Pramila Gardner, and Tracie Snyder (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this class action individually and on behalf of the Classes defined below (the "Classes" or collectively, the "Class"), against Whirlpool Corporation ("Whirlpool" or "Defendant"), to obtain relief, including, among other things, damages and injunctive relief.

2.     This action is brought to remedy violations of law in connection with Whirlpool's design, manufacture, marketing, advertising, selling, warranting, and servicing of its Duet, Duet HT and Duet Sport Front-Loading Automatic Washers (the "Washing Machines" or "Machines").  These Washing Machines have serious design defects (collectively "Design Defects") that cause them to (a) accumulate mold and

mildew and/or residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates the Washing Machines and/or consumers' homes, (c) produce a mold or mildew odor on clothes and other items washed in the Machines, (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.  The problems caused by the Design Defects are collectively referred to as "Mold Problems."

3.      Plaintiffs assert claims for violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et seq*.; tortious breach of warranty; negligent design and failure to warn; the Magnuson-Moss Act (15 U.S.C. §§2301-2312) with respect to Whirlpool's written and implied warranties; breach of express and implied warranty and unjust enrichment under various States' laws; and for violation of various States' Consumer Protection/Deceptive Practices acts.

## THE PARTIES

### PLAINTIFFS

4.      Plaintiff Gina Glazer is and at all relevant times has been a resident and citizen of Ohio.

5.      Plaintiff Trina Allison is and at all relevant times has been a resident and citizen of Ohio.

6.      Plaintiff Jeff Glennon is and at all relevant times has been a resident and citizen of New York.

7.      Plaintiff Mara Cohen is and at all relevant times has been a resident and

2

citizen of New York.

8.      Plaintiff Karen P. Hollander is and at all relevant times has been a resident and citizen of Florida.

9.      Plaintiff Sylvia Bicknell is and at all relevant times has been a resident and citizen of Florida.

10.      Plaintiff Jane Werman is and at all relevant times has been a resident and citizen of Illinois.

11.      Plaintiff Phil Torf is and at all relevant times has been a resident and citizen of Illinois.

12.      Plaintiff Sonja Sandholm-Pound is and at all relevant times has been a resident and citizen of New Jersey.

13.      Plaintiff Shannon Schaeffer is and at all relevant times has been a resident and citizen of California.

14.      Plaintiff Paula Call is and at all relevant times has been a resident and citizen of California.

15.      Plaintiff Bonnie Beierschmitt is and at all relevant times has been a resident and citizen of New Jersey.

16.      Plaintiff Rebecca Nordan is and at all  relevant times has been a resident and citizen of Maryland.

17.      Plaintiff Maggie O'Brien is and at all relevant times has been a resident and citizen of Indiana.

18.      Plaintiff Andrea Strong is and at all relevant times has been a resident and citizen of  Arizona.

3

19.     Plaintiff Pramila Gardner is and at all relevant times has been a resident and citizen of Texas.

20.     Plaintiff Tracie Snyder is and at all relevant times has been a resident and citizen of North Carolina.

21.     As set forth below, each of the Plaintiffs purchased a Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent, and each has been experiencing Mold Problems in the Machine and on items washed in the Machine. Plaintiffs provided Whirlpool with sufficient pre-suit notice of Mold Problems and unsuccessfully tried Whirlpool's various recommendations to fix the problems.

## WHIRLPOOL

22.     Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a class action in which the Class members and Whirlpool are citizens of different states.

24.     Venue is proper in this judicial district under 28 U.S.C. §1391, because Whirlpool does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  At all pertinent times, Whirlpool was and is in the business of marketing, advertising, distributing and selling products, including the Washing Machines, throughout Ohio and this judicial district, and

4

nationwide, by and through various authorized dealers.  The Washing Machines that form

the basis of this Complaint were purchased from Whirlpool and/or from Whirlpool's

authorized dealers and placed in the stream of commerce by Whirlpool.

25.     Furthermore, the United States Judicial Panel on Multidistrict Litigation

has transferred all similar actions to this jurisdiction.  Plaintiffs reserve their right to seek

remand for trial of all actions transferred by the MDL Panel.

## FACTUAL BACKGROUND

### Facts Common To The Class

26.     Whirlpool holds itself out to the public as a manufacturer of safe, cutting-

edge, and easy-to-use home appliances, including washing machines.  Whirlpool is in the

business of manufacturing, producing, distributing, and/or selling washing machines

throughout the United States.

27.     Whirlpool manufactured, produced, and/or distributed front-loading

Washing Machines for sale by its network of authorized dealers including several leading

retailers in the United States, such as Lowe's, Sears, Best Buy, PC Richard and Son, and

other large retail chains.

28.     Whirlpool provided Plaintiffs and each purchaser of the subject Washing

Machines with an express one-year factory warranty as follows:

> For one year from the date of purchase, when this major appliance is
> operated and maintained according to instructions attached to or furnished
> with the product, Whirlpool Corporation or Whirlpool Canada LP
> (hereafter "Whirlpool") will pay for Factory Specified Parts and repair
> labor to correct defects in materials or workmanship.

Whirlpool has these same obligations with respect to Plaintiffs and all Class members,

but has failed to satisfy these obligations.

5

29.     In recognition of the anticipated useful life of the Machines, Whirlpool also provided a "limited lifetime warranty on the stainless steel drum" for most of the Whirlpool Duet and Duet HT Machines.  This warranty stated that, "for the lifetime of the washer," Whirlpool would "pay for FSP® (factory specified products), replacement parts for the Stainless Steel wash drum if defective in materials or workmanship."

30.     In conjunction with each sale, Whirlpool marketed, advertised, and warranted that the defective Washing Machines were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems.

31.     Whirlpool also made express representations about the quality of its Washing Machines.  For example, Whirlpool sold the Washing Machines as "High Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy.  Members of the Class have purchased the Washing Machines in part, on the basis that the Machines would save money and energy.  In reality, at the recommendation of Whirlpool and independently, Class Members are having to run empty cycles of hot water and/or bleach and/or other products to combat the Mold Problems within the Machines.  Further, as the Mold Problems became undeniable, Whirlpool began recommending that Machine owners run three successive washer cleaning cycles with an Affresh™ tablet in each cycle to ameliorate Mold Problems.  Affresh is a product designed, manufactured, and marketed by Whirlpool specifically to address Mold Problems in Washing Machines.  Upon information and

6

belief, the ratings (Modified Energy Factor) provided by Whirlpool to the government entities are not taking into account the extra loads run through the Machines to try to clean the Machines.

32.     Whirlpool provides care instructions within the "Use & Care Guides" provided after the purchase and installation of the Washing Machines.  None of the Use & Care Guides make any disclosure about any risk of Mold Problems when the recommended HE detergent is used as instructed.  Whirlpool fails to inform consumers, through the Use & Care Guides or any other written disclosure, that even when consumers operate the Washing Machines as instructed by Whirlpool, Mold Problems will occur with virtually every machine, and that they will result regardless of washer maintenance, due to defects in the design of the Washing Machines.

33.     Some of the Use & Care Guides only mention that "noticeable mold and mildew" issues may arise when using "regular" detergent rather than the recommended "HE" or "High Efficiency" detergent.  Plaintiffs used the recommended HE detergent. Other Use & Care Guides suggest that Washing Machine owners leave the washer door open between uses to ameliorate "Washer odor."   That suggestion poses obvious safety risks to children and pets; indeed, a young child recently drowned in a Kenmore front-loading washing machine manufactured by Whirlpool, causing the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders.  Despite following Whirlpool's sometimes risky instructions, Plaintiffs all still experienced Mold Problems with their Washing Machines.

34.     Each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid and/or powder HE detergent.  Similarly,

7

each Washing Machine has a separate compartment/dispenser with a "fill line" for the recommended amount of liquid fabric softener.

35.     Plaintiffs and Class Members experienced, and continue to experience, Mold Problems even though they followed the instructions and recommendations by Whirlpool in its Use & Care Guide and elsewhere.

36.     Whirlpool intended for customers to believe its statements and representations about its Washing Machines and to trust that its high-end Washing Machines were and are of first-rate quality.  Whirlpool concealed material facts regarding the Washing Machines, including serious design defects, which cause the Washing Machines to (a) accumulate mold and mildew residue or growth within the Washing Machines, (b) produce a moldy or mildewy odor that permeates consumers' Machines and homes, (c) produce a mold or mildew odor on clothes washed in the Machines, and (d) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold, even though consumers used the Washing Machine as instructed by Whirlpool, including using HE detergent and fabric softener in the amounts instructed by Whirlpool.

37.     The Washing Machines are defective in many respects.  Due to those defects, the use of the Washing Machine—as instructed by Whirlpool—results in conditions creating an excessive propensity for the Washing Machines to accumulate mold and mildew, residue or growth and moldy odors.  These defects include, among other things, (a) the failure of the Washing Machines to properly drain water and to avoid lingering moisture; (b) the failure of the Washing Machines to sufficiently rinse away HE detergent and liquid fabric softener to prevent the accumulation of residues that

8

contribute to the formation of mold and mildew and moldy odors; (c) the failure of the Washing Machines to prevent the accumulation of residues and growths that contribute to the formation of mold and mildew and moldy odors when products such as HE detergent and liquid fabric softener are used in the amounts instructed and recommended by Whirlpool; (d) the failure of the Washing Machines to have dispenser compartments that contain proper fill lines for HE detergent and liquid fabric softener to prevent the accumulation of residues that contribute to the formation of mold and mildew and moldy odors; and (e) the failure of the Washing Machines to clean themselves in a manner necessary for the proper functioning of the Machine for the purpose for which it was intended.

38.      Upon information and belief, the defects in the stainless steel drums, which come with a lifetime warranty, also play a role in causing the Mold Problems.  Due to the defects in the drums, *inter alia*, the Machines do not fully or properly drain in connection with each and every wash cycle and/or do not sufficiently permit the rinsing away and/or prevent the accumulation of residues and growths.  As a result, the defects in the drums do not permit the Machines to clean themselves after each load.  Defects in the door seal ("boot") also play a role in the accumulation of mold, mildew and/or foul odors. Among other things, the door seal does not fully or properly drain and/or remove residues and growths after each wash.

39.      Whirlpool knew and was aware, or should have known and been aware, before marketing and selling the Washing Machines, that they were inherently defective because even when operated as instructed, the Machines were substantially likely to experience Mold Problems. Whirlpool nonetheless failed to warn its customers of the

9

Design Defects inherent in the Washing Machines or the Mold Problems which would result from the alleged defects.

40.     As a result of the Design Defects that have plagued and continue to plague the Washing Machines, Plaintiffs and the other Class members overpaid for the Machines.   For the reasons detailed herein, moreover, Whirlpool knew or should have known that the value of the Washing Machines it was selling to consumers was significantly inflated by its misrepresentations and misleading information concerning those Machines.  If Plaintiffs and the other Class members had known about the design defects affecting the Washing Machines, they would not have paid the significant sums that they paid for the Machines.

41.     As a result of the mold or mildew odor that permeates items "washed" in the Machines, many consumers have been forced to re-wash or even replace clothes, towels and other items that have been ruined by the Design Defects in these Washing Machines.

42.     Whirlpool has profited, either directly or indirectly, by concealing the nature of the Design Defects and misrepresenting the cause of the Mold Problems associated with the defects, which have enabled it (a) to sell the Washing Machines at premium prices, (b) to profit on repair services purportedly to fix the Mold Problems, (c) and to sell Whirlpool Washing Machine-related products such as Affresh (from which Whirlpool earns a profit) which it misrepresented as capable of addressing and resolving the Mold Problems arising from the defects at issue.  In fact and in truth, Whirlpool has no effective remedy for the Design Defects and Mold Problems and has taken no action to correct the defects.

10

43.     As a result of Whirlpool's false and misleading statements and concealment, and Whirlpool's other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the Washing Machines and have suffered—and continue to suffer—injury as a result of the defective nature of these Washing Machines and as a result of Whirlpool's misconduct.

44.     Far from being an innocuous or isolated defect or problem, in addition to Plaintiffs, thousands of other Washing Machine purchasers have complained directly (and indirectly) to Whirlpool and its authorized dealers and service personnel, and on Internet web sites about the Design Defects and Mold Problems with the Machines.

45.     Indeed, the Internet is replete with references and complaints regarding the Washing Machines that mirror allegations in this Complaint.  *See, e.g.*,

http://www.my3cents.com/productReview.cgi?compid=226&product=duet+washer;

http://www.consumeraffairs.com/homeowners/whirlpool_washing_machine.html

46.     As a result of the avalanche of consumer complaints regarding the defects that Whirlpool would not and/or could not remedy, several entrepreneurs created and marketed products designed to treat, eliminate and/or minimize the Mold Problems caused by the Design Defects in the Washing Machines.  These products include SmellyWasher and NuFreshNow.  Due to the widespread and intractable nature of the Mold Problems, these entrepreneurs have sold tens of thousands, if not hundreds of thousands, of units of their products to consumers.  As further evidence of the serious nature of these problems, Proctor & Gamble recently created a new product called Tide Washing Machine Cleaner in an attempt to address these intractable Mold Problems.

47.     Reflecting its knowledge that the Design Defects resulted in serious Mold

11

Problems in its Washing Machines, Whirlpool developed a new product called Affresh™ to try and address these serious problems.  As part of its marketing program for Affresh™, in September 2007, Whirlpool finally disseminated information about the "potential" for buildup of "mold and mildew stains" in the washers and offered for sale Affresh™ tablets as an alleged solution to the problems.  On the packaging for this product, Whirlpool represented that Affresh "[r]emoves odor-causing residue in HE Washers[,]" and "[u]sed once a month, it keeps your machine fresh and clean by removing the odor-causing residue that can build up in all HE Washers."  On its website affresh.com, Whirlpool admitted that Whirlpool Washing Machines "up to 1 year in age should be cleaned once a month with Affresh™ cleaner to prevent odor-causing residue from accumulating."  Despite its representations, Whirlpool's Affresh™ failed to prevent and/or fix Mold Problems experienced by Plaintiffs and other class members.

48. Due to the ineffectiveness of Affresh™, Whirlpool modified Affresh™ and created and marketed an Affresh™ Washing Cleaner Kit that included Power Puck™ tablets and Grit Grabber™ cloths.  On its Affresh website, Whirlpool represented that its Washing Machines "older than 1 year require special attention, particularly if odor has set in," and that the Grit Grabber cloths were designed to "help remove the residue and odor you can't reach with Power Puck Tablets."  Despite its representations, Whirlpool's Affresh™ Washing Cleaner Kit also fails to prevent and/or fix the Mold Problems experienced by Plaintiffs and other class members.

49. Nonetheless, Whirlpool unjustly enriched itself through the sale of its Affresh™ products, while failing to remedy the defect.

50. The Washing Machines purchased by Plaintiffs and Class members failed

to work due to a defect in design (which failure to work did not result from the ordinary course of usage by Plaintiffs or Class members).

51.     On its website at affresh.com, Whirlpool admits that newer front-loading high efficiency Machines are more prone than older top-loading washers to build up residue that lead to odors.  Despite this knowledge, Whirlpool failed to take the necessary steps to adequately design and/or test the Washing Machines to ensure that they were free from the Design Defects complained of herein.  Instead, Whirlpool sold and continues to sell these Washing Machines even though it knew, or was reckless in not knowing, that they (a) contained inherent material defects; (b) were not of merchantable quality; and (c) would result in the formation of mold, mildew, residue or growth and moldy/mildewy and other foul odors, even when used as instructed.

52.     Despite having repeated notice of the above-described Design Defects in its Washing Machines and despite the reasonable expectations of consumers created by Whirlpool's marketing of its Washing Machines, Whirlpool has engaged in the following routine, albeit wrongful course of conduct, where Whirlpool:

a.      Designed, manufactured and sold Washing Machines with Design Defects that cause Mold Problems;

b.      Failed to disclose that the Washing Machines had Design Defects that cause Mold Problems;

c.      Continued to represent expressly or by implication that the Washing Machines that Plaintiffs and Class Members purchased were dependable, cost effective, and would provide outstanding cleaning and performance as washing machines when it knew that these statements were false;

d.      Continued to manufacture, market, advertise, distribute, and sell the Washing Machines to consumers when it knew or should have known the Washing Machines were not dependable and would not withstand normal operation;

13

e.      Failed to disclose to consumers the substantial risk of Washing Machine failure and the material defects in the Washing Machines;

f.      Failed to disclose the nature of the defects to consumers;

g.      Failed to disclose the many complaints it received from consumers (or the high incidence of attempted but futile repairs of the Washing Machines);

h.      Failed to implement a recall to adequately announce, remedy, and correct the defects for consumers;

i.      Failed to disclose to consumers that Whirlpool was not committed to making effective repairs under its warranties to address Mold Problems;

j.      Failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Washing Machines; and

k.      Failed to disclose that despite following the recommended procedures within the Whirlpool Use & Care Guide, consumers would still experience Mold Problems.

53.     By engaging in the foregoing course of conduct, Whirlpool has caused consumers—including Plaintiffs and Class Members—to be aggrieved and suffer ascertainable losses, in that, among others things, Whirlpool's course of conduct systematically:

a.      Caused Plaintiffs and the Class members to pay premium prices for a defective product;

b.      Reduced the value of the Washing Machines purchased by Plaintiffs and  Class members; and

c.      Caused reasonable consumers like Plaintiffs and Class members to spend money for attempted repairs and other purported remedies of the defects in their Machines that they would not have spent but for Whirlpool's common course of conduct.

54.     To this day, Whirlpool continues to conceal material information from

14

users, consumers, and the public, that (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.

55.     Any limitations on remedies contained in Whirlpool's express warranties fail of their essential purpose and are unenforceable with respect to the Mold Problems at issue here.  When Whirlpool is notified of the Mold Problems, it fails to provide any repairs, replacement of parts, or any other remedy that adequately addresses the Mold Problems.  For the same reason, to the extent there is any notice requirement imposed by law, notice is not required both because Whirlpool has (and had) actual knowledge of the Mold Problems and notice to it would be futile (in that Whirlpool has failed to provide an effective remedy).

56.     All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Complaint and the similar complaints previously filed and transferred to this Multidistrict Litigation.  Moreover, in light of the thousands of complaints consumers have made directly to Whirlpool, Whirlpool's authorized dealers, and manufacturers of products that attempt to remediate the Mold Problems, and complaints posted on the internet and other forums, and Whirlpool's refusal to effectively resolve the  Mold Problems, any additional pre-suit complaints or other notice to Whirlpool would have been futile.

**Plaintiff Gina Glazer's Experiences with Her Washing Machine**

57.     Plaintiff Glazer bought a new Duet Sport washing machine (serial number 1-416382928) from a Best Buy store in Ohio on or about April 14, 2006.  Within the first year of purchase, Plaintiff Glazer began to experience Mold Problems in her Washing Machine.  Glazer complained to Whirlpool on January 9, 2008 about the "terrible smell."

Whirlpool responded on January 10, 2008—advancing numerous suggestions, which did not work in any material way.  On May 21, 2008, Glazer contacted Whirlpool again by email—explaining that its suggested remedies did not work.  Whirlpool responded on May 22, 2008 by email—suggesting that Glazer use Affresh and that she contact a service provider.  As a result of Whirlpool's unsatisfactory responses, Glazer subsequently called Whirlpool to complain about her persisting Mold Problems.  Whirlpool responded by stating that she was no longer covered by her warranty, that she should replace the rubber gasket on the inside of the Machine door (at her own expense), and that she should clean behind the rubber gasket after each load.

**Plaintiff Trina Allison's Experiences With Her Washing Machine**

58.     Plaintiff Allison purchased a Duet HT in Oct. 2005 from hhgregg in Ohio for over $1,000 along with a 5 year extended warranty for $84.99.  After a few months of use, her towels started smelling like mold or mildew.  Plaintiff Allison called Whirlpool to complain in or about February 2006.  Whirlpool sent a technician to look at the washer, who said the machine was clean.  The technician recommended that Plaintiff Allison run Affresh tablets through the machine every few weeks, and keep the door open when the machine is not in use.  Plaintiff Allison also has noticed black mold in the rubber door seal, which she tried to clean with Clorox bleach.  Plaintiff Allison has tried those solutions but the Mold Problems persist.

**Plaintiff Jeff Glennon's Experiences With His Washing Machine**

59.     Plaintiff Glennon purchased a new Duet Washing Machine from PC Richard & Son in Greenvale, New York on or about August 16, 2006 and took delivery on or about August 22, 2006.  He paid $838.97.  Glennon began to experience Mold

Problems within weeks of delivery of his Washing Machine.  Plaintiff Glennon contacted Whirlpool numerous times concerning the problem.  In response, Whirlpool representatives advised him to run his Washing Machine on a hot cycle with bleach and to wipe down the door and gasket.  He followed these recommendations but continued to experience Mold Problems.

60.     Whirlpool sent numerous repair representatives to Glennon's home to remedy the Mold Problems.  Several of the Whirlpool representatives told him that the Mold Problems he was experiencing were widespread among Whirlpool's Washing Machines.  One of the Whirlpool representatives advised Glennon to run a cycle of bleach and use the clean washer cycle.  Glennon followed these recommendations but continued to experience the Mold Problems.

61.     After ten service calls, Glennon eventually obtained a store exchange from PC Richard & Son.  On or about November 27, 2007, Glennon had PC Richard & Son pickup his first Washing Machine and deliver a replacement Washing Machine.

62.     Within three months, Glennon noticed that the second machine also developed the same Mold Problems.  He contacted Whirlpool again about the problem.  Whirlpool advised Glennon to leave the door open, run hot cycles from time to time, and run cycles with Affresh.  He followed these recommendations, but has continued to experience Mold Problems.

**Plaintiff Mara Cohen's Experiences with Her Washing Machine**

63.     Plaintiff Cohen purchased a new Duet Washing Machine from Berger Appliance in Hawthorne, New York on or about February 16, 2006.  She paid approximately $959.00.

17

64.     Shortly thereafter, a constant stench began to emanate from Plaintiff Cohen's washer.  Despite Cohen's compliance with all instructions and recommendations associated with her Machine, including using HE detergent, the stench has persisted to date.  Further, mold appeared on the inside of the front door, and has persisted to the present.

65.     Cohen complained to Whirlpool about the Mold Problems in or about January 2007.  In response, a Whirlpool repairman told Cohen, "You have to leave the door open.  We know there's a problem."  Cohen later received a letter from Whirlpool advising her to purchase Affresh tablets in order to address the ongoing Mold Problems. Cohen purchased and used the Affresh tablets, but they have not alleviated the Mold Problems.  Plaintiff's Washing Machine currently has buildup of dark mold on the bottom of the door.

**Plaintiff Karen Hollander's Experiences with Her Washing Machine**

66.     Plaintiff Hollander purchased a Duet Washing Machine from BrandsMart U.S.A. in Deerfield Beach, Florida on or about January 11, 2006 and took delivery on January 16, 2006.  She paid about $1,100 (plus delivery charges and extended warranty).

67.     Hollander began to experience Mold Problems several months after she bought the Machine despite using only HE detergent.  She called Whirlpool in or about December 2007.  During the call, she complained about Mold Problems, but the Whirlpool representative only offered cleaning solutions like using Affresh.  Hollander tried Affresh but it was ineffective.  She called Whirlpool back, but was told Whirlpool could not offer any additional solutions.

68.     Hollander's independent efforts of running a diluted Clorox solution

18

through the Machine (following the procedures suggested in the Whirlpool manual that came with the Machine), keeping the door to the Machine open, and cleaning the rubber seal, also did not relieve the Mold Problems.  In researching the issue, Hollander visited a retailer and learned of other similar complaints.

69.     A technician from Hollander's extended warranty company inspected her Machine twice, but he also was unable to offer any solutions to fix the Mold Problems.

**Plaintiff Jane Werman's Experiences with Her Washing Machine**

70.     Plaintiff Werman purchased a new Duet Washing Machine from ABT Electronics, Inc. in Glenview, Illinois on or about February 15, 2004 and took delivery in or about August 2004.  She paid about $880.00.

71.     Werman began to experience Mold Problems within a year after delivery despite using only high-efficiency detergent.  She began to leave the door on the Machine open at all times.  She began to run bleach cycles through her Machine.  Despite this, the Mold Problems continued.  Then, about a year and a half after delivery of her Machine, Werman began experiencing Mold Problems including mold and mildew accumulation in the Washing Machine (thereby affecting items washed in the Machine).

72.     Werman complained about the Mold Problems to Whirlpool retailer ABT. Werman's remediation efforts of cleaning the Machine by hand and continuing to run bleach through it were ineffective.  Through Internet research she learned of similar complaints regarding Mold Problems, including that numerous other people were experiencing extensive mold and mildew growth behind the rubber seal.  Similar to the complaints on the Internet, when Werman pulled back the rubber seal on her Machine, the area behind the rubber seal was caked with mold.  As a result, after every few loads of

19

laundry, Werman cleans out the mold behind the rubber seal, but the Mold Problems continue.

**Plaintiff Sonja Sandholm-Pound's Experiences with Her Washing Machine**

73.     Plaintiff Sandholm-Pound bought a Washing Machine ("First Machine") on or about May 2003 in New Jersey.  She bought a second Washing Machine ("Second Machine") on or about May 2005 in New Jersey.  She began to experience Mold Problems affecting items washed in the Second Machine, in or around November 2005 despite use of only the recommended high-efficiency detergent.  She promptly complained to Whirlpool in December 2005, and several times thereafter.  Whirlpool sent a repair person twice to repair Sandholm-Pound's Second Machine.  Each time, the repair person replaced the gasket around the door of the Second Machine.

74.     Despite the gasket replacements, Sandholm-Pound continues to experience Mold Problems with her Second Machine.  In or around April 2008, she began to experience Mold Problems in her First Machine.  With respect to both of her Machines, Sandholm-Pound followed Whirlpool's maintenance instructions—specifically to run frequent cycles of bleach and to leave the door open.  Neither got rid of the Mold Problems.  As a result of the Mold Problems, Sandholm-Pound's clothing, towels, and other items still smell like mildew after they are "washed" in each of the Machines.  She has had to throw away numerous towels because she could not get rid of the moldy smells.

**Plaintiff Shannon Schaeffer's Experiences with Her Washing Machine**

75.     Plaintiff Schaeffer purchased a new Duet Washing Machine from Cagle's Appliance Center in Ontario, California on or about February 19, 2005.

20

76.     Schaeffer began to smell mildew emanating from the Washing Machine in 2006 despite using only high-efficiency detergent.  Shortly thereafter, she discovered black mold or mildew inside and around the door seal.  She attempted to clean the mold/mildew but the smell continued.

77.     Schaeffer researched the Internet and discovered numerous postings from other consumers who had complained to Whirlpool about similar problems.  She followed the advice Whirlpool gave to these other consumers and attempted to remedy the Mold Problems by leaving the door open on the Washing Machine after use, manually drying the door after use, using hot water, reducing the amount of HE detergent in each cycle, switching from liquid to powder HE detergent, not using liquid fabric softeners and also running empty cycles with bleach.  Each of these attempted remedies failed to resolve the Mold Problems.

78.     Schaeffer took further efforts in an attempt to remedy the Washing Mold Problems by removing the front panel of the machine and accessing the plastic trap cover whereby she discovered chunks of mold and mildew.  She cleaned the reservoir with bleach and reassembled the trap and cover.  This attempted fix also failed to resolve the Mold Problems.

79.     On or about January 6, 2009, Schaeffer contacted Whirlpool directly to seek assistance in remedying the Mold Problems.  A Whirlpool representative advised her to leave the door of the Washing Machine open and also suggested use of Affresh tablets.  Schaeffer requested that a free sample be sent to her from Whirlpool since they were a required accessory for the Machine.  Whirlpool declined Schaeffer's request for a free-sample.  Schaeffer subsequently obtained two packages of Affresh from Cagle's

21

Appliance Center.  Per the instructions on the Affresh package, she ran an empty cycle with three Affresh tablets, but the Mold Problems returned shortly thereafter.

**Plaintiff Paula Call's Experiences with Her Washing Machine**

80.     Plaintiff Call purchased a new Whirlpool Duet in November 2004 at Costco in Poway, California for $949.99.

81.     At all relevant times Plaintiff Call used the Machine for household purposes and used HE detergent.  Within two months of purchase, Plaintiff Call started to experience Mold Problems when she washed her laundry.

82.     Plaintiff Call called Whirlpool in February 2005 and shortly thereafter wrote to Whirlpool to complain about the Mold Problems she was experiencing.  In response, Whirlpool blamed her five kids' dirty clothing as the cause of the Mold Problems and suggested various purported "solutions," including the use of a cleaning solution and leaving the door open.  Plaintiff Call tried the suggestions made by Whirlpool's representatives, but none of the suggestions worked.

83.     Plaintiff Call demanded a replacement machine.  Whirlpool refused to replace it or offer her any other relief.  As a result, Plaintiff Call stopped using her Whirlpool Duet, purchased a replacement washing machine, and has stored her Whirlpool Duet.

**Plaintiff Bonnie Beierschmitt's Experiences with Her Washing Machine**

84.     Plaintiff Beierschmitt bought a Duet Washing Machine in New Jersey, on or about January 4, 2005 and took delivery of the Washing Machine shortly thereafter.  She paid about $990 (plus an extended four year warranty).   About one month after the delivery, Beierschmitt began to experience Mold Problems that affected items washed in

22

the Washing Machine. She followed Whirlpool's recommendations, provided in a video tape which accompanied her Washing Machine, to leave the front door and the soap drawer open to eliminate the foul odor made.  Whirlpool's own recommendations failed to correct the problem.

**Plaintiff Phil Torf's Experiences with His Washing Machine**

85.     Plaintiff Torf bought a Duet Washing Machine for household purposes in Illinois on or about August 22, 2005 and took delivery on or about August 28, 2005.  He paid about $975 (plus an extended four year warranty).  Several months later, Torf began experiencing Mold Problems that affected items washed in the Machine.  Torf promptly contacted Whirlpool to correct the problem.  Whirlpool refused to cover the Mold Problems—stating that the problem was not covered under the warranty because, allegedly, the Machine did not contain a defective component.

**Plaintiff Sylvia Bicknell's Experiences with Her Washing Machine**

86.     Plaintiff Bicknell bought a Duet Washing Machine in Florida on or about January 25, 2006 and took delivery of the Washing Machine on or about January 26, 2006.  She paid about $1,200 (plus delivery charges and extended five year warranty). Several months later Bicknell experienced Mold Problems that affected items washed in the Machine.  She promptly contacted Whirlpool to correct the problem.  Whirlpool refused to cover the drainage and mold and mildew problems—stating that the problem was not covered under the warranty because, allegedly, the Machine did not contain a defective component.

**Plaintiff Rebecca Nordan's Experiences With Her Washing Machine**

87.     Plaintiff Nordan purchased a Duet Washing Machine from ABC

23

Appliance Sales & Services, Inc. in Edgewater, Maryland on or about April 22, 2005 for approximately $989.95 and began to experience Mold Problems that affected items washed in the Machine four months after the delivery of her Washing Machine.

88.     Although Plaintiff Nordan raised the Mold Problems with a Whirlpool representative in late 2005 through a telephone service call, the Whirlpool representative only offered cleaning solutions such as bleach and water mixture to run through the machine.  Plaintiff Nordan's independent efforts of running a dishwasher detergent through the Machine, keeping the door to the Machine open and cleaning the rubber seal, glass door and detergent compartment tray of the Machine with a cloth and bleach solution, also did not relieve the Mold Problems.  In researching the issue, Plaintiff Nordan learned of other similar complaints.

89.     Plaintiff Nordan called Whirlpool again in 2007 and in March 2008, and the representative offered the use of Affresh™ tablets.  Plaintiff Nordan asked if the instruction to use Affresh™ tablets was in the manual that accompanied Plaintiff's Machine.  Whirlpool responded by saying that this technique was not in the manual and that the Affresh™ tablets were invented after the problem started occurring.  Plaintiff Nordan tried the Affresh™ tablets but ultimately this proved to be ineffective as well.

90.     Plaintiff Nordan purchased an extended warranty plan for her Machine for two years.  Whirlpool, however, refused to come to Plaintiff Nordan's home to service her Machine's Mold Problems under the extended warranty, although it offered to replace the gasket, at Plaintiff Nordan's expense.  As a result of Whirlpool's response, Plaintiff Nordan did not renew her two year extended warranty plan with Whirlpool.

24

**Plaintiff Maggie O'Brien's Experience With Her Washing Machine**

91.      Plaintiff O'Brien purchased a Duet Washing Machine on or about February 11, 2005 and received delivery of that Machine shortly thereafter from Rouch's TV & Appliance, Inc. in Valparaiso, Indiana for approximately $999.00.  Plaintiff O'Brien began to experience Mold Problems that affected items washed in the Machine soon after the purchase of her Washing Machine.

92.      As a result of Plaintiff O'Brien's complaints to Whirlpool, on or about January 13, 2006, a Whirlpool repairman came to Plaintiff O'Brien's home to look at the Machine.  Due to the Mold Problems, the repairman replaced the rubber seal on the front of the Machine.  The repairman also advised Plaintiff O'Brien to leave the door open on the Machine and to clean the Machine with soap.  Neither the replacement of the rubber seal, nor the cleaning instructions were effective, as the Mold Problems continued.

93.      On or about February 22, 2006, Plaintiff O'Brien again complained to Whirlpool concerning the mold growth in her Washing Machine.  Plaintiff O'Brien informed Whirlpool that she had been running bleach through the Machine and leaving the door open.  Whirlpool responded by sending Plaintiff a set of cleaning instructions on how to prevent molding.  At this time, Whirlpool recommended, "Select the 'heavy duty' cycle and 'hot' water.  Start empty washer and at 7 to 8 minutes into the cycle, fill the detergent dispenser with BLEACH.  At the end of the cycle, open the door, gently roll the rubber gasket toward you and wipe the underside of the rubber gasket, the area directly under the gasket ("well" area), and the top of the gasket with bleach (1 cup bleach to a gallon hot water)."  Plaintiff followed the instructions given to her by Whirlpool; however the mold continued to grow inside Plaintiff's Machine.

25

94.     Plaintiff O'Brien raised the Mold Problems issue again with a Whirlpool representative on September 17, 2007.  The Whirlpool representative only offered cleaning solutions that ultimately proved to be ineffective, such as using hot water with bleach, removing the clothes very soon after the cycle, leaving the door open to ensure that the unit does not dry out, periodically wiping the rubber seal and "well" area with bleach solution, and using Affresh™.  Plaintiff O'Brien's efforts of running bleach through the Machine, using High Efficiency detergent and wiping the inside of the Machine with a cloth coated in bleach did not relieve the Mold Problems.

**Plaintiff Andrea Strong's Experiences With Her Washing Machine**

95.     Plaintiff Strong purchased a Duet Washing Machine from Spencer's TV & Appliances in Mesa, Arizona on or about November 19, 2004 and took delivery of the Washing Machine in or about December 11, 2004.  Plaintiff Strong began to experience Mold Problems.

96.     Plaintiff Strong contacted Whirlpool in November 2007 concerning the Mold Problems.  In response, the Whirlpool representative advised Plaintiff Strong to wipe and dry the boot on her Washing Machine, and to run empty cycles with Affresh. Plaintiff Strong tried with these recommendations, but has continued to experience the Mold Problems.  The Whirlpool representative told Plaintiff Strong that the Mold Problems were caused by the failure of the Washing Machine to fully drain water after washing cycles.  She contacted Whirlpool again in January 2008 about her continuing Mold Problems, but Whirlpool told her she was out of warranty.

**Plaintiff Pramila Gardner's Experiences With Her Washing Machine**

97.     Plaintiff Gardner purchased a Duet Washing Machine from Best Buy Co.

26

Inc. in Pearland, Texas on or about December 27, 2004 and took delivery of the Washing Machine on December 28, 2004.  She paid approximately $999.99 (plus delivery charges and pedestal). Plaintiff Gardner began to experience Mold Problems that affected items washed in the Machine in May of 2006.

98.     Plaintiff Gardner promptly called Whirlpool to complain.  While waiting on hold for about 20 minutes, she reviewed information about Mold Problems on Whirlpool's website (www.whirlpool.com).  She followed the instructions on Whirlpool's website, but they did not fix the Mold Problems.  Plaintiff Gardner tried keeping the door to the Machine open, only washing clothing with hot or warm water, running bleach through the Machine, and cleaning the inside of the Machine with Tilex® (a product advertised as a mold and mildew remover).   Nonetheless, the Mold Problems persist, her Washing Machine smells like mildew, and her clothing smells like mildew after it is "washed" in the Machine.

**Plaintiff Tracie Snyder's Experiences With Her Washing Machine**

99.      Plaintiff Snyder purchased a Duet Washing Machine from Plaza Brand Source in Concord, North Carolina on or about June 4, 2005 and took delivery of the Washing Machine on June 6, 2005.  Plaintiff paid approximately $1,200.00.  She also purchased a 5 year extended warranty.

100.     Within a year, Plaintiff Snyder began to experience Mold Problems.  She complained to her retailer, who advised her to leave the door open.  That did not resolve her Mold Problems, so later in 2006, she contacted her extended warranty company, which suggested she keep the door open, run bleach through the Machine, and run the sanitary cycle.  Those remedial measures did not work either.

27

101.    In June 2008, Plaintiff Snyder complained about Mold Problems to Whirlpool, whose representative told her that because she had an extended warranty, Whirlpool would not  help her.

102.    Plaintiff Snyder tried various measures to fix the Mold Problems, including running a diluted bleach solution through the Machine, running "Odoban®" through the Machine with her laundry, cleaning the rubber seal of the Machine with a cloth, and cleaning behind the rubber seal by moving the seal away from the drum. These efforts did not relieve the Mold Problems.  In researching the issue, Plaintiff Snyder visited a Sears store and learned of other similar complaints with the Washing Machines.

## **TOLLING**

103.    <u>Discovery Rule</u>.  Plaintiffs' claims accrued upon discovery that the Washing Machines caused Mold Problems, indicating that the Machines have Design Defects.  Because Whirlpool concealed the fact that the Machines have Design Defects which cause Mold Problems, Plaintiffs did not discover and could not have discovered this fact through reasonable and diligent investigation until after they experienced Mold Problems, could reasonably exclude other potential causes of the Mold Problems, and discovered that their Machines caused the Mold Problems.

104.    <u>Active Concealment Tolling</u>.  The statute of limitations has been tolled by Whirlpool's knowing and active concealment of the fact that the Washing Machines cause Mold Problems.  Whirlpool kept Plaintiffs ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs.

28

Plaintiffs could not reasonably have discovered the fact that their Washing Machines would cause Mold Problems due to Design Defects.

105.   <u>Estoppel</u>.  Whirlpool was and is under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the Washing Machines.  At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Washing Machines.  Plaintiffs reasonably relied upon Whirlpool's affirmative misrepresentations and knowing, affirmative, and/or active concealment.  Based on the foregoing, Whirlpool is estopped from relying on any statues of limitation in defense of this action.

## **CLASS ACTION ALLEGATIONS**

106.   Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

107.   The Classes that Plaintiffs seek to represent is defined as follows:

> **Ohio:**  All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Ohio.

> **California:**  All persons who purchased a Washing Machine in the State of California and who purchased the Machine for primarily personal, family or household purposes as defined by California Civil Code § 1791(a).

> **Florida**:  All  persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Florida.

> **Illinois**:  All persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Illinois.

> **New Jersey**:  All  persons who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in New Jersey.

29

**New York**:  All persons  who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in New York.

**Arizona:**  All  persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Arizona.

**Indiana:**  All persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Indiana.

**Maryland:**  All  persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Maryland.

**North Carolina:**  All persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in North Carolina.

**Texas:**  All persons who purchased a Washing Machine for primarily personal, family or household purposed, and not for resale, in Texas.

Excluded from the Classes are Whirlpool, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any of the Classes should be expanded or otherwise modified.

108.  **Numerosity/Impracticability of Joinder**:  The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes each include thousands of members.  The precise numbers of members can be ascertained through discovery, which will include Whirlpool's sales, warranty service, and other records.

109.  **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of each

30

Class.  These common legal and factual questions, include, but are not limited to the following:

(a)   Whether the Washing Machines are materially defective—and what are the defects;

(b)   Whether Whirlpool knew that the Washing Machines were and are materially defective;

(c)   Whether Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the defects inherent in the Washing Machines;

(d)   Whether Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

(e)   Whether Whirlpool violated the consumer protection statutes applicable to each class;

(f)   Whether Whirlpool breached its warranty and/or extended warranties;

(g)   Whether Whirlpool breached its implied warranties;

(h)   Whether Whirlpool has been unjustly enriched;

(i)   Whether, as a result of Whirlpool's conduct, Plaintiffs and the Classes have suffered damages; and if so, the appropriate amount thereof; and

(j)   Whether, as a result of Whirlpool's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

110.   **<u>Typicality</u>**:  The representative Plaintiffs' claims are typical of the claims of the members of the Classes.  Plaintiffs and all Class members have been injured by the same wrongful practices of Whirlpool.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on

31

the same legal theories.

111.  **Adequacy**:  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with the Classes.

112.  **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Further, individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Whirlpool has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

113.  Plaintiffs do not anticipate any difficulty in the management of this

32

litigation.

114.     Whirlpool has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

**FIRST CAUSE OF ACTION**
**Asserted On Behalf Of The Ohio Class**
**(Violation Of The Ohio Consumer Sales Practices Act ("CSPA"))**

115.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

116.     Plaintiffs Glazer and Allison (collectively "Ohio Plaintiffs") assert this cause of action on behalf of themselves and the other members of the Ohio Class.

117.     The CSPA is codified at OHIO REV. CODE ANN. § 1345.01, *et seq.*  The statute is broad, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]."  OHIO REV. CODE ANN. § 1345.01(A).  Accordingly, the conduct at issue in this case falls within the scope of the CSPA.

118.     The CSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions.  OHIO REV. CODE ANN. § 1345.02(A).  The CSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions.  OHIO REV. CODE ANN. § 1345.09.

119.     Whirlpool has engaged in unfair, deceptive, and unconscionable practices by: (1) marketing and selling Washing Machines with defects that cause lack of dependable operation and thorough cleaning of things with normal use and/or created a substantial risk that such problems would occur with normal use; and (2) intentionally

33

failing to disclose and/or concealing these known defects and risks.

120.    Whirlpool acted in the face of prior notice that its conduct was deceptive, unfair, or unconscionable.  Indeed, it is well established in CSPA jurisprudence that material omissions and misrepresentations concerning a product constitutes a violation of the statute.   It is also considered a deceptive act or practice for purposes of the CSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact.  *See* OHIO ADMIN. CODE. § 109:4-3-10(A).

121.    As a direct and proximate result of Whirlpool's violations of the CSPA, the Ohio Plaintiffs and other members of the Ohio Class have been injured.

**SECOND CAUSE OF ACTION**
**Asserted On Behalf Of The Ohio Class**
**<u>(Tortious Breach of Warranty)</u>**

122.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

123.    The Ohio Plaintiffs assert this cause of action on behalf of themselves and the other members of the Ohio Class.

124.    Whirlpool impliedly warranted that its Washing Machines were of good and merchantable quality—fit and safe for their ordinary intended use.

125.    There were Design Defects in the Washing Machines manufactured, distributed, and/or sold by Whirlpool to middlemen who then resold the Machines to the Ohio Plaintiffs and the other members of the Ohio Class; those Design Defects existed at the time the Machines were sold to the Ohio Plaintiffs and the other members of the Ohio Class; and those Design Defects were the direct and proximate cause of injury to the Ohio Plaintiffs and the other members of the Ohio Class.

34

126.     The Design Defects—which cause noxious odors to permeate the home, disturb the repose of its inhabitants, and produce a smelly wash—render Whirlpool's Washing Machines unfit for their intended purpose (that of producing a clean and clean-smelling wash), and not of merchantable quality.

127.     As a direct and proximate result of Whirlpool's warranty breach, the Ohio Plaintiffs and the other members of the Ohio Class were caused to suffer loss attributable to the decreased value of the product itself, and consequential damages—losses sustained by the purchase of the defective product—and the Ohio Plaintiffs and the other members of the Ohio Class will have to spend monies to repair and/or replace the washers.

### THIRD CAUSE OF ACTION
### Asserted on Behalf of the Ohio Class
### (<u>Negligent Design and Failure to Warn</u>)

128.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

129.     The Ohio Plaintiffs assert this cause of action on behalf of themselves and the other members of the Ohio Class.

130.     Whirlpool knew—or by the exercise of reasonable care should have known—that its Washing Machines would have and had the alleged Design Defects.

131.     Whirlpool knew that the Ohio Plaintiffs and the other members of the Ohio Class— who used Whirlpool's Washing Machines for their intended use—were members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience and expense solely because of the Design Defects.

132.     Whirlpool's suggestion to leave the washer door open (which does not solve the problem anyway), if tried, is a danger to children.

35

133.    At the time Whirlpool manufactured, distributed, and/or sold the Washing Machines, it owed a non-delegable duty to persons like the Ohio Plaintiffs and the  other members of the Ohio Class to exercise ordinary and reasonable care to properly design the Machines, and it owes a continuing duty to warn about the problem and to repair and/or recall its defective Machines.

134.    Whirlpool had a pre-sale duty to warn potential purchasers that the Washing Machines carried with them greater risks of foul orders and health hazards than an ordinary consumer would expect when using the Machines in their intended or reasonably-foreseeable manner.

135.    Any benefits by way of lower energy or water use are outweighed by the risks inherent in the Washing Machines' design.

136.    Whirlpool failed to use appropriate design, engineering, and parts in manufacture—and Whirlpool in other respects breached its duties by being wantonly reckless, careless, and negligent.

137.    As a direct and proximate result of Whirlpool's wanton recklessness, carelessness, and negligence, the Ohio Plaintiffs and the other members of the Ohio Class were caused to suffer damages and losses—and the Ohio Plaintiffs and the other members of the Ohio Class will have to spend money to repair and/or replace the defective Washing Machines.

138.    The Ohio Plaintiffs and the other members of the Ohio Class have not committed any contributory negligence.

36

## FOURTH CAUSE OF ACTION
### Asserted on Behalf of the Ohio Class
### (<u>Unjust Enrichment</u>)

139.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

140.    The Ohio Plaintiffs assert this cause of action on behalf of themselves and the other members of the Ohio Class.

141.    This claim is asserted in the alternative on behalf of the members of the Ohio Class, to the extent that the warranties do not govern all of the Ohio Plaintiffs' and Ohio Class members' claims.

142.    Whirlpool has been unjustly enriched by the purchases of the Washing Machines by the Ohio Plaintiffs and the other members of the Ohio Class.

143.    The Ohio Plaintiffs and the other members of the Ohio Class unknowingly conferred a benefit on Whirlpool of which Whirlpool had knowledge, since Whirlpool was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled the Ohio Plaintiffs and the other members of the Ohio Class regarding the nature and quality of the Washing Machines while profiting from this deception.

144.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Whirlpool to retain the benefit of profits that it unfairly has obtained from the Ohio Plaintiffs and the other members of the Ohio Class.

145.    The Ohio Plaintiffs and the other members of the Ohio Class, having been damaged by Whirlpool's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Whirlpool to their detriment.

37

## FIFTH CAUSE OF ACTION
### Asserted on Behalf of All Non-Ohio Classes
### (<u>Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) -</u>
### <u>Written Warranty</u>)

146.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

147.    Whirlpool's Washing Machines are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

148.    Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

149.    Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

150.    Whirlpool provided Plaintiffs and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

151.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

152.    All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.

153.    By Whirlpool's conduct as described herein, including Whirlpool's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Whirlpool has failed to comply with its obligations under its written and

38

promises, warranties, and representations.

154.    As a result of Whirlpool's breach of express warranties, Plaintiffs and

Classes members are entitled to revoke their acceptance of the Washing Machines, obtain

damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. §

2310.

**SIXTH CAUSE OF ACTION**
**Asserted on Behalf of All Non-Ohio Classes**
**(Violations of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) -**
**Implied Warranty)**

155.    Plaintiffs hereby incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

156.    Whirlpool's Washing Machines are "consumer products" as that term is

defined by 15 U.S.C. § 2301(1).

157.    Plaintiffs and Class members are "consumers" as that term is defined by

15 U.S.C.      § 2301(3).

158.    Whirlpool is a "warrantor" and "supplier" as those terms are defined by 15

U.S.C. § 2301(4) and (5).

159.    Whirlpool provided Plaintiffs and Class members with "implied

warranties" as that term is defined by 15 U.S.C. § 2301(7).

160.    In its capacity as a warrantor, and by the conduct described herein, any

attempt by Whirlpool to limit the implied warranties in a manner that would exclude

coverage of the defective Washing Machines is unconscionable and any such effort to

disclaim, or otherwise limit, liability for the defective Washing Machines is void.

161.    All jurisdictional prerequisites, including pre-suit notice, have been

39

satisfied herein.

162.    Plaintiffs and members of the Classes are in privity with Whirlpool in that they purchased their Washing Machines directly from Whirlpool, or from an actual or apparent agent of Whirlpool such as Whirlpool's authorized dealers.

163.    Plaintiffs and the members of the Classes are also in privity with Whirlpool by virtue of the contractual relationship stemming from Whirlpool's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, which is enforceable by Plaintiffs and the Classes as against Whirlpool regardless of where, or from whom, the Washing Machines were acquired.

164.    By Whirlpool's conduct as described herein, including Whirlpool's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge, Whirlpool has failed to comply with its obligations under its written and implied promises, warranties, and representations.

165.    As a result of Whirlpool's breach of implied warranties, Plaintiffs and members of the Classes are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. § 2310.

### SEVENTH CAUSE OF ACTION
#### Asserted On Behalf Of All Non-Ohio Classes
#### (Breach Of Express Warranty)

166.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

167.    This cause of action is brought on behalf of all Classes.

168.    Whirlpool made affirmations of fact and promises to Plaintiffs and

40

members of the Classes which related to the Washing Machines as more fully described herein.

169.     Whirlpool's affirmations of fact and promises became part of the basis of the bargain between the parties.

170.     These affirmations of fact and promises created an express warranty that the Washing Machines would conform to Whirlpool's affirmations and promises.

171.     Whirlpool uniformly warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that the Washing Machines suffered from serious defects and, nevertheless, continued to market and sell the Washing Machines with this express warranty.

172.     Whirlpool is obligated under the terms of its written warranty to repair and/or replace the defective Washing Machines sold to Plaintiffs and members of the Classes.

173.     Whirlpool has breached its written warranty, as set forth above, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair or replace the defects and/or defective parts.

174.     As set forth above, Whirlpool's warranty fails in its essential purpose and, accordingly, Plaintiffs and members of the Classes cannot and should not be limited to the remedies set forth in Whirlpool's written warranty and, instead, should be permitted to recover all measure of appropriate relief.

175.     Whirlpool has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Whirlpool' knowledge of the defects in

41

the Washing Machines, Whirlpool has failed and refused to honor its warranty, even though it knows of the defects inherent in the Washing Machines.

176.    Plaintiffs and members of the Classes have given Whirlpool a reasonable opportunity to cure its failures with respect to its warranty, and Whirlpool has failed to do so.

177.    Whirlpool has failed to provide Plaintiffs and members of the Classes, as a warranty repair and/or replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Classes.

178.    As a result of Whirlpool's breach of warranty, Plaintiffs and members of the Classes have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Asserted On Behalf All Non-Ohio Classes**
**(Breach of Implied Warranty of Merchantability)**

179.    Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

180.    This cause of action is brought on behalf of Plaintiffs and the members of all Classes.

181.    Whirlpool is a merchant in the sale of the Washing Machines to Plaintiffs and the members of the Classes and the Washing Machines are goods under applicable law.

182.    Plaintiffs and members of the Classes are in privity with Whirlpool in that they purchased their Washing Machines directly from Whirlpool, or from an actual or apparent agent of Whirlpool such as Whirlpool's authorized dealers.

42

183.    Plaintiffs and the members of the Classes are also in privity with Whirlpool by virtue of the contractual relationship stemming from Whirlpool's manufacturer's warranty provided in conjunction with the purchase of the Washing Machines, and which is enforceable by Plaintiffs and the Classes as against Whirlpool regardless of where, or from whom, the Washing Machines were acquired.

184.    At all times relevant hereto, there was a duty imposed by law which requires that Whirlpool's Washing Machines be reasonably fit for the purposes for which washing machines are used, that they are of fair average quality within their description, and that they be acceptable in trade for their description.

185.    Whirlpool has not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer or exclusion of the same was and is ineffectual.

186.    Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiffs and the Classes were not merchantable, and not fit for the ordinary purposes for which they were sold.  The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain Design Defects that result in Mold Problems.

187.    As documented in its own business records and elsewhere, Whirlpool was notified that the Washing Machines were not merchantable within a reasonable amount of time after the latent defects manifested itself to Plaintiffs and the Classes.

188.    As a direct result of the non-merchantability of the Washing Machines described herein, Plaintiffs and other members of the Classes have sustained damages in

43

an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**Asserted On Behalf Of All Non-Ohio Classes**
**(<u>Unjust Enrichment</u>)**

189.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

190.     This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Classes, to the extent that the warranties do not govern all of Plaintiffs' and Class members' claims or there is any determination that Plaintiffs do not have standing to assert any contractual claims asserted against Whirlpool on because of any alleged absence of contractual privity or otherwise.

191.     Plaintiffs and the members of the Classes conferred a benefit on Whirlpool, of which benefit Whirlpool had knowledge.  By its wrongful acts and omissions described herein, including selling the Washing Machines, Whirlpool was unjustly enriched at the expense of Plaintiffs and the members of the Classes.

192.     Plaintiffs' detriment and Whirlpool's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

193.     It would be inequitable for Whirlpool to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Washing Machines.

194.     Plaintiffs and the members of the Classes seek restitution from Whirlpool and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Whirlpool from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

44

## TENTH CAUSE OF ACTION
### Asserted On Behalf Of The California Class
### The Song-Beverly Act - Breach Of Express Warranty
### (Violations Of Civil Code § 1790 et seq.)

195.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

196.    Plaintiffs Schaeffer and Call assert this cause of action on behalf of themselves and the other members of the California Class.

197.    Whirlpool warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from serious defects and, nevertheless, continued to market, distribute, and sell these Machines with these express warranties.

198.    Whirlpool also sold extended warranties to some members of the California Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market, distribute, and sell extended warranties with respect to the Machines despite the serious defects in the Washing Machines.

199.    Whirlpool further warranted the stainless steel drums for their lifetime.

200.    As an express warrantor and manufacturer, Whirlpool had certain obligations under the Song-Beverly Act, and, in particular, Civil Code §1793.2(b) and (d), to conform the Washing Machines to its express warranties.

201.    Whirlpool is obligated under the terms of its express warranties to repair and/or replace the defective Machines sold to Plaintiffs Schaeffer and Call and the other members of the California Class.

45

202.    Whirlpool has breached its express warranties, as set forth above, including its extended warranties, by selling Washing Machines in a condition that does not meet the warranty obligations undertaken by Whirlpool, and by failing to repair the defects and/or replace the defective parts in the Machines.

203.    Plaintiffs Schaeffer and Call and the other members of the California Class have used the Washing Machines for their intended and ordinary purpose of cleaning things.

204.    Plaintiffs Schaeffer and Call and the other members of the California Class have performed each and every duty required under the terms of the express warranties, except as may have been excused or prevented by the conduct of Whirlpool or by operation of law in light of Whirlpool's unconscionable conduct.

205.    Whirlpool has received sufficient and timely notice of the breaches of express warranty alleged herein.  Despite this notice and Whirlpool's knowledge, Whirlpool refuses to honor its express warranties, even though it knows of the inherent defects in the Washing Machines.

206.    In addition, Whirlpool has received thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines.

207.    Plaintiffs Schaeffer and Call and the other members of the California Class have given Whirlpool a reasonable opportunity to cure its failures with respect to its express warranties, and Whirlpool failed to do so.

208.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to

46

disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

209.    Whirlpool has failed to provide to Plaintiffs Schaeffer and Call and the other members of the California Class, as a warranty replacement, a product that conforms to the qualities and characteristics that Whirlpool expressly warranted when Plaintiffs Schaeffer and Call and the other members of the California Class purchased their Washing Machines.

210.    Whirlpool has not conformed the Washing Machines to the express warranty.  Whirlpool is, therefore, required to either pay damages or reimburse the buyer the purchase price and incidental damages under Civil Code §§ 1793.2(d) and 1794.

211.    Whirlpool knew of its obligations under its express warranties to pay for a new Machine, as needed, caused by the defects described herein.  However, Whirlpool has willfully refused to pay for a new Machine as required under its express warranties.  Whirlpool is, therefore, liable for not only damages, but also a civil penalty under Civil Code § 1794.

### ELEVENTH CAUSE OF ACTION
### Asserted On Behalf Of The California Class
### The Song-Beverly Act - Breach Of Implied Warranty
### (Violations Of Civil Code § 1790 et seq.)

212.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

213.    Plaintiffs Schaeffer and Call assert this cause of action on behalf of themselves and the other members of the California Class.

214.    Whirlpool was a merchant in the sale of the Washing Machines to

Plaintiffs Schaeffer and Call and the other members of the California Class.  Whirlpool designs, manufactures, markets, advertises, distributes and sells the Washing Machines.

215.    By operation of law, Whirlpool provided Plaintiffs Schaeffer and Call and the other members of the California Class with an implied warranty of merchantability in the sale and lease of the Washing Machines.

216.    Whirlpool breached its implied warranty by selling Washing Machines that were not fit for the ordinary purposes of dependable operation and effective cleaning of things, and by failing to repair the defects and/or replace the defective parts in the Machines.

217.    Whirlpool knew or had reason to know that Plaintiffs Schaeffer and Call and the other members of the California Class purchased the Washing Machines to effectively and dependably wash their things.

218.    The Washing Machines do not conform to the promises and affirmations uniformly issued by Whirlpool in its sales materials and warranties.

219.    Plaintiffs Schaeffer and Call and the other members of the California Class have used the Washing Machines for their intended and ordinary purpose of cleaning things.

220.    Plaintiffs Schaeffer and Call and the other members of the California Class have performed each and every duty required by law, except as may have been excused or prevented by the conduct of Whirlpool or by operation of law in light of Whirlpool's unconscionable conduct.

221.    Plaintiffs Schaeffer and Call and the other members of the California Class have provided sufficient and timely notice to Whirlpool regarding the problems they

experienced with the Washing Machines and, notwithstanding such notice, Whirlpool has failed and refused to offer Plaintiffs Schaeffer and Call and the other members of the California Class an effective remedy.

222.    In addition, Whirlpool has received thousands of complaints and other notices from consumers advising them of the defects associated with the Washing Machines.

223.    Plaintiffs Schaeffer and Call and the other members of the California Class have given Whirlpool a reasonable opportunity to cure its failures with respect to its implied warranty, and Whirlpool failed to do so.

224.    By failing to repair the Washing Machines and by failing to replace the Washing Machines as needed, Whirlpool has breached the implied warranty of merchantability.

225.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the implied warranty in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

226.    Plaintiffs Schaeffer and Call and the other members of the California Class have been damaged as a result of Whirlpool's breach of the implied warranty of merchantability.

227.    Plaintiffs Schaeffer and Call and the other members of the California Class are entitled to the remedies provided by California Civil Code § 1794.

**TWELFTH CAUSE OF ACTION**
**Asserted on Behalf of the Florida Class**
**(Violation of Florida's Deceptive and Unfair Trade Practices Act,**
**F.S.A., 501.201 *et seq.* ("FDUTPA"))**

228.    Plaintiffs incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

229.    At all relevant times, Plaintiffs Hollander and Bicknell and all members of

the Florida Class were consumers within the meaning of FDUTPA.

230.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce

within the meaning of FDUTPA.

231.    The practices of Whirlpool violate FDUTPA for, among other things, one

or more of the following reasons:

> a.    Whirlpool omitted and concealed material facts from its
> communications and disclosures to Plaintiffs Hollander and
> Bicknell and all members of the Florida Class regarding the
> defect inherent in the Washing Machines;
>
> b.    Whirlpool made false and/or misleading statements of
> material fact regarding the Washing Machines, which
> statements were likely to deceive the public; and
>
> c.    Whirlpool knew, or was reckless in not knowing, that its
> statements about the Washing Machines were false and/or
> misleading.

232.    By the conduct described herein, Whirlpool has engaged in unfair methods

of competition, unconscionable acts or practices, and unfair or deceptive acts or practices

in the conduct of trade or commerce.

233.    The representations and omissions by Whirlpool were likely to deceive

reasonable consumers and a reasonable consumer would have relied on these

representations and omissions.

840307.1

234.     Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiffs Hollander and Bicknell and all of the Florida Class members, they would not have purchased the Washing Machines.

235.     The foregoing acts and practices proximately caused Plaintiffs Hollander and Bicknell and other members of the Florida Class to suffer actual damages in the form of, among other things, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages,  attorneys' fees, and costs of suit.

### THIRTEENTH CAUSE OF ACTION
#### Asserted on Behalf of the Illinois Class
#### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("CFDBPA"))

236.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

237.     At all relevant times, Plaintiffs Werman and Torf and all members of the Illinois Class were consumers within the meaning of CFDBPA.

238.     At all relevant times hereto, Whirlpool engaged in trade and/or commerce within the meaning of CFDBPA.

239.     Despite knowing that the Washing Machines are manufactured and sold with Design Defects which cause Mold Problems, when it marketed and sold the Machines, Whirlpool uniformly represented to customers and the general public that the Machines are free from defects and will perform in the manner and for the purpose that they are intended.

240.     Under all circumstances, Whirlpool's representations and/or omissions

regarding the defect in the Washing Machines were misleading and deceptive, and Whirlpool intentionally made these misleading and deceptive representations and/or omissions (while knowing they were deceptive and misleading) for the purpose of deceiving Plaintiffs Werman and Torf and other Illinois Class members.  Whirlpool intended that Plaintiffs Werman and Torf rely on Whirlpool's deceptive and misleading practice.

241.    Whirlpool's conduct was unfair and deceptive and constituted an improper concealment, suppression, or omission of material facts—in violation of the CFDPA's prohibition against unfair business practices.

242.    Whirlpool violated the CFDPA's prohibition against misrepresenting and omitting material information during commercial transactions, as well as the CFDPA's prohibition against unfair business practices.

243.    Whirlpool's misconduct, including the misrepresentations and/or concealment of the defective condition of the Machines, as described in this Complaint, took place in the course of trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its retail outlets in Illinois.

244.    As a direct and proximate result of Whirlpool's violations of the CFDPA, Plaintiffs Werman and Torf and other Class members suffered damages, in the form of, among other things, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines.

## FOURTEENTH CAUSE OF ACTION
### Asserted on Behalf of the New York Class
### (Violations of Section 349 of New York General
### Business Law:  Deceptive Acts And Practices)

245.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

246.    Plaintiffs Glennon and Cohen and the other members of the New York Class are consumers in New York who purchased the defective Washing Machines and bring this action under NY GBL §349.

247.    Whirlpool has engaged in deceptive practices in the sale of the defective Washing Machines including: (1) selling the Machines with Design Defects that cause Mold Problems to occur with normal use and/or created a substantial risk of Mold Problems; and (2) failing to disclose and/or concealing this known defect and risk.

248.    The unfair and deceptive trade acts and practices of Whirlpool have directly, foreseeably, and proximately caused damages and injury to Plaintiffs Glennon and Cohen and the other members of the New York Class.

## FIFTEENTH CAUSE OF ACTION
### Asserted On Behalf Of The New Jersey Class
### (Violations Of New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1 et seq.)

249.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

250.    Plaintiffs Sandholm-Pound and Beierschmitt assert this cause of action on behalf of themselves and the other members of the New Jersey Class.

251.    Plaintiffs Sandholm-Pound and Beierschmitt, the other members of the New Jersey Class, and Whirlpool are "persons" within the meaning of the CFA.

53

252.    Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the New Jersey Class are "consumers" within the meaning of the CFA.

253.    At all relevant times material hereto, Whirlpool conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

254.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

255.    Whirlpool has engaged in deceptive practices related to the sale of the defective Washing Machines, including: (1) marketing and selling Washing Machines with Design Defects that cause Mold Problems with normal use and/or created a substantial risk that Mold Problems would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects and risks.

256.    Whirlpool consciously failed to disclose material facts to Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the New Jersey Class with respect to the alleged defects.

257.    Whirlpool's unconscionable conduct described herein included the omission and concealment of material facts concerning the Washing Machines.

258.    Whirlpool intended that Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the New Jersey Class rely on the acts of concealment and omissions, so that Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the New Jersey Class would purchase the Washing Machines.

259.    Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the

54

New Jersey Class, they would not have purchased the Machines.

260.    The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiffs Sandholm-Pound and Beierschmitt and the other members of the New Jersey Class to suffer an ascertainable loss in the form of, among other things, monies spent to repair, purchase cleaning products or replace the Washing Machines and loss in value of the Washing Machines, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorney's fees, and costs of suit.

**SIXTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The California Class**
**(<u>Unfair Competition Law (Bus. & Prof. Code §17200, *et seq*.</u>)**

261.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

262.    Plaintiffs Schaeffer and Call assert this cause of action on behalf of themselves and the other members of the California Class.

263.    Whirlpool has engaged in unfair, unlawful, and fraudulent business practices by: (1) marketing and selling Washing Machines with Design Defects that cause Mold with normal use and/or created a substantial risk that Mold Problems would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects and risks.

264.    Whirlpool intentionally concealed and/or failed to disclose that the Washing Machines have a Design Defect, and that the Design Defect causes Mold Problems, for the purpose of inducing Plaintiffs Schaeffer and Call and the other members of the California Class to purchase the Machines.

55

265.    The facts concealed and/or not disclosed by Whirlpool to Plaintiffs Schaeffer and Call and the other members of the California Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) the Washing Machines.

266.    Plaintiffs Schaeffer and Call and the other members of the California Class justifiably acted or relied to their detriment upon the concealment and/or non-disclosed facts as evidenced by their purchase of the defective Washing Machines.

267.    Had Plaintiffs Schaeffer and Call and the other members of the California Class known of the Design Defect, they would not have purchased the Washing Machines, or would have paid less for them.

268.    By engaging in the above-described acts and practices, Whirlpool has committed one or more acts of unfair competition within the meaning of Business and Professions Code §17200, *et seq*.

269.    Whirlpool's acts and practices have deceived and/or are likely to deceive members of the consuming public and the members of the California Class.

270.    Whirlpool knowingly sold Plaintiffs Schaeffer and Call and the other members of the California Class and other consumers Washing Machines with defects that have rendered the Machines essentially unusable for the purposes for which they were sold.

271.    The injury to consumers by this conduct is greatly outweighed by any alleged countervailing benefit to consumers or competition under all of the circumstances.  Moreover, in light of Whirlpool's exclusive knowledge of the defects, the injury is not one that Plaintiffs Schaeffer and Call and the other members of the

56

California Class could have reasonably avoided.

272.    Whirlpool's acts and practices are unlawful because they violate Cal. Code §§ l668, 1709 and 1710.  Whirlpool's acts and practices are also unlawful because they violate the Song-Beverly Act, Cal. Civil Code § 1790, *et seq*. and Cal. Commercial Code § 2313.

273.    Plaintiffs Schaeffer and Call, on behalf of themselves and the other members of the California Class, seek an order from this Court awarding restitution, disgorgement, injunctive relief, and all other relief allowed under Section 17200, *et seq*., plus interest, attorneys' fees, and costs.

**SEVENTEENTH CAUSE OF ACTION**
**Asserted On Behalf Of The California Class**
**Consumers Legal Remedies Act**
**(<u>Violation of California Civil Code §§ 1750 et seq.</u>)**

274.    Plaintiffs allege and incorporate the above allegations by reference as if set forth herein at length.

275.    Plaintiffs Schaeffer and Call bring this claim on behalf of themselves and the California Class.

276.    This claim arises under the California Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq*.

277.    At all times relevant hereto, Plaintiffs Schaeffer and Call were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

278.    At all times relevant hereto, the Washing Machines constituted "goods" as that term is defined in Civ. Code § 1761(a).

279.    At all times relevant hereto, Whirlpool constituted a "person" as that term

57

is defined in Civ. Code § 1761(c).

280. At all times relevant hereto, Plaintiffs Schaeffer and Call's purchases of Whirlpool's Washing Machines constituted "transaction[s]" as that term is defined in Civ. Code § 1761(e).

281. At all times relevant hereto, Whirlpool provided "services" to Plaintiffs Schaeffer and Call within the meaning of Civil Code § 1761(b).

282. The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . approval, characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another; ... (9) Advertising goods . . . with intent not to sell them as advertised; and (19) Inserting an unconscionable provision in the contract." Civil Code §§ 1770(a)(5),(7), (9) and (19).

283. Whirlpool made uniform written representations that the Washing Machines are a high quality product that will perform as represented and, as set forth above, made specific representations regarding the capacity and characteristics of the Washing Machines that, as set forth above, were false, deceptive and/or misleading and were made in violation of the CLRA.

284. Whirlpool intentionally concealed and/or failed to disclose that the Washing Machines have a Design Defect, and that the Design Defect causes Mold Problems, for the purpose of inducing Plaintiffs Schaeffer and Call and the other members of the California Class to purchase the Machines.

58

285.    The facts concealed and/or not disclosed by Whirlpool to Plaintiffs Schaeffer and Call and the other members of the California Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) the Washing Machines.

286.    Plaintiffs Schaeffer and Call and the other members of the California Class justifiably acted or relied to their detriment upon the concealment and/or non-disclosed facts as evidenced by their purchase of the defective Washing Machines.

287.    Had Plaintiffs Schaeffer and Call and the other members of the California Class known of the Design Defect, they would not have purchased the Washing Machines, or would have paid less for them.

288.    Plaintiffs Schaeffer and Call were consumers under Civil Code §1761(d). Civil Code § 1780 (a)(2) permits any court of competent jurisdiction to enjoin practices that violate Civil Code § 1770.

**EIGHTEENTH CAUSE OF ACTION**
**Asserted on Behalf of the Maryland Class**
**(Violation of Maryland Consumer Protection Act,**
**Md. Code Ann. § 13-303 *et seq.* ("MCPA"))**

289.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

290.    Plaintiff Nordan brings this claim on behalf of herself and the Maryland Class.

291.    Pursuant to the MCPA §§ 13-301(3), (9), deceptive trade practices include the "[f]ailure to state a material fact if the failure deceives or tends to deceive," and also include the "knowing concealment, suppression, or omission of any material fact with the

59

intent that a consumer rely on the same."

292.     Whirlpool knew of the Design Defects in the Washing Machines.

293.     Whirlpool knew that the existence of the Design Defects in the Washing Machines was material to Plaintiff Nordan and the Maryland Class.

294.     Whirlpool failed to disclose that the Washing Machines were inherently defective to Plaintiff Nordan and the Maryland Class.

295.     Whirlpool's failure to disclose the material fact of the Design Defects deceived Plaintiff Nordan and the Maryland Class.

296.     Whirlpool failed to disclose the Design Defects in the Washing Machines with the intent that consumers would rely upon that omission to purchase the Washing Machines.

297.     Plaintiff Nordan and the Maryland Class have suffered injury as a result in that they purchased Washing Machines that they would not have otherwise purchased had they known of the defect.

298.     As a result, Plaintiff Nordan and the Maryland Class have suffered actual damages in the form of, *inter alia,* monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

### NINETEENTH CAUSE OF ACTION
### Asserted on Behalf of the North Carolina Class
### (Violation of North Carolina Unfair and Deceptive Trade Practices Act §75-1.1 ("NCGS"))

299.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

60

300.    Plaintiff Snyder brings this claim on behalf of herself and the North Carolina Class.

301.    Pursuant to NCGS §75-1.1(a), "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

302.    At all relevant times, Whirlpool's acts and commissions were in and affected commerce within the meaning of NCGS.

303.    Whirlpool omitted and concealed material facts from its communications and disclosures to Plaintiff Snyder and all members of the North Carolina Class regarding the Design Defects in the Washing Machine.

304.     Whirlpool's acts and omissions had a tendency or capacity to deceive Plaintiff Snyder and the North Carolina Class.

305.    Plaintiff Snyder and the North Carolina Class were injured by reason of Whirlpool's acts and omissions.

306.    Whirlpool's conduct as described herein was unfair, deceptive, violating of public policy, and substantially injurious to Plaintiff Snyder and the North Carolina Class.

307.    Plaintiff Snyder and the North Carolina Class have suffered actual damages in the form of, *inter alia* monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit.

## TWENTIETH CAUSE OF ACTION
### Asserted on Behalf of the Arizona Class
### <u>Violation of Arizona's Consumer Fraud Act (A.R.S. §§44-1521, *et seq.*)</u>

308.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

309.    Plaintiff Strong brings this claim on behalf of herself and the Arizona Class.

310.    Arizona's Consumer Fraud Act ("CFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Whirlpool's conduct, as described herein, is in violation of the CFA.

311.    Whirlpool violated the CFA when it represented, through its advertising, warranties and other express representations, that the Washing Machines had characteristics and benefits that they did not actually have.

312.    Whirlpool violated the CFA when it falsely represented, through its advertising, marketing, and other express representations, that the Washing Machines were of a certain quality or standard when they were not.

313.    Whirlpool violated the CFA by fraudulently concealing from and/or intentionally failing to disclose, to Plaintiff Strong and the Arizona Class, material information about the Washing Machines in a manner that was deceptive.

314.    Whirlpool violated the CFA by holding the Washing Machines out as

superior in quality, when, in fact, they are defective.

315.    Whirlpool continues to violate the CFA by continuing to actively conceal material information about the Washing Machines and by representing to Plaintiff Strong and the members of the Arizona Class that the Washing Machines are free of defects and/or provide superior cleaning power.

316.    As a direct and proximate result of Whirlpool's violations of the CFA, Plaintiff Strong and the Arizona Class have suffered injury in fact and/or actual damage, in that they purchased Washing Machines that have Design Defects that cause Mold Problems.

317.    Plaintiff Strong and the Arizona Class members relied on Whirlpool's misrepresentations and omissions.  Had Whirlpool disclosed in its marketing and sales statements the true quality of the Washing Machines, Plaintiff Strong and the Arizona Class would not have purchased, or would have paid significantly less for, the Washing Machines.  Plaintiff Strong and the Arizona Class have suffered damages as a result.

318.    Plaintiff Strong and the Arizona Class members have suffered an injury in fact and lost money in that had Whirlpool disclosed the true nature and quality of the Washing Machines, they would not have purchased, or would have paid significantly less for, the Washing Machines.

319.    Plaintiff Strong, on behalf of herself and all others similarly situated, demands judgment against Whirlpool for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid by Plaintiff Strong and the Arizona Class to purchase the Washing Machines and/or disgorgement of funds received by Whirlpool from the sale of the Washing Machines, along with interest, attorneys' fees and costs.

**TWENTY-FIRST CAUSE OF ACTION**
**Asserted on Behalf of the Texas Class**
**(Violation of Texas Deceptive Trade Practices - Consumer Protection Act, TEX.**
**BUS & COM CODE §17.41 *et seq*. ("DTPA"))**

320.    Plaintiffs incorporate by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

321.    Plaintiff Gardner brings this claim on behalf of herself and the Texas

Class.

322.    At all relevant times, Plaintiff Gardner and all members of the Texas Class

were consumers within the meaning of DTPA.

323.    At all relevant times hereto, Whirlpool engaged in trade and/or commerce

within the meaning of DTPA.

324.    The practices of Whirlpool violate DTPA for, *inter alia*, one or more of

the following reasons:

      a.    Whirlpool omitted and concealed material facts from its
communications and disclosures to Plaintiff Gardner and all
members of the Texas Class regarding the Design Defects inherent
in the Washing Machines;

      b.    Whirlpool made false and/or misleading statements of material fact
regarding the Washing Machines, which statements were likely to
deceive the public;

      c.    Whirlpool knew, or was reckless in not knowing, that their
statements about the Washing Machines were false and/or
misleading;

      d.    Whirlpool represented that a guarantee or warranty confers or
involves rights or remedies which it does not have;

      e.    Whirlpool represented that the Washing Machines had
sponsorship, approval, characteristics uses and benefits that they
did not have; and

      f.    Whirlpool represented that the Washing Machines were of a

64

particular standard, quality or grade, when they were not.

325.    By the conduct described herein, Whirlpool has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

326.     The representations and omissions by Whirlpool were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

327.    Had Whirlpool disclosed all material information regarding the Washing Machines to Plaintiff Gardner and all of the Texas Class members, they would not have purchased the Washing Machines.

328.    The foregoing acts and practices proximately caused Plaintiff Gardner and other members of the Texas Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, pray for judgments against Whirlpool as follows:

a.    For an order certifying the Classes, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiffs as representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

b.    For all recoverable compensatory, statutory and other damages

65

sustained by Plaintiffs and the Classes;

      c.     For costs;

      d.     For both pre-judgment and post-judgment interest on any amounts

awarded;

      e.     For appropriate injunctive relief;

      f.     For payment of attorneys' fees and expert fees as may be allowable

under applicable law; and

      g.     For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY**

Plaintiffs demand trial by jury.

Dated:  September 25, 2009

          Respectfully submitted,

          /s/ Jonathan D. Selbin
          Jonathan D. Selbin
          LIEFF, CABRASER, HEIMANN &
            BERNSTEIN, LLP
          250 Hudson Street, 8th Floor
          New York, NY  10013-1413
          Telephone:  (212) 355-9500
          Facsimile:   (212) 355-9592
          jselbin@lchb.com

          Mark P. Chalos
          LIEFF, CABRASER, HEIMANN &
            BERNSTEIN, LLP
          150 Fourth Avenue North, Suite 1650
          Nashville, TN  37219
          Telephone:  (615) 313-9000
          Facsimile:   (615) 313-9965
          mchalos@lchb.com

840307.1

George K. Lang
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, IL  60602
Telephone:  (312) 220-0000
Facsimile:  (312) 220-7777
george@freedweiss.com

James C. Shah
Natalie Finkelman
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA  19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

Steven A. Schwartz
CHIMICLES & TIKELLIS LLP
One Haverford Centre
Haverford, PA  19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
sas@chimicles.com

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street
Philadelphia, PA  19102
Telephone:  (215) 564-2300
Facsimile:  (215) 851-8029
jshub@seegerweiss.com

Brian Ruschel, Esq.
925 Euclid Avenue, Suite 660
Cleveland, OH  44115
Telephone:  (216) 621-3370
Facsimile:  (216) 621-3371
bruschel@aol.com

67

840307.1

Mark Schlachet
LAW OFFICE OF MARK SCHLACHET
3637 South Green Road, 2nd Floor
Beachwood, OH  44122
Telephone:  (216) 896-0714
Facsimile:   (216) 514-6406
mschlachet@clevelandnet.com

Jacqueline Sailer
MURRAY, FRANK & SAILER LLP
275 Madison Avenue
New York, NY  10016
Telephone:  (212) 682-1818
Facsimile:   (212) 682-1892
jsailer@murrayfrank.com

Steven L. Wittels
SANFORD WITTELS & HEISLER, LLP
950 Third Avenue, 10th Floor
New York, NY  10022
Telephone:  (646) 723-2947
Facsimile:   (646) 723-2948
swittels@nydclaw.com

Steven R. Jaffe
ROTHSTEIN ROSENFELDT ADLER
Las Olas City Centre
401 East Las Olas Boulevard, Suite 1650
Fort Lauderdale, FL  33301
Telephone:  (954) 522.3456
sjaffe@rra-law.com

Peter L. Masnik
KALIKMAN & MASNIK
30 Washington Avenue, Suite B7
Haddonfield, NJ  08033-3341
Telephone:  (856) 428-5222
pmasnik@aol.com

840307.1

E. Powell Miller
Courtney Cuillo
THE MILLER LAW FIRM, P.C.
Miller Building
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone:  (248) 841-2200
Facsimile:  (248) 652-2852

*Attorneys for Plaintiffs*
*and the Proposed Class*

840307.1

## **PROOF OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) today (September 25, 2009).

/s/ Mark P. Chalos
Mark P. Chalos
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, Tennessee 37219
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965
mchalos@lchb.com

70

840307.1