UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
                                              :
In re: WHIRLPOOL CORP.          :          CASE NO. 1:08-wp-65000
FRONT-LOADING WASHER          :
PRODUCTS LIABILITY LITIGATION :
                                              :          AMENDED OPINION & ORDER
                                              :          [Resolving Doc. No. 21]
                                              :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Defendant Whirlpool Corporation moves this Court to dismiss a number of claims in the

Plaintiffs' Master Class Action Complaint.  [Doc. 21.]  The Plaintiffs oppose the motion.  [Doc. 36.]

While the Defendant's motion to dismiss was pending, this Court granted the Plaintiffs leave to file

a Second Amended Master Class Action Complaint ("MCAC"), which the Plaintiffs filed on

September 25, 2009.[1/]  [Doc. 66.]  The Court's analysis considers the Defendant's motion to dismiss

as it applies to the newly-amended MCAC.

        In this multidistrict products liability litigation, the Plaintiffs claim that Whirlpool has

violated various state and federal laws in the marketing and sale of its front-loading washing

machines because of alleged defects in the machines that lead to mold problems.  In general, the

Plaintiffs allege violations of the Ohio Consumer Sales Practices Act, tortious breach of warranty,

negligent design and failure to warn, breach of express and implied warranties, unjust enrichment,

and fraud-based violations of numerous state consumer protection and deceptive trade practices

---

[1/]The Second Amended Master Class Action Complaint (1) added California Plaintiff Paula Call, (2) deleted
Ohio Plaintiff Chris Allison, and (3) clarified allegations concerning California Plaintiffs Call's and Schaeffer's
California Unfair Competition Law claims and Consumer Legal Remedies Act claims.  [Doc. 58 at 1.]

Case No.1:08-wp-65000
Gwin, J.

statutes.  [Doc. 66 at 2.]

In its motion to dismiss, Defendant Whirlpool says that the Plaintiffs fail to state a claim under each of the relevant state consumer protection statutes, that certain Plaintiffs fail to state claims for breach of express or implied warranty, that all of the Plaintiffs fail to state a claim for unjust enrichment, and that the Ohio Plaintiffs fail to state a claim for negligent design and failure to warn.  Defendant Whirlpool also says that Ohio Plaintiff Allison and California Plaintiff Schaeffer were not properly added to any underlying complaint and therefore, must be dismissed from the MCAC.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's motion to dismiss.

## I. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but it need not accept a plaintiff's legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Federal Rule of Civil Procedure 8 provides the general pleading standard and requires only that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations omitted).  Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations and internal quotations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

Case No.1:08-wp-65000
Gwin, J.

as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. v. Twombly,* *550 U.S. 544, 570 (2007)*).  The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*  The Supreme Court has explained the line between possible and plausible:  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and internal quotations omitted).

## II. Background Facts & Procedural History[2]

This putative class action arises out of Defendant Whirlpool's manufacture, marketing, and sale of front-loading washing machines.  The Plaintiffs, consumers who purchased Whirlpool machines, say that contrary to Whirlpool's various representations about the quality of the machines, those machines suffer from multiple defects.  These defects allegedly cause the machines to accumulate mold and mildew and to give off moldy odors, damaging the Plaintiffs' clothing and rendering the machines potentially dangerous and ultimately useless.

In selling its front-loading washing machines through various retailers, Whirlpool provides a one-year factory warranty.  [Doc. 66 at 5.]  In addition, Whirlpool provides a "limited lifetime warranty on the stainless steel drum" for most of its Duet and Duet HT washing machines.  [Doc. 66 at 6.] Whirlpool also sells the washing machines at issue as "High Efficiency" and labels them as "ENERGY STAR" complaint.  [Doc. 66 at 6.]  Finally, Whirlpool provides each purchaser with a Use & Care Guide.  [Doc. 66 at 7.]  The Plaintiffs say that some of these Guides fail to mention potential mold problems altogether, while others advise only that mold and mildew issues may arise

---

[2]Because the MCAC covers seventeen named plaintiffs representing eleven states, the Court sets out only those facts common to all plaintiffs.  To the extent a specific plaintiff's experiences with his or her washing machine are relevant, the Court discusses those facts together with the applicable law *infra*.

Case No.1:08-wp-65000
Gwin, J.

if the consumer uses regular detergent instead of the recommended High Efficiency detergent. [Doc. 66 at 7.]

Despite these various representations, however, the Plaintiffs say that the washing machines suffer from numerous design defects that cause mold and mildew buildup even when consumers use the machines as instructed. [Doc. 66 at 8.] Specifically, the Plaintiffs say that the machines fail to: (1) properly drain water and eliminate lingering moisture, (2) sufficiently rinse away detergent and fabric softener residue, (3) prevent accumulation of residues and growths, (4) provide dispenser compartments with proper detergent and fabric softener fill lines, and (5) effectively clean themselves. [Doc. 66 at 8-9.] The Plaintiffs also generally point to defects in the stainless steel drums and door seals that they believe play a role in causing the mold problems. [*Id.*]

In addition to manufacturing the machines, Whirlpool has also developed several products to treat mold problems in front-loading washers. For example, Whirlpool sells "affresh," a tablet that consumers can run through an empty washing machine to remove and prevent odor-causing residue. [Doc. 66 at 12.] Whirlpool also sells a more comprehensive affresh washing cleaner kit that includes both tablets and cleaning cloths. [*Id.*] The Plaintiffs view these products as further evidence of Whirlpool's knowledge of and attempt to profit from the defects in its machines.

The Plaintiffs purchased their Whirlpool front-loading washing machines between May 2003 and August 2006. [Doc. 66 at 15-28.] All experienced various problems with mold and mildew buildup, made complaints to Whirlpool or to a Whirlpool dealer, attempted various remedies, and ultimately filed suit against Whirlpool.

On December 2, 2008, the United States Judicial Panel on Multidistrict Litigation filed a transfer order, relocating and centralizing four such cases before this Court. [Doc. 1.] On February

-4-

Case No.1:08-wp-65000
Gwin, J.

13, 2009, these named plaintiffs and twelve others filed a Master Class Action Complaint in this Court.  [Doc. 7.]  On March 13, 2009, Whirlpool filed a partial motion to dismiss.  [Doc. 21.] Although the Plaintiffs have since twice amended the MCAC, the parties have fully briefed the motion to dismiss and it is now ripe for ruling.

### III. Analysis

The Plaintiffs' Second Amended Master Class Action Complaint asserts 21 causes of action against Defendant Whirlpool.  Specifically, Counts I-IV assert claims on behalf the Ohio Plaintiffs for violation of the Ohio Consumer Sales Practices Act, tortious breach of warranty, negligent design and failure to warn, and unjust enrichment.  [Doc. 66 at 33-37.]  Counts V and VI assert claims on behalf of all non-Ohio Plaintiffs for violations of the written and implied warranty provisions of the Magnuson Moss Act.  [Doc. 66 at 38-40.]  Counts VII and VIII assert claims on behalf of all non-Ohio Plaintiffs for breach of state law express and implied warranties.  [Doc. 66 at 40-43.]  Count IX asserts claims on behalf of all non-Ohio Plaintiffs for unjust enrichment.  [Doc. 66 at 44.]  Counts X and XI assert claims on behalf of the California Plaintiffs for breach of express and implied warranties under the Song-Beverly Act.  [Doc. 66 at 45-49.]  Finally, Counts XII-XXI assert claims on behalf of Plaintiffs from Florida, Illinois, New York, New Jersey, California, Maryland, North Carolina, Arizona, and Texas, alleging violations of each state's consumer protection or deceptive trade practices law.  [Doc. 66 at 50-65.]

Given the complex nature of the Second Amended MCAC as well as the overlapping nature of the motion to dismiss, this Court addresses the motion in three parts: (1) the Ohio Plaintiffs' claims, (2) the non-Ohio Plaintiffs' warranty claims, and (3) the non-Ohio Plaintiffs' unjust enrichment and consumer protection claims.

Case No.1:08-wp-65000
Gwin, J.

*III.A. The Ohio Plaintiffs' Claims*

*1. Ohio Consumer Sales Practices Act*

Whirlpool argues that the Ohio Plaintiffs fail to state a claim under the Ohio Consumer Sales Practice Act, Ohio Rev. Code Ann. § 1345.01 *et seq.* ("OCSPA"). [Doc. 22 at 15-18.] That statute's section on remedies prohibits a plaintiff from bringing a class action under the statute unless the defendant has prior notice that conduct substantially similar to its alleged conduct is deceptive or unconscionable as declared by either (1) a rule adopted by the Ohio Attorney General, or (2) an Ohio state court holding. *See* Ohio Rev. Code § 1345.09(B); *see also Marrone v. Philip Morris USA, Inc., 850 N.E.2d 31 (Ohio 2006).* Whirlpool argues that the Ohio Plaintiffs have failed to identify sufficient prior notice, and thus the Court should dismiss their OCSPA claims.

Whirlpool's argument suffers from two flaws. First, this argument is not appropriate at the motion-to-dismiss stage; it belongs at the class certification stage. After all, this argument does not contend that the individual named Ohio Plaintiffs (Glazer and Allison) have failed to state claims under the OCSPA upon which relief can be granted. Rather, Whirlpool's argument is that even if their individual OCSPA claims are viable, the Ohio Plaintiffs cannot maintain those claims as a class action. [Doc. 22 at 15.] Thus, even if Whirlpool's legal argument were sound, it would not support dismissal of the Ohio Plaintiffs' OCSPA claims.

Second, even at the class certification stage, it is not clear whether § 1345.09(B)'s class action limitations apply in federal court. Under *Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938),* federal courts apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).* The Ohio Plaintiffs may have an argument that the *Erie* doctrine bars application of § 1345.09(B), a state procedural rule that limits the use of a procedural

Case No.1:08-wp-65000
Gwin, J.

device (the class action) otherwise available under Federal Rule 23.

However, the Court need not opine on that argument at the motion-to-dismiss stage.  At the class certification stage, moreover, the viability of that argument will likely become clearer in light of the Supreme Court's recent grant of certiorari on a similar issue.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted* 129 S. Ct. 2160 (2009).

Thus, because Whirlpool's argument is inappropriate at the 12(b)(6) stage, the Court **DENIES** its motion to dismiss the Ohio Plaintiffs' OCSPA claims on prior notice grounds.

*2. Ohio Tortious Breach of Warranty*

Whirlpool does not move to dismiss Count II.

*3. Ohio Negligent Design and Failure to Warn*

Defendant Whirlpool says that Ohio law bars the Ohio Plaintiffs' claims for negligent design and failure to warn because they seek only economic damages.  [Doc. 22 at 51.]  Responding, the Ohio Plaintiffs say that courts applying Ohio law have limited this rule or at least refused to apply it to claims by individual consumers (as opposed to commercial buyers).  [Doc. 36 at 46-49.]

As a general rule, "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989).  Thus, in the absence of injury to persons or damage to property, economic losses cannot be recovered in tort.  *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 667 (Ohio 1995).

In Ohio, however, the applicability of this economic loss rule depends on the complexity of the parties and the type tort claim at issue.  *See, e.g., HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1030-32 (6th Cir. 2003).  Although Ohio courts do distinguish between

Case No.1:08-wp-65000
Gwin, J.

commercial entities and individual consumers, the foundational doctrinal distinction in the economic

loss rule jurisprudence is whether the parties are in privity of contract.

In cases of contractual privity, courts apply a strong version of the economic loss rule.[3/] *See,*

*e.g.*, Chemtrol, 537 N.E.2d at 631 (holding that contract between parties, not law of negligence, gave

rise to duty and accordingly provided exclusive source of remedy).

In contrast, when the parties are not in privity of contract, courts apply a more relaxed rule,

allowing individual consumers to bring negligence claims for solely economic injuries.  For

example, discussing recovery for a product's self-inflicted damage, the Supreme Court of Ohio

noted, "[f]or an ordinary consumer, *i.e.*, one not in privity of contract with the seller or manufacturer

against whom recovery is sought, an action in negligence may be an appropriate remedy to protect

the consumer's property interests."  Chemtrol, 537 N.E.2d at 631; *see also* LaPuma v. Collinwood

Concrete, 661 N.E.2d 714, 716 (Ohio 1996) (holding that consumer's failure to allege other than

economic damages does not destroy tort claim but only removes it from purview of products liability

statutes); Midwest Ford, Inc. v. C.T. Taylor Co., 694 N.E.2d 114, 116-17 (Ohio Ct. App. 1997)

(noting that in absence of privity, Ohio law distinguishes between consumers, who may maintain

negligence claim for solely economic damages, and commercial buyers, who may not).

Nevertheless, Whirlpool says that even if Ohio law permits consumers to bring such a

negligence action, this exception applies only to claims for tortious breach of warranty.  [Doc. 37

at 36-37.] Although Whirlpool correctly notes that *LaPuma* dealt only with a warranty claim, it fails

---

[3/]Federal courts applying Ohio law have made a similar distinction. *See, e.g.*, Cincinnati Gas & Elec. Co. v.
Gen. Elec. Co., 656 F. Supp. 49, 56-61 (S.D. Ohio 1986) ("We conclude that since there is a written contract between
sophisticated parties and plaintiffs seek recovery for economic loss alone, plaintiffs are limited to such remedies that are
available under contract law.")*;* Avery Dennison Corp. v. Soliant LLC, No. 1:04CV1865, 2005 WL 3035511, at *2
(N.D. Ohio Aug. 23, 2005) ("For commercial parties in privity, the rule is clear that tort damages are not recoverable,
and the parties are limited to contractual remedies.").

-8-

Case No.1:08-wp-65000
Gwin, J.

to adequately account for the Supreme Court of Ohio's rather plain holdings that a plaintiff may pursue common-law claims for negligent design and failure to warn even though he has suffered only economic damages.  *See* *Carrel v. Allied Prods. Corp.*, 677 N.E.2d 795, 800 (Ohio 1997) (holding that common-law action of negligent design survived enactment of Ohio Products Liability Act even though Act required more than economic damages); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147 (Ohio 2002) ("We likewise find that [a plaintiff] can bring a common-law failure-to-warn claim.").

Lower Ohio courts have followed suit.  In *State Farm Mutual Automobile Insurance Co. v. Kia Motors America, Inc.*, the court allowed negligent design and failure-to-warn claims against the defendant auto manufacturer when an alleged defect caused a consumer's car to catch fire.  828 N.E.2d 701 (Ohio Ct. App. 2005).  Following the rule in *LaPuma* and *Beretta*, the court of appeals held that the common-law actions of negligent design and failure to warn survived the Act.  828 N.E.2d at 707-08.  Significantly, had the plaintiff sought anything beyond economic damages, the Products Liability Act would have precluded the common-law claims and limited the plaintiff to a different scheme of statutory remedies.  *Id.*  Thus, the court necessarily allowed a claim for negligent design and failure to warn for exclusively economic damages.  *Id.*; *see also* *Beretta*, 768 N.E.2d at 1146 ("[T]he failure to allege other than economic damages does not necessarily destroy the right to pursue common-law product liability claims.").

The Ohio Plaintiffs in this case assert precisely the same common-law claims.  *Chemtrol*, *LaPuma*, *Beretta*, and *Kia Motors* indicate that in Ohio, "ordinary consumers" who lack privity with a product's manufacturer may bring a claim for negligent design and failure to warn even though they plead only economic losses.

Case No.1:08-wp-65000
Gwin, J.

The cases relied upon by Whirlpool are inapposite.  Several state the economic loss rule as it applies to parties in privity—which both parties agree is not the case here.  *See, e.g.*, *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006); *Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 688 (N.D. Ohio 1998); *Chemtrol*, 537 N.E.2d at 63; *Cincinnati Gas & Elec Co. v. General Elec. Co.*, 656 F. Supp. 49, 56-61 (S.D. Ohio 1986).  Other cases actually support the Ohio Plaintiffs' arguments, distinguishing between commercial buyers and ordinary consumers.  *See Avery Dennison Corp. v. Soliant LLC*, No. 1:04CV1865, 2005 WL 2035511, at *2 (N.D. Ohio Aug. 23, 2005); *Cincinnati Gas*, 656 F. Supp. at 56-61.  And although the Sixth Circuit recently applied Ohio's economic loss rule to bar an individual's claim against a drug testing company, the plaintiff in that case was not a consumer who purchased the defendant's product at the end of the supply chain.  *Sagraves v. Lab One, Inc.*, 316 Fed. App'x 366, 369 (6th Cir. 2008) (holding that economic loss rule barred negligence claim because plaintiff could not show drug testing company had duty to protect against loss of his job as result of allegedly faulty test).

The only contrary case on point provides no analysis and reads *Chemtrol* beyond its own terms.  In *Lee v. Chrysler Corp.*, the court cited a passage from *Chemtrol* barring *commercial buyers* from bringing tort claims for economic loss as "the law of Ohio on the issue of economic losses" and summarily upheld the dismissal of a *consumer* plaintiff's negligence claims.  No. 2004CA00164, 2005 WL 449762, at *2-3 (Ohio Ct. App. Feb. 22, 2005).  As the dissenting judge correctly noted, however, *Chemtrol* does not state the rule as it applies to consumers.  2005 WL 449762, at *3-4 (Hoffman, J., dissenting) ("As recognized in *Chemtrol*, an ordinary consumer, not in privity with the manufacturer, may have an action in negligence to protect the consumer's property interests.").  Thus, one court's summary misapplication of *Chemtrol* cannot override the otherwise consistent

Case No.1:08-wp-65000
Gwin, J.

holdings of Ohio courts that absent privity, consumer plaintiffs may bring a negligence action for

economic losses.

Accordingly, this Court finds that the Ohio Plaintiffs sufficiently state a claim as to Count

III and **DENIES** Whirlpool's motion to dismiss Count III.

*4. Ohio Unjust Enrichment*

Defendant Whirlpool says that the Ohio Plaintiffs fail to state a claim for unjust enrichment

because they have not pled with particularity any facts showing that Whirlpool's conduct was

"wrongful."  Independently, Whirlpool says that the Ohio unjust enrichment claims fail because the

Plaintiffs do not allege that they purchased their washers directly from Whirlpool, as required under

Ohio law.  [Doc. 22 at 48.]  Responding, the Ohio Plaintiffs say that a claim of unjust enrichment

does not require particularized allegations of wrongful conduct and that they have in fact engaged

in economic transactions with Whirlpool.  [Doc. 36 at 49-52.]

In Ohio, unjust enrichment occurs "when a party retains money or benefits which in justice

and equity belong to another."  *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 532 N.E.2d 124,

125 (Ohio 1988).  To recover on a claim of unjust enrichment, a party must show: "(1) a benefit

conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3)

retention of the benefit by the defendant under circumstances where it would be unjust to do so

without payment."  *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).

Although Defendant Whirlpool cites the above language, it provides no legal support for its

subsequent assertion that the Ohio Plaintiffs must plead "wrongful" conduct with particularity.  In

fact, applying Ohio law, the Sixth Circuit has held just the opposite.  *Reisenfeld & Co. v. Network

Group, Inc.*, 277 F.3d 856, 860 (6th Cir. 2002) (noting that although Colorado law required plaintiff

-11-

Case No.1:08-wp-65000
Gwin, J.

to show that defendant had "engaged in some form of improper, deceitful, or misleading conduct," under Ohio law, "there is no such requirement").

Nevertheless, Whirlpool says that the Ohio Plaintiffs fail to state a claim for unjust enrichment because they do not allege that they purchased their washers directly from Whirlpool. In support of this contention, Whirlpool cites *Johnson v. Microsoft Corp*, 834 N.E.2d 791, 799 (Ohio 2005), and *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06CV763, 2007 WL 1725317 (N.D. Ohio June 13, 2007).

In *Johnson*, the Supreme Court of Ohio held that a plaintiff who had purchased a personal computer from a retailer could not maintain an unjust enrichment claim against software-maker Microsoft. 834 N.E.2d at 799. The court first noted "that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser." *Id.* Accordingly, the court held that "no economic transaction occurred between Johnson and Microsoft, and, therefore, Johnson cannot establish that Microsoft retained any benefit to which it is not justly entitled." 834 N.E.2d at 799 (internal quotations omitted).

Applying *Johnson*, the district court in *Cooper Wiring* held that a plaintiff who never alleged where, how, or when he had purchased Cooper wiring receptacles—or even that those receptacles had caused him any harm—could not state a claim for unjust enrichment against Cooper under Ohio law. 2007 WL 1725317, at *4. Citing *Johnson*, the district court noted that "for a plaintiff to confer a benefit on a defendant, an economic transaction must exist between the parties." *Id.* Moreover, the court rejected the plaintiff's "chain of sale" argument—that the court could infer that the plaintiff conferred some pecuniary benefit on the defendant through the chain of sale—as unfounded in Ohio

Case No.1:08-wp-65000
Gwin, J.

law. *Id.*

In a case similar to the one before this Court, the district court in *Bower v. International Business Machines* dismissed the plaintiffs' claims for unjust enrichment against IBM, finding that the plaintiffs had failed to plead an adequate "tie of causation" between the parties. 495 F. Supp. 2d 837, 844 (S.D. Ohio 2007). There, the plaintiffs alleged that defendant IBM had manufactured, marketed and sold an allegedly defective product. *Id.* at 839. In its motion to dismiss, IBM argued that the plaintiffs had failed to plead any tie of causation between their loss and its benefit. Agreeing with IBM, the court noted that "[n]owhere in their complaint have the Plaintiffs alleged that they ever paid money directly to IBM. Absent this, there is no way to determine that the Plaintiffs' loss has caused the Defendant's benefit." *Id.* at 844. In fact, the court believed that the opposite was likely true: "Presumably, the Defendant, as manufacturer, has received all of the money/benefit due from the sale of the product by its receipt of payment for the product from the retailer." *Id.* at 844 n.1.

In this case, the Ohio Plaintiffs' unjust enrichment claims fail for the same reason. Those Plaintiffs generally say that they have engaged in economic transactions with Whirlpool because Whirlpool directly or indirectly profited from their purchases, Whirlpool profited from repair services, and Whirlpool profited from the sale of affresh and other washer cleaning products. [Doc. 66 at 10.] As to their specific allegations, Plaintiff Glazer says that she purchased her washing machine at retailer Best Buy, while Plaintiff Allison says she bought her machine from retailer hhgregg. [Doc. 66 at 15-16.] Neither Plaintiff, however, alleges that she paid any money directly

Case No.1:08-wp-65000
Gwin, J.[4/]

to Whirlpool.[4/]   Although each says that Whirlpool *suggested* using affresh and Plaintiff Allison says

Whirlpool sent a repair technician to her home, again, neither Plaintiff says that she actually

*purchased* affresh—let alone purchased it from Whirlpool—or that she paid Whirlpool for the repair

services.   Absent such an allegation, the Plaintiffs are left only with the "chain-of-sale" argument

that *Cooper Wire* rejected as contrary to Ohio law.

Although the Plaintiffs fail to cite any law to rebut Defendant Whirlpool's argument, this

Court notes that at least two cases have permitted indirect economic transactions in unjust

enrichment cases.   First, in *Randleman v. Fidelity National Title Insurance Co.*, the court allowed

the plaintiffs, who had refinanced their homes through various lenders, to maintain a claim for unjust

enrichment against Fidelity, who allegedly overcharged those lenders for title insurance on the

refinancing transactions.   465 F. Supp. 2d 812, 823-25 (N.D. Ohio 2006).   There, Fidelity argued that

the plaintiffs had failed to claim that they *directly* conferred a benefit on it.   Citing allegations in the

complaint that the plaintiffs were "customers" of Fidelity and that the mortgage lenders passed the

plaintiffs' premium payments on to Fidelity, the court found that the plaintiffs had alleged a

sufficient "transactional nexus" for an unjust enrichment claim.   465 F. Supp. 2d at 825.

Similarly, in *Paikai v. General Motors Corp.*, the district court held that an Ohio plaintiff

who had purchased a GM car from a GM dealer could state a claim for unjust enrichment against

GM when he alleged various manufacturing defects in the car.   No. CIV. S-07-892, 2009 WL

275761, at *5-6 (E.D. Cal. Feb. 5, 2009).   Rejecting GM's argument that the plaintiff must allege

a "*direct* benefit," the court held that *Johnson* merely stood for the proposition that a plaintiff must

allege he had conferred "a benefit" on the defendant.   2009 WL 275761, at *5 (citing *Johnson*, 834

---

[4/]In the absence of any such allegation, this Court presumes, as the court in *Bower* did, that Whirlpool received
all of the benefits due from the sale of its washing machines when the *retailers* purchased them.

Case No.1:08-wp-65000
Gwin, J.

N.E.2d at 799).  The court, noting that the plaintiff had purchased a GM car from an authorized GM

dealer, largely relied on the plaintiff's allegations that GM had wrongfully denied warranty coverage

on the vehicle.  2009 WL 275761, at *5.  Thus, the court implicitly reasoned, GM had benefitted by

retaining the funds it should have expended to repair the plaintiff's vehicle.

Both *Randleman* and *Paikai* are distinguishable from this case.  In *Randleman*, the plaintiffs

alleged that they had essentially dealt with Fidelity, not the lender, and that the lender served merely

as a middleman who passed along their premium payments to Fidelity.  In this case, however, the

Plaintiffs make no such allegation, nor do they say that Best Buy or hhgregg remitted the specific

funds to Whirlpool after the transactions occurred.  Moreover, the warranty at issue in *Paikai*

required GM to repair the plaintiff's car at no cost, so GM's refusal to do so resulted in its direct

retention of a benefit that should have gone to the plaintiff.  Here, by contrast, the Plaintiffs do not

claim that Whirlpool has refused to service their washers and thereby retained for itself a benefit

owed to them; rather, they claim only that Whirlpool's repairs have not fixed the alleged mold

problems.

Simply, the Ohio Plaintiffs in this action fail to allege that they entered into any economic

transaction with Whirlpool, as required to state an unjust enrichment claim under Ohio law.

Accordingly, this Court **GRANTS** Whirlpool's motion to dismiss Count IV of the MCAC.

*III.B. Non-Ohio Warranty Claims*

Each Duet washer came with an express one-year factory warranty (the "material-or-

workmanship warranty"):

> For one year from the date of purchase, when this major appliance is operated and
> maintained according to instructions attached to or furnished with the product,
> [Defendants] will pay for Factory Specified Parts and repair labor to correct defects
> in materials or workmanship.

Case No.1:08-wp-65000
Gwin, J.

[Doc. 66 at 5.]

Additionally, the Duet Original models sold before September 2005 and the Duet HT models sold before August 2005 came with an express "limited lifetime warranty" on the stainless steel drum (the "stainless-steel-drum warranty") that stated that "for the lifetime of the washer," Whirlpool would "pay for the FSP (factory specified products), replacement parts for the Stainless Steel wash drum if defective in materials or workmanship."  [Doc. 66 at 6.]

In addition to these traditional express warranties, the Plaintiffs say that Whirlpool extended additional express warranties through its marketing of the Duet Machines and through the Use & Care Guides.   The Plaintiffs say that "[i]n conjunction with each sale, Whirlpool marketed, advertised, and warranted that the [Duet Machines] were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not cause Mold Problems."  [Doc. 66 at 6.]  In addition, Whirlpool sold the Duet Machines as "High Efficiency" and labeled them as "ENERGY STAR" compliant.  [Doc. 66 at 6-7.]

After the purchase and installation of the Washing Machines, Whirlpool provided Use & Care Guides.  The Use & Care Guides say that "noticeable mold and mildew" issues may arise when using regular detergent instead of the recommended high-efficiency detergent.  [Doc. 66 at 7.]  The Use & Care Guides also suggest that the owners leave the door to the Duet Machines open between cycles to ameliorate "[w]asher odor."  [Doc. 66 at 7.]

*1. Privity for Express and Implied Warranties*

Whirlpool moves this Court to dismiss a number of these state-law warranty claims because

Case No.1:08-wp-65000
Gwin, J.

the Plaintiffs do not allege that they were in privity with Whirlpool.[5/]   [Doc. 21 at 3.]

Whirlpool's privity arguments are based on the privity requirements of the various forum states where these cases originate.  The parties agree that, under choice of law principles, this Court should apply to each of the Plaintiffs the law of the forum state that she seeks to represent.  [Doc. 36 at 34 n.16.]  This Court will first address the implied warranty privity requirements and then express.

a. *Privity Requirement for Implied Warranties*[6/]

Whirlpool directs this Court to case law in several of the states involved in this case that require privity for implied warranty claims: Arizona (Strong), Florida (Bicknell, Hollander), Illinois (Werman, Torf), New York (Glennon, Cohen), North Carolina (Snyder), and California (Schaeffer, Call).  [Doc. 22 at 40-43.]  Responding, the Plaintiffs admit that none of them is in "literal privity" with Whirlpool but argue that this fact should not bar their claims because (1) "Plaintiffs have alleged sufficient facts to establish an agency relationship between Whirlpool and the authorized retailers from whom Plaintiffs . . . purchased their [Duet] Machines," and (2) "[m]any states recognize the doctrine of constructive privity."  [Doc. 36 at 34-37.]

i. *Privity by Agency*

In arguing that they have pleaded facts supporting a privity-by-agency claim, the Plaintiffs

---

[5/] Whirlpool had moved to dismiss Plaintiff Glazer's (Ohio) implied warranty claims for the same lack of privity. The Plaintiffs admit that Ohio requires privity for contractual breach of warranty claims and "[t]o the extent that the MCAC contains allegations of the contractual breach of warranty with respect to the Ohio Plaintiffs, Plaintiffs seek leave to amend the MCAC to withdraw those allegations."  [Doc. 36 at 34.]

[6/] The Defendants contend and the Plaintiffs do not dispute that the Plaintiffs may maintain a claim for breach of implied warranty under the Magnuson-Moss Act only to the extent they state the same claims under relevant state law. [Doc. 22 at 39; Doc. 36 at 36.]  Therefore, this Court's analysis on implied warranties applies with equal force to both the Magnuson-Moss claims and the state law claims. *Cf. Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) ("[E]xcept in the specific instances in which the Magnuson-Moss Act expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law.").

-17-

Case No.1:08-wp-65000
Gwin, J.

point to language in the MCAC saying that "Whirlpool manufactured, produced, and/or distributed front-loading Washing Machines for sale by its network of authorized dealers."[7/] [Doc. 66 at 5.] But the fact that Whirlpool sold its Duet Machines through authorized dealers does not compel the legal conclusion that the authorized dealers are Whirlpool's agents.

In support of its privity-by-agency theory, the Plaintiffs direct this Court to a single case, *Budd v. Quinlan*, 860 N.Y.S.2d 802, 804 (N.Y. Sup. Ct. 2008). *Budd*, however, cuts against a privity-by-agency theory because it affirmed the dismissal of an implied warranty claim against a defendant with whom the plaintiff was not in privity.[8/] The Plaintiffs have not supported their privity-by-agency argument with any relevant law and, additionally, have not pled facts that would support an agency relationship.

### ii. Constructive Privity

In addition to their privity-by-agency theory, the Plaintiffs also suggest that this Court should recognize a theory of constructive privity. In saying that many states recognize constructive privity, the Plaintiffs direct this Court to law from only California (Schaeffer, Call), North Carolina (Snyder), and Illinois (Werman, Torf).[9/] Because the Plaintiffs have acknowledged that this Court should apply

---

[7/] Plaintiffs also point to allegations in the MCAC that "Whirlpool is in the business of manufacturing, distributing, producing, and/or selling washing machines throughout the United States," and "thousands of . . . Washing Machine purchasers have complained directly (and indirectly) to Whirlpool and its authorized dealers and service personnel." [Doc. 66 at 5, 11.]

[8/] The Plaintiffs claim that *Budd* stands for the proposition that the "privity requirement [is] satisfied when the defendant is 'in business' with the buyer's immediate seller, where the seller is an authorized dealer." [Doc. 36 at 37.] But *Budd* neither held nor noted this proposition. Indeed, *Budd* affirmed the dismissal of a claim against one defendant because the plaintiff did not establish that the defendant "sold her the puppy or that said defendant was in business with" the other defendant. *Budd*, 860 N.Y.S. 2d at 803-04.

[9/] Although the Plaintiffs also cite cases from Indiana, New Jersey, Illinois, Texas, Maryland, and Georgia to support their constructive privity argument, these cases have no relevance to whether Arizona, Florida, or New York recognize constructive privity. The Plaintiffs have not cited any cases from those states recognizing the theory of constructive privity.

Case No.1:08-wp-65000
Gwin, J.

the laws of each individual Plaintiff's home state, and because the Plaintiffs have not shown that constructive privity is a viable theory in Arizona, Florida, or New York, this Court **DISMISSES** the Plaintiffs' implied warranty claims for Arizona (Strong), Florida (Bicknell, Hollander), and New York (Glennon, Cohen).[10]

The Plaintiffs have likewise failed to show that constructive privity is viable under North Carolina law. In responding to Whirlpool's argument that North Carolina retains a strict vertical privity requirement, the Plaintiffs direct this Court to *Hill v. James Walker Memorial Hospital*, 407 F.2d 1036, 1041 n.4 (4th Cir. 1969). The *Hill* case, however, recognized an exception to the strict vertical privity requirement only when "a representation appears" on the actual packaging. *Id*. Thus, this exception does not alter the privity requirement in implied warranty cases, which (by definition) involve no express representation. The Court thus **DISMISSES** the Plaintiffs' breach of implied warranty claims based on North Carolina (Snyder) law.

The Plaintiffs also fail to state an implied warranty claim under California law. California requires privity for implied warranty claims. *See Clemens v. DiamlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (noting that, under California law, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant").

The Plaintiffs, however, claim that California's privity requirement is not so strict. They direct this Court to *Atkinson v. Elk Corp. of Texas*, 48 Cal. Rptr. 3d 247, 258 (Cal. App. 2006),

---

[10]Plaintiffs also say that, "[g]iven the fact-intensive nature of the inquiry into the existence of privity, it is sufficient that Whirlpool has been put on notice of the existence of privity by the MCAC." [Doc. 36 at 36 n.18.] The "fact-intensive" nature of the privity inquiry notwithstanding, a lack of discovery does not prevent the Plaintiffs from supporting the legal sufficiency of their privity claims, which they have not done.

Although the theory of constructive privity may be a developing area of law, the Plaintiffs must show that their claims are legally cognizable.

Case No.1:08-wp-65000
Gwin, J.

where the court noted that the defendant-manufacturer "brought itself into privity of contract with the ultimate consumer . . . by extending th[e] express warranty."  The court further explained that "[i]t would be inconsistent to recognize privity existing for breach of express quality warranties under Magnuson-Moss and to reach the opposite conclusion in the same transaction for breach of the implied warranty of merchantability."  *Id.*

Whirlpool responds, however, that this manufacturer's warranty exception relaxes privity only on claims of express warranty—not implied.  In *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1049 (Cal. 1954), the California Supreme Court noted that the exception to the privity requirement "where representations are made by means of labels or advertisements[ is] applicable only to express warranties."  This directive from the California Supreme Court defeats the Plaintiffs' argument.  *Cf. Clemens*, 534 F.3d at 1024 ("California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it."); *see also Hartless v. Clorox Co.*, No. 06CV2705, 2007 WL 3245260, at *2 (S.D. Cal. Nov. 2, 2007) (reading *Atkinson* implied warranty language as *dicta* and declining to treat it as law of California); *Ward v. IPEX, Inc.*, No. CV 08-6370-VBF(Ex), 2009 WL 2634842, at *4 (C.D. Cal. Feb. 4, 2009) (same).  Accordingly, to the extent that the Plaintiffs bring an implied warranty claim in California, including under the Song-Beverly Act,[11] this Court

---

[11]Although the Song-Beverly Act supplements the California Uniform Commercial Code by broadening consumer remedies, it does not relax the meaning and definition of terms within that Code.  *See Am. Suzuki Motor Corp. v. Superior Ct.*, 44 Cal. Rptr. 2d 526, 528 (Cal. Ct. App. 1995) (analyzing Song-Beverly Act implied warranty claim under case law interpreting UCC implied warranty provisions).

Because this Court dismisses the California Plaintiffs' Song-Beverly implied warranty claims for lack of privity, it need not address Whirlpool's argument that Plaintiff Schaeffer's Song-Beverly claim arose outside the one-year statutory implied warranty period.  [Doc. 22 at 47.]  The Court notes, however, that this statutory period does not operate as a statute of limitations.  Rather, it prescribes a limit on how long after the purchase a covered defect may arise.  In the MCAC, Plaintiff Schaeffer does in fact allege that her Duet Machine was defecting during the first year after her

(continued...)

Case No.1:08-wp-65000
Gwin, J.

**DISMISSES** those claims for lack of privity.

The Plaintiffs have, however, made out an implied warranty claim in Illinois based on constructive privity.  Illinois courts have recognized two exceptions to the strict vertical privity requirement: (1) where "there is a direct relationship between the manufacturer and the seller," and (2) where the remote manufacturer knows the "identify, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. 1980) (citations omitted).

In pleading that Whirlpool sells its machines directly through authorized dealers, the Plaintiffs have stated sufficient facts to meet the first exception described in *Frank's* and hence to survive Whirlpool's motion to dismiss.  The Court thus **DENIES** Whirlpool's motion to dismiss the Plaintiffs' Illinois (Werman, Torf) implied warranty claims.

*b. Privity Requirement for Express Warranties*

Whirlpool also moves this Court to dismiss the Plaintiffs' express warranty claims for Arizona (Strong), Florida (Bicknell, Hollander), California (Schaeffer, Call), and Maryland (Nordan) on the ground that the Plaintiffs have not alleged privity.  [Doc. 22 at 44.]  In its briefs, Whirlpool has clarified that it "does not deny that consumers can pursue remedies from Whirlpool under Whirlpool's actual written warranty."  [Doc. 37 at 28.]  Additionally, for the reasons stated above in discussing the *Burr* case, 268 P.2d at 1049, the Plaintiffs have sufficiently pled an exception to the privity requirement for express warranties under California law.

Accordingly, to the extent that the Plaintiffs rely on the written material-or-workmanship warranty or the written stainless-steel-drum warranty, this Court allows those claims to go forward.

---

[11]/(...continued)
purchase.

Case No.1:08-wp-65000
Gwin, J.

To the extent the Plaintiffs seek to rely on any other express warranties, however, Whirlpool has cited cases demonstrating that Arizona (Strong), Florida (Bicknell, Hollander), and Maryland (Nordan) still require strict vertical privity for an express warranty claim. The Plaintiffs' only response rehashes their constructive privity arguments that the Court rejected above. Those arguments are no more persuasive in the context of express warranties.

Accordingly, this Court **DISMISSES** the express warranty claims of Plaintiffs Arizona (Strong), Florida (Bicknell, Hollander), and Maryland (Nordan) to the extent that those claims seek redress for alleged express warranties other than the material-or-workmanship warranty or the stainless-steel-drum warranty.

*2. Express Warranties: Failure to Allege Violation of Specific Warranty Provision*

Whirlpool moves this Court to dismiss both the state-law express warranty claims and the Magnuson-Moss written warranty claims for Plaintiffs Werman (Illinois), Hollander (Florida), Beierschmitt (New Jersey), and Gardner (Texas) on the ground that they have not alleged a violation of any specific warranty provision. [Doc. 21 at 2-3.]

In support, Whirlpool challenges the Plaintiffs' theory of express warranties in the advertising and marketing materials ("nontraditional warranties") and the Plaintiffs' allegations with respect to the materials-or-workmanship warranty and stainless-steel-drum warranty.

*a. Nontraditional Warranties*

Whirlpool challenges the sufficiency of the Plaintiffs' allegation in the MCAC that Whirlpool "marketed and advertised the Washing Machines as being free from Mold Problems and other defects," claiming that this allegation is a "bald allegation, without any factual support." [Doc. 37 at 29.] Whirlpool further argues that the Plaintiffs have not alleged "when, where, in what context,

-22-

Case No.1:08-wp-65000
Gwin, J.

or to whom Whirlpool made this representation."  [Doc. 37 at 29.]

As noted above, however, specific facts are not necessary.  *See Erickson*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (when pleading breach of warranty claim, unlike fraud claim, "[s]pecific facts are not necessary").  In any event, this allegation is sufficient to put Whirlpool on notice of the alleged written warranty breach that the Plaintiffs complain of.[12]

Whirlpool additionally seeks to dismiss these nontraditional warranty claims on the ground that the "one-year limitation [in the materials-or-workmanship warranty] should apply to all of [the express warranties]."  [Doc. 37 at 33.]  Whirlpool has not shown, however, why a limitation in the material-or-workmanship warranty should apply to any other express or implied warranty.  Under U.C.C. § 2-317, "[w]arranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant."  U.C.C. § 2-317.  Therefore, even if Whirlpool were correct that the time limit in the materials-or-workmanship warranty is inconsistent with the lack of a time limit in the other express warranties, the parties' intent would determine which provision governs.  This intent, however, is a question of fact that this Court may not resolve on a motion to dismiss.

*b. Materials-or-Workmanship Warranty*

Whirlpool also says that this Court should dismiss the material-or-workmanship warranty claims of Plaintiffs Werman (Illinois), Hollander (Florida), Biereschmitt (New Jersey), and Gardner (Texas) because they failed to notify Whirlpool of their problems within that warranty's one-year

---

[12]In its motion to dismiss, Whirlpool seeks dismissal of the Magnuson-Moss claims because the Plaintiffs have failed to allege "a violation of any specific warranty provision." [Doc. 21 at 2.]  Although it is not certain that the Plaintiffs' Magnuson-Moss claims may proceed on the basis of the nontraditional warranties, *see* 15 U.S.C. § 2301(6) (defining written warranty); *Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 322 (7th Cir. 1981) (holding that statutory written warranty definition does not encompass statements in brochures and advertising), Whirlpool has not pushed this argument in its briefs.

Case No.1:08-wp-65000
Gwin, J.

time limit.  In response, the Plaintiffs argue that even if they failed to notify Whirlpool, the Court should allow their claims to go forward because "a limitation of remedies contained within a warranty is unenforceable where the remedies provided are ineffectual and fail in their essential purpose."  [Doc. 36 at 43.]

The U.C.C. allows parties to contractually limit available remedies.  U.C.C. § 2-719.  Here, Whirlpool provided a remedy in addition to those provided under the U.C.C. and promised to remedy defects in materials or workmanship for one year from the date of purchase.  The Plaintiffs do not explain how their failure to take advantage of these remedies within the one-year limit caused the warranty to fail in its essential purpose.  The purpose of the warranty was to provide repairs during the first year after the sale.  If the Plaintiffs did not notify Whirlpool of the necessity of these repairs, they cannot argue that the warranty failed of its essential purpose.

Additionally, even if this warranty did fail in its essential purpose, the U.C.C.'s remedy for such a failure is to allow the aggrieved party to seek relief under the other provisions of the Act.  U.C.C. §2-719(2) ( "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided under this Act.").  Here, nothing prevents the Plaintiffs from seeking relief under the other provisions of the U.C.C.

Accordingly, to the extent Plaintiffs Werman, Glazer, Hollander, Biereschmitt, and Gardner base their express warranty claims on the materials-or-workmanship warranty, the claims are **DISMISSED** for failure to notify Whirlpool within the warranty's one-year limit.

*III.C. Non-Ohio Unjust Enrichment and Consumer Protection Statutes*

*1. Non-Ohio Unjust Enrichment*

Defendant Whirlpool says that Count IX fails to state a claim for unjust enrichment because

Case No.1:08-wp-65000
Gwin, J.

the non-Ohio Plaintiffs have failed to plead facts showing that Whirlpool's conduct was "wrongful" in any meaningful way.  Whirlpool further says that Count IX fails as to Plaintiff Soundholm-Pound (New Jersey) because the MCAC does not allege that she purchased her washer directly from Whirlpool, as required under New Jersey law.  [Doc. 22 at 48-50.]

Although the precise elements of unjust enrichment vary from state to state, an unjust enrichment claim generally requires the plaintiff to allege that she has conferred a benefit on the defendant, that the defendant knows it has received that benefit, and that the defendant has "wrongfully," "inequitably," or "unjustly" retained that benefit. *See, e.g.*, *Trustmark Ins. Co. v. Bank One,* 48 P.3d 485, 491 (Ariz. Ct. App. 2002) ("To establish a claim for unjust enrichment, a party must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy."); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. Dist. Ct. App. 2005) ("The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."); *Assoc. Commercial Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986) ("To recover under this doctrine, the plaintiff must prove that the defendant received a benefit, and that retention of the benefit without payment therefor would be unjust.").

Nevertheless, citing only to *Bettua v. Sears, Roebuck and Co.*, No. 08 C 1832, 2009 WL 230573, at *5 (N.D. Ill. Jan. 30, 2009), Whirlpool argues that an unjust enrichment claim requires an allegation that it engaged in "wrongful" conduct.  [Doc. 22 at 49-50.]  The law of unjust

-25-

Case No.1:08-wp-65000
Gwin, J.

enrichment, however, requires no such showing.  Rather than describing the specific conduct of the

defendant, the "unjust, inequitable, or wrongful" element of an unjust enrichment claim speaks to

the general circumstances of the parties.  A claim of unjust enrichment does not, as Whirlpool

contends, fail absent essentially fraudulent conduct by the defendant.  Instead, the plaintiff must

plead merely that "it would be inequitable for the defendant to retain the benefit" or that "retention

of the benefit without payment therefor would be unjust."  *Shands*, 899 So. 2d at 1227; *see also*

*Wallia*, 511 A.2d at 716.

In this case, the non-Ohio Plaintiffs have adequately alleged that they conferred a benefit on

Whirlpool through their washer purchases,[13] that Whirlpool has knowingly retained this benefit, and

that given the problems with the machines, Whirlpool's retention of the benefit would be wrongful,

inequitable, or unjust.  [Doc. 66 at 44.]  At the pleading stage, the Plaintiffs need not allege anything

more.

Nevertheless, Whirlpool says that Plaintiff Sandholm-Pound's (New Jersey) unjust

enrichment claim fails because she has not alleged that she purchased her washing machine directly

from Whirlpool, as required by New Jersey law.  [Doc. 22 at 50.]

In New Jersey, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected

remuneration from the defendant at the time it performed or conferred a benefit on defendant and

that the failure of remuneration enriched defendant beyond its contractual rights."  *VRG Corp. v.*

*GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).  Importantly, "quasi-contract cases [like unjust

enrichment] involve either some direct relationship between the parties or a mistake on the part of

the person conferring the benefit."  *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (N.J.

---

[13]/In those states that do not require direct economic transactions between the parties.

-26-

Case No.1:08-wp-65000
Gwin, J.

Super. Ct. App. Div. 1966); *see also Union Trust Co. of Md. v. Wakefern Food Corp.*, No. 86-728, 1989 WL 120756, at *21 (D.N.J. Sept. 8, 1989) ("[U]njust enrichment requires a relationship or course of dealings between parties which, if left undisturbed by the intervention of the law, permits one party to obtain unjust enrichment or unconscionable advantage over the other.") (internal quotations omitted).

Courts applying New Jersey law have held that no direct relationship exists between the parties when the plaintiff purchases the defendant's goods through an independent retailer.  *See Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505-06 (D.N.J. 2009) (dismissing unjust enrichment claims where one plaintiff purchased allegedly defective BIC machine from Office Depot, not directly from defendant BIC, and second plaintiff failed to allege he had purchased machine from defendant BIC); *see also Cooper v. Samsung Elecs. Am. Inc.*, No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (dismissing claim against Samsung by plaintiff who purchased Samsung television from retailer Ultimate Electronics).

In this case, Plaintiff Sandholm-Pound does not allege that she purchased any Whirlpool products directly from Whirlpool.  Instead, she states merely that she "bought a washing machine" in May 2003 and "bought a second washing machine" in May 2005.[14]  [Doc. 66 at 20.]  Absent an allegation that she had a direct relationship with Whirlpool, she cannot maintain a claim for unjust enrichment.  Accordingly, this Court **DISMISSES** Count IX as to Plaintiff Sandholm-Pound.

*2. Non-Ohio Consumer Protection Statutes*

Whirlpool moves to dismiss the Plaintiffs' state statutory consumer fraud claims on the

---

[14]/*Cf. Maniscalco*, 627 F. Supp. 2d at 506 ("Plaintiff Huryk does not allege that he purchased his MFC machine from BIC.  Because Plaintiff Huryk fails to allege that he conferred a benefit directly upon BIC, Plaintiff Huryk's pleading does not sufficiently allege the elements of the claim.").

Case No.1:08-wp-65000
Gwin, J.

ground that they lack the particularity required by Rule 9(b).  [Doc. 21 at 8-15.]  Whirlpool makes

two arguments.  First, to the extent that the Plaintiffs base their claims on Whirlpool's affirmative

misrepresentations, Whirlpool says that the Plaintiffs fail to allege any specific representation that

Whirlpool made.  [Doc. 21 at 9-11.]  Second, to the extent that the Plaintiffs base their claims on

Whirlpool's omission of material information about the washers, Whirlpool argues that the

Plaintiffs' allegations about the material facts that Whirlpool knew but failed to disclose are too

vague to satisfy Rule 9(b)'s particularity standard.  [Doc. 21 at 11-14.]  In response, the Plaintiffs

contend that their allegations that Whirlpool knew of material design defects in its washers but failed

to disclose them are sufficient to satisfy Rule 9(b).  [Doc. 36 at 6-12.]

     Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the

circumstances constituting fraud . . . ."  Courts have interpreted Rule 9(b) to require a plaintiff to

plead "'the time, place, and content of the alleged misrepresentations on which he or she relied; the

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"

Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted).  In

other words, a plaintiff must allege the "'who, what, when, where, and how' of the alleged fraud."

Id. at 877 (citation omitted).  This requirement ensures that the complaint "alert[s] the defendants

'to the precise misconduct with which they are charged'" to protect them "'against spurious charges

of immoral and fraudulent behavior.'"  Id. at 877 (citation omitted).

     Courts have also recognized, however, that Rule 9(b) does not require fraud-by-omission

claims to "specify the time, place, and specific content of an omission as precisely as would a . . .

false representation claim."  Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal.

2007).  Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of

Case No.1:08-wp-65000
Gwin, J.

an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission.

Here, the Plaintiffs' fraud-by-omission claims are sufficient to meet Rule 9(b)'s particularity requirement. Those claims plead (1) that Whirlpool knew that design defects (in particular, the failure of the steel drum and boot to allow the washers to completely drain and rinse away detergent) in its washers were causing mold problems[15] [Doc. 66 at ¶¶ 36-38]; (2) that despite this knowledge, Whirlpool did not disclose these supposed design defects or the resulting mold problems to the Plaintiffs at any time [Doc. 66 at ¶ 39]; (3) that the existence of the alleged design defects and resulting mold problems were material to the Plaintiffs' decision to purchase Whirlpool washers [Doc. 66 at ¶ 40]; and (4) that as a result of the design defects and resulting mold problems, the Plaintiffs overpaid for their washers [Doc. 66 at ¶ 40]. Thus, the Plaintiffs' fraud-by-omission claims notify Whirlpool of the time (never), place (nowhere), and content (nothing) of the alleged misrepresentations, the Plaintiffs' alleged reliance (materiality), the fraudulent scheme (Whirlpool's knowledge of the supposed defects and problems), its fraudulent intent (failure to disclose them), and the resulting injury (overpayment). *See Sanderson*, 447 F.3d at 877. Rule 9(b) does not require more.

However, the Plaintiffs' false representation fraud claims are insufficient for purposes of Rule 9(b). The Plaintiffs allege that Whirlpool used the "Energy Star" mark in marketing its washers and billed them as "High Efficiency." [Doc. 66 at ¶ 31.] The problem with those representations, the Plaintiffs say, is that design defects in the washers cause mold problems (which Whirlpool allegedly

---

[15]/Whirlpool's argument that Rule 9(b) requires the Plaintiffs to identify the technical nature of the alleged design defect(s) is unavailing. Even if Whirlpool did not know *why* its washers experienced mold problems when used properly, the Plaintiffs allege Whirlpool knew *that* its washers experienced mold problems—yet concealed that fact. [Doc. 66 at ¶ 39.]

Case No.1:08-wp-65000
Gwin, J.

knew of), and as a result, the Plaintiffs had to re-wash moldy clothes and run empty wash cycles to clean out their washers.  [Doc. 66 at ¶ 31.]  Thus, the Plaintiffs' theory goes, in an apples-to-apples comparison—*i.e.*, one that takes into account the energy used in the additional wash cycles—Whirlpool could not in good faith represent that their washers were energy efficient.  [Doc. 66 at ¶ 39.]  Yet it did, the Plaintiffs claim, and as a result, the Plaintiffs overpaid for their washers. [Doc. 66 at ¶¶ 39, 40.]

The problem with the Plaintiffs' allegations is that they do not specify where or when Whirlpool made these representations.  *See Sanderson*, 447 F.3d at 877.  The Court thus grants the Plaintiffs leave to amend the Second Amended MCAC to include allegations about where and when Whirlpool made the "Energy Star" and "High Efficiency" representations.  *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1300 (3d ed. 2004) ("[I]n most instances, when a motion based on lack of sufficient particularity under Rule 9(b) is granted, whether or not coupled with a motion to dismiss, it will be with leave to amend the deficient pleading.  Thus, a failure to satisfy Rule 9(b) will not automatically lead to a dismissal of the action, let alone one that leads to a judgment on the merits.").

In sum, the non-Ohio Plaintiffs may maintain their fraud-by-omission claims under state consumer protection and deceptive trade practices laws.  Their false representation claims, however, lack the particularity that Rule 9(b) requires.  Hence, the Court grants the Plaintiffs leave to amend the Second Amended MCAC to cure this deficiency.  The Plaintiffs shall have 10 days from the date of this order to amend the Second Amended MCAC accordingly.

*III.D. Motion to Dismiss Newly Added Named Plaintiffs*

Case No.1:08-wp-65000
Gwin, J.

Whirlpool moves to dismiss the claims of Plaintiff Chris and Trina Allison and Shannon Schaeffer on two grounds.  [Doc. 22 at 7-8.]  First, Whirlpool points out that they are not named parties in any of the underlying actions, appearing only in the MCAC, and thus their claims are not properly before this Court.  [Doc. 22 at 7.]  Second, Whirlpool argues that the addition of the Allison Plaintiffs without leave of Court was improper because it occurred after this Court's deadline for adding new parties in the underlying Ohio action.  [Doc. 22 at 7-8.]

The parties have since stipulated to Chris Allison's withdrawal as a named plaintiff in the *Glazer* action.  [Doc. 52; No. 1:08-cv-01624-JG, Doc. 44.]  Hence, Whirlpool's motion to dismiss his claims is moot.

Whirlpool's motion to dismiss the claims of Plaintiffs Trina Allison and Shannon Schaeffer is also moot.  On May 4, 2009, this Court gave the Plaintiffs leave to "amend the underlying complaints to add those named class representatives that are included in the MCAC but were not named class representatives in any of the underlying complaints . . . within 10 days of this entry."  [Doc. 43.]  The Plaintiffs did so.  [*See* Case No. 1:08-wp-65001, Doc. 46; Case No. 1:08-wp-65003, Doc. 12.]  Thus, the Court **DENIES** Whirlpool's motion to dismiss their claims as moot.

### IV. Conclusion

In sum, this Court **GRANTS IN PART** and **DENIES IN PART** Whirlpool's motion to dismiss as follows:

> **Count I**: The Court **DENIES** Whirlpool's motion to dismiss the claims of the Ohio Plaintiffs
>
> (Glazer, Allison) on prior notice grounds.

Case No.1:08-wp-65000
Gwin, J.

**Count III**: The Court **DENIES** Whirlpool's motion to dismiss the negligent design and failure-to-warn claims of the Ohio Plaintiffs (Glazer, Allison).

**Count IV**: The Ohio Plaintiffs (Glazer, Allison) fail to state a claim for relief and this Court **GRANTS** Whirlpool's motion to dismiss their claim.

**Count V**: Plaintiffs Hollander (Florida), Werman (Illinois), Beierschmitt, (New Jersey), and Gardner (Texas) partially fail to state claims and the Court **GRANTS** Whirlpool's motion to dismiss those claims to the extent they rely on the materials-or-workmanship warranty.

**Count VI**: The Court **DENIES** Whirlpool's motion to dismiss the claims of Plaintiffs Werman and Torf (Illinois), but the Court **GRANTS** Whirlpool's motion to dismiss the claims of Plaintiffs Glennon and Cohen (New York), Hollander and Bicknell (Florida), Schaeffer and Call (California), Snyder (North Carolina), and Strong (Arizona).

**Count VII**: The Court **DENIES** Whirlpool's motion to dismiss the claims of Plaintiffs Schaeffer and Call (California).  The Court **GRANTS** Whirlpool's motion to dismiss the nontraditional warranties claims of Plaintiff Hollander (Florida), Bicknell (Florida), Nordan (Maryland), and Strong (Arizona).   The Court **GRANTS** Whirlpool's motion to dismiss the materials-or-workmanship warranty claims of Plaintiff Hollander (Florida), Werman (Illinois), Beierschmitt (New Jersey), and Gardner (Texas).

**Count VIII**: The Court **DENIES** Whirlpool's motion to dismiss the claims of Plaintiffs Werman and Torf (Illinois) but **GRANTS** Whirlpool's motion to dismiss the claims

Case No.1:08-wp-65000
Gwin, J.

of Plaintiffs Glennon and Cohen (New York), Hollander and Bicknell (Florida), Schaeffer and Call (California), Snyder (North Carolina), and Strong (Arizona).

**Count IX**: The Court **DENIES** Whirlpool's motion to dismiss the unjust enrichment claims of the non-Ohio Plaintiffs, except with respect to Plaintiff Sandholm-Pound (New Jersey), whose claim this Court **DISMISSES**.

**Count X**: The Court **DENIES** Whirlpool's motion to dismiss the claims of Plaintiffs Schaeffer and Call (California).

**Count XI**: The Court **GRANTS** Whirlpool's motion to dismiss the claims of Plaintiffs Schaeffer and Call (California).

**Counts XII-XXI**: The Court **DENIES** Whirlpool's motion to dismiss the non-Ohio Plaintiffs' fraud-by-omission claims under state consumer protection and deceptive trade practices laws. However, the Court **DISMISSES** their false representation claims without prejudice and grants the Plaintiffs ten days' leave to amend the Second Amended MCAC to cure those claims' lack of particularity.

**Newly Added Named Plaintiffs**: The Court **DENIES** as moot Whirlpool's motion to dismiss the claims of Plaintiffs Chris Allison, Trina Allison, and Shannon Schaeffer as named plaintiffs.

IT IS SO ORDERED.

Dated: November 4, 2009                          s/          *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE