**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re: WHIRLPOOL CORP. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION<br><br>Gina Glazer v. Whirlpool Corporation | 1:08-wp-65001<br>1:08-wp-65000<br><br>MDL No. 2001<br><br>Class Action<br><br>Judge:  James S. Gwin |

**WHIRLPOOL CORPORATION'S APPENDIX B:  SUMMARY OF
INDIVIDUAL QUESTIONS OF LAW AND FACT THAT MUST BE
INDIVIDUALLY LITIGATED BY EACH PUTATIVE CLASS MEMBER**

Each putative member of the Ohio class will need to prove, as a precondition to membership in the class—and, therefore, as a precondition to the right to recover under any of the theories of liability pled in the complaint—that their Duet®, Duet HT®, or Duet Sport® washer ("Washer") developed "Mold Problems" as a result of a common defect, as opposed to some other, non-actionable factor.  There are numerous potential reasons, however, why a consumer's Washer might develop noticeable mold or noticeable malodor that are unrelated to any "defect" in the Washer.  Thus, Plaintiffs' class definition necessarily raises a number of individual questions of fact that will need to be litigated as to *each* class member and *every* cause of action, including the following:

**I.   LIABILITY QUESTIONS RELEVANT TO EVERY CLASS CLAIM THAT REQUIRE INDIVIDUAL PROOF BY EACH MEMBER OF THE PUTATIVE OHIO CLASS**

| | |
|---|---|
| 1. | Did each putative class member experience noticeable mold or odor, or both, in the Washer? |
| 2. | If the putative class member's Washer experienced noticeable odor, was the odor sufficiently intense and unpleasant to be considered a "problem" by the consumer (hereafter, "malodor")? |
| 3. | If the putative class member's Washer experienced noticeable malodor, was the odor eliminated or controlled through washer cleaning or a change in washer maintenance habits? |
| 4. | What instructions were included in the Use & Care Guide that accompanied the putative class member's Washer? |
| 5. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's failure to use only high efficiency ("HE") laundry detergent? |
| 6. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's use of too much detergent? |
| 7. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's failure to run the recommended cleaning or maintenance cycle on a consistent basis? |
| 8. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's use of too much fabric softener? |
| 9. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's failure to use bleach or a washer cleaning product on a regular basis? |
| 10. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's failure to leave the washer door open between uses on a consistent basis? |
| 11. | If the putative class member's Washer experienced noticeable mold or malodor, was the mold or malodor caused, at least in part, by the putative class member's failure to periodically inspect and clean the rubber door seal? |
| 12. | Did each putative class member experience malodor in the laundry that was washed in the Washer? |
| 13. | If the putative class member experienced noticeable malodor in the laundry that was washed in the Washer, was the malodor caused by the putative class member's failure to remove the laundry from the Washer in a timely manner after the wash cycle was complete? |

| 14. | If the putative class member experienced noticeable malodor in the laundry that was washed in the Washer, was the malodor caused by the putative class member's failure to use the appropriate amount of HE detergent, as recommended by the detergent manufacturer for the size and soil-level of the load? |
|---|---|
| 15. | If the putative class member experienced noticeable malodor in the laundry that was washed in the Washer, was the malodor experienced repeatedly, or was it an isolated occurrence? |

## II. LIABILITY AND DAMAGES QUESTIONS RELEVANT TO PLAINTIFFS' OHIO CONSUMER SALES PRACTICES ACT ("OCSPA") CLAIM THAT REQUIRE INDIVIDUAL PROOF BY EACH MEMBER OF THE PUTATIVE OHIO CLASS

| 1. | What model and model-year Washer did the putative class member buy? |
|---|---|
| 2. | Did the putative class member buy the Washer new or did he or she buy the Washer second-hand from a prior owner? |
| 3. | What is the total amount the putative class member paid for the Washer, inclusive of any sales tax, delivery, and installation charges? |
| 4. | Did the putative class member receive any rebate or discount that offset any part of the purchase price of the Washer? |
| 5. | Prior to purchasing the Washer, did the putative class member see, hear, or receive any representations, statements, or advertisements from Whirlpool regarding the Washers? |
| 6. | If the putative class member saw, heard, or received any representations, statements, or advertisements regarding the Washers, did any of the representations, statements, or advertisements contain information that was false or misleading? |
| 7. | If the putative class member saw, heard, or received any false or misleading representations, statements, or advertisements regarding the Washers, did any of the representations, statements, or advertisements influence the putative class member's decision to buy the Washer? *See Butler v. Sterling, Inc.*, No. 98-3223, 2000 WL 353502, at *4 (6th Cir. Mar. 31, 2000) ("to sustain an OCSPA claim [plaintiff] must prove [that] damages were a proximate result of the defendant's deceptive act"); *Lilly, Jr. v. Hewlett-Packard Co.*, No. 1:05-CV-465, 2006 WL 1064063, at *5 (S.D. Ohio April 21, 2006) ("where the defendant is alleged to have made material misrepresentations or misstatements, there must be a cause and effect relationship between the defendant's acts and the plaintiff's injuries"). |

| 8. | Prior to buying the Washer, was the putative class member exposed to any of the allegedly omitted facts, including, for instance, through reading *Consumer Reports*, through pre-purchase Internet research, through communicating with friends or relatives, through point-of-sale discussions with retail sales representatives, through exposure to Affresh® Washer Cleaner ("Affresh") or another washing machine cleaner's marketing materials, or by reading the Use & Care Guide, such that the putative class member cannot prove that the omission caused them to buy the Washer (*i.e.*, the putative class member cannot show that he or she would have acted differently had the allegedly omitted facts been disclosed)? *See Butler*, 2000 WL 353502, at *4; *Lilly, Jr.*, 2006 WL 1064063, at *5. |
|---|---|
| 9. | Did the putative class member suffer some injury as a result of reliance on the alleged misrepresentation or omission? *See Searles v. Germain Ford of Columbus, L.L.C.*, No. 08AP-728, 2009 WL 756645, at *5 (Ohio Ct. App. Mar. 24, 2009). |
| 10. | Did the putative class member incur any out-of-pocket repair expenses as a result of reliance on the alleged misrepresentation or omission? |
| 11. | Did the putative class member have to replace any clothing or other laundry as a result of reliance on the alleged misrepresentation or omission? |
| 12. | Did the putative class member incur any other incidental or consequential damages, such as out-of-pocket expense for use of a Laundromat, as a result of his or her reliance on the alleged misrepresentation or omission? |
| 13. | If the putative class member experienced noticeable mold or malodor, how long did the putative class member use the Washer before the mold or malodor first occurred? |
| 14. | If the putative class member experienced noticeable mold or malodor, how long did the putative class member continue to use the Washer after first noticing the mold or malodor? |
| 15. | If the putative class member experienced noticeable mold or malodor, what measures, if any, did he or she take to address the problem? |
| 16. | If the putative class member experienced noticeable mold or malodor, and took measures to address the problem, were those measures successful, either partially or entirely? |
| 17. | If the putative class member experienced noticeable mold or malodor, did the putative class member receive any additional recommendations or instructions from Whirlpool, a service technician, or from any other source, regarding the use and care of the Washer? |
| 18. | If the putative class member experienced noticeable mold or malodor, and received additional recommendations or instructions, did the putative class member follow those recommendations or instructions, and if so, with what results? |

| 19. | Did the putative class member stop using the Washer, for any period of time, or replace the Washer with a new washing machine because of the mold or malodor problem? |
|---|---|
| 20. | Did the putative class member already receive a free repair, a free extended warranty or service contract, a free appliance, a free sample of Affresh, a replacement washing machine, a full or partial refund of the purchase price of the Washer, a cash payment or reimbursement, or a combination of these customer-satisfaction resolutions, any of which could make a money damages award tantamount to impermissible double recovery? |
| 21. | Is the putative class member's OCSPA claim barred by the applicable two-year statute of limitations? *See Varavvas v. Mullet Cabinets, Inc.*, No. 2008CA00240, 2009 WL 5174101, at *4 (Ohio Ct. App. Dec. 28, 2009) (statute of limitations runs from the time the alleged violation occurred, not when it is discovered). |

**III. LIABILITY AND DAMAGES QUESTIONS RELEVANT TO PLAINTIFFS' TORTIOUS BREACH OF WARRANTY CLAIM THAT REQUIRE INDIVIDUAL PROOF BY EACH MEMBER OF THE PUTATIVE OHIO CLASS**

| 1. | What model and model-year Washer did the putative class member purchase? |
|---|---|
| 2. | What is the total amount the putative class member paid for the Washer, inclusive of any sales tax, delivery, and installation charges? |
| 3. | Did the putative class member receive any rebate or discount that offset any part of the purchase price of the Washer? |
| 4. | Did the putative class member experience any noticeable mold or malodor? |
| 5. | If the putative class member experienced any noticeable mold or malodor, how long did the putative class member use the Washer before the mold or malodor first occurred? |
| 6. | If the putative class member experienced noticeable mold or malodor, how long did the putative class member continue to use the Washer after first noticing the mold or malodor? |
| 7. | If the putative class member experienced noticeable malodor, was the odor intense enough, pervasive enough, and unpleasant enough to render the Washer unfit for its ordinary intended use of washing laundry? *See Temple v. Wean United, Inc.*, 364 N.E.2d 267, 270 (Ohio 1977). |
| 8. | If the putative class member experienced noticeable malodor, was the Washer still able to clean the items that were washed in the machine? *See Temple*, 364 N.E.2d at 270. |
| 9. | If the putative class member experienced noticeable mold or malodor, what measures, if any, did he or she take to address the problem? |
| 10. | If the putative class member experienced noticeable mold or malodor, and took measures to address the problem, were those measures successful, either partially or entirely? |

-5-

| 11. | If the putative class member experienced noticeable mold or malodor, did the putative class member receive any additional recommendations or instructions from Whirlpool, a service technician, or from any other source, regarding the use and care of the Washer? |
|---|---|
| 12. | If the putative class member experienced noticeable mold or malodor, and received additional recommendations or instructions, did the putative class member follow those recommendations or instructions, and if so, with what results? |
| 13. | What kind of injury, if any, did the putative class member suffer as a result of the alleged defect? *See Johnson v. Monsanto Co.*, No. 11-02-02, 2002 WL 2030889, at *6 (Ohio Ct. App. Sept. 6, 2002) (an action for beach of implied warranty requires the plaintiff to establish that a particular defect was present in the product when the product left the manufacturer and that the claimed injury was directly and proximately caused by the defect). |
| 14. | Did the putative class member incur any out-of-pocket repair expenses as a result of the alleged defect? |
| 15. | Did the putative class member have to replace any clothing or other laundry as a result of the alleged defect? |
| 16. | Did the putative class member incur any other incidental or consequential damages, such as out-of-pocket expenses for use of a Laundromat, as a result of the alleged defect? |
| 17. | If the putative class member experienced noticeable mold or malodor, did the putative class member follow the Washer's use and care instructions contained in the Use & Care Guide? *See Crow v. Parker*, No. 1-99-13, 1999 WL 446438, at *2 (Ohio Ct. App. June 29, 1999) (the plaintiff must prove that "the loss was caused by a defect and not other possibilities"). |
| 18. | Does the putative class member continue to use the Washer to clean laundry? |
| 19. | Did the putative class member stop using the Washer, for any period of time, or replace the Washer because of the noticeable mold or malodor? |
| 20. | Did the putative class member already receive a free repair, a free extended warranty or service contract, a free appliance, a free sample of Affresh, a replacement washing machine, a full or partial refund of the purchase price of the Washer, a cash payment or reimbursement, or a combination of these customer-satisfaction resolutions, any of which could make a money damages award tantamount to impermissible double recovery? |
| 21. | Is the putative class member's tortious breach of warranty claim barred by the two-year statute of limitations contained in Ohio Revised Code § 2305.10 for tortious injury to personal property? *See Iacono v. Anderson Concrete Corp.*, 326 N.E.2d 267, 271 (Ohio 1975) (absent privity of contract, an implied warranty action sounds in tort). |

**IV.  LIABILITY AND DAMAGES QUESTIONS RELEVANT TO THE NEGLIGENT FAILURE TO WARN CLAIM THAT REQUIRE INDIVIDUAL PROOF BY EACH MEMBER OF THE PUTATIVE OHIO CLASS**

| | |
|---|---|
| 1. | What model and model-year Washer did the putative class member purchase? |
| 2. | What is the total amount the putative class member paid for his or her Washer, inclusive of any sales tax, delivery, and installation charges? |
| 3. | Did the putative class member receive any rebate or discount that offset any part of the purchase price of the Washer? |
| 4. | Prior to buying the Washer, was the putative class member exposed to any of the allegedly undisclosed facts—including, for instance, through reading *Consumer Reports*, through pre-purchase Internet research, through communicating with friends or relatives, through point-of-sale discussions with retail sales representatives, through exposure to Affresh or other washing machine cleaner's marketing materials, or by reading the Use & Care Guide—such that the putative class member cannot prove that the alleged failure to warn was the proximate cause of his or her injury? *See Floyd v. Pride Mobility Prods. Corp.*, No. 1:05-CV-00389, 2007 WL 4404049, at *10 n.2 (S.D. Ohio Dec. 12, 2007) (proximate cause is an element of a negligent failure to warn claim). |
| 5. | What were the instructions included in the Use & Care Guide that accompanied the putative class member's Washer, and did he or she follow those instructions? *See Boyd v. Lincoln Elec. Co.*, 902 N.E.2d 1023, 1030-31 (Ohio Ct. App. 2008) (warnings and instructions included with the product's packaging or accompanying the product in some other manner at the time of purchase are adequate if they reasonably disclose all inherent risks and the product is safe if used as directed). |
| 6. | If the putative class member experienced any noticeable mold or malodor, how long did the putative class member use the Washer before the mold or malodor first occurred? |
| 7. | If the putative class member experienced noticeable mold or malodor, how long did the putative class member continue to use the Washer after first noticing the mold or malodor? |
| 8. | If the putative class member experienced noticeable mold or malodor, did the putative class member receive any additional recommendations or instructions from Whirlpool, a service technician, or from any other source, regarding the use and care of the Washer? |
| 9. | If the putative class member experienced noticeable mold or malodor, and received additional recommendations or instructions, did the putative class member follow those recommendations or instructions? *See Boyd*, 902 N.E.2d at 1030-31. |
| 10. | If the putative class member experienced noticeable mold or malodor, and followed those recommendations or instructions, were they successful in addressing the problem, either partially or entirely? |

| 11. | Did the putative class member incur any out-of-pocket repair expenses as a result of the alleged defect? |
|---|---|
| 12. | Did the putative class member have to replace any clothing or laundry as a result of the alleged defect? |
| 13. | Did the putative class member incur any other incidental or consequential damages, such as out-of-pocket expenses for use of a Laundromat, as a result of the alleged defect? |
| 14. | Did the putative class member stop using the Washer, for any period of time, or replace the Washer because of the mold or malodor problem? |
| 15. | Did the putative class member already receive a free repair, a free extended warranty or service contract, a free appliance, a free sample of Affresh, a replacement washing machine, a full or partial refund of the purchase price of the Washer, a cash payment or reimbursement, or a combination of these customer-satisfaction resolutions, any of which could make a money damages award tantamount to impermissible double recovery? |
| 16. | Is the putative class member's claim barred by the applicable two-year statute of limitations, which runs when the prohibited act occurs, not when it is discovered? *See* Ohio Rev. Code § 2305.10; *Westfield Ins. Co. v. HULS Am., Inc.*, 714 N.E.2d 934, 943-44 (Ohio Ct. App. 1998). |

**V.   LIABILITY AND DAMAGES QUESTIONS RELEVANT TO THE NEGLIGENT DESIGN CLAIM THAT REQUIRE INDIVIDUAL PROOF BY EACH MEMBER OF THE PUTATIVE OHIO CLASS**

| 1. | What model and model-year Washer did the putative class member purchase? |
|---|---|
| 2. | What is the total amount the putative class member paid for his or her Washer, inclusive of any sales tax, delivery, and installation charges? |
| 3. | Did the putative class member receive any rebate or discount that offset any part of the purchase price of the Washer? |
| 4. | What design modifications aimed at preventing excessive biofilm accumulation were included in the particular model and model-year Washer bought by the putative class member, and what design modifications were not included in the putative class member's Washer but should have been included? *See Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587-88 (6th Cir. 1986) (a negligent design claim involves a failure to design against a reasonably foreseeable hazard). |
| 5. | Did the putative class member suffer damages as a proximate result of Whirlpool's alleged negligence? *See Menifee v. Ohio Welding Prods., Inc.*, 472 N.E.2d 707, 710 (Ohio 1984) (a party claiming negligent design must demonstrate an injury that was proximately caused by the defendant's breach of a duty to design against reasonably foreseeable hazards). |

| | |
|---|---|
| 6. | Did the putative class member incur any out-of-pocket repair expenses as a result of Whirlpool's alleged negligence? |
| 7. | Did the putative class member have to replace any clothing or laundry as a result of Whirlpool's alleged negligence? |
| 8. | Did the putative class member incur any other incidental or consequential damages, such as out-of-pocket expense for use of a Laundromat, as a result of Whirlpool's alleged negligence? |
| 9. | If the putative class member experienced noticeable mold or malodor, how long did the putative class member use the Washer before the mold or malodor first occurred? |
| 10. | If the putative class member experienced noticeable mold or malodor, how long did the putative class member continue to use the Washer after first noticing the mold or malodor? |
| 11. | If the putative class member experienced noticeable mold or malodor, what measures, if any, did he or she take to address the problem? |
| 12. | If the putative class member experienced noticeable mold or malodor, and took measures to address the problem, were those measures successful, either partially or entirely? |
| 13. | If the putative class member experienced noticeable mold or malodor, did the putative class member receive any additional recommendations or instructions from Whirlpool, a service technician, or from any other source, regarding the use and care of the Washer? |
| 14. | If the putative class member experienced noticeable mold or malodor, and received additional recommendations or instructions, did the putative class member follow those recommendations or instructions, and if so, with what results? |
| 15. | Did the putative class member stop using the Washer, for any period of time, or replace the Washer because of any mold or malodor problem? |
| 16. | Did the putative class member already receive a free repair, a free extended warranty or service contract, a free appliance, a free sample of Affresh, a replacement washing machine, a full or partial refund of the purchase price of the Washer, a cash payment or reimbursement, or a combination of these customer-satisfaction resolutions, any of which could make a money damages award tantamount to impermissible double recovery? |
| 17. | Is the putative class member's claim barred by the applicable two-year statute of limitations, which begins to run when the negligent act occurs, not when it is discovered? *See* Ohio Rev. Code § 2305.10; *Doty v. Fellhauer Elec., Inc.*, 888 N.E.2d 1138, 1143 (Ohio Ct. App. 2008). |

Dated:  March 15, 2010

Respectfully submitted,


s/ Michael T. Williams
Michael T. Williams (Colorado #33172)
Malcolm E. Wheeler (Colorado #21200)
Galen D. Bellamy (Colorado #31705)
Allison R. Cohn (Colorado #39748)
Theresa R. Wardon (Colorado #41510)
Joel S. Neckers (Colorado #40886)
Evan B. Stephenson (Colorado #37183)
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado  80202
Telephone:  (303) 244-1800
Facsimile:   (303) 244-1879
E-mail:  williams@wtotrial.com

F. Daniel Balmert (#0013809)
Anthony J. O'Malley (#0017506)
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio  44114-1724
Telephone:  (216) 479-6159
Facsimile:   (216) 937-3735
E-mail:  ajomalley@vorys.com

Attorneys for Defendant Whirlpool Corporation

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 15, 2010, a copy of the foregoing Whirlpool Corporation's Appendix B:  Summary of Individual Questions of Law and Fact That Must Be Individually Litigated by Each Putative Class Member was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

      s/ Michael T. Williams
      Michael T. Williams, Esq. (Colorado #33172)
      Attorney for Defendant Whirlpool Corp.
      Wheeler Trigg O'Donnell LLP
      1801 California Street, Suite 3600
      Telephone:  (303) 244-1800
      Facsimile:   (303) 244-1879
      Email:  williams@wtotrial.com