**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: **WHIRLPOOL CORP.** **FRONT-LOADING WASHER PRODUCTS** **LIABILITY LITIGATION** | **1:08-wp-65000** <br><br> **MDL No. 2001** <br><br> **Class Action** <br><br> **Judge:  James S. Gwin** |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION TO CERTIFY AN OHIO CLASS**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION/SUMMARY OF ARGUMENT .............................................. 1

II.    ARGUMENT ................................................................................................... 2

    A.    Common Factual And Legal Issues Predominate. ...................................... 2

        1.    Common Proof Of A Uniform Design Defect ............................. 3

        2.    Common Proof Of Whirlpool's Knowledge .................................. 5

        3.    Whirlpool's Uniform Concealment Of Material Fact ................... 6

        4.    Common Proof Of Causation ........................................................ 7

            a.    Plaintiffs' OCSPA Claim ................................................... 7

            b.    Plaintiffs' Defect-Based Claims ........................................ 9

        5.    Neither Actual Injury Nor Issues About "Individual Correction Of Problem" Defeat Predominance. ......................... 10

        6.    Damages Do Not Defeat Predominance. ..................................... 14

        7.    Affirmative Defenses Are No Bar To Class Certification. .......... 15

    B.    Plaintiffs Are Typical Of The Class ........................................................ 15

    C.    The Class Is Properly Defined. ................................................................ 17

    D.    A Class Action Is The Superior Procedure For These Claims ................ 17

    E.    Plaintiffs Satisfy The OCSPA Class Action Prerequisite. ...................... 18

III.    CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amato v. Gen. Motors Corp.*,
    463 N.E.2d 625 (Ohio Ct. App. 1982)...................................................... 19

*Baughman v. State Farm Mut. Auto. Ins. Co.*,
    727 N.E.2d 1265 (Ohio 2000) ........................................................ 1, 8

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ........................................................ 18

*Bentley v. Honeywell Int'l, Inc.*,
    223 F.R.D. 471 (S.D. Ohio 2004) .......................................... 2, 15, 17

*Biegas v. Quickway Carriers, Inc.*,
    573 F.3d 365 (6th Cir. 2009) ........................................................ 18

*Blumenthal v. Medina Supply Co.*,
    743 N.E.2d 923 (Ohio Ct. App. 2000) .................................... 1, 9, 19

*Bouder v. Prudential Fin., Inc.*,
    2007 U.S.Dist.LEXIS 83338 (D.N.J. Nov. 8, 2007) ............................ 13

*Butler v. Sterling, Inc.*,
    2000 U.S.App.LEXIS 6419 (6th Cir. March 31, 2000) ........................... 7

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ........................................................ 18

*Chamberlan v. Ford Motor Co.*,
    223 F.R.D. 524 (N.D. Cal. 2004) .................................................... 8

*Daffin v. Ford Motor Corp.*,
    458 F.3d 549 (6th Cir. 2006) ........................................................ 3

*Delahunt v. Cytodyne Techs.*,
    241 F. Supp. 2d 827 (S.D. Ohio 2003) ............................................ 19

*Einhorn v. Ford Motor Co.*,
    548 N.E.2d 933 (Ohio 1990) ........................................................ 19

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64, 58 S.Ct. 817 (1938).................................................... 18

*Faktor v. Lifestyle Lift*,
    2010 U.S.Dist.LEXIS 3149 (N.D. Ohio Jan. 15, 2010)........................... 9

*Gerlach v. Wells Fargo & Co.*,
    2006 U.S.Dist.LEXIS 24823 (N.D. Cal. March 28, 2006) .................... 13

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
    242 F.R.D. 568 (W.D. Wash. 2007) ............................................ 8, 9

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981)...................................................................... 13

# TABLE OF AUTHORITIES
## (continued)

Page

*Hoffer v. Cooper Wiring Devices, Inc.*,
   2007 U.S.Dist.LEXIS 42871 (N.D. Ohio Jun. 13, 2007) .................................... 19

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005)...................................................................... 13

*In re Honeywell Int'l, Inc. Sec. Litig.*,
   211 F.R.D. 255 (D.N.J. 2002)..................................................................... 5

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   2010 U.S.Dist.LEXIS 23624 (D.N.J. March 15, 2010)................................... 5, 8

*In re Rent-Way Sec. Litig.*,
   218 F.R.D. 101 (W.D. Pa. 2003) ................................................................. 5

*In re Telectronics Pacing Sys., Inc.*,
   164 F.R.D. 222 (S.D. Ohio 1995) ................................................................ 15

*Keilholtz v. Lennox Hearth Prods., Inc.*,
   2010 U.S.Dist LEXIS 14553 (N.D. Cal. Feb. 16, 2010) ...................................... 8

*Kelemen v. Williams*,
   1993 Ohio App.LEXIS 1325 (Ohio Ct. App. March 4, 1993)............................... 10

*Kelly v. Montgomery Lynch & Assocs., Inc.*,
   2007 U.S.Dist.LEXIS 93656 (N.D. Ohio Dec. 19, 2007) .................................... 15

*Kleiner v. First Nat'l Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985) .................................................................. 13

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ................................................................. 2, 17

*Lilly v. Hewlett-Packard Co.*,
   2006 U.S.Dist.LEXIS 22114 (S.D. Ohio April 21, 2006) .................................... 7

*Marrone v. Philip Morris USA, Inc.*,
   850 N.E.2d 31 (Ohio 2006) ....................................................................... 19

*Mazza v. Am. Honda Motor Co.*,
   254 F.R.D. 610 (C.D. Cal. 2008) .................................................................. 8

*Nessle v. Whirlpool*,
   2008 U.S.Dist.LEXIS 56940 (N.D. Ohio July 25, 2008) ............................. 2, 7, 19

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008).................................................................. 8

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976),
   *cert. denied*, 429 U.S. 870 (1976)................................................................ 15

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ..................................................................... 15

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Stammco, LLC v. United Tel. Co. of Ohio*,
    2008 Ohio App. LEXIS 3243 (Ohio Ct. App. Aug. 1, 2008),
    *rev'd on other grounds*, 2010 Ohio LEXIS 731 (March 24, 2010) ...................................... 17

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ........................................................................................ 15

*Teeters Constr. v. Dort*,
    869 N.E.2d 756 (Ohio Mun. Ct. 2006) ............................................................................... 19

*Temple v. Fleetwood Enters., Inc.*,
    133 Fed. App'x 254 (6th Cir. 2005) ..................................................................................... 7

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*,
    1998 U.S.Dist.LEXIS 8331 (N.D.Ill. June 3, 1998) ............................................................ 14

*Van Horn v. Nationwide Prop. & Cas. Ins. Co*,
    2008 U.S.Dist.LEXIS 107425 (N.D. Ohio Feb. 10, 2008) ................................... 2, 14, 15, 17

## STATUTES

Ohio Rev. Code Ann.
    § 1345.01 ............................................................................................................................. 2

Ohio Rev. Code Ann.
    § 1345.09(B) ...................................................................................................................... 18

## RULES

Rule 23(f) ................................................................................................................................. 8

862374.5

## I.      INTRODUCTION/SUMMARY OF ARGUMENT

Over some 119 pages of briefing,[1] Whirlpool Corporation ("Whirlpool") struggles to reframe the factual and legal claims at issue in this case into ones not well-suited to class-wide adjudication.  That effort fails.  Plaintiffs satisfy all the requirements for certification of an Ohio consumer class.  In sum:

(1)   The Washing Machines have a fundamental and uniform design Defect, *i.e.*, they fail to keep themselves clean, regardless of minor design variations unrelated to that Defect, and that Defect causes a uniform harm – Mold Problems – that Plaintiffs Glazer and Allison have experienced and, *by Whirlpool's own estimates*, has already manifested in 35-50% of all Washing Machines.

(2)   Whirlpool uniformly failed to disclose – in *all* documents provided to consumers prior to or at the time of sale – the fact of the Defect or the existence of (or even potential for) Mold Problems so that those consumers could make informed purchase decisions.  The post-sale documents that Whirlpool now cites are not relevant to Plaintiffs' legal claims, which turn on what Whirlpool said (and did not say) *prior* to the sale and whether the Machines have a Defect.

(3)   Ohio courts have consistently held that evidence of causation for Plaintiffs' legal claims here is common and predominates over individual issues.  *See Baughman v. State Farm Mut. Auto. Ins. Co.*, 727 N.E.2d 1265, 1275 (Ohio 2000) (fraud); *Blumenthal v. Medina Supply Co.*, 743 N.E.2d 923, 932 (Ohio Ct. App. 2000) (fraud and products liability).

(4)   Neither Whirlpool's (purely speculative) affirmative defenses, nor the possibility of some post-liability individual damages determinations, renders class certification improper.  *See*

---

[1] By separate motion, Plaintiffs have moved to strike those documents comprising the additional 89 pages of briefing beyond the Court-ordered 30 page limit.

*Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 485 (S.D. Ohio 2004); *Van Horn v. Nationwide Prop. & Cas. Ins. Co*, 2008 U.S.Dist.LEXIS 107425, at \*32-33 (N.D. Ohio Feb. 10, 2008).

(5)    The Class is properly and objectively defined without regard to who has been injured, and without including anyone who by definition could *not* have been injured.  *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).

(6)    A class action is plainly the superior – realistically, only – means by which these consumers can obtain recovery against Whirlpool, in light of the prohibitive cost of proving the Defect and establishing Whirlpool's knowledge.

(7)    Plaintiffs satisfy the requirements for bringing a class action under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01, *et seq.*, because Ohio courts have found that failure to disclose material facts about a product violates the OCSPA.  *See Nessle v. Whirlpool*, 2008 U.S.Dist.LEXIS 56940, at \*8-9 (N.D. Ohio July 25, 2008).

## II.    <u>ARGUMENT</u>[2]

### A.    <u>Common Factual And Legal Issues Predominate.</u>

Whirlpool seeks to divert the Court's attention from the two central factual disputes arising from Plaintiffs' Ohio claims:  (1) whether the Washing Machines contain a Defect that causes Mold Problems; and (2) whether Whirlpool failed to adequately disclose its knowledge of that fact prior to or at the time of sale.  Whirlpool instead focuses on purported factual variations

---

[2] Whirlpool does not contest Rule 23(a)(1) numerosity or Rule 23(a)(4) adequacy.

that, even if true – and at this point they are largely speculative – are not relevant to Plaintiffs'

legal claims or the key facts giving rise to those claims.[3]

### 1.    <u>Common Proof Of A Uniform Design Defect</u>

Whirlpool's own statements and documents show that the Washing Machines share a

common design and exhibit the same uniform Defect. Whirlpool's 30(b)(6) designee, Anthony

Hardaway, stated:

> All Access platform washers are nearly identical from an engineering standpoint. Although there are some functional differences among the Whirlpool Access models (*e.g.*, the Duet HT™ models have a heating element that allows the consumer to select a Sanitary Cycle that superheats the water to kill bacteria in clothing, which is a feature not present in the Duet™ models), most of the differences are aesthetic.

(Dkt. # 93-2 (App'x To Pls. Mem. Of Law In Supp. Of Pls. Mot. For Class Certification

("App'x")) Ex. 6 ¶ 6.) Hardaway also stated:

> All Horizon platform washers are nearly identical from an engineering standpoint. Like the Access washers, there are some functional differences among Whirlpool Horizon models (*e.g.*, the Duet Sport HT™ models have a heating element that allows the consumer to select a Sanitary Cycle that superheats the water to kill bacteria in clothing, which is a feature not present in the Duet Sport™ models), but most of the differences are aesthetic.

(*Id.* ¶ 8.)

---

[3] Whirlpool's struggle to distinguish *Daffin v. Ford Motor Corp.*, 458 F.3d 549 (6th Cir. 2006) fails. Its first argument – that all class members in *Daffin* owned vehicles with the same (allegedly defective) throttle body assembly – supports application of *Daffin* here. As detailed in Plaintiffs' opening brief at pages 4-11, and summarized below, the design components relevant to the Mold Problems are *identical* in all of the Washers. That there are minor variations in other aspects of the design does not alter this uniform and common defect. Whirlpool's second argument – that one of the issues the Sixth Circuit found common in *Daffin* is not at issue here – is not determinative. Commonality (and predominance) is established here because there are multiple core common legal and factual issues that would have to be determined in every individual case, as detailed in Plaintiffs' opening brief at pages 21 and 25-26, and upon which the Sixth Circuit found predominance in *Daffin*, 458 F.3d at 554 (whether the throttle body is defective and whether the defect reduced the value of the cars).

Whirlpool knew early in the production of the Machines that "horizontal access," *i.e.*, front-load, washers are ideal environments for mold and bacteria to flourish.  (App'x Ex. 1 at 1.) Whirlpool openly admitted that biofilm was an issue "[i]n all Whirlpool HE [(high efficiency)] Washer Platforms" and possibly is inherent to the HE systems.  (App'x Ex. 17 at 7.)  Indeed, Whirlpool's sale of Affresh shows that the Washing Machines all have the uniform Defect – Whirlpool recommended Affresh to help remove odor-causing residue build-up in *all* Whirlpool front-load washing machines, *without regard* to platform, model, or model year.  (*See* App'x Ex. 8 at 1-2.)

Although Whirlpool now argues that differences in the platforms, models, and model years raise individualized issues, its prior statements and actions show that those details are immaterial to the Defect and Mold Problems.  After receiving consumer complaints "in the 100's" regarding "bad odors, mold and mildew, and black spots on garments" from their front loading washers, in or about 2004 Whirlpool engineers initiated a "Biofilm Project" to "determine the cause and extent of the buildup/odor problems . . . ."  (*See* Suppl. App'x To Pls. Reply Mem. In Supp. Of Pls. Mot. For Class Certification ("Suppl. App'x") Ex. 1 (Deposition of Anthony Hardaway (Sept. 15-16, 2009)) ("Hardaway Dep.") 52:9-54:13; *see also* Suppl. App'x Ex. 2 (Data form dated April 27, 2004) at 1; Suppl. App'x Ex. 3 (Email dated March 8, 2004) at 1-2.)  At no point during that project did Whirlpool distinguish between platform, model, or model year of the Washing Machines – its biofilm analyses applied *generally* to *all* Whirlpool front-load washers.

Indeed, Whirlpool expressly acknowledged the uniform nature of the Defect – in minutes dated October 2004, the Biofilm team stated that "Biofilm has been observed in Calypso, Access, and Horizon washer platforms," and that "[i]n general[,] Biofilm is an issue we see

globally on multiple washer platforms.  It is *not only* an issue which we have in one region and is

not linked to one platform only!"  (App'x Ex. 16 at 1 (emphasis in original); Suppl. App'x Ex. 4

(Deposition of Sean Chapman (Oct. 5, 2009) ("Chapman Dep.") 206:11-24; *see also* Hardaway

Dep. 24:25-25:16, 33:15-34:19.)

2.    <u>Common Proof Of Whirlpool's Knowledge</u>

Citing no authority, Whirlpool argues that there can be no common proof of its own

knowledge of the Defect or Mold Problems because "knowledge [i]s not static."  (Def. Opp. Br.

at 22.)  If that truism regarding the nature of knowledge precluded certification of a class, then

*no* class action implicating a defendant's knowledge or state of mind could ever be certified,

whether it be securities fraud or fraudulent concealment in consumer sales.  Indeed, that is not

the law.  Courts routinely certify classes in which the defendant's knowledge is at issue.  *See*

*In re Mercedes-Benz Tele Aid Contract Litig.*, 2010 U.S.Dist.LEXIS 23624, at *143-49 (D.N.J.

March 15, 2010); *In re Honeywell Int'l, Inc. Sec. Litig.*, 211 F.R.D. 255, 266-67 (D.N.J. 2002)

(certifying securities fraud class and noting that changes in defendant's knowledge over time is

common feature of such cases); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 116-17 (W.D. Pa.

2003) (same). The key in such cases is to establish – as Plaintiffs have here – that the defendant

had sufficient knowledge at the outset of the class period.  (*See* Pls. Br. at 11-14; App'x Ex. 1 at

1; App'x Ex. 8 at 2; App'x Ex. 11 at 1; App'x Ex. 13 at 7, 15; App'x Ex. 14 at 2; App'x Ex. 15

at 1-2; App'x Ex. 16 at 1-2; App'x 17 at 7; App'x Ex. 18 at 1; App'x Ex. 21 at 1.)  And, of

course, that evidence does not (could not) vary one whit as between class members:  Whirlpool's

knowledge is *Whirlpool's* knowledge.

The record shows that Whirlpool knew from the outset that the Washing Machines

experience Mold Problems.  Whirlpool repeatedly has stated that its "HA [(horizontal access)]

wash platforms are the ideal environment for molds and bacteria[] to flourish [sic],"[4] a fact "known in the industry" "for more than 25 years."[5]  Hardaway testified:  "I had the opportunity to learn from Japanese competitors that they had been working very diligently on the issue of biofilm in their machines for over 25 years."  (Hardaway Dep. 24:7-11.)  As Plaintiffs' expert Dr. R. Gary Wilson has explained, given the state of knowledge in the field and Whirlpool's experience in that field, Whirlpool knew or was reckless in not knowing that its Washing Machines were the ideal environment for the development of biofilm and Mold Problems. (App'x Ex. 2 at 3-4.)

### 3.    Whirlpool's Uniform Concealment Of Material Fact

Whirlpool did not disclose to consumers the Defect or the Mold Problems in *any* document provided to consumers prior to or at time of sale.  But Whirlpool knew.

By April 2004, Whirlpool knew enough to form a Biofilm Project Team.  (Suppl. App'x Ex. 7 (Email dated April 21, 2004) at 1.)  Whirlpool started actively concealing its knowledge of the Mold Problems as early as August 2004, when it chose to use the term "Biofilm" rather than the more alarming words "Mold-Mildew-Fungi and Bacteria."  (App'x Ex. 19 at 1.)  In November 2004, Whirlpool implemented a "hidden cleaning cycle" to combat the Mold Problem.  (Suppl. App'x Ex. 8 (Minutes dated Nov. 2, 2004) at 2; Suppl. App'x Ex. 9 (Email dated Nov. 16, 2004) at 1.)  Even though it knew by early 2004 that the Washing Machines all have the Defect that causes Mold Problems, to this day Whirlpool does not provide customers

---

[4] App'x Ex. 1 at 1; *see also* Hardaway Dep. 26:5-27:12, 29:9-14, 33:15-34:16, 113:18-24, 114:3-6, 171:13-14, 219:8-9, 462:5-6, 463:5-9; App'x Ex. 3 at 2-4, 6; App'x Ex. 6 ¶ 18; App'x Ex. 17 at 1-9; App'x Ex. 18 at 1; App'x Ex. 19 at 1-2; Suppl. App'x Ex. 5 ("Biofilm in Automatic Washers" file) at 3.

[5] App'x Ex. 6 ¶ 20 ("Soils, detergent residues, water minerals, naturally occurring bacteria, and mold spores are industry challenges that have been worked on for more than 25 years"); Suppl. App'x Ex. 6 (Powerpoint dated Nov. 16, 2006) at 11.

with adequate notice of those problems prior to or at the point of sale.  Despite modest changes

to the Use & Care Guides ("UCGs") over time, they still do not explain that the design of the

Washing Machines will lead to Mold Problems, and that the Mold Problems do *not* result from

consumer practices.  (*See* App'x Ex. 22 at 4-15.)  Moreover, the UCGs are provided to customers

upon delivery of the Machines *after* purchase – any disclosures contained in the UCGs therefore

are by definition not adequate.  (*Id.* at 7.)

### 4. Common Proof Of Causation

#### a. Plaintiffs' OCSPA Claim

Whirlpool's argument that proof of causation with respect to Plaintiffs' omissions-based

OCSPA claim will necessarily be individualized is wrong as a matter of law, in two respects.

First, the Court of Appeals for the Sixth Circuit has explained that under the OCSPA, "a

deceptive act, viewed objectively, is all that is required for a successful cause of action under the

OCSPA."  *Butler v. Sterling, Inc.*, 2000 U.S.App.LEXIS 6419, at *12 (6th Cir. March 31, 2000).

"[P]art of the relevant inquiry in an OCSPA case – whether a defendant's conduct was 'likely to

induce' a misperception in the consuming public – is an objective consideration and, therefore, a

showing of subjective reliance is probably not necessary to prove a violation of the OCSPA."  *Id.*

at *13; *see also Nessle v. Whirlpool Corp.*, 2008 U.S.Dist.LEXIS 56940, at *8 (N.D. Ohio

July 25, 2008) ("Whirlpool failed to disclose the defect in the refrigerators, which resulted in

injuries to her and other member[s] of the Class" and plaintiff thereby "satisfied the minimal

proximate cause requirement" in asserting her OCSPA claim); *cf. Lilly v. Hewlett-Packard Co.*,

2006 U.S.Dist.LEXIS 22114, at *14 (S.D. Ohio April 21, 2006) (requiring a "cause and effect

relationship" for OCSPA claim based on affirmative misrepresentations); *Temple v. Fleetwood

Enters., Inc.*, 133 Fed. App'x 254, 265, 267-68 (6th Cir. 2005) (holding that a plaintiff may

assert OCSPA claims based on "material misrepresentation, deceptive acts or omission" but

-7-

affirming grant of summary judgment absent proof of affirmative misrepresentations or knowing omissions).

Second, even if reliance is required to prove an OCSPA claim, it would not bar class certification. Ohio law is clear: "When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements." *Baughman*, 727 N.E.2d at 1275 (affirming certification of Ohio fraud class).[6]

Plaintiffs' claims here turn on Whirlpool's omissions, not affirmative misrepresentations. Plaintiffs will therefore be entitled to a presumption of reliance that makes common issues predominate with respect to causation. Plaintiffs Glazer and Allison have testified that Whirlpool's failure to disclose the Defect and Mold Problems proximately caused them to purchase their defective machines. (App'x Ex. 25 ¶ 6; App'x Ex. 26 ¶ 6; App'x Ex. 24 93:23-

---

[6] That holding is consistent with caselaw from other jurisdictions. *See In re Mercedes-Benz*, 2010 U.S.Dist.LEXIS 23624, at *139-40 ("Based on the fact that the consumer fraud claim in this case is premised on omissions rather than misrepresentations, the Court [holds] that Plaintiffs will be able to establish causation by common proof; they must simply show that Mercedes knew that analog Tele Aid service would not be available after 2007, but did not inform the class members of that development until after they had purchased vehicles that contained analog-only systems and subscribed to Tele Aid."); *Grays Harbor Christian Adventist Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) ("Proof of the omissions will *not* be based upon information each class member received about the furnaces, but on what Carrier allegedly concealed in light of what consumers reasonably expect") (emphasis in original); *Keilholtz v. Lennox Hearth Prods., Inc.*, 2010 U.S.Dist LEXIS 14553, at *30-35 (N.D. Cal. Feb. 16, 2010) (certifying nationwide omission-based consumer fraud class under California CLRA and UCL); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (certifying nationwide omission-based class involving defective gearshifts under California's CLRA and UCL); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 626-27 (C.D. Cal. 2008) (certifying nationwide omission-based class involving misleading product advertisements under California's CLRA and UCL); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), *Rule 23(f) pet. den.* 402 F.3d 952 (9th Cir. 2005) (certifying omission-based defective engine manifold case under California's CLRA).

94:20, 97:10-14.)  Although Whirlpool cites *Faktor v. Lifestyle Lift*, 2010 U.S.Dist.LEXIS 3149

(N.D. Ohio Jan. 15, 2010), the fact that the present case involves pure failure to disclose material

facts (and the concomitant presumption of reliance), rather than the variety of oral and written

affirmative misrepresentations at issue there, readily distinguishes this case from *Faktor*.  2010

U.S.Dist.LEXIS 3149, at *12-18.

### b.  Plaintiffs' Defect-Based Claims

Nor do causation issues defeat predominance with respect to Plaintiffs' defect-based

claims.  In *Blumenthal*, 743 N.E.2d 923, the Ohio Court of Appeals reversed *de*certification of a

class asserting OCSPA and defect-based products liability claims arising out of allegedly

defective concrete used for driveways.  Defendant argued that a multitude of factors outside its

control could have caused or exacerbated the problem, including "weather, humidity, post[-]

installation use and/or abuse of the driveway by the homeowner, improper site preparation or

finishing techniques by the installing contractor, improper handling of the concrete by the

contractor, and lack of proper curing," all of which, it argued, "dispel[led] a finding of a common

defect with the driveways."  743 at 926.  The court found that the trial court abused its discretion

in *not* finding predominance of common issues despite those issues.  *Id.* at 932-33; *see also*

*Carrier*, 242 F.R.D. at 573.

That holding is not surprising:  under Ohio law, "[p]roximate cause does not require that

the conduct of [the] defendant be the sole cause of a legal injury.  As a matter of law, there may

be more than one proximate cause of an injury.  The plaintiff need only prove 'some reasonable

connection' between the act or omission and the damage suffered or prove that the conduct is a

substantial factor in bringing about the injury in order to satisfy the requirement of proximate

cause." *Kelemen v. Williams*, 1993 Ohio App.LEXIS 1325, at *11-12 (Ohio Ct. App. March 4, 1993) (internal citations and quotation marks omitted).[7]

Here, there is ample evidence that the Defect was present in the Washing Machines at the time of sale and that it caused or, at minimum, was a substantial factor in causing, the Mold Problems that Plaintiffs Glazer and Allison – and members of the Ohio Class – have experienced.  Contrary to its argument that individual usage causes the Mold Problems, Whirlpool also has admitted that biofilm occurs "with all habits & practices."  (Suppl. App'x Ex. 10 (Powerpoint dated Sept. 22, 2004) at 7.)  Whirlpool has acknowledged that consumer behavior cannot eliminate the Mold Problems – according to Whirlpool, "[c]onsumer habits are of little help [in eliminating mold] since mold (always present) flurished [sic] under *all* conditions seen in the Access platform."  (App'x Ex. 1 at 1 (emphasis added).)  Accordingly, not only are such practices of little or no legal relevance, Whirlpool itself has admitted they are of no factual relevance.

> ## 5.  Neither Actual Injury Nor Issues About "Individual Correction Of Problem" Defeat Predominance.

Whirlpool's speculation that few class members have experienced Mold Problems and actual injury is contradicted by its *own admissions* that 35-50% of owners experience Mold Problems.  Retreating from its earlier representations to the Court that the 35% figure merely was a typographical error in reporting 0.35%, Whirlpool now argues that the 35% figure, while

---

[7] *Kelemen* concluded:  "Plaintiff's expert testified that weak paste caused the spalling and that a combination of too much water and inadequate air entrainment was responsible for the paste's weakness.  His testimony, if believed, provides competent credible evidence that there was a reasonable connection between lack of entrained air and the spalling, and that lack of entrained air was a substantial factor in causing the damage to the driveway.  Ellis' expert testimony demonstrated that improper installation was a contributing factor in the driveway's deterioration, but did not demonstrate that it was the only cause of the deterioration."  1993 Ohio App.LEXIS 1325, at *12-13.

accurate, reflects employee survey information concerning machines other than the Washing

Machines, and therefore is irrelevant. Only now in litigation does Whirlpool resort to other data

(*e.g.*, SIR and call center data)[8]. In January 2005, however, Whirlpool engineers investigating

Mold Problems *chose* the 35% figure Whirlpool now seeks to disclaim, rather than the SIR data

it had as early as March 2004. (Hardaway Dep. 371:20-373:25.) Whirlpool invested significant

resources to investigate and attempt to resolve the Mold Problems using this 35% figure (and not

the near-negligible percentages that Whirlpool now cites *post hoc*), including making changes to

the UCGs, redesigning the tubs and cross-pieces, and adding cleaning cycles to the Machines.

Although Whirlpool now refuses to adequately account for its use of the 35% figure as early as

2004, it is clear from the evidence that Whirlpool's engineers used that figure – rather than the

SIR and call data to which it now resorts – because it represented the "[l]atest data available"

that Whirlpool's engineers considered most relevant to responding to Mold Problems. (App'x

Ex. 3 at 10.)

     Although it now attempts (in cursory fashion) to disavow its 2005 "Biofilm Quickfix"

presentation – a document prepared by Whirlpool engineers on its Biofilm team – Hardaway's

deposition testimony supports use of the 35% figure from that presentation. Hardaway explained

that "[a] preview team is a team of experts that try to assess whether or not you have gathered all

the proper documents and made the proper analysis before you are allowed to continue" and

---

[8] Plaintiffs' expert Dr. Richard L. Oliver has explained the reasons why consumer complaint data will be under-inclusive of the actual extent of Mold Problems experienced by consumers. (Pls. Br. at 17-18; App'x Ex. 29 at 4-6.) Additionally, the SIR data under-reports the actual extent of customer problems – Whirlpool implemented a program called SAVE-A-CALL to *reduce* the number of service calls it conducted in response to consumer complaints. The documents that prove Whirlpool had such a program are subject to a confidentiality agreement between the parties that prohibits them from being publicly filed. Plaintiffs will bring copies of these supporting documents to the oral argument of the present motion for the Court's review.

"that you have looked at everything that needs to be looked at . . . ."  (Hardaway Dep. 350:21-25,

353:11-12.)

> Q:  So this is an amalgamation of all of the knowledge, the accurate knowledge
> that you have amassed to this point, correct?
>
> A:  This is the knowledge that the biofilm team has prepared that they think is
> appropriate for the preview team.  It wouldn't be all of the knowledge, but what
> they had selected out of the total database to – to share with the preview team.
>
> Q:  And you, up to this point, had tested that knowledge to see whether it's true or
> false, basically?  In other words, you want it to be accurate knowledge?
>
> A:  Oh, absolutely.
>
> Q:  And these are the scientists after all, and not the business people?
>
> A:  Absolutely.

(*Id.* at 368:5-22.)  Documents and testimony from Procter & Gamble ("P&G") – manufacturer of

Whirlpool's recommended HE detergent – based on face-to-face meetings between personnel at

the two companies confirm that Whirlpool concluded that 35% of the Washing Machines

experienced malodor problems and, as a result, had increasing concerns about controlling the

problem through, among other measures, collaboration with P&G on an Affresh-type product.[9]

    In its reply, Whirlpool proffers eleven declarations from class members.  Rather than

support Whirlpool's arguments, however, the declarations are only significant for what they fail

to include.  Incredibly, the declarations fail to disclose that at least some of the declarants are

closely affiliated with Whirlpool and its counsel – one of the declarants is an attorney that was

recently employed by Whirlpool's lawyers at Wheeler Trigg O'Donnell LLP, and another is the

---

[9] P&G testimony and documents collected in this case are subject to a confidentiality agreement
with P&G that prohibits the public filing of that discovery.  As with the documents described in
footnote 8, Plaintiffs will bring copies of the relevant supporting P&G testimony and documents
to oral argument for the Court's review.

mother of a paralegal at Vorys, Sater, Seymour & Pease, LLP, Whirlpool's local counsel.  (*See* Suppl. App'x Ex. 11 (Decl. of Laurie Rubinow (March 26, 2010)) ¶¶ 3-7.)

Further, Whirlpool has not provided any information about the circumstances of its communications with these eleven declarants or whether Whirlpool spoke with any other class members and, if so, how many reported Mold Problems.  The declarations themselves fail to demonstrate whether the declarants were even given an *accurate description* of this lawsuit and Plaintiffs' allegations concerning the Defect and Mold Problems, whether the declarants were told that the declarations would be used in a class action lawsuit, and whether the declarants were told that signing a declaration may be against their interests in the lawsuit.[10]  Plaintiffs were able to speak with a few of these declarants, and, after receiving information about the existence and nature of the lawsuit, at least one class member has further stated, *inter alia*, that: 1) she was not aware of the propensity of the machine to develop mold when she purchased it; 2) she does not believe she should be required to do extensive maintenance on her expensive machine; 3) if her machine develops problems like those at issue in this litigation, the likely cause is a design defect; and 4) she would like to participate in any settlement or judgment recovered against Whirlpool.  (*See* Suppl. App'x Ex. 12 (Second Decl. of Janisa Tharp (March 24, 2010)) ¶¶ 3-10.)

---

[10] Courts have consistently held that litigants (and their counsel) may not make pre-certification statements to putative class members that are inaccurate or misleading or that present one-sided assertions as undisputed or unqualifiedly true. *See, e.g.*, *Bouder v. Prudential Fin., Inc.*, 2007 U.S.Dist.LEXIS 83338, at *6-7 (D.N.J. Nov. 8, 2007); *Gerlach v. Wells Fargo & Co.*, 2006 U.S.Dist.LEXIS 24823, at *12-14 (N.D. Cal. March 28, 2006); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981); *In re Community Bank of N. Va.*, 418 F.3d 277, 311 (3d Cir. 2005); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal").

-13-

Thus, even if credited, these carefully crafted declarations utterly fail to support Whirlpool's arguments.

Nor do Whirlpool's arguments regarding the efficacy of attempts by class members to address the Mold Problems have any bearing on predominance. As detailed above, such post-sale facts have no relevance to the legal claims here, which are premised on the existence of a Design Defect in the Machines at the time of sale that causes Mold Problems, and Whirlpool's uniform failure to disclose those material facts prior to or at the time of sale.[11]

### 6.  Damages Do Not Defeat Predominance.

Whirlpool's argument that the potential need to prove damages on an individual basis makes class certification improper is not the law. As this Court has held, "[t]he Sixth Circuit has never required a precise mathematical calculation of damages before deeming a class worthy of certification." *Van Horn*, 2008 U.S.Dist.LEXIS 107425, at *32 (internal quotation marks omitted). Accordingly, even if some individual damages determinations are required post-liability – and, as explained by Plaintiffs' damages expert, Dr. Allan J. Taub, they are not – class certification remains proper. *Id.* at 33.[12]

---

[11] Plaintiffs have scrambled to combat the late submission of these declarations. Should the Court want to give any consideration to these declarations, Plaintiffs respectfully request time to depose the declarants.

[12] Whirlpool's attack on Dr. Taub is thus irrelevant. But it also is based on a fundamental misunderstanding of the proper role of a damages expert. Whirlpool's damages expert, Dr. Marais – who has made a career attacking other experts' damages models rather than performing his own – believes that it is a damages expert's job to tell the Court the proper measure of damages, rather than model damages within the legally prescribed measures of damages, as Dr. Taub has done. Unfortunately for Dr. Marais, his expert testimony has been excluded by courts in too many cases for him to recall them (Suppl. App'x Ex. 13 (Deposition of Dr. M. Laurentius Marais (Feb. 4, 2010)) 68:10-69:9, 98:17-100:24), including one in which the court excluded an opinion similar to that proffered here for improperly invading the court's province in determining the proper measure of damages. *See Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 1998 U.S.Dist.LEXIS 8331, at *5-6 (N.D.Ill. June 3, 1998).

-14-

### 7.   Affirmative Defenses Are No Bar To Class Certification.

Whirlpool cites *no* authority for its argument that resolution of its (purely speculative) affirmative defenses particularly relevant to some class members, including statutes of limitations, defeats predominance.  That is because the weight of authority is to the contrary: "Courts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[fs], does not preclude certification of a class action so long as the necessary commonality and . . . predominance[] are otherwise present." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) (internal quotation marks omitted); *see also Bentley*, 223 F.R.D. at 485 (potential varying affirmative defenses, including statutes of limitation, do not render class certification improper).

### B.   Plaintiffs Are Typical Of The Class.

Whirlpool's argument that Plaintiffs do not satisfy the typicality requirement suffers from the same debility as its predominance argument – it mischaracterizes what Plaintiffs are required to prove and misdirects the Court's attention to issues that are not relevant.  Typicality requires that "as goes the claim of the named plaintiff, so go the claims of the class." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc).  Contrary to Whirlpool's depiction of what is required, "[a] representative party's claims . . . need not be identical to those of the potential class members." *Van Horn*, 2008 U.S.Dist.LEXIS 107425, at *26 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976)); *see also Kelly v. Montgomery Lynch & Assocs., Inc.*, 2007 U.S.Dist.LEXIS 93656, at *11-12 (N.D. Ohio Dec. 19, 2007); *In re Telectronics Pacing Sys., Inc.*, 164 F.R.D. 222, 228 (S.D. Ohio 1995) ("The typicality requirement may be satisfied even if there are factual distinctions between the class members and those of other class members") (internal quotation marks omitted).

-15-

Here, Plaintiffs' claims – like those of all Ohio Class members – arise from Whirlpool's uniform misconduct, *i.e.*, the Defect inherent in the Washing Machines and Whirlpool's failure to disclose that Defect and the resulting Mold Problems.  As a result of Whirlpool's misconduct, and despite following Whirlpool's instructions on how to use the Washing Machines, Plaintiffs Glazer and Allison both experienced Mold Problems in their respective washing machines, as well as malodors on laundry and inside the machines.  (*See* Pls. Br. at 23 (citing App'x Exs. 23, 24).)  Although Whirlpool argues that members of the Class differ in their usage of the Washing Machines and their responses to the Mold Problems, the experiences of Plaintiffs Glazer and Allison – both of whom followed the UCG instructions – demonstrate that Mold Problems occur and persist *regardless* of individualized consumer behavior.  This is consistent with Whirlpool's statements that biofilm occurs under all conditions and regardless of consumer behavior.  (*See supra* pp. 4-5.)

Whirlpool's argument that "there is no basis to assume that all Washers suffer from a common defect and all putative class members have suffered harm as a result of that alleged defect" (Def. Opp. Br. at 27) is wrong, as detailed above, *supra* pp. 3-5, 10.

Whirlpool's argument that "numerous factual and legal variables" make Plaintiffs' claims not typical is equally unavailing.  As explained above, the variations that Whirlpool identifies are not relevant to Plaintiffs' Ohio claims.  (*See supra* pp. 3-5, 10.)  Plaintiffs Glazer and Allison each purchased a Washing Machine containing the Defect, were not informed by Whirlpool that the Machines would cause Mold Problems, and suffered Mold Problems as a result of the Defect. They are typical of Ohio class members.

Additionally, Whirlpool has marketed Affresh to each and every Ohio class member, without distinction, as a solution to odor in their Washing Machines.

-16-

### C.    **The Class Is Properly Defined.**

Whirlpool's argument that the proposed class is overbroad because it may include individuals who suffered no injury is both speculative and legally irrelevant.  "[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.  Such a possibility or indeed inevitability does not preclude class certification . . . ."  *Kohen*, 571 F.3d at 677.  Cases suggesting otherwise – including this Court's decision in *Van Horn*, *supra* pp. 14-15 – hold that "if the [class] definition is so broad that it sweeps within it persons who *could not have been injured* by the defendant's conduct, it is too broad."  *Kohen*, 571 F.3d at 677 (emphasis added).

This is not such a case.  The Class is objectively defined as those who purchased the Washing Machines.  As one oft-cited decision explains, classes should be "defined in terms of objective criteria like the defendants' conduct as opposed to the state of mind of the parties," and fact of injury is a "merits[] argument that the Court cannot consider" on class certification. *Bentley*, 223 F.R.D. at 477.  Here, as in *Bentley*, whether each (or any particular) class member has been injured is not now relevant.  Unlike in *Van Horn*, *no* individual is swept into the class definition who could not possibly (as a matter of law and/or fact) have been injured by Whirlpool.

### D.    **A Class Action Is The Superior Procedure For These Claims.**

Whirlpool's superiority argument largely repeats its unavailing arguments against predominance of common issues, and will not be addressed again here.

The only different argument Whirlpool advances against superiority of a class action is its suggestion that Plaintiffs and Class members should seek redress through small claims court.

-17-

Ohio courts have rejected the notion that small claims court is a superior venue for small value individual damages claims. *See Stammco, LLC v. United Tel. Co. of Ohio*, 2008 Ohio App. LEXIS 3243, at \*20 (Ohio Ct. App. Aug. 1, 2008), *rev'd on other grounds*, 2010 Ohio LEXIS 731 (March 24, 2010).

Whatever merit that argument might have in a case about an individual product that simply does not work for a single individual, it plainly is inadequate in a case where, as here, in order to prove their claims, all class members will be required to undertake the Herculean task of gathering the same evidence in each individual case to prove the presence of an inherent design Defect, as well as Whirlpool's knowledge and concealment of that Defect and the Mold Problems.

As courts have noted, "the *realistic* alternative to a class action is not [millions of] individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (emphasis in original). While the damages at issue here are a bit more than $30, the task for an individual class member taking on Whirlpool is not much less daunting given the nature of what must be proven to prevail on their Ohio claims. This is precisely the sort of case for which class actions were designed. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007).

### E.  Plaintiffs Satisfy The OCSPA Class Action Prerequisite.

Whirlpool's argument that Plaintiffs cannot seek certification of their OCSPA claim because it was not on notice within the meaning of Ohio Revised Code § 1345.09(B) fails for two independent reasons. Assuming § 1345.09(B) even applies here,[13] Plaintiffs have satisfied

---

[13] As this Court noted in its order on Whirlpool's motion to dismiss, it is at least an open question whether section 1345.09(B) applies in this action. To the extent it imposes a procedural barrier not found in Federal Rule 23, that section is trumped by Rule 23. *See Biegas v. Quickway*

its requirements.  Under Ohio law, there need only "be a substantial similarity between a defendant's alleged violation of the Act and an act or practice previously declared deceptive by either a rule promulgated by the Attorney General or a court decision that was publicly available when the alleged violation occurred.  'Substantial similarity' means a similarity, not in every detail, but in essential circumstances or conditions."  *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 36 (Ohio 2006).  Plaintiffs satisfy that requirement.  In *Nessle*, 2008 U.S.Dist.LEXIS 56940, at *9 (N.D. Ohio 2008), Judge Boyko rejected Whirlpool's identical argument in a case involving non-disclosure of a refrigerator defect, finding that there are "several Ohio cases with similar facts where courts have held violations of OCSPA existed," such that the notice requirements of section 1345.09(B) are satisfied.[14]

## III.   CONCLUSION

Plaintiffs respectfully request that the Court grant their motion.

---

*Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938)).

[14] The OCSPA is "a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed," *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935 (Ohio 1990), and has been interpreted to prohibit material omissions and misrepresentations regarding products.  *See Hoffer v. Cooper Wiring Devices, Inc.*,  2007 U.S.Dist.LEXIS 42871, at *9-10 (N.D. Ohio Jun. 13, 2007) (failure to disclose defect in electrical receptacles stated OCSPA claim); *Blumenthal*, 743 N.E.2d at 932 (OCSPA violation arising out of marketing of defective concrete); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 838 (S.D. Ohio 2003) (plaintiff stated OCSPA claim where product label contained misstatements and omitted material information); *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 632-33 (Ohio Ct. App. 1982) (plaintiff stated OCSPA claim in suit involving misrepresentations and omissions in advertising of motor vehicles); *Teeters Constr. v. Dort*, 869 N.E.2d 756, 769-70 (Ohio Mun. Ct. 2006) (citing OCSPA cases involving misleading representations).

-19-

Dated:  March 29, 2010                    Respectfully submitted,


By:_____/s/ Jonathan D. Selbin_____
              Jonathan D. Selbin


LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592


By:_____/s/ Mark P. Chalos_____
              Mark P. Chalos


LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN  37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965


By:_____/s/ George Lang_____
              George Lang


FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone:  (312) 220-0000
Facsimile:  (312) 220-7777


By:_____/s/ James C. Shah_____
              James C. Shah


SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State St.
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883

By:       /s/ Steven A. Schwartz           
       Steven A. Schwartz

CHIMICLES & TIKELLIS LLP
One Haverford Centre
Haverford, PA 19041
Telephone:  (610) 645-4720
Facsimile:  (610) 649-3633

By:       /s/ Steven Wittels           
       Steven Wittels

SANFORD WITTELS & HEISLER, LLP
950 Third Ave., 10th Floor
New York, NY  10022
Telephone:  (646) 723-2454
Facsimile:  (646) 723-2948

By:       /s/ Scott A. George           
       Scott A. George

SEEGER WEISS LLP
1515 Market Street
Philadelphia, PA 19102
Telephone:  (215) 564-2300
Facsimile:  (215) 851-8029

By:       /s/ Brian Ruschel           
       Brian Ruschel

925 Euclid Ave Ste 660
Cleveland OH  44115
Telephone:  (216) 621-3370
Facsimile:  (216) 621-3371

-21-

By:_____/s/ Mark Schlachet_____
          Mark Schlachet

LAW OFFICE OF MARK SCHLACHET
3637 South Green Road--2d Floor
Beachwood, OH  44122
Telephone:  (216) 896-0714
Facsimile:  (216) 514-6406

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2010, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

/s/ Mark P. Chalos
Mark P. Chalos
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, Tennessee 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
mchalos@lchb.com

862374.5