UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

In re: WHIRLPOOL CORP. : CASE NO. 1:08-WP-65000
FRONT-LOADING WASHER :
PRODUCTS LIABILITY LITIGATION :
: OPINION & ORDER
: [Resolving Doc. 93.]
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this multidistrict products liability litigation based on Defendant Whirlpool's allegedly defective front-loading washing machines, Plaintiffs Gina Glazer and Trina Allison move to certify their Ohio tort, warranty, and fraud claims as a class action under Federal Rule of Civil Procedure 23(b)(3). [Doc. 93-1.] As explained below, because the plaintiffs have met the Rule 23(a) prerequisites, because common questions predominate, and because a class action is the superior method for adjudicating this controversy, the Court **GRANTS** class certification with one exception.

**I. Background**

Plaintiffs Allison and Glazer allege that the Whirlpool washing machines they purchased (in 2005 and 2006, respectively) contain a design defect that prevents them from rinsing away all detergent and fabric softener and from completely draining the laundry drum. This defect, the plaintiffs contend, causes the machines to accumulate mold, resulting in unpleasant odors and ruined laundry. The plaintiffs further allege that Whirlpool knew of the machines' propensity to experience mold problems yet failed to disclose that knowledge to the plaintiffs before they bought their machines. The mold problems in their machines allegedly persisted despite their various efforts to implement Whirlpool's suggested remedies. The plaintiffs thus brought claims under Ohio law for

-1-

Case No.1:08-WP-65000
Gwin, J.

negligent design, negligent failure to warn, tortious breach of warranty, and violation of the Ohio Consumer Sales Practice Act. They now seek certification of a class of Ohio plaintiffs who purchased Whirlpool's front-loading washers.

## II. Breadth of Class

At the outset, Whirlpool argues that the proposed class is too broad for certification because it includes many plaintiffs whose washers have not manifested any mold problems—and thus who do not have viable claims. [Doc. 105-1 at 17-20.] But whether any particular plaintiff has suffered harm is a merits issue not relevant to class certification. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006).

## III. Certification of OCSPA Claim

Whirlpool also reiterates its argument that the plaintiffs may not maintain their OCSPA claim as a class action because they fail to identify any Ohio Attorney General rule or state court decision determining Whirlpool's conduct to be deceptive or unconscionable under Ohio Revised Code § 1345.09(B).

The plaintiffs argue that—notwithstanding O.R.C. § 1345.09(B)—as long as both the Rule 23(a) prerequisites and the Rule 23(b)(3) standard are satisfied, Federal Rule 23 says that "[a] class action *may* be maintained." Fed. R. Civ. P. 23(b) (emphasis added). They argue that because O.R.C. § 1345.09(B) conflicts with Rule 23 here—*i.e.*, it implicitly prohibits the plaintiffs from maintaining their OCSPA claim as a class action because Whirlpool's conduct was not previously declared to be

Case No.1:08-WP-65000
Gwin, J.

deceptive—it cannot apply in this diversity action unless Rule 23 is ultra vires. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010).

Rule 23 is not ultra vires under the *Shady Grove* plurality's approach because, looking solely at the federal rule, it "'really regulate[s]'" procedure. *Id.* at 1442-43 (plurality op.) (citation omitted).

But Rule 23 *is* ultra vires under the approach of Justice Stevens (the crucial fifth vote in *Shady Grove*) because it "would abridge, enlarge, or modify [Ohio's] rights or remedies, and thereby violate the [Rules] Enabling Act." *Id.* at 1457 (Stevens, J., concurring in part and concurring in judgment) (directing courts to focus ultra vires inquiry on substantive/procedural nature of state law at issue, rather than federal rule). Here, O.R.C. § 1345.09 purports to define Ohio's substantive rights and remedies by creating a cause of action for defrauded consumers and declaring the relief available to them. *See* Ohio Rev. Code § 1345.09 ("For a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to relief as follows . . . ."). The class action restriction in O.R.C. § 1345.09(B) is intimately interwoven with the substantive remedies available under the OCSPA. *See Shady Grove*, 130 S. Ct. at 1456 (Stevens, J.) ("[I]f a federal rule displaces a state rule that is 'procedural' in the ordinary sense of the term, but sufficiently interwoven with the scope of a substantive right or remedy, there would be an Enabling Act problem, and the federal rule would have to give way.") (citation and internal quotation marks omitted). Unlike the New York rule at issue in *Shady Grove*, O.R.C. § 1345.09(B) is not a pan-substantive rule that applies to federal claims or to claims based on other states' laws. *Cf. Shady Grove*, 130 S. Ct. at 1457 (Stevens, J.). Rather, it applies only to "a violation of Chapter 1345 of the [Ohio] Revised Code"—indicating its substantive nature. Ohio Rev. Code § 1345.09.

Thus, because under Justice Stevens's approach in *Shady Grove*, applying Rule 23 here would

Case No.1:08-WP-65000
Gwin, J.

"abridge, enlarge, or modify [Ohio's] rights or remedies," *id.* at 1457, it is ultra vires under the Rules Enabling Act, 28 U.S.C. § 2072(b), and must give way to O.R.C. § 1345.09(B). Accordingly, the Court **DENIES** certification of the plaintiffs' OCSPA claim.

### IV. Rule 23 Analysis

To justify certification on their other three Ohio claims—negligent design, negligent failure to warn, and tortious breach of warranty—the plaintiffs must satisfy the four Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation, as well as the Rule 23(b)(3) predominance and superiority requirements.

As to the first Rule 23(a) prerequisite, Whirlpool does not dispute that the class is so numerous that joinder would be impracticable. *See* Fed. R. Civ. P. 23(a)(1).

Second, both the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance requirement depend on the nature of the claims asserted. *See* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1785 (3d ed. 2005) (courts must "consider what will have to be proved at trial and whether those matters can be presented by common proof or whether individual proof will be required").

Here, the plaintiffs' claims fall into two categories. The negligent design claim requires the plaintiffs to establish (1) a design defect in their washers that (2) actually caused the mold problems, (3) resulting in damages. *State Auto Mut. Ins. Co. v. Chrysler Corp.*, 304 N.E.2d 891, 894-95 (Ohio 1973). The plaintiffs concede that the damages element is not common to the class and that (assuming they prevail on the first two issues) individual class members will have to prove the

Case No.1:08-WP-65000
Gwin, J.

damages they suffered, likely resulting in varying awards.[1] [Doc. 93-1 at 26.] But the Sixth Circuit has explained that the presence of a single common question is enough for certification—as long as resolution of that question will advance the litigation. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc); *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action."). Moreover, the first two elements of the plaintiffs' negligent design claim—the existence of a design defect and actual causation—are common to the class. The plaintiffs' theory is that notwithstanding Whirlpool's design changes since 2002, all of its front-loading washers use less and cooler water that fails to adequately rinse away odor-causing soil, suds, and biofilm.[2] Resolution of those common questions will significantly advance the litigation, leaving only the damages issue for individual determination.

The plaintiffs' remaining two claims—negligent failure to warn and tortious breach of warranty—require the plaintiffs to establish that (1) Whirlpool knew of a design defect in its washers; (2) Whirlpool failed to adequately warn buyers of that defect; (3) the withheld information about the design defect was material; and (4) the plaintiffs suffered damages. *See, e.g.*, *Hanlon v. Lane*, 648 N.E.2d 26, 28 (Ohio Ct. App. 1994) (failure to warn); *Temple v. Wean United, Inc.*, 364 N.E.2d 267,

---

[1] Requiring proof of individual damages bars recovery by plaintiffs whose washers have not manifested any defects, thus addressing Whirlpool's concern that the class is too broad. *See Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 630 (8th Cir. 1999); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) (Easterbrook, J.).

[2] Whirlpool argues that because different owners attempted different remedies, actual causation is necessarily an individualized inquiry. But Ohio law requires that the design defect be only a substantial factor or "important link" in the chain of causation—not the sole cause of each plaintiff's damages. *E.g.*, *Taylor v. Webster*, 231 N.E.2d 870, 872-73 (Ohio 1967).

Case No.1:08-WP-65000
Gwin, J.

273 (Ohio 1977). The first element is common to the class because, on the plaintiffs' theory, Whirlpool knew at the outset that its washers had a defect.[3/] Likewise, the second element is common across the class because—despite buyers' varying exposure to Whirlpool's disclosures about mold problems—the plaintiffs' theory is that none of Whirlpool's public disclosures about mold problems were sufficient. And the third element is common to the class because under Ohio law, "[w]hen there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance," rather than requiring individualized proof of actual reliance. *Baughman v. State Farm Mut. Auto Ins. Co.*, 727 N.E.2d 1265, 1274-75 (Ohio 2000). Thus, as with the design defect claim, these common issues predominate over the individualized issue of damages.

Third, the claims of Glazer and Allison are typical of the class. *See* Fed. R. Civ. P. 23(a)(3). They both purchased Whirlpool front-loading washers. They both read and followed the instructions in Whirlpool's use and care guide. They both used their washers for domestic purposes. And they both experienced mold problems despite implementing Whirlpool's recommended fixes. Because

---

[3/]This case presents a common class certification problem: In an effort to obtain certification (and thus to make small claims economically viable), class counsel adopts a theory of the case that relies on common questions, even though some class members may also be able to prove their claims through individualized—and potentially easier—routes. (For example, in this case, the plaintiffs' theory of the case is that *none* of Whirlpool's design modifications fixed the defect, that Whirlpool knew of the defects *from the outset*, that *none* of Whirlpool's disclosures about the defect were sufficient, and that *none* of Whirlpool's recommended fixes were effective.) If class counsel's theory of the case fails to a jury, all class members' claims are *res judicata*—even those who had easier, more individualized roads to recovery.

But this troubling possibility does not preclude certification for two reasons. First, any plaintiff is free to opt out of the class action and pursue her claims under a more individualized theory. *See* Fed. R. Civ. P. 23(c)(2)(B)(v). Second, for claims too small to justify individual actions, class actions may still be the most attractive option: Because class actions are exceedingly unlikely to go to trial, *see In re Bridgestone/Firestone*, 288 F.3d at 1015-16, class actions are likely to obtain at least *some* recovery via settlement—and something is better than nothing.

Case No.1:08-WP-65000
Gwin, J.

they will tend to prove other class members' claims by proving their own claims, they satisfy the typicality requirement. *See Sprague*, 133 F.3d at 399.

Fourth, for the same reason, the named plaintiffs' interests align with the class's interests, rendering them adequate to represent the class. *See* Fed. R. Civ. P. 23(a)(4). Whirlpool does not, moreover, contend that the named plaintiffs' counsel is unqualified, inexperienced, or unable to conduct the litigation. *Cf. Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (adequacy of representation prerequisite demands that "the representatives will vigorously prosecute the interests of the class through qualified counsel").

Finally, the plaintiffs have satisfied the requirements of Rule 23(b)(3). As explained above, common questions predominate over individual ones.[4] Moreover, a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), because each owner's damages are likely too small to justify bringing an individual action. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'") (citation omitted); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.) ("The

---

[4] The weight of authority is against Whirlpool's argument that because its affirmative defenses will vary from owner to owner, common questions do not predominate. *See In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 752-53 (E.D.N.Y. 1986) ("Courts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and . . . predominance, are otherwise present.") (citing cases). In any event, even if Whirlpool's statute of limitations defense differs across individual class members, it will be relatively easy to resolve on an individual basis. Moreover, individual differences in Whirlpool's owner misuse defense do not preclude certification because (according to the plaintiffs' theory) the mold problems persisted *regardless* of whether owners followed Whirlpool's recommended fixes.

Case No.1:08-WP-65000
Gwin, J.

*realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). Any owner who wishes to control the prosecution of her own claims may, of course, opt out. *See* [Fed. R. Civ. P. 23(b)(3)(A)](Fed. R. Civ. P. 23(b)(3)(A)).

### V. Conclusion

For the reasons discussed above, the Court **DECLINES TO CERTIFY** the plaintiffs' OCSPA claim as a class action.

However, because the plaintiffs' negligent design, negligent failure to warn, and tortious breach of warranty claims satisfy both the Rule 23(a) prerequisites and the Rule 23(b)(3) requirements, the Court **CERTIFIES** the following class of Ohio plaintiffs:

> All persons who are current residents of Ohio and purchased a Washing Machine (defined as Whirlpool Duet®, Duet HT®, and Duet Sport® Front-Loading Automatic Washers) for primarily personal, family or household purposes, and not for resale, in Ohio, excluding (1) Whirlpool, any entity in which Whirlpool has a controlling interest, and its legal representatives, officers directors, employees, assigns, and successors; (2) Washing Machines purchased through Whirlpool's Employee Purchase Program; (3) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (4) persons or entities who distribute or resell the Washing Machines; (5) government entities; and (6) claims for personal injury, wrongful death, and/or emotional distress.

The Court appoints named plaintiffs Glazer and Allison as class representatives. Further, after considering the Rule 23(g)(1) factors, the Court appoints Leiff, Cabraser, Heimann & Bernstein LLP as class counsel. Finally, the Court directs class counsel to provide the best notice practicable to class members as required by Rule 23(c)(2)(B).

IT IS SO ORDERED.

Dated: July 12, 2010      s/ *James S. Gwin*
                                                               JAMES S. GWIN
                                                               UNITED STATES DISTRICT JUDGE