**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| IN RE: WHIRLPOOL CORP. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION | Case No. 08-cv-65000<br><br>Judge: Christopher A. Boyko<br><br>Magistrate Judge: William H. Baughman, Jr. |
|---|---|

**PLAINTIFFS' RENEWED MOTION TO MODIFY THE CLASS DEFINITION**


Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500

Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Ave., Ste. 1650
Nashville, TN 37219
(615) 313-9000

Robert T. Glickman
MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., L.P.A.
101 West Prospect Ave., Ste. 1800
Cleveland, OH 44115
(216) 696-1422


*[Additional Counsel Listed On Signature Page]*

# TABLE OF CONTENTS

**Page**


RENEWED MOTION TO MODIFY CLASS DEFINITION .............................. 1

INTRODUCTION .............................. 1

LEGAL STANDARD .............................. 3

ARGUMENT .............................. 4

I. The Certified Class Did Not Include the Late Model Washers. .............................. 5

A. The 2010 Record Evidence Relating to Alpha and Other Late Model Washers. .............................. 5

B. The Class Certification Motion Did Not Encompass Purchasers of Late Model Washers .............................. 6

C. The "Sierra" Washers. .............................. 7

D. Why This Motion Was Not Brought in 2010 or 2011 .............................. 8

II. A Defendant Cannot Escape Liability or Class Certification Simply by Selling a Non-Defective Product Under the Same Brand Name as a Defective One. .............................. 9

III. There Is No Prejudice to Whirlpool, Yet Serious Due Process Issues Would Arise if Late Model Washers Are Not Excluded. .............................. 10

CONCLUSION .............................. 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)........................................................................... 11

*Ammons v. La Z-Boy Inc.*,
No. 1:04-CV-67, 2009 U.S. Dist. LEXIS 96963 (D. Utah Oct. 20, 2009)......... 3

*Barney v. Holzer Clinic, Ltd.*,
110 F.3d 1207 (6th Cir. 1997) ................................................................ 4

*Cervantez v. Celestica Corp.*,
No. EDCV 07-729, 2010 U.S. Dist. LEXIS 78342 (C.D. Cal. July 6, 2010)..... 9

*Chapman v. Wagener Equities*,
No. 09 C 07299, 2012 U.S. Dist. LEXIS 176857 (N.D. Ill. Dec. 13, 2012) ...... 3

*Foster v. D.B.S. Collection Agency*,
2003 U.S. Dist. LEXIS 25459 (S.D. Ohio Dec. 16, 2003) ................................ 4

*Garcia v. Tyson Foods, Inc.*,
890 F. Supp. 2d 1273 (D. Kan. 2012)......................................................... 3, 10

*General Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)............................................................................ 3

*Hart v. Rick's NY Cabaret Int'l, Inc.*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013) ............................................................ 9

*In re Sumitomo Copper Litig.*,
262 F.3d 134 (2d Cir. 2001) .................................................................. 9

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
No. 08-wp-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010)... 7

*Perryman v. Johnson Prods. Co., Inc.*,
698 F.2d 1138 (11th Cir. 1983) ...................................................... 4, 10

*Powers v. Hamilton County Public Defender Commission*,
501 F.3d 592 (6th Cir. 2007) ................................................................. 4

*Pritchard v. Dent Wizard Int'l Corp.*,
210 F.R.D. 591 (S.D. Ohio 2002)...................................................... 11

*Richardson v. L'Oréal USA, Inc.*,
No. 13-508, 2013 U.S. Dist. LEXIS 158599 (D.D.C. Nov. 6, 2013)................. 9

*Schorsch v. Hewlett-Packard Co.*,
417 F.3d 748 (7th Cir. 2005) ................................................................. 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**Rules**

Fed. R. Civ. P. 1 ..... 3

Fed. R. Civ. P. 23(c)(1)(C) ..... 3

**Treatises**

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) § 21.222 ..... 5

**Other Authorities**

Fed. R. Civ. P. 23(c)(1) advisory committee's note (1966) ..... 3, 10

32B Am. Jur. 2d *Federal Courts* § 1601 (2014) ..... 2, 3

**RENEWED MOTION TO MODIFY CLASS DEFINITION**

Plaintiffs respectfully renew their motion to modify the Class definition. (Dkt. 263.) The Court denied that motion without prejudice indicating it would revisit the motion when it was ripe (Dkt. 289 at 4-5), and Whirlpool has now filed a motion for decertification (Dkt. 327) and for summary judgment (Dkt. 308). Plaintiffs respectfully submit it is now appropriate—indeed, critical—to revisit their motion to modify.[1]

Plaintiffs move to modify the Class definition by limiting it in two discrete ways: (1) providing an end date to the Class period by limiting it to owners of washers manufactured prior to January 1, 2009 without a steam feature, and (2) excluding owners of Duets built on the Sierra platform starting in 2007, machines that share the same material design features as the post-January 1, 2009 washers (together, the "Late Model Washers").

**INTRODUCTION**

It is now apparent that Plaintiffs' motion should have been—and still should be—unopposed. The parties are in complete agreement that the Late Model Washers incorporate design changes that render them materially different from the Duets owned by Plaintiffs and all other Class members.

Whirlpool opposed Plaintiffs' original motion on the basis of prejudice, insisting on its right "to try the class action that the plaintiffs successfully asked for." (Dkt. 286 at 32:20-22.) This never made sense *factually*: most of the Late Model Washers did not even *exist* when Plaintiffs moved for class certification, and Plaintiffs' design engineering expert, Dr. R. Gary Wilson (Whirlpool's own former Director of Laundry Technology), indicated that he had *not evaluated Late Model Washers* at the time he submitted the expert report upon which

[1] Plaintiffs' opposition to decertification will be fewer than 20 pages; this motion should not result in significant additional briefing.

Judge Gwin certified the Class. (Dkt. 93-9 (11/16/09 Wilson Rep.) at 10.) And it never made sense *legally*: it is hornbook law that "[a]fter certifying a class, the court retains broad power to modify the definition of the class" and the "class definition may be modified . . . even [after] developments at trial." 32B Am. Jur. 2d *Federal Courts* § 1601 (2014).

This issue only arises now because four years have passed since class certification due to Whirlpool's multiple appeals. But the record is clear. Plaintiffs never claimed the Late Model Washers belonged in the Class; indeed, Plaintiffs' evidence submitted on class certification expressly *did not include* Late Model Washers. (*E.g.*, Dkt. 93-9 (11/16/09 Wilson Rep.) at 10 (explaining that Dr. Wilson's opinion applied to the 2002-2008 Duets, and that he had "not . . . evaluated" the changes in the later model washing machines); Dkt. 93-8 (8/19/09 Hardaway Decl.) at ¶¶ 6, 9 (sworn declaration from Whirlpool that pre-2009 washers within each platform were "nearly identical" from an engineering standpoint).) Plaintiffs informed Whirlpool of their intent to clarify this issue years ago based on their similar motion in the Sears case; Whirlpool, at minimum, agreed it made sense to await finality of the appeals before doing so. And Plaintiffs offered to pay for notice.

Having demanded a trial against the entire Class, Whirlpool now argues that the existence of Late Model Washers somehow simultaneously mandates decertification of, and summary judgment against, the entire Class, including owners of the Late Model Washers. But the factual reality is plain, and the parties are in 100% agreement on this point, at least: the Late Model Washers *are* different from the washers owned by Plaintiffs and the rest of the Class. Whirlpool cannot have it both ways. Either Late Model Washers must be included in a *trial* of this matter (which makes no sense factually or legally), or the Late

Model Washers should not be part of the Class at all (which does make sense factually and legally).

Plaintiffs thus respectfully renew their motion to modify the Class definition to ensure that the Court need not consider decertification or summary judgment with respect to the Late Model Washers that all parties agree are materially different from the washers owned by Plaintiffs and the rest of the Class. Such an order is both well within the Court's discretion and prudent given the pending motions and imminent trial. *See* Fed. R. Civ. P. 1.

**LEGAL STANDARD**

Under the Federal Rules, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Supreme Court has made clear that "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Accordingly, "[a]fter certifying a class, the court retains broad power to modify the definition of the class" and the "class definition may be modified . . . even [after] developments at trial." 32B Am. Jur. 2d *Federal Courts* § 1601 (2014); *see also Chapman v. Wagener Equities*, No. 09 C 07299, 2012 U.S. Dist. LEXIS 176857, at *14-15 (N.D. Ill. Dec. 13, 2012) (noting "fact that '[l]itigants and judges regularly modify class definitions' after certification.") (quoting *Schorsch v. Hewlett-Packard Co.,* 417 F.3d 748, 750 (7th Cir. 2005)); *Ammons v. La Z-Boy Inc.*, No. 1:04-CV-67, 2009 U.S. Dist. LEXIS 96963, at *14 (D. Utah Oct. 20, 2009) ("[C]hanges in proposed class definitions are commonplace . . . .").

The Court may modify the class definition *whenever* developments in the litigation so require. Fed. R. Civ. P. 23(c)(1) advisory committee's note (1966). *Cf. Garcia v. Tyson Foods, Inc.,* 890 F. Supp. 2d 1273, 1297 (D. Kan. 2012) ("[Defendants have cited no] case in

which a trial court was held to have abused its discretion by reducing the size of a class prior to a decision on the merits where all members of the recertified class were also members of the original class." (quoting *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1148 (11th Cir. 1983))).[2] It is even appropriate for a court to limit the class definition *sua sponte* when necessary to preserve class certification. *See Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007); *Barney v. Holzer Clinic, Ltd*., 110 F.3d 1207, 1214 (6th Cir. 1997).

**ARGUMENT**

To Plaintiffs' knowledge, no district court has ever prevented a class plaintiff from *narrowing* a class definition after certification. Such a novel finding would be particularly unwarranted here, where there have been both new market developments and newly discovered evidence. Plaintiffs respectfully submit that this Court should not be the first. The current definition does not include a temporal element, which is not appropriate given that Whirlpool implemented material design changes and, ultimately, a successful fix to the front-loading washers in the midst of litigation and class certification briefing. *See* Ex. 1 (Timeline of Relevant Events). With trial approaching, the Court should expressly limit the Class to the washers that share the same allegedly defective design. *See* Federal Judicial Center, *Manual for Complex Litigation* § 21.222 (4th ed. 2004) ("[A class] definition must be

[2] At oral argument on Plaintiffs' initial motion to modify the class definition, Whirlpool argued that this Court should adopt a "good cause" requirement prior to narrowing the class definition. While it is true that Judge Algenon Marbley articulated such a requirement eleven years ago in *Foster v. D.B.S. Collection Agency*, 2003 U.S. Dist. LEXIS 25459 (S.D. Ohio Dec. 16, 2003), Plaintiffs respectfully note: 1) they are aware of no other court to articulate such a requirement to *narrow* an already certified class definition; 2) there is no secondary authority applying such a requirement to such a motion; 3) the "good cause" justification articulated in *Foster* involved shaping discovery, which has closed in this case; 4) such a requirement would be adverse to the Sixth Circuit's decisions narrowing class definition *sua sponte* in order to preserve class certification; and 5) if such a "good cause" requirement were to exist, it is clear that Plaintiffs would meet it, as explained in Section I.D, *infra* (Pages 8-9).

precise, objective, and presently ascertainable. . . . The relevant time should be included in the class definition.”).

## I. The Certified Class Did Not Include the Late Model Washers.

The record evidence and procedural history of class certification conclusively establish that the Class did not include Late Model Washers, most of which did not even yet exist, and which Dr. Wilson expressly had not yet evaluated at the time of certification.

### A. The 2010 Record Evidence Relating to Alpha and Other Late Model Washers.

On July 12, 2010, Judge Gwin certified a Class of “current” Ohio residents who had “purchased” a Duet washing machine. (Dkt. 141 at 8.) At that time, Whirlpool had only recently begun developing—and was not yet selling—washers built on the entirely new “Alpha” platform. (Dkt. 276-2 (1/23/13 Wilson Rep.) at 4.) These Alpha machines contain the full constellation of design changes to the Duets that Plaintiffs’ engineering expert Dr. Wilson has always said were necessary (and were available when Whirlpool first started manufacturing them). (*Id*. at 4, 10, 12; *see also* Dkt. 286 (Statement of Counsel) at 20:9-14 (conceding Whirlpool had effective design changes “in the can” for many years).) Once the Alpha washers went into production and Dr. Wilson had an opportunity to inspect them, he opined that Whirlpool’s changes “address many of the design defects I previously identified” which “should have been implemented in the original design.” (Dkt. 276-2 (1/23/13 Wilson Rep.) at 4, 12.) No Plaintiff owns an Alpha model, and none of their machines include the design changes implemented in Alpha. (Dkt. 324-1 (4/26/13 Wilson Rep.) at 16 (“All of the Plaintiff washers that I inspected were of the vintage that . . . do not share the important ALPHA washer design change[s.]”).)

Prior to introducing the new Alpha platform, Whirlpool implemented one or both of two material design changes ("steam" and a "smooth-back tub") in *some* of the Access, Horizon, and Sierra models. *See* Ex. 1. Whirlpool did so for Sierra starting in 2007, and for Access and Horizon starting in 2009. In the report he submitted for purposes of class certification, Dr. Wilson expressly stated that he had *not* evaluated these changes to determine whether they were material. (*See* Dkt. 93-9 (11/16/09 Wilson Rep.) at 10.) That is why Dr. Wilson's report, entitled "the evaluation of the front loading (horizontal axis) automatic washers, *Access and Horizon*, manufactured and sold by Whirlpool," considered only washers manufactured between 2002 and 2008. (Dkt. 93-9 (11/16/09 Wilson Rep.) at 4 (emphasis added).) In other words, Dr. Wilson did not purport to opine on whether the Late Model Washers were materially the same as the earlier ones, or whether they were defective.

It was only after Judge Gwin ordered (and the Sixth Circuit twice upheld) class certification that Dr. Wilson finally had an opportunity to fully evaluate Late Model Washers. He did so, and concluded that the addition of steam and the switch to a smooth-back tub were material changes to the design of the Duets—and that the new Alpha model finally "got it right." (*See generally* Dkt. 309-11 (1/23/13 Wilson Rep.) at 7-8.)[3] Accordingly, Plaintiffs *agree* with Whirlpool that the Late Model Washers are *not* substantially identical to Plaintiffs' washers or the washers owned by the rest of the Class.

**B. <u>The Class Certification Motion Did Not Encompass Purchasers of Late Model Washers.</u>**

In moving for class certification, Plaintiffs clearly did not intend for the Class to include the Alpha platform machines that had yet to be sold, much less evaluated by their

[3] Contrary to Whirlpool's suggestion, Dr. Wilson's opinions regarding the earlier washers are not undermined because he opines that when Whirlpool made the very changes he opined were necessary, those changes worked.

experts. Unsurprisingly, neither the term "Alpha" nor the words "future purchasers" appeared anywhere in Plaintiffs' class certification papers. And at oral argument, Plaintiffs' counsel expressly requested that Judge Gwin select an end date for the Class period, whether "the date of the order your Honor enters . . . [or] a date earlier than that," which would have excluded *all* Alpha platform machines. (Dkt. 134 at 10:12-11:10.) In short, most of the Late Model Washers were never part of the Class certified by Judge Gwin in July 2010.

Nor was this even possible: there would have been no basis on which the Court could have evaluated allegations or facts concerning washers not yet on the market, which Plaintiffs' experts had not evaluated or opined on, and which might be purchased at some date *after* the certification order. As such, Whirlpool overstates the import of Judge Gwin's footnote commenting that "[i]f class counsel's theory of the case fails to a jury, all class members' claims are *res judicata* . . . ." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., No. 08-wp-65000, 2010 U.S. Dist. LEXIS 69254, at *11 n.3 (N.D. Ohio July 12, 2010). At most, Judge Gwin's point about final judgment necessarily applied only to the washers that Plaintiffs claim are substantially identical and actually defective, not the later-manufactured machines that are materially different.

**C. <u>The "Sierra" Washers.</u>**

In their initial motion to modify the Class definition, Plaintiffs referred only to modifying the class definition to exclude Duet washers manufactured after 2008. This was so because, apart from one paragraph of a conclusory declaration submitted in opposition to class certification (Dkt. 103-5 ¶ 35(g)), Whirlpool had consistently testified that the Sierra washers made in Mexico were *no different* from the Access washers made in Germany. *See* Ex. 3 (9/17/13 Hardaway Dep.) at 350:4-12 (testifying that "Sierra, Access, Duet are all essentially the same, just where they're made [differs]."). Indeed, Whirlpool submitted a

sworn declaration at the outset of this litigation explaining that there were only *two* relevant types of washers—"Access" and "Horizon"—and that Sierra was simply another name for Access washers that happened to be made in Mexico. (*See* Dkt. 93-8 (8/19/08 Hardaway Decl.) at ¶ 5 n.1 ("The Access, Matador, and Sierra names are often used interchangeably.").)

The Sierra models, however, are *not* exactly the same as the washers that were being made in Germany. (*Contra id*.) Rather, they "have always utilized a smooth-tub design without any cavities or depressions" and "always have used a smooth-contoured crosspiece design without pockets." (Dkt. 327-46 ¶¶ 7(c), 8(c); *see also* Dkt. 103-4 ¶ 35(g).) These are the precise changes that Dr. Wilson explained he did *not* evaluate in 2009. (Dkt. 93-9 (11/16/09 Wilson Rep.) at 10 ("Newer models of the ACCESS and HORIZON have some design modifications, such as the ribs and cavities in the access tub which had been moved to the back side of the tub out of contact with the wash water. . . . The effectiveness of these changes have not been evaluated."). These changes generally resulted from the fact that Whirlpool introduced new production facilities in Mexico that incorporated the smooth-back tub before it retooled its main facilities in Germany to do the same in 2009.

**D. <u>Why This Motion Was Not Brought in 2010 or 2011.</u>**

Plaintiffs respectfully note that this motion was not brought in 2010 or 2011 for three primary reasons.

First, Whirlpool filed seriatim appeals challenging class certification, during the pendency of which it introduced an entirely new platform, the Alpha, and as a result of which discovery and final expert analysis was not completed until this year.

Second, as discussed in Plaintiffs' original motion, and as Whirlpool's counsel conceded at the hearing on it, Whirlpool was aware of Plaintiffs' intent to move to modify

the Class definition, yet agreed that it made sense procedurally to await finality of the then-pending appeals. (Dkt. 277 at 7; Dkt. 277-1 (3/24/14 Selbin Decl.) at ¶¶ 5-8; Dkt. 286 at 34.)

Third, with respect to the Sierra washers, Whirlpool repeatedly insisted that they were no different from the Access models manufactured in Germany (setting aside a single conclusory declaration that conflicted with all of Whirlpool's previous testimony). Only now has it finally clarified that Sierra incorporated the Late Model Washer changes in 2007.

## II. A Defendant Cannot Escape Liability or Class Certification Simply by Selling a Non-Defective Product Under the Same Brand Name as a Defective One.

In opposition to Plaintiffs' original motion for modification, Whirlpool argued that it had a right to seek a verdict "that clears our Duet trade name." (Dkt. 286 at 16.) This is clever, but wrong. Whirlpool started to sell *different* washing machines under the same Duet name after this case was filed (most of them after the Class was certified). *Cf.* Ex. 4 (12/6/13 Miller Dep.) at 82:15-83:16 (explaining that Access was taken out of production after Alpha was introduced). A defendant cannot escape all liability for its past misconduct by changing its behavior going forward.

Which is why courts routinely grant Plaintiffs' requests to narrow a previously certified class period. *See, e.g.*, *In re Sumitomo Copper Litig.*, 262 F.3d 134, 141 (2d Cir. 2001) (affirming class certification where district court granted plaintiffs' request to narrow the class period); *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 949 (S.D.N.Y. 2013) (deeming it "necessary to set a clear end-date to the class period"); *Cervantez v. Celestica Corp.*, No. EDCV 07-729, 2010 U.S. Dist. LEXIS 78342, at *4 n.1 (C.D. Cal. July 6, 2010) (modifying the class period end date); *cf., e.g.*, *Richardson v. L'Oréal USA, Inc.*, No. 13-508, 2013 U.S. Dist. LEXIS 158599, at *24 (D.D.C. Nov. 6, 2013) (finding that "plaintiffs could not have defined the class to include future purchasers").

A class definition should be altered or amended where subsequent developments in the litigation and "fuller development of the facts" cause "the original determination [to] *appear*[] unsound." Fed. R. Civ. P. 23(c)(1) advisory committee's note (1966) (emphasis added). While the original Class definition here was sound based on the information in evidence at that time, Whirlpool's post-certification sale of materially different Duets make the definition effectively overbroad, a fact both parties agree on. Accordingly, modifying the Class definition as Plaintiffs propose is the optimal solution.

## III. There Is No Prejudice to Whirlpool, Yet Serious Due Process Issues Would Arise if Late Model Washers Are Not Excluded.

At the hearing on Plaintiffs' original motion, Whirlpool argued that it would be "unfairly prejudice[d]" by modification of the Class definition. (Dkt. 286 at 15.) Whirlpool has now mooted that argument by moving for summary judgment based on the inclusion of the very group Plaintiffs seek to exclude from the Class (Dkt. 308), and for decertification based on material differences in the washers owned by Class members, including the changes made in the Late Model Washers (Dkt. 327).[4] In other words, whatever else the Court decides on summary judgment or decertification, *no one* thinks the Late Model Washers are properly part of the Class. By definition, then, there can be no prejudice to Whirlpool from excluding them.[5] Put another way, Plaintiffs are masters of their case and cannot be forced

[4] Plaintiffs will address the issue in opposition to decertification, but suffice it to say for now that the changes Whirlpool asserts as to earlier models were considered and rejected by Judge Gwin and the Sixth Circuit based on overwhelming and largely uncontroverted evidence.

[5] The hypothetical possibility of a future class action lawsuit based on the washers Plaintiffs seek to exclude cannot rise to the level of prejudice—there is no concrete loss or detriment, only speculation regarding a potential future suit by other parties. *See Garcia*, 890 F. Supp. 2d at 1297 ("The prejudice, if any, suffered by [defendant] as a result of the recertification of the plaintiff class was not severe enough to compel our interference with the trial court's duty to facilitate the fair and expeditious utilization of the class action mechanism." (quoting *Perryman*, 698 F.2d at 1148)).

to litigate claims they do not make about washers that are not materially the same as the ones they own.

In this regard, retaining the current Class definition would raise serious due process concerns for purposes of summary judgment, trial, and final judgment. No Class representative owns a Late Model Washer, which is to say no Class representative owns a washer that everyone agrees is materially different. (Dkt. 80 at ¶¶ 64-109.) As such, owners of Late Model Washers are not adequately represented in this litigation. Indeed, Plaintiffs never purported to represent this differently-situated group of owners, who have no party advocating for their rights. Consequently, any claims they may have against Whirlpool are separate from, and cannot properly be asserted, much less extinguished, in this action. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997) (reciting the "requirement that the named parties will fairly and adequately protect the interests of the class" and that "class representative must be part of the class and possess the same interest and suffer the same injury as the class members" (internal quotation marks omitted)); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002) ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." (citation omitted)).

Modifying the Class as Plaintiffs propose (and have consistently proposed) avoids this serious issue. Those consumers who are no longer part of the Class will receive notice (with Plaintiffs bearing the cost) that their claims will no longer be adjudicated here, and that they will not be bound by any verdict in this action. Their rights will be preserved, while the trial will rightly focus on the washers alleged to be defective.

## CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court grant their motion to modify the Class definition.

Dated: June 20, 2014

MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., L.P.A.

By: *_/s/ Robert T. Glickman_*
Robert T. Glickman

101 West Prospect Avenue, Suite 1800
Cleveland, OH 44115
(216) 696-1422

Jonathan D. Selbin
Jason L. Lichtman
Sudarsana Srinivasan
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500

Mark P. Chalos
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
(615) 313-9000

Richard M. Heimann
Jordan Elias
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
(415) 956-1000

Steven A. Schwartz
Alison G. Gushue
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
(610) 642-8500

James C. Shah
Nathan Zipperian
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State Street
Media, PA 19063
(610) 891-9880

Jonathan Shub
SEEGER WEISS, LLP
1515 Market Street
Philadelphia, PA 19102
(215) 564-2300

Richard J. Burke
COMPLEX LITIGATION GROUP, LLC
1010 Market Street, Suite 1340
St. Louis, MO 63101
(847) 433-4500

Brian Ruschel
925 Euclid Avenue, Suite 660
Cleveland, OH 44115
(216) 621-3370

Mark Schlachet
LAW OFFICE OF MARK SCHLACHET
3637 South Green Road, 2nd Floor
Beachwood, OH 44122

*Attorneys for Plaintiffs and the Certified Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2014, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

Jason L. Lichtman