**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **In re: WHIRLPOOL CORP. FRONT-LOADING WASHER PRODUCTS LIABILITY LITIGATION**<br><br>Gina Glazer v. Whirlpool Corporation | **1:08-wp-65000**<br>**1:08-wp-65001**<br><br>**MDL No. 2001**<br><br>**Class Action**<br><br>**Judge: Christopher A. Boyko**<br><br>**Special Master: David R. Cohen** |

# WHIRLPOOL CORPORATION'S OMNIBUS MOTION *IN LIMINE*

# TABLE OF CONTENTS


LEGAL STANDARD....................1

EVIDENCE TO BE EXCLUDED....................2

A. Whirlpool's Financial Condition, Size, Market Share, Net Worth, Executive or Employee Compensation, or Other Financial Information ....................2

B. Any Regulatory or Environmental Investigation or Claimed Violation....................4

C. Whirlpool's Profits on Washers or Affresh Sold....................5

D. Expert Testimony on Whirlpool's Knowledge, State of Mind, Motives, or Intent ....................7

E. Expert Testimony on Ethical or Legal Issues ....................8

F. Expert Testimony about Otherwise Inadmissible Documents....................10

G. Health Risks Associated with Mold, Mildew, Bacteria, or Biofilm Generally or With the Washers' Alleged Self-Cleaning Defect Specifically....................13

H. Any Safety Incidents Involving Front-Loading Washing Machines ....................15

I. Plaintiffs' Conversations with Others about Alleged Problems with the Washers....................18

J. Evidence Related to Plaintiffs' Consumer Fraud Claims ....................19

CONCLUSION.................... 21

# TABLE OF AUTHORITIES

**Cases**

*Air Land Forwarders, Inc. v. U.S.*,
172 F.3d 1338 (Fed. Cir. 1999) ........ 12

*Ali v. New York City Health & Hosps. Corp.*,
No. 11 Civ. 6393(PAC), 2013 WL 1245543 (S.D.N.Y Mar. 27, 2013) ........ 18

*Barrow v. Terminix Int'l Co.*,
3:07–cv–324, 2009 WL 3698477 (S.D. Ohio Nov. 3, 2009) ........ 20

*Bright v. Firestone Tire & Rubber Co.*,
756 F.2d 19 (6th Cir. 1984) ........ 4

*Briney v. Sears, Roebuck & Co.*,
782 F.2d 585 (6th Cir. 1986) ........ 20

*Burrows v. Gen. Motors Corp.*,
999 F.2d 539 (Table) (6th Cir. 1993) ........ 19

*Campos v. MTD Prods., Inc.*,
No. 2:07-CV-00029, 2009 WL 2252257 (M.D. Tenn. July 24, 2009) ........ 17

*City of Cleveland v. Peter Kiewit Sons' Co.*,
624 F.2d 749 (6th Cir. 1980) ........ 2, 3, 6

*Developers Three v. Nationwide Ins. Co.*,
582 N.E.2d 1130 (Ohio Ct. App. 1990) ........ 5

*Eng'g & Mfg. Servs. LLC v. Ashton*,
No. 1:07CV689, 2013 WL 1181440 (N.D. Ohio Mar. 21, 2013) ........ 9

*Ferrarelli v. Federated Fin. Corp. of Am.*,
253 F.R.D. 432 (S.D. Ohio 2008) ........ 3

*Fischer v. United Parcel Serv., Inc.*,
390 F. App'x 465 (6th Cir. 2010) ........ 15, 18

*Fletcher v. Vandyne*,
No. 2:07–CV–325, 2009 WL 3233715 (S.D. Ohio Oct. 2, 2009) ........ 20

*Gresh v. Waste Servs. of Am., Inc.*,
738 F. Supp. 2d 702 (E.D. Ky. 2010) ........ 6

*Hanlon v. Lane*,
648 N.E.2d 26 (Ohio Ct. App. 1994) ........ 20

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005) ........................................................................ 8

*Hrivnak v. NCO Portfolio Mgmt.*,
994 F. Supp. 2d 889 (N.D. Ohio 2014)...................................................................... 20

*In re Norplant Contraceptive Prods. Liab. Litig.*,
MDL 1038, 1997 WL 80526 (E.D. Tex. Feb. 19, 1997) .......................................................... 6

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp.2d 531 (S.D.N.Y 2004) ...................................................................... 8, 9

*In re Welding Fume Prods. Liab. Litig.*,
1:03-CV-17000, 2010 WL 7699456 (N.D. Ohio June 4, 2010) .................................. 6, 8, 9, 17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
684 F. Supp. 2d 942 (N.D. Ohio 2009)........................................................................ 6

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ............................................................................ 19, 20

*In re Yamaha Motor Corp. v. Rhino ATV Prods. Liab. Litig.*,
816 F. Supp. 2d 442 (W.D. Ky. 2011)....................................................................... 15

*Indiana Ins. Co. v. Gen. Elec. Co.*,
326 F. Supp. 2d 844 (N.D. Ohio 2004)........................................................................ 1

*Magical Farms, Inc. v. Land O'Lakes, Inc.*,
No. 1:03-cv-2054, 2007 WL 4727225 (N.D. Ohio Mar. 8, 2007)............................................. 2

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) ........................................................................... 7, 12

*Nair v. Columbus State Cmty. Coll.*,
No. 2:02-cv-595, 2008 WL 3822341 (S.D. Ohio Aug. 12, 2008) ..................................... 19, 20

*Newark Grp., Inc. v. Sauter*,
No. C2:01-CV-1247, 2004 WL 5623944 (S.D. Ohio March 26, 2004) .................................. 20

*Pryor v. Webber*,
263 N.E.2d 235 (Ohio 1970) ................................................................................. 5

*Targonski v. City of Oak Ridge*,
921 F. Supp. 2d 820 (E.D. Tenn. 2013)...................................................................... 14

*Temple v. Wean United, Inc.*,
364 N.E.2d 267 (Ohio 1977) ................................................................................ 20

*U.S. Gypsum Co. v. Lafarge N.Am. Inc.*,
670 F.Supp.2d 748 (N.D. Ill. 2009) .......... 12

*United States v. Mejia*,
545 F.3d 179 (2d Cir. 2008) .......... 12

**Statutes and Codes**

Ohio Rev. Code § 1345.02(A) .......... 20

**Rules**

Fed. R. Evid. 104(a) .......... 6

Fed. R. Evid. 104(c) .......... 6

Fed. R. Evid. 401 .......... passim

Fed. R. Evid. 402 .......... passim

Fed. R. Evid. 403 .......... passim

Fed. R. Evid. 411 .......... 3

Fed. R. Evid. 702 .......... 9

Fed. R. Evid. 702(a) .......... 9

Fed. R. Evid. 703 .......... 10

Fed. R. Evid. 801 .......... 18

Fed. R. Evid. 802 .......... 18

**Other Authorities**

29 Charles Alan Wright & Victor James Gold, *Fed. Prac. & Proc.: Evid.* (1997) .......... 10, 12

53 Ohio Jur. 2d § 270 .......... 3

Whirlpool moves for an order precluding Plaintiffs (including counsel and witnesses) from offering or eliciting evidence of, or making reference to or arguments about, the following facts or arguments at trial:

(A) Whirlpool's financial condition, size, market share, net worth, executive or employee compensation, or other financial information;

(B) any regulatory or environmental investigation or claimed violation;

(C) Whirlpool's profits on Washers or Affresh sold;

(D) expert testimony on Whirlpool's knowledge, state of mind, motives, or intent;

(E) expert testimony on ethical or legal issues;

(F) expert testimony on otherwise inadmissible documents;

(G) the health risks associated with mold, mildew, bacteria, or biofilm generally or with the Washers' alleged "self-cleaning" defect specifically;

(H) any safety incidents involving front-loading washing machines;

(I) Plaintiffs' conversations with others about alleged problems with the washers; and

(J) evidence related to Plaintiffs' consumer fraud claims.

These facts or arguments are not admissible evidence. Pursuant to the procedure agreed to by Special Master Cohen, Whirlpool files one motion addressing all of its *in limine* requests.

## LEGAL STANDARD

Motions *in limine* permit the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an "evenhanded and expeditious management of trial[]." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). The Court has the power to exclude evidence that is "clearly inadmissible on all potential grounds." *Id*.

Each of the categories of evidence described below is, unless otherwise stated, inadmissible under Rules 401, 402, and 403. Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. And the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

## EVIDENCE TO BE EXCLUDED

### A. Whirlpool's Financial Condition, Size, Market Share, Net Worth, Executive or Employee Compensation, or Other Financial Information

Whirlpool anticipates that Plaintiffs will comment on or seek to introduce evidence about Whirlpool's financial condition, size, market share, net worth, executive or employee compensation, or other financial information during trial. But Plaintiffs only seek recovery for economic loss relating to Whirlpool's alleged negligent design of the Washers, negligent failure to warn, and tortious breach of warranty.[1]

Courts, including the Sixth Circuit, repeatedly have ruled that evidence of a party's size, financial standing, or condition is inadmissible for purposes of determining either negligence or the amount of compensatory damages to be awarded. *See City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 757 (6th Cir. 1980) ("[E]vidence as to the poverty or wealth of a party to an action is inadmissible in a negligence action." (quotation and citation omitted)); *see, e.g.*, *Magical Farms, Inc. v. Land O'Lakes, Inc.*, No. 1:03-cv-2054, 2007 WL 4727225 (N.D. Ohio Mar. 8, 2007) (Boyko, J.) (granting, without opinion, motion *in limine* to exclude any reference

[1] During the July 21, 2014 telephone conference with Special Master Cohen, Plaintiffs confirmed that they are seeking only damages for economic loss, not disgorgement or punitive damages.

to the defendants' size or financial condition). Similarly, Rule 411 bars admission of any insurance coverage "to prove whether the person acted negligently." Fed. R. Evid. 411. Such evidence is irrelevant, unfairly prejudicial, and misleading. *See Cleveland*, 624 F.2d at 757 ("Appealing to the sympathy of jurors through references to financial disparity is improper.").

Because Plaintiffs have not pled or sought punitive damages, the punitive damage exception does not apply. *See Ferrarelli v. Federated Fin. Corp. of Am.*, 253 F.R.D. 432, 433 (S.D. Ohio 2008) (evidence of financial condition is relevant "where a plaintiff seeks to recover punitive damages" but is "irrelevant on liability"); 3d Am. Master Class Action Compl. ("Compl.") at 64-65, ECF No. 80; Suppl. Rule 26(a)(1)(A) Discl. of Trina Allison, ECF No. 308-26; Suppl. Rule 26(a)(1)(A) Discl. of Gina Glazer, ECF No. 349-4.

Moreover, even if Whirlpool's financial information were somehow relevant to any issue at trial, that information or evidence should be excluded under Rule 403 as unfairly prejudicial. *See Cleveland*, 624 F.2d at 757 (references to the defendant's size, status, and ability to pay judgment, despite the trial court's curative instructions, "were plainly 'not sufficient to remove the probability of prejudice'"). "In Ohio, 'a great number of cases . . . have condemned arguments of counsel contrasting the wealth and poverty or strength and weakness, of the opposing litigants, appealing to prejudice against a party to an action because it is a corporation.'" *Id*. (quoting 53 Ohio Jur. 2d § 270 at 185-186) (omission in original).

Accordingly, references to or evidence of Whirlpool's financial condition, size, market share, net worth, executive or employee compensation, insurance coverage, or other financial information about Whirlpool should be excluded under Rules 401, 402, 403, and 411.

**B. Any Regulatory or Environmental Investigation or Claimed Violation**

Whirlpool expects that Plaintiffs may refer to government agency investigations or other actions relating to Whirlpool. But here there is no claim that the Washers violate any federal or state regulation, and no part of Plaintiffs' claims depends on any such federal or state regulation.

For example, Whirlpool has a large manufacturing facility in Clyde, Ohio. Some plaintiffs' lawyers have filed suit, claiming that property formerly owned by Whirlpool has environmental contamination that allegedly caused a "cancer cluster." Whirlpool disputes the claims, but, regardless, evidence of such a dispute or claimed environmental violation has no relevance to Plaintiffs' claims in this case about their Washers. Any argument or evidence in this case about disputed environmental claims would be highly prejudicial to Whirlpool because it would be unfavorable "character" evidence.

Similarly, it would be irrelevant and prejudicial for the jury to hear argument or evidence regarding any governmental investigation into whether Whirlpool's appliances comply with federal or state regulations. For example, plaintiffs' lawyers have recently filed class-action lawsuits against Whirlpool and other appliance manufacturers over the extent to which various products comply with the Energy Star program, including some Whirlpool-manufactured top-loading washers not at issue here. Whirlpool has disputed those claims, which are irrelevant to this case. Plaintiffs have not claimed that the Washers violate any regulation, and the introduction of this type of evidence would be unfairly prejudicial. Even if such allegations were somehow deemed relevant, their probative value is substantially outweighed by the danger of unfair prejudice. *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984) (congressional report regarding safety of the defendant's product was properly excluded; the report did not prove product was defective or caused plaintiff's injuries).

Whirlpool requests that the Court exclude any references or evidence relating to any regulatory or environmental investigation into, or claimed violation by, Whirlpool's products, manufacturing processes, or other activities, as conducted, for example, by the U.S. Department of Energy, U.S. Environmental Protection Agency, or any other federal or state agency.

**C. Whirlpool's Profits on Washers or Affresh Sold**

Whirlpool anticipates that Plaintiffs will comment on or attempt to introduce evidence about Whirlpool's profits per Washer sold or the profits Whirlpool generated from the sale of Affresh Washer Cleaner,[2] a product that Whirlpool created in 2007 to clean laundry residues from all manufacturers' washing machines, of any make or model. Any such references to profits are improper because that evidence is irrelevant to Plaintiffs' tort claims for economic loss, unduly prejudicial to Whirlpool, and will confuse jurors about Plaintiffs' damages (if any). *See* Fed. R. Evid. 401, 402, 403. As shown above, evidence regarding a corporation's profits is inadmissible absent a claim for punitive damages, and Plaintiffs do not seek punitive damages here. (*See* Argument § A, *supra*.)

In an Ohio tort action, the proper measure of damages is not the alleged tortfeasor's gain, but the claimant's loss. *See Pryor v. Webber*, 263 N.E.2d 235, 238 (Ohio 1970) ("In a tort action the measure of damages is that which will compensate and make the plaintiff whole."); *Developers Three v. Nationwide Ins. Co.*, 582 N.E.2d 1130, 1136 (Ohio Ct. App. 1990) (the correct measure of damages is "the plaintiff's loss . . . that arises out of the tortious interference, not the defendant's gain"). Here, Plaintiffs bring three Ohio tort claims—negligent design,

[2] *See, e.g.*, Compl. ¶ 49, ECF No. 80 (discussing Whirlpool's profits on the Washers and Affresh); Pls.' Mot. for Summ. J. at 8, ECF No. 309 ("Whirlpool has never even attempted to explain why, if there is no design defect, it developed Affresh or marketed it to *all* Duet owners (to the tune of tens of millions of dollars in profit for itself)."); Pls.' Opp'n to Mot. to Decertify the Class at 4, ECF No. 352 ("Whirlpool not only sold a uniformly defective product but also found a way to profit from the defect."); Dep. Excerpts of Kathryn Nelson, May 9, 2013, at 126:7-9 (discussing profitability of Affresh), Ex. 1.

negligent failure to warn, and tortious breach of warranty—and assert they were damaged because they paid too much for their Washers (claiming $419 per Washer) or, alternatively, because they bought Affresh to clean their Washers (claiming $235 per Washer). Plaintiffs do not have a claim for unjust enrichment, nor have they asserted any theory that would support a damages claim based on disgorgement of profits. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 953 (N.D. Ohio 2009) (dismissing unjust enrichment claim); Compl. at 44, ECF. 80 (asserting claim for unjust enrichment "On Behalf of All Classes Except Ohio").

In short, reference to or evidence of Whirlpool's profits on the Washers or Affresh sold should be excluded because Plaintiffs have no claim for damages based on Whirlpool's profits and such evidence would serve only to confuse the jury and unfairly prejudice Whirlpool.[3] *See, e.g.*, *Cleveland*, 624 F.2d at 757 (evidence relating to the defendant's $7,000,000 contract was irrelevant and unfairly prejudicial); *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 717 (E.D. Ky. 2010) (excluding expert testimony regarding the defendant's profits where such analysis was irrelevant to the plaintiff's damages entitlement); *In re Norplant Contraceptive Prods. Liab. Litig.*, MDL 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997) (excluding evidence of profit margin on drug as "not relevant to any failure to warn issue").

---

[3] If the Court were not to exclude profits evidence *in limine*, Whirlpool requests, pursuant to Federal Rule of Evidence 104, that the Court conduct an in camera review of Plaintiffs' proposed evidence before that evidence is presented to the jury. Fed. R. Evid. 104(a), (c). Where a party's ability to lay a proper foundation is doubtful, it is within the Court's discretion to order *in limine* that the proper foundation be determined through an in camera review before presentation to the jury. *See In re Welding Fume Prods. Liab. Litig.*, 1:03-CV-17000, 2010 WL 7699456, at *125, n.492 (N.D. Ohio June 4, 2010) ("On certain occasions a motion *in limine* to exclude evidence has been denied with the caveat that a proper foundation be laid at trial. On those occasions, the Court has addressed the admissibility of the document at side bar before the document is shown or described to the jury, but after the offering party has proffered a foundation for its use."). Here, Plaintiffs have not identified any witness who can lay an adequate foundation for the presentation of evidence relating to Whirlpool's actual profits. Thus, an in camera review is appropriate to prevent unfair prejudice to Whirlpool.

### D. Expert Testimony on Whirlpool's Knowledge, State of Mind, Motives, or Intent

Whirlpool expects Plaintiffs to proffer expert testimony at trial regarding Whirlpool's "state of mind," including its "knowledge" of the alleged defect, its "beliefs" regarding the Washer design, and its "motives" for changing the Washer design and for developing Affresh. Opinions about a party's motives, knowledge, and state of mind are inherently unreliable and inadmissible. *See, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (affirming exclusion of expert testimony consisting of speculation as to motives and intentions of certain parties).

In particular, Plaintiffs' expert Gary Wilson readily offers his views on Whirlpool's alleged "state of mind," as follows:

- Dr. Wilson opines on Whirlpool's "motives" when he claims that "[c]ompanies such as Whirlpool do not develop products like Affresh unless they think there is a substantial market for it and neither do major companies like Proctor and Gamble." (Apr. 2013 Supp. Expert Rep. on Whirlpool Front-Loading Washers, Apr. 26, 2013 ("Apr. 2013 Wilson Rep."), at 14, ECF No. 327-3).

- Dr. Wilson cites isolated statements from Whirlpool documents generated in the 2006 time-frame to claim that "[c]learly in 2006 Whirlpool realized that it had violated a major fundamental by designing and allowing into production a tub with deep cavities in the back wall and a basket bracket that trapped deposits that could not be removed." (*Id.* at 13 (emphasis added).).

- Dr. Wilson testifies about Whirlpool's "beliefs," saying that because Whirlpool eventually designed the cavities out of the product, Whirlpool must have believed that this was a "major design flaw that results in extensive field problems." (*Id.* at 12.)

- Dr. Wilson also comments on the alleged percentage of Washer owners who complained about malodors from mold or mildew, even though he admits he was not retained to offer testimony on this topic. (Dep. Excerpts of R. Gary Wilson, May 22, 2013 ("Wilson Dep Excerpts."), at 296:20-24, Ex. 2.) His testimony on this topic is based entirely on an inaccurate sentence in a Whirlpool document referencing an alleged 35% "complaint rate" for odors in the Washers.[4] (Apr. 2013 Wilson Rep. at 11, ECF No. 327-3.) Dr.

---

[4] Whirlpool's witnesses have consistently testified that the rate of consumer mold and odor complaints to Whirlpool was less than one percent. (*E.g.*, Aff. Of Anthony Hardaway, August 19, 2008 at ¶¶ 33-34, *Gardner, et al. v. Whirlpool*, No. 08-CV-3555 (N.D. Ill. Aug. 22, 2008) (ECF No. 30-2), Ex. 3.) This

> Wilson links this figure to Whirlpool's alleged "motives" for modifying the Washer design, claiming that a company like Whirlpool would not have "assemble[d] a team, a big team of engineers and light up some big project" if the complaint rate had been low. (Wilson Dep. Excerpts at 290:12-14, Ex. 2; *see also* Apr. 2013 Wilson Rep. at 12, ECF No. 327-3 ("The fact that the 35% failure rate was **NOT** highlighted as an error in the follow-up documents and the magnitude of the project leads me to conclude that the organization indeed believed that a failure rate of 35% was correct."); *id*. ("It is my opinion that Whirlpool would have never communicated the 35% complaint rate if it was not sure that indeed this was the case.").

In effect, Plaintiffs are using Dr. Wilson's testimony to deliver a narrative commentary on Whirlpool's actions instead of mechanical engineering opinions about the various Washer designs at issue. This is an improper use of expert testimony. *See, e.g., Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) (expert's opinions regarding state of mind and motives of parties involved in transaction was speculative and inadmissible); *In re Rezulin Prods. Liab. Litig.,* 309 F. Supp.2d 531, 546 (S.D.N.Y 2004) (opinions regarding "intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise" and are inadmissible).

### E. Expert Testimony on Ethical or Legal Issues

Based on discovery, Whirlpool expects that Plaintiffs' experts may attempt to offer opinions on Whirlpool's alleged ethical and moral obligations. (*See, e.g.*, Wilson Dep. Excerpts at 331:14–334:9, Ex. 2 (describing Dr. Wilson's opinions about the actions Whirlpool should have taken at the point of sale as a matter of fairness and honesty).) Testimony about a party's ethical or moral obligations is not proper expert testimony—it is irrelevant, confusing to the jury, and prejudicial—and should be excluded. *See* Fed. R. Evid. 401, 402, 403; *see, e.g., Welding*

---

figure is also supported by *Consumer Reports*. (Wilson Dep. Excerpts at 306:20-25, Ex. 2.) The inaccurate 35% figure is from an internet survey of consumers who were asked if they had "an issue with odor in your washer." (Dep. Excerpts of Anthony Hardaway, August 1, 2013, at 160:24–161:19, Ex. 4.) The consumers surveyed owned various types and brands of appliances (including dishwashers), the majority of which were non-Whirlpool-brand, top-loading clothes washers not at issue in this case. (*Id.*) The reported odors included "burning smells" and "malodors just from detergents." (*Id.*)

*Fume*, 2010 WL 7699456, at *24 (excluding ethics opinions from all experts in Multi-District Litigation, including opinions from expert qualified in the field of business ethics).

As the court pointed out in *Welding Fume*, with respect to an expert who was qualified in the field of business, "the *ethical* standards . . . are different from the *legal* standards" that applied in the products liability case. *Id.* at *24. Because the "critical" question for a jury is "whether the defendant corporations did what the law *required* them to do, not whether, from a societal perspective, they did what an 'ethical corporation' *should have* done," expert opinion testimony about ethics is irrelevant and "tend[s] to misdirect the finder of fact." *Id.*; *see also* Fed. R. Evid. 403 (court may exclude relevant evidence if its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury). As in *Welding Fume*, the issues before this Court are legal, not ethical or moral.

Moreover, in this case, none of Plaintiffs' experts is qualified to testify on Whirlpool's ethical obligations because they have no knowledge, skill, experience, training, or education in the field of ethics and have not been identified as experts who will offer testimony on this issue. Therefore, any such testimony must be excluded. *See Rezulin*, 309 F. Supp. 2d at 546 (opinions regarding ethical standards based on an expert's personal views too speculative to be admissible). Pursuant to Rule 702 of the Federal Rules of Evidence, an expert should not be allowed to testify unless his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also* Fed. R. Evid. 702 (an expert must be qualified by "knowledge, skill, experience, training, or education"); *Eng'g & Mfg. Servs. LLC v. Ashton*, No. 1:07CV689, 2013 WL 1181440, at *3 (N.D. Ohio Mar. 21, 2013) (Boyko, J.). Plaintiffs have proffered no expert

qualified in the field of business ethics, and any opinion testimony from Plaintiffs' experts on that topic should be excluded.

Plaintiffs' experts should not be allowed to offer opinions as to Whirlpool's ethical or moral obligations. Such opinions are irrelevant, prejudicial, and would confuse the jury.

### F. Expert Testimony about Otherwise Inadmissible Documents

Whirlpool anticipates that Plaintiffs' experts will seek to testify regarding certain statements made in Whirlpool documents.[5] The Federal Rules of Evidence do not "authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury." 29 Charles Alan Wright & Victor James Gold, *Fed. Prac. & Proc.: Evid.* § 6273 at 312 (1997). Specifically, Rule 703—through two key provisions—precludes an expert from serving as a conduit for inadmissible information. First, the expert may rely on inadmissible information, so long as that information is the kind that "experts in the field" "reasonably rely on" when forming opinions. Second, even if the information is of the type relied on by experts in the field, it is still inadmissible unless "[its] probative value in helping the jury evaluate the opinion substantially outweighs [its] prejudicial effect." Fed. R. Evid. 703. In other words, although an expert may rely on certain types of inadmissible information in forming his opinions, his reliance does not thereby transform inadmissible information into admissible evidence.

With regard to Rule 703's requirement that an expert form an opinion based on "facts or data" that are of the type that experts in the field "reasonably rely on," Dr. Wilson himself (self-servingly) described the type of information experts in his field "reasonably rely upon": (1)

[5] Although the examples provided in this Motion are taken from Plaintiffs' engineering expert, Dr. Wilson, these are examples only, and Whirlpool seeks an order preventing all of Plaintiffs' experts from disclosing inadmissible information to the jury.

laboratory operation and teardown of new machines; (2) "inspections and evaluation (including teardowns) of washers that have been used in consumers' homes"; (3) photographs of contaminated machines; (4) visits to consumers' homes to inspect machines; and (5) "available manufacturing documents." (Jan. 2013 Supp. Expert Rep. on Whirlpool Front-Loading Washer, Jan. 23, 2013 ("Jan. 2013 Wilson Rep.") at 3, ECF No. 327-6.) Importantly, Dr. Wilson defines "manufacturing documents" as "engineering drawings." (Wilson Dep. Excerpts at 193:6-13, Ex. 2.) Dr. Wilson does not—and cannot—claim that he has any personal knowledge about documents created after he left Whirlpool's employment and has seen only in his role as a paid expert for Plaintiffs.

Despite defining "manufacturing documents" as "engineering drawings," Dr. Wilson almost exclusively discusses other types of documents that are not "engineering drawings" and that contain hearsay information taken out-of-context, such as informal emails and PowerPoints. By doing so, he violates Rule 703's requirement that he form his opinion based on "facts or data" that experts in his field "reasonably rely on." For instance, Dr. Wilson repeatedly relies on select phrases from a March 2006 PowerPoint presentation created by engineers at Whirlpool's affiliate in Germany concerning biofilm. (Apr. 2013 Wilson Supp. at 9, 15, ECF No. 327-3 (citing Ex. 45 to Dep. of Anthony Hardaway, Sept. 16, 2009, Ex. 5).) The PowerPoint is a compendium of hearsay statements from a variety of sources and contains the engineers' theories regarding biofilm and hypothetical designs for improved washers. (Dep. Excerpts of Anthony Hardaway, July 15, 2014, at 151:20–153:18, Ex. 6.) For instance, under the heading "Cleaning cycle introduced mid 2005," the author stated that "[t]his cycle does not address the root cause: odors caused by a combination of humidity and decaying organic material in the tub of the washing machine." (Ex. 5 at W0245725.)

Dr. Wilson relies on this sentence several times in his April 2013 report to support (1) his untested opinion that the Clean Washer cycle is ineffective in preventing or remediating the accumulation of biofilm, and (2) to criticize the washer testing conducted by Whirlpool's expert Dr. Paul Taylor, which showed the Clean Washer cycle is effective. (*See, e.g.*, Apr. 2013 Wilson Supp. at 9, 15, ECF No. 327-3.) As Whirlpool explained in its *Daubert* motion, Dr. Wilson has failed to apply his experience and a reliable methodology to support his opinion that the Clean Washer cycle is ineffective. His testimony about the PowerPoint's sentence is inadmissible because Dr. Wilson is simply repeating inadmissible hearsay. *See* 29 *Fed. Prac. & Proc.: Evidence* § 6273 at 312 (noting that usual rules of admissibility apply where an expert adds nothing to the out-of-court statements); *see also United States v. Mejia*, 545 F.3d 179, 198 (2d Cir. 2008) (expert must apply experience and reliable methodology to inadmissible information and may not simply repeat hearsay); *U.S. Gypsum Co. v. Lafarge N.Am. Inc.*, 670 F.Supp.2d 748 (N.D. Ill. 2009) (excluding part of the plaintiff expert's opinion because it was based only on the expert's speculative reading of the defendant's internal documents).

In other words, although Rule 703 allows experts "some leeway" in basing their opinions on hearsay evidence, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony," as Plaintiffs seek to do here. *Marvel* 726 F.3d at 136. Many Whirlpool documents at issue are hearsay and, in many cases, hearsay within hearsay.

To the extent Plaintiffs hope to authenticate Whirlpool's documents or show that they fall within an exception to the hearsay rule, they are required to make the showing outlined in Rules 901, 803, and 805, and that showing must be made through a knowledgeable witness. *See, e.g.*, *Air Land Forwarders, Inc. v. U.S.*, 172 F.3d 1338, 1342-44 (Fed. Cir. 1999) (discussing business

record exception to Rule 803 and noting that exception requires sponsoring witness to testify that Rule's requirements are met). Plaintiffs' testifying experts do not meet the criteria of a Rule 901 "witness with knowledge" or a Rule 803 "custodian or another qualified witness," and Plaintiffs may not use their testifying experts to authenticate Whirlpool's documents or make the necessary showing that they fall within any exception to the hearsay rule.

Accordingly, this Court should prohibit Plaintiffs' experts from improperly testifying about inadmissible information.

### G. Health Risks Associated with Mold, Mildew, Bacteria, or Biofilm Generally or With the Washers' Alleged Self-Cleaning Defect Specifically

This case is about whether the Washers have a design defect that causes the Washers to emit bad odors due to the buildup of excessive laundry residue (biofilm). It is not about any purported health effects caused by mold, mildew, bacteria, or biofilm inside any clothes washer. Plaintiffs have not brought any claim for any health problem allegedly caused by the growth of mold, mildew, bacteria, or biofilm inside the Washers. To the contrary, Plaintiffs admit that this case "does not involve an immediate safety risk." (Pls.' Mot. for Summ. J. at 20, ECF No. 309.) And they have repeatedly disclaimed any claim for personal injury or purported safety hazard:

- "Plaintiffs do not seek recovery for themselves or Class members for personal injuries." (Pls.' Summ. J. Reply at 4, n.3, ECF No. 350)

- "**This is not about personal injuries, wrongful death, or emotional distress.** The lawsuit claims that the Washers have a design defect that causes the machines to accumulate mold, resulting in unpleasant odors and ruined laundry." (*See* http://www.whirlpoolclass.com/faq.html#_1 (last visited September 5, 2014), Ex.7)

- "Q. Are you making any allegations in this case that the Duet Sport contains a safety defect or presents a safety hazard to consumers?
A. No." (Dep. Excerpts of Gina Glazer, June 17, 2009 ("Glazer Dep. Excerpts"), at 243:18-22, Ex. 8.)

- "Plaintiff is not seeking recovery for personal injury related in any way to the allegations in the First Amended Master Class Action Complaint . . . [and] will not seek recovery for

personal injury when [*Glazer v. Whirlpool Corp.*] is remanded for trial." (Stip. Concerning Personal Injury Claims, at ¶¶ 1-2, ECF No. 50.)

Despite the admitted non-safety, non-health-related nature of Plaintiffs' claims, they now state—in a footnote in their summary judgment reply brief—that "there is, in fact, ample and uncontroverted evidence that the mold in the [Washers] poses a health risk." (Pls.' Summ. J. Reply at 4 n.3, ECF No. 350.) But Plaintiffs fail to support that bald assertion with any evidence that mold, mildew, bacteria, or biofilm inside the Washers is dangerous or has caused anyone to suffer any health problem.[6] In fact, Plaintiffs have never identified or described a single health problem associated with the Washers, and their experts have not opined on any such risk. For instance, Plaintiffs' mold expert, Dr. Chin S. Yang, admitted that he had no "specific opinion" as to whether the Washers are dangerous to users and had no "evidence" to support his speculation that mold growth inside a clothes washer potentially could cause health problems. (Dep. Excerpts of Chin S. Yang, Feb. 23, 2010, at 68:12-69:7, Ex. 9.)

Because Plaintiffs do not assert any claim for personal injury and, instead, readily admit that this case does not involve a safety risk (Pls.' Mot. for Summ. J. at 20, ECF No. 309), any testimony or commentary suggesting that the Washers are dangerous is not probative of any fact of consequence in this case. *See* Fed. R. Evid. 401, 402. Thus, the Court should preclude Plaintiffs from discussing, or introducing evidence related to, any alleged health risk posed by biofilm inside clothes washers. *See, e.g.*, *Targonski v. City of Oak Ridge*, 921 F. Supp. 2d 820, 825 (E.D. Tenn. 2013) (excluding *in limine* evidence of the plaintiff's "good faith" dealings with EEOC as irrelevant to "her hostile work environment claim—the only claim that will be in front

---

[6] Plaintiffs' cited evidence merely shows that Whirlpool's engineers and laboratory technicians took certain safety precautions when disassembling and closely inspecting used clothes washers and dishwashers that might contain microbiological growth of unknown origin and types, not that any consumer actually has or will become sick because of any biofilm inside a used appliance.

of the jury"); *In re Yamaha Motor Corp. v. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 456 (W.D. Ky. 2011) (striking as irrelevant an expert's proposed testimony that the defendant violated its "duties under a law that is not at issue").

Plaintiffs' commentary on purported health risks also is inadmissible under Rule 403 because such commentary would confuse the jury as to what this case is really about—whether the Washers were designed in such a way as to lead to foul odors due to buildup of excessive laundry residues—and could mislead the jury into finding liability against Whirlpool on an improper basis. *See Fischer v. United Parcel Serv., Inc.*, 390 F. App'x 465, 470 (6th Cir. 2010) ("[U]nfair prejudice refers to evidence which tends to suggest a decision on an improper basis.") (internal quotation omitted). Plaintiffs have no proof that the Washers actually caused any health problem, yet persist in making statements that mold, mildew, bacteria, and biofilm inside Washers is hazardous and could lead the jury to seek to punish Whirlpool for theoretically exposing consumers to illness. The potential for unfair prejudice far outweighs any probative value of such evidence.

Accordingly, this Court should exclude any evidence or commentary referring to any health risks associated with mold, mildew, bacteria, or biofilm generally or with the Washers' alleged self-cleaning defect specifically.

### H. Any Safety Incidents Involving Front-Loading Washing Machines

Plaintiffs allege that leaving the Washer's door open between uses to dry out the machine, as Whirlpool instructed, "poses obvious safety risks to children and pets." (Compl. ¶ 40; *see also id*. ¶ 139, ECF No. 80 ("Whirlpool's suggestion to leave the washer door open (which does not solve the problem anyway), if tried, is a danger to children."); Pls.' Mot. for Summ. J. at 5, ECF No. 309 (Whirlpool's instruction to leave the Washer door open between uses is "a safety hazard for anyone with children or pets").) They also falsely allege in their

Complaint that "a young child recently drowned in a Kenmore front-loading washing machine manufactured by Whirlpool, causing the U.S. Consumer Product Safety Commission to open an investigation regarding safety standards for front loaders." (Compl. ¶ 40, ECF No. 80.) Whirlpool anticipates that Plaintiffs may attempt to reference the safety of Whirlpool's instruction to leave the Washer door open or introduce testimony regarding one or more incidents of child or pet entrapment in front-loading clothes washers. Any such reference or evidence is inadmissible under Rules 401, 402, and 403.

First, references to the alleged "safety hazard" of Whirlpool's user instruction or reports of entrapment incidents in other manufacturers' clothes washers are not probative of any fact at issue here. This case, by Plaintiffs' own admission, is about the Washers' aesthetic and cleaning performance, not about whether any child or pet became entrapped in a Washer. As shown above, Plaintiffs concede that their claims are not based on any alleged safety defect, and they disclaimed any claim for personal injury or health effects related to biofilm. (*See* Pls.' Mot. for Summ. J. at 20, ECF No. 309 ("this case does not involve an immediate safety risk"); Pls.' Summ. J. Reply at 4, n.3, ECF No. 350 ("Plaintiffs do not seek recovery for themselves or Class members for personal injuries."). Moreover, Plaintiffs have not identified any admissible evidence—because there is none—showing that any child or pet has been injured as a result of Whirlpool's user instruction to leave the Washer door slightly ajar between uses. (*See, e.g.*, Glazer Dep. Excerpts at 242:15-21 ("[Y]ou don't know any children or pets or have read about children or pets who have drowned or died in a Duet washing machine? A. No."), Ex. 8.) Nor do Plaintiffs have any personal knowledge of the child-drowning incident alleged in their Complaint. (Glazer Dep. Excerpts at 241:12–242:1, Ex. 8 ("What do you know about that incident, the Kenmore front-loader? A. Only what you just read."); Dep. Excerpts of Trina

Allison, June 10, 2009, at 74:25–76:2 ("I never heard of that."), Ex. 10. By Plaintiffs' own admissions, the purported "safety hazard" of Whirlpool's user instruction or alleged entrapment incident has no bearing on the liability questions that the jury will decide.

Second, Plaintiffs' allegation that a child died after becoming entrapped in a Kenmore-brand front-loading washer, even if there were evidence to support the allegation, is irrelevant and unduly prejudicial to Whirlpool. Contrary to Plaintiffs' false allegation, that reported incident did not involve a Whirlpool-manufactured machine; that machine was manufactured by Electrolux. (*Ishii v. Sears, Roebuck & Co.*, Compl., No. 810CV00832 (C.D. Cal.), July 16, 2010, ¶ 10 (alleging that the Kenmore front-loading washer was designed and manufactured by Frigidaire or Electrolux), Ex. 11.) An entrapment in a differently-designed, non-Whirlpool-manufactured clothes washer is irrelevant. *Cf. Campos v. MTD Prods., Inc.*, No. 2:07-CV-00029, 2009 WL 2252257, at *20-21 (M.D. Tenn. July 24, 2009) (in a product liability action involving an allegedly defective lawnmower, the court ruled that government reports of dissimilar accidents, which may not involve the same type of lawnmower and which included "graphic matter," was irrelevant and inadmissible).

Third, even if evidence relating to reported entrapment incidents or the safety of leaving the Washer door open between uses had some probative value (it does not), the Court should exclude that evidence because its probative value is substantially outweighed by the danger of unfair prejudice to Whirlpool, confusing the issues, and misleading the jury. Fed. R. Evid. 403. Permitting such references or evidence would impermissibly inject sympathy-based and emotional considerations into a trial about Plaintiffs' purported economic loss due to the Washers' alleged aesthetic and cleaning performance deficiencies. *See In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *96 (excluding testimony that had a "serious risk of

sympathy" and explaining that evidence is unfairly prejudice if it has "'an undue tendency to suggest a decision on an improper basis, commonly an . . . emotional one'"). These considerations might allow the jury to reach a liability verdict against Whirlpool on an improper basis by, for example, punishing Whirlpool for allegedly exposing children and pets to danger. *See Fischer*, 390 F. App'x at 470 ("unfair prejudice refers to evidence which tends to suggest a decision on an improper basis" (internal quotation omitted)). Under Rule 403, the Court should preclude Plaintiffs from referring to the alleged danger associated with Whirlpool's door instruction.

### I. Plaintiffs' Conversations with Others about Alleged Problems with the Washers

Plaintiffs may seek to offer testimony at trial about communications they had with other individuals regarding Whirlpool's alleged wrongdoing or the alleged Washer defects, problems, or safety hazards. For example, Trina Allison testified in her deposition that she believed 95 percent of Washer owners have mold problems because "so many people" have approached her at her country club and told her that they have experienced similar problems, "so [she] happen[s] to know there's a lot of people out there with this problem in the Powell and Dublin area." (Dep. Excerpts of Trina Allison, May 30, 2013, at 129:14-19, 131:8-20, Ex. 12.) Plaintiffs may seek to offer testimony like this—*i.e.*, statements made by others to them about alleged mold problems—to try to prove that the Washers are defective and that the alleged mold problems are widespread. Such testimony is inadmissible hearsay because it is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Fed. R. Evid. 801; *see also* Fed. R. Evid. 802 (hearsay is not admissible); *Ali v. New York City Health & Hosps. Corp.*, No. 11 Civ. 6393(PAC), 2013 WL 1245543, at *2-

3 (S.D.N.Y Mar. 27, 2013) (the plaintiff could not support wage and hour violations through hearsay testimony about statements made to plaintiff by others about the hours others worked).

The Court should enter an order *in limine* excluding testimony as to any conversation either Plaintiff had with another consumer regarding the alleged defect, mold problems, or Whirlpool's wrongdoing. *See, e.g., Burrows v. Gen. Motors Corp.*, 999 F.2d 539 (Table) (6th Cir. 1993) (affirming *in limine* exclusion of hearsay testimony); *Nair v. Columbus State Cmty. Coll.*, No. 2:02-cv-595, 2008 WL 3822341, at *4 (S.D. Ohio Aug. 12, 2008) (granting motion *in limine* to exclude hearsay testimony).

**J. Evidence Related to Plaintiffs' Consumer Fraud Claims**

Only three claims are certified for class treatment in this case: negligent design, negligent failure to warn, and tortious breach of warranty. Whirlpool, however, expects that Plaintiffs' experts may attempt to offer evidence related to Plaintiffs' individual claims under the Ohio Consumer Sales Practices Act ("OCSPA"). These individual claims have not been certified for class treatment and are not relevant to the liability issues in this class action. Moreover, Whirlpool has moved for summary judgment on Plaintiffs' OCSPA claims, and Plaintiffs have not responded to this part of Whirlpool's motion, thus conceding that their OCSPA claims are invalid and time-barred.

Under Rules 402 and 403 of the Federal Rules of Evidence, evidence related to Plaintiffs' consumer fraud claims under the OCSPA is not admissible because these claims were not certified for this class action and are irrelevant to the liability issues that remain. The tort claims in this case have different elements from the OCSPA claims and, thus, are legally unrelated.

Specifically, to prove liability for negligent design, Plaintiffs must show: "(1) a duty to design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury proximately caused by the breach." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,

722 F.3d 838, 853 (6th Cir. 2013) (citing *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir. 1986)). To make a successful claim for negligent failure to warn, Plaintiffs must prove that: (1) the manufacturer had a duty to warn; (2) the duty was breached; and (3) the plaintiff's injury proximately resulted from that breach. *Id*. at 853 (citing *Hanlon v. Lane*, 648 N.E.2d 26, 28 (Ohio Ct. App. 1994)). And to prove a warranty-in-tort claim, Plaintiffs must establish that: (1) a defect existed in a product manufactured and sold by Whirlpool; (2) the defect existed at the time the product left Whirlpool's possession; and (3) the defect directly and proximately caused Plaintiffs' injuries. *Id*. at 853 (citing *Temple v. Wean United, Inc.*, 364 N.E.2d 267, 270 (Ohio 1977)).

In contrast, to succeed on an OCSPA claim, each Plaintiff must prove that Whirlpool was (1) a "supplier"; (2) that it committed "unfair or deceptive acts"; and (3) that the acts occurred in a "consumer transaction." Ohio Rev. Code § 1345.02(A); *Hrivnak v. NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889, 901 (N.D. Ohio 2014). None of the OCSPA liability elements is the same as, or overlaps with, the elements of the three certified tort claims.

Courts routinely exclude evidence related to claims that are not in the lawsuit, and this Court should do so here. *See, e.g.*, *Fletcher v. Vandyne*, No. 2:07–CV–325, 2009 WL 3233715, at *3 (S.D. Ohio Oct. 2, 2009) (granting motion *in limine* to exclude references to asphyxiation and groin injuries, based on Rules 402 and 403 because court had previously dismissed some of the claims and others had not been plead); *Barrow v. Terminix Int'l Co.*, 3:07–cv–324, 2009 WL 3698477, at *5 (S.D. Ohio Nov. 3, 2009) (granting motion *in limine* to exclude evidence related only to public policy claim related to fraud that had been dismissed as long as not relevant to other claims and not unduly prejudicial); *Nair*, 2008 WL 3822341, at *12 (granting motion *in limine* to exclude evidence related to plaintiff's dismissed retaliation claim); *Newark*

*Grp., Inc. v. Sauter*, No. C2:01-CV-1247, 2004 WL 5623944, at *6 (S.D. Ohio March 26, 2004) (excluding expert opinions on damages relating to dismissed unfair competition and the Deceptive Trade Act as irrelevant).

In addition, the Court should exclude all evidence related to Plaintiffs' individual OCSPA claims under Rule 403 because this evidence would confuse the jury as to the issues to be determined and would unduly prejudice Whirlpool. None of the issues certified in this class action shares any elements with Plaintiffs' individual OCSPA claims. Importantly, the OCSPA claims require proving that Whirlpool committed a "deceptive act," which is a form of fraud that is not found in the certified claims. Injecting fraud and deception into the certified claims would confuse the jury as to what they must find and Whirlpool would be unduly prejudiced.

## CONCLUSION

For all these reasons, Whirlpool requests that the Court enter an order precluding Plaintiffs, Class Counsel, and Plaintiffs' experts from offering or eliciting evidence of, or making reference to or arguments about, the foregoing "facts" at trial.

Dated: September 5, 2014

Respectfully submitted,

s/ Michael T. Williams
Michael T. Williams
Galen D. Bellamy
Joel S. Neckers
Theresa R. Wardon
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: (303) 244-1800
Facsimile: (303) 244-1879
Email: williams@wtotrial.com
bellamy@wtotrial.com
neckers@wtotrial.com
wardon@wtotrial.com

and

James T. Irvin, III
Nelson Mullins Riley & Scarborough, LLP
1320 Main Street, Suite 1700
Columbia, South Carolina 29201
Telephone: (803) 255-9450
Facsimile: (803) 255-9057
Email: jim.irvin@nelsonmullins.com

Robert H. Brunson
Nelson Mullins Riley & Scarborough, LLP
151 Meeting Street, Sixth Floor
Charleston, South Carolina 29401-2239
Telephone: (843) 534-4226
Facsimile: (843) 722-8700
Email: robert.brunson@nelsonmullins.com

and

F. Daniel Balmert (0013809)
Anthony J. O'Malley (0017506)
Vorys, Sater, Seymour and Pease LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114-1724
Telephone: (216) 479-6159
Facsimile: (216) 937-3735
Email: fdbalmert@vorys.com
ajomalley@vorys.com

and

Philip S. Beck (147168)
Rebecca Weinstein Bacon (6257492)
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
Email: philip.beck@bartlit-beck.com
rweinstein.bacon@bartlit-beck.com

Eric R. Olson
Alison G. Wheeler
Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
Telephone: (303) 592-3186
Facsimile: (303) 592-3140
Email: eric.olson@bartlit-beck.com
alison.wheeler@bartlit-beck.com

Attorneys for Defendant Whirlpool Corporation

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on September 5, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

s/ Michael T. Williams
One of the Attorneys for Defendant
Whirlpool Corporation

4813-7627-3182, v. 3