## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

IN RE: WHIRLPOOL CORP.
FRONT-LOADING WASHER PRODUCTS
LIABILITY LITIGATION

Case No. 08-wp-65000

Judge:  Christopher A. Boyko

Magistrate Judge:  William H. Baughman, Jr.

Special Master:  David R. Cohen

## CONSOLIDATED FOURTH AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Trina Allison, Bonnie Beierschmitt, John Bettua, Sylvia Bicknell, Paula Call, Tracy Cloer, Mara Cohen, Kathryn Cope, Giuseppina P. Donia, Laurie Fletcher, Karen Freeman, Pramila Gardner, Gina Glazer, Jeff Glennon, Susan Hirsch, Karen Hollander, Derral Howard, Heidi Klein, Peggy Lemley, Twilla Martin, Denise Miller, Charles Napoli, Rebecca Nordan, Maggie O'Brien, Vic Pfefer, Jeffrey Robinson, Sandra Robinson, Sonja Sandholm-Pound, Shannon Schaeffer, Susan Scott, Donna Seeherman, Tracie Snyder, Andrea Strong, Phil Torf, Carlos Vecino, Jennifer Wainwright, and Jane Werman (collectively "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Complaint, aver as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      Plaintiffs bring this class action individually and on behalf of the Classes defined herein (the "Classes" or collectively, the "Class"), against Defendants, Sears, Roebuck and Co. ("Sears") and Whirlpool Corporation ("Whirlpool"), to obtain, inter alia, damages and injunctive

relief for the proposed Classes, as defined below.  Sears and Whirlpool will be collectively referred to herein as "Defendants."

2.      As alleged and explained more fully below, this action is brought to remedy violations of applicable law in connection with Defendants' marketing, advertising, selling, warranting and servicing of certain Whirlpool Duet, Duet HT, and Duet Sport Front-Loading Automatic Washers and Sears Kenmore HE2, HE2t, HE3, HE3t, HE4t, HE5t and other Front-Loading Automatic Washers (the "Washing Machines" or "Machines")[1], certain of which are marketed and sold as part of Defendant Sears' Kenmore Elite line of appliances.  The Washing Machines contain a serious design defect that prevents adequate water drainage and causes them to (a) accumulate mold and mildew within the Washing Machines; (b) produce a moldy odor that permeates consumers' homes if the doors to the Washing Machines are left open; (c) produce a mold or mildew odor on clothes washed in the Machines; (d) fail to clean the Machines and remove moisture, residue, growth and/or bacteria that lead to the formation of mold, mildew and/or associated foul odors; and (e) be unusable in the manner, to the extent to, and for the purpose for which the Washing Machines were advertised, marketed, and sold.  The problems caused by the design defects are collectively referred to herein as "mold, mildew and/or foul odor problems" and/or "Mold Problems."

3.      As a result of Defendants' false and misleading statements and concealment or material facts, as well as Defendants' other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of Washing Machines and have suffered—and continue to suffer—injury as a result of the defective nature of these Machines and as a result of Defendants' misconduct.

---

[1] A full list of the at-issue Washing Machines is attached as Exhibit 2 to the Settlement Agreement that is being filed contemporaneously with this Complaint.

4.      Plaintiffs assert claims for violation of the Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) with respect to the written and implied warranties, violation of California's Song-Beverly Consumer Warranty Act (Civil Code § 1790 *et seq.*), breach of implied warranty of merchantability, as well as claims for breach of express warranty under various states' laws.

5.      Plaintiffs seek actual and/or compensatory damages, as well as equitable relief, including the replacement and/or recall of the defective Washing Machines and/or repair and maintenance costs attributable to the defects, and costs and expenses of litigation, including attorneys' fees, to the extent permitted by applicable law, and all additional and further relief that may be available.

## THE PARTIES

### A.      Named Plaintiffs

6.      Plaintiff, Trina Allison ("Allison), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Ohio.  Allison purchased a Duet HT Model Number GHW9300PW0, Serial Number CSS2205215 in Oct. 2005 from hhgregg in Ohio for over $1,000 along with a 5 year extended warranty for $84.99.  After a few months of use, her towels started smelling like mold or mildew.  Allison called Whirlpool to complain in or about February 2006. A technician looked at the washer, who said the machine was clean.  The technician recommended that Plaintiff Allison run Affresh tablets through the machine every few weeks and keep the door open when the machine is not in use.  Allison also has noticed black mold in the rubber door seal, which she tried to clean with Clorox bleach.  Allison has tried those solutions but the Mold Problems persist.

7.      Plaintiff, Bonnie Beierschmitt ("Beierschmitt"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New Jersey.  Beierschmitt bought a Duet Washing Machine Model Number GHW9150PW0, Serial Number CSR3515283 in New

Jersey, on or about January 4, 2005 and took delivery of the Washing Machine shortly thereafter. She paid about $990 (plus an extended four year warranty). About one month after the delivery, Beierschmitt began to experience Mold Problems that affected items washed in the Washing Machine. She followed Whirlpool's recommendations, provided in a video tape which accompanied her Washing Machine, to leave the front door and the soap drawer open to eliminate the foul odor. Whirlpool's own recommendations failed to correct the problem.

8.      Plaintiff, John Bettua ("Bettua"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Florida. Bettua purchased an HE3t Washing Machine on or about June 20, 2006, and took delivery of the Machine on or about June 22, 2006. Bettua paid approximately $599.88 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose. Bettua began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about June 2007. Bettua contacted Sears, on several occasions, concerning the problem with the mold, mildew and/or foul odors in the Machine. In response, Sears sent a repairperson who was unable to resolve the problems. The Sears technician advised Bettua that "this is an age old problem [with the Washing Machines] that will never be fixed." The Sears technician offered to replace the rubber seal in Bettua's Machine for a cost of approximately $400.00 (in addition to the $68.00 service call fee). Bettua declined, because the Sears technician said that replacing the rubber seal would not solve the mold and mildew problem. Specifically, the Sears technician indicated that he would "be back in six months (to replace it again), as they (front-loader Washing Machines) all do that." Bettua also contacted Sears' corporate office, but did not receive any assistance.

- 4 –

9.      Plaintiff, Sylvia Bicknell ("Bicknell"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Florida.  Bicknell bought a Duet Washing Machine Model Number GHW9400PW1, Serial Number CSS4619870 in Florida on or about January 19, 2006 and took delivery of the Washing Machine on or about January 26, 2006.  She paid about $1,200 (plus delivery charges and extended five year warranty).  Several months later Bicknell experienced Mold Problems that affected items washed in the Machine.  She contacted Whirlpool to correct the problem.  Whirlpool refused to cover the drainage or the mold and mildew problems, stating that the problem was not covered under the warranty because, allegedly, the Machine did not contain a defective component.

10.      Plaintiff, Paula Call ("Call"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of California.  Call purchased a new Whirlpool Duet Model Number GHW9150PW in November 2004 at Costco in Poway, California for $949.99.  At all relevant times Call used the Machine for household purposes and used HE detergent.  Within two months of purchase, Call started to experience Mold Problems when she washed her laundry.  Call called Whirlpool in February 2005 and shortly thereafter wrote to Whirlpool to complain about the Mold Problems she was experiencing.  In response, Whirlpool blamed her five kids' dirty clothing as the cause of the Mold Problems and suggested various purported "solutions," including the use of a cleaning solution and leaving the door open.  Call tried the suggestions made by Whirlpool's representatives, but none of the suggestions worked.  Call demanded a replacement machine.  Whirlpool refused to replace it or offer her any other relief.  As a result, Call stopped using her Whirlpool Duet, purchased a replacement washing machine, and has stored her Whirlpool Duet.

11.     Plaintiff, Tracy Cloer ("Cloer"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Georgia.  Cloer purchased a Washing Machine (Model Number GHW9400PL0, Serial Number CSS3030733) from Lowe's in Woodstock, Georgia on or about November 6, 2005 and took delivery of the Washing Machine that same day. Cloer paid approximately $1,287.00 (plus sales tax) for the Machine. Cloer purchased the Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent. She experienced Mold Problems in the Machine and on items washed in the Machine and contacted Whirlpool via email shortly thereafter.  Cloer has provided Whirlpool with sufficient pre-suit notice of the Mold Problems in her Machine.

12.     Plaintiff, Mara Cohen ("Cohen"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New York. Cohen purchased a new Duet Washing Machine Model Number GHW9150PW2, Serial Number CSS5014754 from Berger Appliance in Hawthorne, New York on or about February 16, 2006.  She paid approximately $959.00.  Shortly thereafter, a constant stench began to emanate from her washer.  Despite Cohen's compliance with all instructions and recommendations associated with her Machine, including using HE detergent, the stench has persisted to date.  Further, mold appeared on the inside of the front door and has persisted to the present.  Cohen complained to Whirlpool about the Mold Problems in or about January 2007.  In response, a Whirlpool repairman told Cohen, "You have to leave the door open.  We know there's a problem."  Cohen later received a letter from Whirlpool advising her to purchase Affresh tablets in order to address the ongoing Mold Problems.  Cohen purchased and used the Affresh tablets, but they have not alleviated the Mold Problems.

13.     Plaintiff, Kathryn Cope ("Cope"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Massachusetts. Cope purchased a Washing Machine (Model Number WFW8300SW00, Serial Number HLT3437191)) from Sears in Braintree, Massachusetts on or about September 20, 2006, and took delivery of the Machine shortly thereafter. Cope paid approximately $759.99 (plus delivery charges and sales tax) for the Machine. Cope purchased the Washing Machine for household purposes, and at all pertinent times used the Machine for its intended purpose with the use of the recommended high-efficiency ("HE") detergent. She has been experiencing Mold Problems in the Machine and on items washed in the Machine. Cope has provided Whirlpool with sufficient pre-suit notice of the Mold Problems and tried the retailer's various recommendations to fix the problems, without success.

14.     Plaintiff, Giuseppina P. Donia ("Donia"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Ohio.  Donia purchased an HE3 Washing Machine Model Number 110.42822200, Serial Number CSP3106138 on or about July, 23, 2003. Donia paid approximately $1,000.00 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.  Donia began to experience mold and mildew accumulation in the Washing Machine and to experience mold/mildew odor problems (both escaping from the Machine and affecting clothes and other items washed in the Machine) after only one and a half to two years of use of her Washing Machine.  Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine.

15.     Plaintiff, Laurie Fletcher ("Fletcher"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Michigan.  Fletcher purchased a Whirlpool Duet Washing Machine at ABC Warehouse in Kentwood, MI, on or about September 12, 2005.

Fletcher noticed in the fall of 2006 that her Washing Machine experienced Mold Problems that caused her clothes to have a musty, rotten smell. Fletcher attempted to address the Mold Problems in a number of ways. Fletcher ran empty hot cycles with bleach once a week. Although Fletcher eventually had to stop running the empty hot cycle with bleach herself as a result of a respiratory condition, other individuals in her household continued to run the empty hot cycle with bleach on a weekly basis, and continue to do so. Fletcher also used Affresh on a separate empty cycle at least once a week. In addition, Fletcher began cleaning the soap dispenser area approximately once a week after noticing what appeared to be black build-up. Fletcher also began cleaning the door seal once every couple of weeks.  Fletcher called the warranty consumer service number provided by ABC Warehouse and informed a representative the Washing Machine did not adequately drain. The representative contacted a service technician who later contacted Fletcher to schedule an inspection. The service technician visited Fletcher's home in the fall of 2007 to inspect the machine, and he informed Fletcher that the drainage and odor problems resulted from a clogged filter that needed to be cleaned. The technician located the filter, pulled it out, and showed it to Fletcher. The filter had a powerful foul odor and was covered with a slimy substance, debris, lint fabric, and other buildup. The technician drained and cleaned the filter, then informed Fletcher that the filter would need to be cleaned once every 6 to 8 weeks, and that such servicing would cost approximately $70 per visit.

16.     Plaintiff Karen Freeman ("Freeman") is, and at all times relevant and pertinent to this action has been, and a resident and citizen of Illinois.  Freeman purchased a Kenmore Elite HE3 Washing Machine, model 110.45862401, Serial Number CSS4212424 on or about December 7, 2005.  Freeman began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and

affecting clothing and other items washed in the machine) shortly after purchase.  Freeman

contacted Sears concerning the problem with the mold, mildew and odors.  Sears instructed her

to purchase Affresh and provided instructions on how to clean the machine to address the

problem.  Freeman followed these instructions, but the problem remained unresolved.

17.     Plaintiff, Pramila Gardner ("Gardner"), is, and at all times relevant and pertinent to

this action has been, a resident and citizen of Texas.  Gardner purchased a Duet Washing

Machine Model Number GHW9150PW0, Serial Number CSR3701615 from Best Buy Co. Inc.

in Pearland, Texas on or about December 27, 2004 and took delivery of the Washing Machine on

December 28, 2004.  She paid approximately $999.99 (plus delivery charges and pedestal).

Plaintiff Gardner began to experience Mold Problems that affected items washed in the Machine

in May of 2006.  Gardner promptly called Whirlpool to complain.  While waiting on hold for

about 20 minutes, she reviewed information about Mold Problems on Whirlpool's website

(www.whirlpool.com).  She followed the instructions on Whirlpool's website, but they did not

fix the Mold Problems.  Gardner tried keeping the door to the Machine open, only washing

clothing with hot or warm water, running bleach through the Machine, and cleaning the inside of

the Machine with Tilex® (a product advertised as a mold and mildew remover).   Nonetheless,

the Mold Problems persisted.

18.     Plaintiff, Gina Glazer ("Glazer"), is, and at all times relevant and pertinent to this

action has been, a resident and citizen of Ohio.  Glazer bought a new Duet Sport washing

machine Model Number WFW8300SW00, Serial Number HLT1690148 from a Best Buy store

in Ohio on or about April 14, 2006.  Within the first year of purchase, Glazer began to

experience Mold Problems in her Washing Machine.  Glazer complained to Whirlpool on

January 9, 2008 about the "terrible smell."  Whirlpool responded on January 10, 2008—

- 9 –

advancing numerous suggestions, which did not work in any material way.  On May 21, 2008, Glazer contacted Whirlpool again by email—explaining that its suggested remedies did not work.  Whirlpool responded on May 22, 2008 by email—suggesting that Glazer use Affresh and that she contact a service provider.  As a result of Whirlpool's unsatisfactory responses, Glazer subsequently called Whirlpool to complain about her persisting Mold Problems.  Whirlpool responded by stating that she was no longer covered by her warranty, that she should replace the rubber gasket on the inside of the Machine door (at her own expense), and that she should clean behind the rubber gasket after each load.

19.     Plaintiff, Jeff Glennon ("Glennon"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New York.  Glennon purchased a new Duet Washing Machine Model Number GHW9300PW4, Serial Number CST1215567 from PC Richard & Son in Greenvale, New York on or about August 16, 2006 and took delivery on or about August 22, 2006.  He paid $838.97.  Glennon began to experience Mold Problems within weeks of delivery of his Washing Machine.  Glennon contacted Whirlpool numerous times concerning the problem.  In response, Whirlpool representatives advised him to run his Washing Machine on a hot cycle with bleach and to wipe down the door and gasket.  He followed these recommendations but continued to experience Mold Problems.  Whirlpool sent numerous repair representatives to Glennon's home to remedy the Mold Problems.  Several of the Whirlpool representatives told him that the Mold Problems he was experiencing were widespread among Whirlpool's Washing Machines.  One of the Whirlpool representatives advised Glennon to run a cycle of bleach and use the clean washer cycle.  Glennon followed these recommendations but continued to experience the Mold Problems.  After ten service calls, Glennon eventually obtained a store exchange from PC Richard & Son.  On or about November 27, 2007, Glennon

- 10 –

had PC Richard & Son pickup his first Washing Machine and deliver a replacement Washing

Machine, Model Number WFW9200SQ02, Serial Number CSU2615516.  Within three months,

Glennon noticed that the second machine also developed the same Mold Problems.  He contacted

Whirlpool again about the problem.  Whirlpool advised Glennon to leave the door open, run hot

cycles from time to time, and run cycles with Affresh.  He followed these recommendations, but

has continued to experience Mold Problems.

   20. Plaintiff, Susan Hirsch ("Hirsch"), is, and at all times relevant and pertinent to this

action has been, a resident and citizen of New York.  In or about June 2008, Hirsch purchased a

Duet Front-Loading automatic washer. Within six weeks of the time of purchase, Hirsch noticed

the abovementioned defects associated with the product. Hirsch's machine generated a stench,

and bath mats and towels washed in the machine emitted a "mildew smell."  Hirsch followed all

instructions and recommendations, including leaving the washing machine door open when not

in use and purchasing special tablets to run through the machine. Her machine continues to

generate mildew, and Hirsch must smell each washed article of clothing or laundry before she

folds it.  Due to her dissatisfaction, Hirsch called the Whirlpool customer service number in

August 2008, and asked the Company to take back her Duet washing machine.  A Whirlpool

supervisor refused to take back the machine, claiming that the company had never had any

complaints about odors in the washers.

   21. Plaintiff, Karen P. Hollander ("Hollander"), is, and at all times relevant and

pertinent to this action has been, a resident and citizen of Florida.  Hollander purchased a Duet

Washing Machine Model Number GHW9400PT1, Serial Number CSS4808138 from

BrandsMart U.S.A. in Deerfield Beach, Florida on or about January 11, 2006 and took delivery

on January 16, 2006.  She paid about $1,100 (plus delivery charges and extended warranty).

Hollander began to experience Mold Problems several months after she bought the Machine despite using only HE detergent.  She called Whirlpool in or about December 2007.  During the call, she complained about Mold Problems, but the Whirlpool representative only offered cleaning solutions like using Affresh.  Hollander tried Affresh but it was ineffective.  She called Whirlpool back, but was told Whirlpool could not offer any additional solutions.  Hollander's independent efforts of running a diluted Clorox solution through the Machine (following the procedures suggested in the Whirlpool manual that came with the Machine), keeping the door to the Machine open, and cleaning the rubber seal also did not relieve the Mold Problems.  In researching the issue, Hollander visited a retailer and learned of other similar complaints. A technician from Hollander's extended warranty company inspected her Machine twice, but he also was unable to offer any solutions to fix the Mold Problems.

22.     Plaintiff, Derral Howard ("Howard"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Oklahoma.  Moreover, at all times relevant and pertinent to this action, Howard has been a citizen of the State of Oklahoma and the United States of America and has been domiciled in the State of Oklahoma.  Howard purchased an HE3 Washing Machine Model Number 110.45872400, Serial Number CSS2011508 on or about July 4, 2005 and received delivery of the Machine on or about July 9, 2005.  Howard paid approximately $1099.99 for the Washing Machine and, at all pertinent times, used the Machine for its intended purpose.  Howard began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about July of 2007.  Howard promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine, and replaced some parts, including the rubber drain hose, but this did not completely

resolve the problems. Furthermore, in response to an email from Howard complaining again about the problems in February 2008, Sears stated, "[o]ccasionally mildew will form above the water line in the inner tub assembly."

23.     Plaintiff, Heidi Klein ("Klein"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Pennsylvania. Klein purchased a Washing Machine model number GHW9100LW2 and serial number CSR1306657. Klein purchased her Machine from Lowe's in Hazleton, Pennsylvania in or about May 2005 for approximately $1,100. One of the reasons she purchased the Washing Machine was that it was advertised as an efficient appliance. Approximately 6 months after the purchase of her Washing Machine, Klein began to experience Mold Problems in her Machine. Klein has observed mold on the door seal and in the detergent dispenser, and has attempted to address the Mold Problems by using a Tide washer cleaning product in her Machine and using soap and water to clean the Machine. Since about May 2006, Klein has complained about the Mold Problems to Whirlpool a total of 5 times. Whirlpool responded to Klein's complaints by instructing her to clean the Machine and leave the door open. Despite Klein's efforts to clean her Machine and having followed Whirlpool's instructions, Klein's Machine continued to experience Mold Problems.

24.     Plaintiff Peggy Lemley ("Lemley") is, and at all times relevant and pertinent to this action has been domiciled in, and a resident and citizen of, the State of Illinois. Lemley purchased a Kenmore Elite HE2 Plus Washing Machine, model number 110.47532602 on or about October 8, 2007. Lemley began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the machine) shortly after purchasing the machine. Lemley contacted Sears concerning the problem with the mold, mildew and odors. Sears

- 13 –

provided instructions on how to clean the machine.  Lemley followed these instructions, but the problem remained unresolved.

25.    Plaintiff, Twilla Martin ("Martin"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Louisiana. Plaintiff Twilla Martin bought a new Whirlpool Duet washing machine, Model # WFW8500SR01, Serial #HLU0786427, from Naquin Furniture and Appliances in Thibodeaux, Louisiana, on or about August 4, 2007.  She expected her washing machine to work for at least 10 years with ordinary household use.  Less than two years later, by the Spring of 2009, the Mold Problem became evident. Martin contacted Whirlpool four (4) times that year in March, April and May, and was informed that her one (1) year warranty and the service plan she had purchased did not cover the problem. Whirlpool instructed Martin to clean the machine, purchase and use special cleaning products, and leave the door open. Martin attempted to remedy the problem by running clean cycles with bleach, switching cleaning products, and leaving the door open, but the Mold Problem persisted. Martin replaced the door gasket because of mold at her own expense, but the Mold Problem persisted and she needed to purchase another replacement.

26.    Plaintiff, Denise Miller ("Miller"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Wisconsin.  Moreover, at all times relevant and pertinent to this action, Miller has been a citizen of the State of Wisconsin and the United States of America and has been domiciled in the State of Wisconsin.  Miller purchased an HE2 Washing Machine Model Number 110.46462500, Serial Number HLT0417986 on or about February 17, 2006 and took delivery of the Machine on or about February 24, 2006.  Miller paid approximately $843.99 for the Washing Machine and, at all pertinent times, has used the Machine for its intended purpose.  Miller began to experience mold and mildew accumulation in

the Washing Machine and mold/mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about July 2006.  Miller promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine.  In response, Sears sent a repairperson who was unable to completely resolve the problems.

27.     Plaintiff, Charles Napoli ("Napoli"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Arizona.  Moreover, at all times relevant and pertinent to this action, Napoli has been a citizen of the State of Arizona and the United States of America and has been domiciled in the State of Arizona.  Napoli purchased a Kenmore Elite HE2 Washing Machine Model Number 110.47532600, Serial Number HLT3768322 on or about October 7, 2006, and received delivery of that Machine on or about October 10, 2006.  Napoli paid approximately $799.99 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.  Napoli began to experience mold and mildew accumulation in the Washing Machine and mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washing the Machine) within six months after purchasing the Washing Machine.  Napoli promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine.  In response, Sears sent a repairperson, on at least two occasions but were unable to completely resolve the problems.

28.     Plaintiff, Rebecca Nordan ("Nordan"), is and at all relevant times has been a resident and citizen of Maryland.  Nordan purchased a Duet Washing Machine Model Number GHW9150W0, Serial Number CSS0615240 from ABC Appliance Sales & Services, Inc. in Edgewater, Maryland on or about April 22, 2005 for approximately $989.95 and began to experience Mold Problems that affected items washed in the Machine four months after the

delivery of her Washing Machine. Although Nordan raised the Mold Problems with a Whirlpool representative in late 2005 through a telephone service call, the Whirlpool representative only offered cleaning solutions such running as bleach and water mixture through the machine. Nordan's independent efforts of running a dishwasher detergent through the Machine, keeping the door to the Machine open, and cleaning the rubber seal, glass door, and detergent compartment tray of the Machine with a cloth and bleach solution also did not relieve the Mold Problems.  In researching the issue, Nordan learned of other similar complaints.

29.     Plaintiff Nordan called Whirlpool again in 2007 and in March 2008, and the representative offered the use of Affresh™ tablets.  Nordan asked if the instruction to use Affresh™ tablets was in the manual that accompanied her Machine.  Whirlpool responded by saying that this technique was not in the manual and that the Affresh™ tablets were invented after the problem started occurring.  Nordan tried the Affresh™ tablets, but ultimately this proved to be ineffective as well.  Nordan purchased an extended warranty plan for her Machine for two years.  Whirlpool, however, refused to come to Nordan's home to service her Machine's Mold Problems under the extended warranty, although it offered to replace the gasket at Nordan's expense.  As a result of Whirlpool's response, Nordan did not renew her two year extended warranty plan with Whirlpool.

30.     Plaintiff, Maggie O'Brien ("O'Brien"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Indiana.  O'Brien purchased a Duet Washing Machine Model Number GHW9150PW0, Serial Number CSR3512462 on or about February 11, 2005 and received delivery of that Machine shortly thereafter from Rouch's TV & Appliance, Inc. in Valparaiso, Indiana for approximately $999.00.  O'Brien began to experience Mold Problems that affected items washed in the Machine soon after the purchase of her Washing

- 16 –

Machine.  As a result of O'Brien's complaints to Whirlpool, on or about January 13, 2006, a

Whirlpool repairman came to O'Brien's home to look at the Machine.  Due to the Mold

Problems, the repairman replaced the rubber seal on the front of the Machine.  The repairman

also advised O'Brien to leave the door open on the Machine and to clean the Machine with soap.

Neither the replacement of the rubber seal nor the cleaning instructions were effective, as the

Mold Problems continued.

   31. On or about February 22, 2006, Plaintiff O'Brien again complained to Whirlpool

concerning the mold growth in her Washing Machine.  O'Brien informed Whirlpool that she had

been running bleach through the Machine and leaving the door open.  Whirlpool responded by

sending O'Brien a set of cleaning instructions on how to prevent molding.  At this time,

Whirlpool recommended, "Select the 'heavy duty' cycle and 'hot' water.  Start empty washer

and at 7 to 8 minutes into the cycle, fill the detergent dispenser with BLEACH.  At the end of the

cycle, open the door, gently roll the rubber gasket toward you and wipe the underside of the

rubber gasket, the area directly under the gasket ("well" area), and the top of the gasket with

bleach (1 cup bleach to a gallon hot water)."  O'Brien followed the instructions given to her by

Whirlpool; however, the mold continued to grow inside her Machine.  Plaintiff O'Brien raised

the Mold Problems issue again with a Whirlpool representative on September 17, 2007.  The

Whirlpool representative only offered cleaning solutions that ultimately proved to be ineffective,

such as using hot water with bleach; removing the clothes very soon after the cycle; leaving the

door open to ensure that the unit does not dry out; periodically wiping the rubber seal and "well"

area with bleach solution; and using Affresh™.  O'Brien's efforts of running bleach through the

Machine, using HE detergent and wiping the inside of the Machine with a cloth coated in bleach

did not relieve the Mold Problems.

32.     Plaintiff, Victor Pfefer ("Pfefer"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Colorado.  Pfefer purchased a Kenmore Elite HE3t Washing Machine Serial Number CSR0308964 in or about the spring of 2004 from The Great Indoors® (a store owned by Sears), and received delivery of that Machine shortly thereafter. Pfefer paid approximately $1,500.00 for the Washing Machine and, at all pertinent times, has used the Machine only for its intended purpose.  Pfefer began to experience mold and mildew accumulation in the Washing Machine and to experience mold and mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) in or about December 2006.  Plaintiff promptly contacted Sears concerning the problem with the mold, mildew and/or foul odors in the Machine, but the problems were not resolved.  Further, in response to an email in January 2008, Sears sent "instructions" for cleaning, which did not work and did not resolve the problems.

33.     Plaintiffs, Jeffrey and Sandra Robinson ("the Robinsons"), are, and at all times relevant and pertinent to this action have been, residents and citizens of Wisconsin.  The Robinsons purchased a Kenmore Elite HE4t Washing Machine Model Number 110.45091401, Serial Number CST1009499 on or about July 4, 2006 and its representatives represented the Washing Machine as the "best washing machine in the industry."  The Robinsons received delivery of that Machine on or about July 11, 2006.  The Robinsons paid approximately $1,541.74 for the Washing Machine and, at all pertinent times, have used the Machine only for its intended purpose.  The Robinsons began to experience mold and mildew accumulation in the Washing Machine and mold/mildew odor problems (both escaping from the Machine and affecting clothing and other items washed in the Machine) within four months after purchasing the Washing Machine.  The Robinsons promptly contacted Sears concerning the problem with

the mold, mildew and/or foul odors in the Machine.  In response, Sears sent a repairperson, on more than one occasion.  The Sears repairman that came to their home in October 2007 was candid about the problem that plagues the Washing Machines and stated that there is no permanent fix for the mold and mildew problem in the Washing Machines.  The Sears repairman stated that removing and cleaning the mold and mildew from the back of the stainless steel drum, and then replacing the drum's plastic liner and rubber seal, would only provide temporary relief. The repairman suggested that this temporary fix would not be worth the cost.

34.     Plaintiff, Sonja Sandholm-Pound ("Sandholm-Pound"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New Jersey.  Sandholm-Pound bought a Washing Machine ("First Machine") , Model Number GHW9250MT, Serial Number CSR0407232 on or about May 2004 in New Jersey.  She bought a second Washing Machine ("Second Machine"), Model Number GHW9150PW0, Serial Number CSS1208971 on or about May 2005 in New Jersey.  She bought a third machine, Model Number WFW9500TW01, Serial Number CSW3601730 in or about October 2008.  She began to experience Mold Problems affecting items washed in the Second Machine, in or around November 2005 despite use of only the recommended HE detergent.  She promptly complained to Whirlpool in December 2005, and several times thereafter.  Whirlpool sent a repair person twice to repair Sandholm-Pound's Second Machine.  Each time, the repair person replaced the gasket around the door of the Second Machine.  Despite the gasket replacements, Sandholm-Pound continues to experience Mold Problems with her Second Machine.  In or around April 2008, she began to experience Mold Problems in her First Machine.  With respect to both of her Machines, Sandholm-Pound followed Whirlpool's maintenance instructions, specifically to run frequent cycles of bleach and to leave the door open.  Neither remedy got rid of the Mold Problems.  As a result of the Mold

Problems, Sandholm-Pound's clothing, towels, and other items still smell like mildew after they are "washed" in each of the Machines.  She has had to throw away numerous towels because she could not get rid of the moldy smells.

35.     Plaintiff, Shannon Schaeffer ("Schaeffer"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of California.  Schaeffer purchased a new Duet Washing Machine Model Number GHW9100LW2, Serial Number CSR1910188 from Cagle's Appliance Center in Ontario, California on or about February 19, 2005.  Schaeffer began to smell mildew emanating from the Washing Machine in 2006 despite using only HE detergent.  Shortly thereafter, she discovered black mold or mildew inside and around the door seal.  She attempted to clean the mold/mildew but the smell continued.  Schaeffer researched the Internet and discovered numerous postings from other consumers who had complained to Whirlpool about similar problems.  She followed the advice Whirlpool gave to these other consumers and attempted to remedy the Mold Problems by leaving the door open on the Washing Machine after use, manually drying the door after use, using hot water, reducing the amount of HE detergent in each cycle, switching from liquid to powder HE detergent, not using liquid fabric softeners and also running empty cycles with bleach.  Each of these attempted remedies failed to resolve the Mold Problems.

36.     Plaintiff Schaeffer took further efforts in an attempt to remedy the Washing Mold Problems by removing the front panel of the machine and accessing the plastic trap cover whereby she discovered chunks of mold and mildew.  She cleaned the reservoir with bleach and reassembled the trap and cover.  This attempted fix also failed to resolve the Mold Problems.  On or about January 6, 2009, Schaeffer contacted Whirlpool directly to seek assistance in remedying the Mold Problems.  A Whirlpool representative advised her to leave the door of the Washing

- 20 –

Machine open and also suggested use of Affresh tablets.  Schaeffer requested that a free sample be sent to her from Whirlpool since they were a required accessory for the Machine.  Whirlpool declined Schaeffer's request for a free-sample.  Schaeffer subsequently obtained two packages of Affresh from Cagle's Appliance Center.  Per the instructions on the Affresh package, she ran an empty cycle with three Affresh tablets, but the Mold Problems returned shortly thereafter.

37.     Plaintiff, Susan Scott ("Scott"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of North Carolina.  Scott purchased one of the Machines on or about August 28, 2005, and received delivery of that Machine on or about August 30, 2005.  Scott began to experience mold and mildew accumulation in the Machine and to experience mold and mildew odor problems (affecting clothes and other items washed in the Machine) in September 2008.  In an attempt to alleviate this problem, Scott re-washed clothes, re-dried clothes, and hung clothes outdoors for days, all to no avail. Scott has also used Affresh tablets in her Machine, placed baking soda in her Machine when not in use, washed her Machine with vinegar, and washed her Machine with bleach, all of which were unsuccessful in removing the mold and mildew odor.  As a result of the mold and mildew in her machine, clothes washed in Scott's machine have a noticeable smell of mold and mildew.

38.     Plaintiff, Donna Seeherman ("Seeherman"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New York.  In or about December 2004, Seeherman purchased a Duet Front-Loading automatic washer.  Seeherman followed all instructions and recommendations - including using HE detergent (which costs about 50 percent more than ordinary detergent), using monthly cycles of bleach, and leaving the door to the washing machine open when not in use.  Nevertheless, from the time of purchase, Seeherman's machine has continued to generate brown mold and to emit a foul stink. Clothing and other

- 21 –

laundry items washed in the machine have become infused with a musty odor, and Seeherman has already had to replace all of the towels in her home.

39.     Plaintiff, Tracie Snyder ("Snyder"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of North Carolina. Snyder purchased a Duet Washing Machine Model Number GHW9400PL, Serial Number CSR41094960 from Plaza Brand Source in Concord, North Carolina on or about June 4, 2005 and took delivery of the Washing Machine on June 6, 2005.  Plaintiff paid approximately $1,200.00.  She also purchased a 5 year extended warranty.  Within a year, Snyder began to experience Mold Problems.  She complained to her retailer, who advised her to leave the door open.  That did not resolve her Mold Problems, so later in 2006, she contacted her extended warranty company, which suggested she keep the door open, run bleach through the Machine, and run the sanitary cycle.  Those remedial measures did not work either.

40.     In June 2008, Plaintiff Snyder complained about Mold Problems to Whirlpool, whose representative told her that because she had an extended warranty, Whirlpool would not help her. Snyder tried various measures to fix the Mold Problems, including running a diluted bleach solution through the Machine, running "Odoban®" through the Machine with her laundry, cleaning the rubber seal of the Machine with a cloth, and cleaning behind the rubber seal by moving the seal away from the drum.  These efforts did not relieve the Mold Problems. In researching the issue, Snyder visited a Sears store and learned of other similar complaints with the Washing Machines.

41.     Plaintiff, Andrea Strong ("Strong"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Arizona. Strong purchased a Duet Washing Machine Model Number GHW9150PW0, Serial Number CSR2710475 from Spencer's TV &

Appliances in Mesa, Arizona on or about November 19, 2004 and took delivery of the Washing Machine in or about December 11, 2004.  Strong began to experience Mold Problems.  She contacted Whirlpool in November 2007 concerning the Mold Problems.  In response, the Whirlpool representative advised Strong to wipe and dry the boot on her Washing Machine, as well as to run empty cycles with Affresh.  Strong tried with these recommendations, but has continued to experience the Mold Problems.  The Whirlpool representative told Strong that the Mold Problems were caused by the failure of the Washing Machine to fully drain water after washing cycles.  She contacted Whirlpool again in January 2008 about her continuing Mold Problems, but Whirlpool told her she was out of warranty.

42.     Plaintiff, Phil Torf ("Torf"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Illinois.  Torf bought a Duet Washing Machine Model Number GHW9150PW, Serial Number CSS2304153 for household purposes in Illinois on or about August 22, 2005 and took delivery on or about August 28, 2005.  He paid about $975 (plus an extended four year warranty).  Several months later, Torf began experiencing Mold Problems that affected items washed in the Machine.  Torf promptly contacted Whirlpool to correct the problem.  Whirlpool refused to cover the Mold Problems—stating that the problem was not covered under the warranty because, allegedly, the Machine did not contain a defective component.

43.     Plaintiff, Carlos Vecino ("Vecino"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Texas.  Vecino purchased a new Duet Steam Washing Machine Model Number WFW9600TA, Serial Number CSU4702105 from Lowe's in San Antonio, TX, on or around April 16, 2008, and took delivery on or around April 17, 2008.  He paid $1,348.20.  Despite using only HE detergent, Vecino began to experience Mold

Problems within a year after purchase.  The Machine had a sour odor and towels came out smelling like mildew.  Vecino emailed Whirlpool about these issues, and they called him back to instruct him to clean under the gasket, leave the door open when the machine is not in use, and use Affresh tablets to clean the machine.  Vecino followed these instructions, as well as running hot sanitation cycles with bleach, but the Mold Problems persisted and newly washed clothes still smelled like mildew and mold.

44.     Plaintiff, Jennifer Wainwright ("Wainwright"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of New Jersey.  Wainwright purchased a new Duet Washing Machine Model Number WFW9200SQ02, Serial Number CSW0506278 from Abco Appliances, in Maple Shade, NJ, in or about May 2008.  She paid approximately $800 for the Machine.  Despite using only HE detergent, Wainwright began to experience Mold Problems within a year after purchase.  She noticed water and a black substance seeping from the gasket, and that all clothes washed in the Machine smelled of mildew and mold.  She began to leave the door on the Machine open at all times when not in use, and to run bleach cycles through her Machine on a weekly basis.  Wainwright also began using Affresh tablets to clean her Machine.  She wiped down the gasket and cleaned out the detergent drawer several times a month.  Despite these actions, the Mold Problems persisted and Wainwright's clothes continue to smell like mildew and mold.

45.     Plaintiff, Jane Werman ("Werman"), is, and at all times relevant and pertinent to this action has been, a resident and citizen of Illinois.  Werman purchased a new Duet Washing Machine Model Number GHW9100LW2, Serial Number CSR1905707 from ABT Electronics, Inc. in Glenview, Illinois on or about February 15, 2004 and took delivery in or about August 2004.  She paid about $880.00.  Werman began to experience Mold Problems within a year after

delivery despite using only HE detergent.  She began to leave the door on the Machine open at all times.  She began to run bleach cycles through her Machine.  Despite this, the Mold Problems continued.  Then, about a year and a half after delivery of her Machine, Werman began experiencing Mold Problems including mold and mildew accumulation in the Washing Machine (thereby affecting items washed in the Machine).

46.     Plaintiff Werman complained about the Mold Problems to Whirlpool retailer ABT.  Werman's remediation efforts of cleaning the Machine by hand and continuing to run bleach through it were ineffective.  Through Internet research she learned of similar complaints regarding Mold Problems, including that numerous other people were experiencing extensive mold and mildew growth behind the rubber seal.  Similar to the complaints on the Internet, when Werman pulled back the rubber seal on her Machine, the area behind the rubber seal was caked with mold.  As a result, after every few loads of laundry, Werman cleaned out the mold behind the rubber seal, but the Mold Problems continued.

**B.     Defendants**

47.     Sears is a New York corporation and maintains its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  At all times relevant and pertinent to this action, Sears has been a citizen of the State of Illinois.  Sears markets and sells Kenmore brand products, including the Washing Machines, throughout the United States, including this judicial district, itself, and by and through its Sears, Kmart and other retail outlets.

48.     Whirlpool is a Delaware corporation and maintains its principal place of business at 2000 M-63 N, Benton Harbor, Michigan 49022.  Whirlpool, thus, is a citizen of Delaware and Michigan.

## JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.§ 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendants are citizens of different states.

50.     Venue is proper in this judicial district pursuant to 28 U.S.C.§ 1391, because Defendants do business throughout this district and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in this district and emanated from this district.  Further, Sears maintains its principal place of business in this district.

51.     At all pertinent times, Defendants were engaged in the sale of products, including the Washing Machines, throughout the United States.

52.     At all pertinent times, Defendants were in the business of distributing, advertising, marketing, promoting and selling products, including the Washing Machines.

53.     The Washing Machines that form the basis of this Complaint were purchased from Defendants and/or placed in the stream of commerce by Defendants.

## FACTUAL BACKGROUND

### A.     Class Members' Common Factual Allegations

54.     Sears holds itself out to the public as a leading broad line retailer providing merchandise (including the Washing Machines) and related services. Sears is in the business of distributing, and/or selling washing machines through more than 2,400 Sears-branded and affiliated stores in the United States and Canada.

55.     Whirlpool holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including the Washing Machines.  Whirlpool is in the business of designing, manufacturing, marketing, advertising, distributing, and/or selling Washing Machines

- 26 –

throughout the United States.  Whirlpool has marketed, advertised, distributed and sold, through authorized dealers, front-load Washing Machines under various brand names.  Its authorized dealers include several leading retailers such as Lowe's, Whirlpool, Best Buy, and other large retail chains.

56.     Defendants have sold and/or distributed front-loading Washing Machines for their retailers throughout the United States.

57.     In recognition of the anticipated useful life of the Machines, Defendants expressly warranted that the Washing Machines were reliable, free from defects, and of merchantable quality and workmanship. Sears specifically represented that the Washing Machines were "designed and manufactured for years of dependable operation" and, in recognition of the anticipated useful life of the Machines, expressly warranted the stainless steel drum of the Washing Machines for its lifetime. Specifically, Sears provided a "limited lifetime warranty on the stainless steel drum" stating that, "for the lifetime of the washer from the date of purchase," Sears would replace the "Stainless Steel drum due to defective material or workmanship." Sears also provided each owner with a one-year warranty for mechanical and electrical parts, a five-year warranty on gear case parts, and a ten-year warranty on the plastic tub. Sears' express warranty provides coverage for repairs to correct any Washing Machine defect related to materials or workmanship occurring during the warranty period. Under this warranty, Sears was obligated, inter alia, to repair the water drainage defect at no charge. Sears has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations. In conjunction with each sale, Sears marketed, advertised and warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects.

58.     Defendants also make numerous additional express representations about the quality of the Washing Machines.  For example, Defendants sold the Washing Machines as "High Efficiency" and labeled the Machines as "ENERGY STAR" compliant.  ENERGY STAR is a voluntary labeling program designed to identify and promote energy-efficient products through a joint program of the U.S. Environmental Protection Agency and the U.S. Department of Energy.  Members of the Class have purchased the Washing Machines, in part, on the basis that the Machines would save money and energy.  In reality, at the recommendation of Sears and independently, Class members have to run empty cycles of hot water and bleach to combat the mold and mildew problems with the Machines.  Further, Sears recommends running successive washer cleaning cycles with bleach.  Upon information and belief, the ratings (Modified Energy factor) provided by Sears to the government entities are not taking into account the extra loads necessary to run through the Machines in order to attempt to clean the Machines.  Therefore, the ENERGY STAR label is false and misleading.

59.     Whirlpool provided various express warranties, including a one-year warranty for labor and two-year warranty for all electronic control boards (parts only, not labor).  Whirlpool's express warranties, in pertinent part, provide that the warranties cover repairs to correct any Washing Machine defect related to materials or workmanship occurring during the warranty period.  Under these warranties, Whirlpool was obligated, inter alia, to repair the defects at no charge.  Whirlpool has these same obligations with respect to Plaintiff and all Class members, but in many instances has failed to satisfy these obligations.  In conjunction with each sale, Whirlpool marketed, advertised and warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects or, at a minimum, would not suffer from defects.

- 28 –

60.     Defendants have refused, and continue to refuse, to warn consumers about the electronic control board defects inherent in the Washing Machines, or to effectively remedy the problems and defects inherent in the Machines. In fact, to this day, Defendants continue to deny that there is a mechanical problem with its Washing Machines. Unwilling to admit fault, Defendants have sat silently while consumers have purchased these defective products and continues to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable.

**MOLD PROBLEM**

61.     Based upon Plaintiffs' investigation, the Washing Machines fail to adequately clean themselves following the completion of a wash cycle.  Upon information and belief, the stainless steel drum, which comes with a lifetime warranty, among other things, plays a role in the accumulation of mold and mildew within the Washing Machines by, *inter alia*, not fully or properly draining in connection with each and every wash cycle.  Also playing a role in the accumulation of mold, mildew and/or foul odors is the door seal ("boot"), which, among other things, does not fully or properly drain or get clean in connection with each and every wash cycle.  Additionally, while offering the Washing Machines for sale to the general public, Defendants were aware of the water drainage defect and that it had no effective solution or remedy for the defect.

62.     Defendants are aware that the Mold Problem is caused, *inter alia*, by the inability of the Machine to clean itself following a wash cycle and that none of the proposed solutions Defendants have offered Plaintiffs and the Class members will adequately remedy the defect.

63.     Upon information and belief, Defendants knew and were aware, prior to marketing and selling the Washing Machines, that the Machines were inherently defective in that they were substantially likely to cease working in the manner that they were intended to perform during

their useful life. Nevertheless, Defendants have failed and refused to inform their customers of the serious defect inherent in the Washing Machines or to advise them regarding the problems that they would encounter when the Machines began to accumulate mold, mildew and/or foul odor problems as result of the self-cleaning defect at issue in this case.

64. Defendants have refused, and continue to refuse, to advise consumers about the self-cleaning defect inherent in the Washing Machines or to effectively remedy the problems and defect inherent in the Machines. In fact, to this day, Defendants continue to deny that there is a Mold Problem with its Washing Machines. Unwilling to admit knowledge of the extent of the problem, or fault, Defendants have sat silently while consumers have purchased these defective products and continue to sit silently today as an unacceptable percentage of the Washing Machines become effectively unusable for their intended purpose.

65. Based upon, *inter alia*, consumer complaints, representations by Defendants' representatives (including repair personnel), and information available in the public domain, the number of Washing Machines experiencing mold and mildew growth and accumulation as a result of the water drainage defect dramatically and materially exceeds the failure/defect rates of comparable, non-defective washing machines. The level of failures is substantially high such that any reasonable consumer would consider the existence of the self-cleaning design defect material in connection with the purchase of a Washing Machine. This is particularly true because the Machines often exhibit mold, mildew and/or foul odor problems within the warranty period, or shortly after the expiration of the warranty period. Moreover, consumers are frequently required to spend several hundred dollars (if not more) to attempt to remedy the defect (including the re-washing of clothes and other items rendered "unclean" as a result of the defect). The money spent by consumers to attempt to remedy the defect is wasted, however, because

- 30 –

Defendants do not have an adequate remedy for the self-cleaning defect.  For example, Sears technicians have suggested that consumers run bleach, vinegar or other cleaning solutions through their Machines to kill the mold and mildew, *i.e.* that consumers wash their own Washing Machines.  But these proposed solutions have not rectified the problem.  Moreover, one solution suggested by Defendants is to leave the door open so the Washing Machines dry and/or air out; however this is a dangerous "solution," as it poses a deadly risk to each household that has small children.

66.    As a result of the mold, mildew and/or foul odor problems that permeate many clothes and other items, including towels, that are "washed" in the Machines, many consumers have been forced to not only re-wash but to even replace clothes, towels and other items that have been ruined by the defect in these Washing Machines.

67.    Plaintiffs' experiences mirror those of the thousands of other owners of the Washing Machines.  The internet is replete with references to the common and profound problems that consumers have experienced with the Machines, including, but not limited to, the following small sample of representative complaints appearing in one on-line forum:

> I have problems with a moldy, musty smell from my front Kenmore Elite washer.  I too also wished I had never bought it. The use of less water and detergent seemed to be a real plus, but the clothes don't seem to get clean.  I take care of my three little grandchildren so the machine is always in use.  I leave the door open.  I try to wipe out the gasket, but nothing removes the smelly problem is that the laundry room is right next to the back door and kitchen, so the odor is most annoying.  I would love to have my old frontloader back.  Anyone contemplating a frontloader should ask some hard questions of the salespeople.

> * * *

> I purchased a Sears HE1 front loader 4 years ago and have had a chronic problem with mold under the gasket.  I leave the door open and have to wipe the underside of the gasket with bleach occasionally.  It smells all the time and I have not been happy with

that aspect of it.  I am going to contact Sears and start a formal complaint process to see where that gets me.  I am hoping they will at least have a retro-fit for it and acknowledge [sic] the problem. I'll keep you posted as to my results.

* * *

I have a Kenmore Elite front load that is now 2 ½ years old.  It has smelled musty for about 1 year.  I now have found Im [sic] not the only one with the problem and wonder if Sears backs this problem?  I will bqe [sic] calling on this but it sounds like ... there is no solution to cleaning or drying the problem away.  It stinks and is very annoying to have a brand new house and new equipment and then a nasty smell.

* * *

I HAVE A KENMORE ELITE FRONT LOAD FOR APPROX [sic] 2 YEARS AND THE MUSTY SMELL IS HORRIBLE.  IF I LEAVE THE DOOR OPEN, THE ENTIRE LAUNDRY ROOM SMELLS.... HOPEFULLY THE MOTOR BLOWS AND MY HUSBAND LETS ME BUY A TOP LOADER.  I GUESS WE ARE ALL STUCK WITH THIS EXPENSIVE NO GOOD WASHER FOR A WHILE.

* * *

I have a Kenmore Elite front loading washing machine (3 yrs old). I have spent a fortune replacing smelly towels.  I have tried the bleach, baking soda, white vinegar,and [sic] Lysol suggestions to get rid of the odor in my towels.  I have been told only to use the hottest water possible and on the longest time setting.  Strangely enough, nothing else stinks but the towels.  The smell is so bad that if you dry off with them, then you'll smell that funky smell on your skin.  The only solution I have found is to throw them away.  We keep the door open between washes and wipe out the mold as it accumulates.  I use the "correct" HE detergents, but nothing seems to make any difference.  I spent a lot of money on this washer and now I am spending a lot of money replacing towels for 3 bathrooms every 4 months! I told my husband that we'd spend less money drying off with paper towels every day.

* * *

I'm elated to know I'm not alone in my mold issue!!  I thought I was doing something wrong.  I love my Kenmore Elite HE3, I've had it about 2 yrs,but [sic] not enjoying the mold problem.  The savings of detergent, water and energy are great and my washing

- 32 –

time is cut in half due to the large amount of cloathes [sic] in each load.  BUT....I have tried a little bleach and wiping it down after each use and leaving the door open all the time but to know [sic] avail.  I've also tried a little bleach and a small load of just water cycle.  (although [sic] I'm going to try the "stopping it for 10 min." suggestion.)  Still there.  My main complaint are [sic] my towels!  Especially wash cloths.  Oiy!  sic]  I've thrown out several and can't seem to get the soured smell out....

\* \* \*

Hi I have been reading many comments.  Obviously I am here for a reason as well.  I purchased my Kenmore washer and Dryer 2 years ago and although I love them for saving me time and money (supposedly) I find my towels and dish clothes always come out with a horible [sic] smell.  I have thrown many out because I have not been able to find a solution to the problem.  I have tried using household Amonia [sic] in with my detergent and always liquid detergent.  That helps until someone goes to dry themselves off after a shower then I hear "why do our towels stink?"  I am throwing more towels away these days because of the smell.  I even started putting smaller loads in the machine so I am back to doing more loads more often.

\* \* \*

I hate my front loading washing machine.  I thought by buying it I would be helping because it uses less water, but all the washing over and over and running everything from bleach to tang through it I use more water than I would have with my old top loader.  I have a Sears Elite and no matter what I do it smells and like another, if I leave the door open my whole laundry room smells.  Knock you over smell.  The repair man told me that it is the main problem with the front loader and even when the repair men talk it over among themselves they can't figure out a way to fix the problem.  I think we should all get together and sue the manufactures for faulty machines.  The mold can't be good for us either and adding that smell just makes it even more so.  I am going to get rid of mine as soon as I have the extra money to buy a new one even though the front loader is new.  Even my clothes smell.  I hate it.

\* \* \*

I can't believe how many people have the same problem with their smelly towels.  I have had my Kenmore front loader since Jan 06 and it started to smell within months.  The towels are definitely

- 33 –

worse than all other laundry but the machine can also smell up the laundry room.  If this is a universal problem then why aren't the manufacturers responsible ... or liable as they say?  I have also seen the scum under the rubber gasket ... I have tried running bleach throught [sic] the cycle and wiping with paper towel but the problem never really goes away!

\* \* \*

I have a front loader and it has mold...severely...in the water hoses inside of the machine.  My husband has been VERY ill for several years and was thought to have MS...no...it was an allergy to the mold in the machine being washed onto his clothes.  All of our clothes smelll SOOOOOO [sic] bad and all of us have been ill to some degree.  Sears would come out and say they couldn't find a reason for the smell....until the last tech came out and showed me the white hoses were now BLACK from mold.  And...this being washed onto all of our clothes.  I have to replace all of our clothes, bedding, towels...and Sears is being HORRIBLE about the whole problem.  I would NEVER buy a front loader again!!!!  Be careful!!!  Not only is there mold in the rubber boot in the front...but in the hoses inside of the machine!!!  Please be careful!!

http://www.dld123.com/q&a/index.php?cid=443 (misspellings in original entries).

68.    Plaintiffs' experiences, mirroring those of countless other Washing Machine purchasers who have publicly recounted their problems with these models, reveal that these warranties were breached.  Defendants have long known that the Washing Machines suffer from a self-cleaning defect and do not perform as intended, because they are susceptible to and likely to experience Mold Problems as a result of, *inter alia*, the water drainage defect, which Defendants have been, and continue to be, unable to remedy.

69.    Each of the Plaintiffs named in this lawsuit purchased a Washing Machine and used it for its intended purpose, and in a manner consistent with its intended use.  At the time of Plaintiffs' purchases, Defendants failed to disclose that the Washing Machines were defective, as evidenced by the fact that Plaintiffs experienced, and continue to experience, mold, mildew and/or foul odors in their Machines and on clothing and other items washed in their Machines.

70.     In response to the various notices from the Plaintiffs to Defendants regarding the defects in their Washing Machines and the mold, mildew and/or foul odor problems, Defendants' personnel, including retailers and authorized repairmen, made form or "canned" responses.  For example, on or about February 2008, Sears provided the following instructions in response to an email from Plaintiff Howard:

> "Set the washer to its highest possible fill level and load size but do not add laundry.  Use an all hot water wash setting and allow the wash basket to fill, then stop the cycle.  Add an additional 3-5 gallons of very hot water using a bucket or similar device.  Add one cup of chlorine bleach and continue the cycle for approximately half the normal wash cycle.  (Do not allow the machine to advance to a drain or rinse cycle).  Stop the cycle and allow the tub to soak for 3-4 hours.  Resume the cycle and allow the unit to agitate for the rest of the wash cycle and drain.  Advance the timer and run a second all hot water wash cycle to assure that all bleach water residue is flushed from the system.
>
> To clean the seal itself, use a solution consisting of 1/4 cup of bleach to 1 gallon of warm water with a small amount of dishwashing detergent.  Use this solution to scrub the door seal.
>
> To prevent further odor problems, always leave the washer door open between loads to allow a more thorough drying of the interior.  Some consumers add a small fan to the laundry room to speed the drying process."

71.     Defendants also proposed, *inter alia*:  running double rinse cycles with each load; wiping down the gasket, door and inside of the Washing Machines after each use; wiping the inside of the stainless steel drum with a washcloth after use of the Washing Machines; running empty loads with bleach, borax and/or baking soda through the Machine; wiping the seal of the Machines; cleaning the filter of the Machines; running vinegar through the Machines; running vinegar and bleach, dishwasher detergent, and baking soda through the Machines; leaving the door open after each wash (despite the obvious danger to children and inconvenience in tight spaces normally associated with laundry rooms); running the sanitary cycle all the time; using far

less laundry detergent than recommended in the owner's manual; running bleach through the Machines; using a cleaning solution sold by the Defendants and devised to address Mold Problems; cleaning the rubber seal on a regular basis; hand-drying the Machines after each use; running weekly hot water cycles and wiping the gasket with bleach and hot water after every use of the Machine; using a sanitizer; running back-to-back empty-load cycles of water and bleach; and cleaning a particular tube underneath the Machines.

72.    Defendants also attempted to profit from the Mold Problems.  For example, their technicians, while on service calls, strongly urged Plaintiffs to purchase additional extended warranties on the Machines, for amounts ranging from $300.00 to $910.00.  Similarly, Defendants sell a solution that they claim will address Mold Problems each time they recur.

73.    Tellingly, neither the Mold Problems nor the alleged "solutions" were set forth in Plaintiffs' Owner's Manuals that accompanied the Washing Machines.  Moreover, none of these alleged "solutions" stopped or otherwise remedied the Mold Problems that plague Plaintiffs' and Class Members' Washing Machines.

74.    As a result of the mold, mildew and/or foul odor problems, Plaintiffs collectively have been forced to endure, *inter alia*, mold, mildew and/or foul odors in their Machines and on their clothes and other items.

## THE DEFECTS AND THE WRONGFUL CONDUCT

### A.    Incapable of a Single Simple Repair

75.    Defendants utilize various quality control protocols and standards for the manufacture and quality control testing of products sold to their consumers. Notwithstanding Defendants' quality control efforts, an unacceptable number of Washing Machines manifest defects in design and/or manufacture.  Moreover, the Mold Problem has been resistant to multiple attempts at repair.  For example, the suggested "fixes" for the Mold Problem are

- 36 –

ineffective or are temporarily effective and requiring multiple applications, only to have the Mold Problem reappear.  Also, fixes such as replacing the boot also result in re-development of the Mold Problem.  This is because each "fix" suggested by Defendants only goes to the symptom—the Mold Problem—and not the defect, which is the inability of the Washing Machine to clean itself after each wash cycle.  A washing machine should be able to remove the debris and filth left over after washing each load of clothes.  However, the Washing Machines are incapable of and do not accomplish this fundamental task and no "fix" yet has been able to cure the defect in the Machines.

**(Accepted Industry Standards)**

76.  One accepted industry standard requires defect levels below 1 in 10,000 units, or a failure rate of .01% for electromechanical defects.  Industry norms for washing machines having the ability to self-clean through and after each washing cycle are 100% of all units short of some defect in design or manufacturing.  Consequently, based upon industry standards, only a few hundred Washing Machines should exhibit one of the defects identified here.

77.  Defendants introduced the Kenmore HE Series Washing Machines in August 2001.  From initial production through March of 2007, Defendants have sold over 1.5 million Kenmore HE Series Washing Machines.  According to Sears, at least 15,538 have had mold issues (1.0%).  Defendants' failure rates are far in excess of industry standards.  Upon information and belief, failure rates are underreported by at least a magnitude of five, but likely more.  The Mold Problems are so pervasive that Whirlpool and other companies have created cleaning products such as Affresh, Smelly Washer and Tide Cleaner, among others, which reflect at minimum the scope and demand of the problem.  Consequently, even the under-reported

failure rates are in excess of industry norms, and are a material fact that should have been made available to the Washing Machine consumers.

78.     The failure rate—well in excess of the industry norm—would be a material fact to a reasonable consumer purchasing a Washing Machine.  This failure rate is even more material given that the Washing Machines average in cost of over $1,000.00, with some members of the Class paying in excess of $1,2000.00 for their Washing Machine.  Considering that a traditional washing machine can be purchased for as little as $350.00, knowing that the Washing Machines had one or more defects is a material fact to a consumer who is paying such a premium for a high-end Washing Machine.

**B.      Defendants' Deceptive Practice and the Best Known Date at Which Defendants' Knew of the Defects Without the Benefit of Discovery**

79.     Prior to the sale of the Washing Machines, Defendants marketed and sold Calypsos Washing Machines, which had many of the same defects as alleged herein, and which resulted in litigation against Defendants, with Defendants ultimately agreeing to pay damages to the owners of Calypsos Washing Machines.  Because of the previous problems with Calypso Washing Machines, Defendants knew or should have known about defects, such as those, in the Washing Machines, and failure to disclose those defects would cause substantial damage and injury to consumers.

80.     Despite receiving a high level of complaints about the Washing Machines and notwithstanding Defendants' superior knowledge of the relatively high incidence of problems, Defendants continued to misrepresent the Washing Machines as being dependable and providing outstanding cleaning and did not disclose the relatively high likelihood of product defects to its consumers and/or omitted disclosing this likelihood.  Defendants have never disclosed the many claims they received or the high incidence of repair of the Washing Machines, or implemented a

recall to correct these problems.  Defendants omitted critical information and made representations with the intent that consumers rely upon the totality of the message conveyed, *i.e.*, that the Machines were highly dependable and effective, or that the Machines failed at a rate far in excess of accepted industry standards.

81.     Beginning in 2002 and continuously through 2009, Plaintiffs purchased their Washing Machines.  Beginning in late 2004 and continuously at least through late 2009, Plaintiffs notified Defendants of the defects alleged herein.  Despite the individual and cumulative notices, Defendants did not, and have yet to, disclose the risks of these defects to any of the Plaintiffs or any member of the Class.  Moreover, upon introducing the Washing Machines, Defendants began to receive complaints regarding Mold Problems.  By the end of 2002, Defendants had received hundreds, if not thousands, of complaints of Mold Problems, and Defendants had received several thousand complaints by the end of 2003.  Based on their experience with the Calypso Washing Machine, which also had Mold Problems, the numerous complaints received shortly after the Washing Machines were put to market were or should have been more than sufficient to place Defendants on notice of the defect.

82.     Although Defendants had prior knowledge of the multiple defects with washing machines as a result of the Calypso machines, and although Defendants were receiving thousands and thousands of complaints, Defendants did not disclose the risk of defects with the Washing Machines to the Plaintiffs or the Class.  Moreover, to this day, despite acknowledging the receipt of tens of thousands of complaints (which number is vastly understated), Defendants have yet to make any such disclosure.  This failure to disclose, and to continue to fail to disclose, is a deceptive practice or pattern upon Washing Machine consumers, who each spent near, or over, $1,000.00 for the Washing Machines.

83.     Defendants manufactured and sold the Washing Machines to consumers when they knew or should have known the Machines were not dependable and would not withstand normal operation.  The Washing Machines were not of the standard, quality or grade that Defendants represented them to be and were not fit for their expected uses.  Defendants omitted, or otherwise concealed or failed to disclose to Plaintiffs and the Class members, the true unreliable and defective nature of the Washing Machines, and Defendants failed to take other remedial action to correct their omissions or concealments.

84.     Defendants falsely represented that the Washing Machines provided outstanding performance as home washing machines, even though they knew or should have known that major components of the Machines would fail when used and operated in a normal manner well before the reasonable expectations of the consumers using the product.

85.     As a result of Defendants' failures and misconduct as detailed herein, Plaintiffs and the proposed Class members have suffered actual damages because their Washing Machines have not operated as represented by the Defendants.  Plaintiffs and the proposed Class have overpaid for the Machines because the value of the Machines was diminished at the time they were sold to consumers.  Additionally, Plaintiffs and the proposed Class have been damaged by having to pay for costs associated with service calls, buy replacement parts, clean the Machines, pay for washing items at laundromats and buy extended warranties.  If Plaintiffs and other members of the Class had known about the design defects affecting the Washing Machines, they would not have purchased the Washing Machines, or would have paid significantly less for the Machines.

86.     The Washing Machines purchased by Plaintiffs and Class members fail to work properly, or as intended, because of defects in their design (not because of the ordinary course of usage by Plaintiffs or Class members).

87.     Defendants have failed to adequately ensure that the Washing Machines are free from defects.  Before the Washing Machines even reached the market, Defendants knew, or were reckless in not knowing, that they:  (a) contained inherent design defects; and (b) were not of merchantable quality.

88.     To this day, Defendants continue to conceal material information from users, consumers, and the public concerning the Washing Machines, including, *inter alia*, information showing that:  (a) the Machines are inherently defective; and (b) the Machines are not of merchantable quality.  In fact, to this day, Defendants continue to deny that there is a Mold Problem with their Washing Machines.

89.     Defendants knowingly concealed material facts regarding the Washing Machines, namely that they are inherently defective and unreliable, and that they are not of merchantable quality, with the intent that consumers would purchase the Machines.

90.     Faced with a substantial number of consumer complaints regarding the defect and problems associated with the Washing Machines, Defendants have failed and refused to warn consumers about the defects inherent in these Machines and, instead, have sat by silently while consumers have purchased these defective products.

91.     Defendants intended for customers to believe their statements and representations about its Washing Machines and to trust that their high-end Washing Machines were and are of first-rate quality.  Defendants have instead concealed material facts regarding the Washing Machines.

92.     Plaintiffs and Class members reasonably expected that the Washing Machines would not contain design defects that would substantially impair the Machines' performance and use.  Plaintiffs and Class members also reasonably expected that the Machines would not require extensive and expensive repairs (or the purchase of extended or third-party warranties to continuously attempt to fix problems inherent in the Washers) as a result of the defects, which defects were known to Defendants at the time of sale.  If Defendants had not misrepresented and concealed material information regarding the defective nature of the Washing Machines, Plaintiffs and other members of the Class would not have purchased the Machines at premium prices, and on the terms offered.

93.     All jurisdictional prerequisites have been and/or are hereby satisfied by and through the filing and service of this Consolidated Class Action Complaint.

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

### A.     Nationwide Class

All residents of the United States and its territories who (a) purchased a new Washing Machine; (b) acquired a Washing Machine as part of the purchase or remodel of a home; or (c) received as a gift, from a donor meeting those requirements, a new Washing Machine not used by the donor or by anyone else after the donor purchased the Washing Machine and before the donor gave the Washing Machine to the Class Member.

### B.     State and Territorial Sub-Classes

95.     Plaintiffs also bring this action on behalf of Sub-Classes, one for each State of the United States and one for the Territories of the United States, to the extent appropriate, in the alternative to the claims asserted on behalf of the Class:

> All Class members who purchased a Washing Machine, not
> for resale, in the State of [State Name]/Territories of the
> United States ("[State Name]/Territories Class").

96.     Excluded from the Class and Sub-Classes are (a) officers, directors, and employees of Defendants, (b) insurers of Class Members, (c) subrogees or all entities claiming to be subrogated to the rights of a Washer purchaser, Washer owner, or a Class Member, and (d) all third-party issuers or providers of extended warranties or service contracts for the Washers.

97.     **Numerosity**:  The members of the proposed Classes are so numerous that joinder of all members is impracticable.  Each of the proposed Classes includes thousands of members. The precise number of members of each of the Classes can be ascertained through discovery, which will include Defendant's sales, warranty service and other records.

98.     **Commonality And Predominance**:  The following questions of law and fact are common to the Classes:

> (a)     whether the Washing Machines are defective;
>
> (b)     whether, prior to sale, Defendants knew that the Washing Machines were defective;
>
> (c)     whether Defendants have breached their warranties and/or extended warranties running between them and the members of the Classes;
>
> (d)     whether Defendants have breached their implied warranties running between them and the members of the Classes; and,
>
> (e)     whether members of the Classes are entitled to recover damages and/or other relief and, if so, the appropriate amount thereof.

99.     **Typicality**:  The representative Plaintiffs' claims are typical of the claims of the members of the Classes.  Plaintiffs and all members of the Classes have been injured by the same wrongful practices in which Defendants have engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

100.  **Adequacy**:  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Classes.

101.  **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper.  Defendants have acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate.

## FRAUDULENT CONCEALMENT

102.    Throughout the Class Period, Defendants affirmatively concealed from Plaintiffs and Class members the defects described herein.

103.    Defendants had a duty to inform Plaintiffs and Class of the defects described herein, which they knew of or should have known.  Notwithstanding this duty, Defendants never disclosed the defects to Plaintiffs or the Class; rather, Defendants attributed resulting failures to soap, water issues or other conduct.

104.    Moreover, as part of the scheme, after the warranty period had expired Defendants marketed extended warranties for hundreds of dollars, thus further attempting to profit from the misfortune of the Washing Machine purchasers.

105.    Despite exercising reasonable diligence, Plaintiffs and Class members could not have discovered the defects or Defendants' scheme to avoid disclosure of the defect.  Thus, running of the statute of limitations has been tolled with respect to any claims that Plaintiffs or the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein.

106.    Defendants are further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of their acts of fraudulent concealment.

### FIRST CAUSE OF ACTION
**Asserted On Behalf Of The Nationwide Class Against Defendants**
**(Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312)–Written Warranty)**

107.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

108.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

– 45 –

109.    Plaintiffs and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

110.    Defendants are "warrantors" and "suppliers," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

111.    Defendants provided Plaintiffs and Class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

112.    In their capacity as warrantors, and by the conduct described herein, any attempts by Defendants to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

113.    All jurisdictional prerequisites have been satisfied.

114.    By Defendants' conduct as described herein, including Defendants' knowledge of the defective Washing Machines and their action, and inaction, in the face of that knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

115.    As a result of Defendants' breach of express warranties, Plaintiffs and the Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**SECOND CAUSE OF ACTION**
**Asserted on Behalf of the Nationwide Class and/or the State Classes**
**(Violations Of Magnuson-Moss Act (15 U.S.C. § § 2301-2312)—Implied Warranty)**

116.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

117.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

- 46 –

118.   Plaintiffs and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

119.   Defendants are "warrantors" and "suppliers," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

120.   Defendants provided Plaintiffs and Class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

121.   In their capacities as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is void.

122.   All jurisdictional prerequisites have been satisfied herein.

123.   By Defendants' conduct as described herein, including Defendants' knowledge of the defective Washing Machines and their action, and inaction, in the face of that knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

124.   As a result of Defendants' breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**THIRD CAUSE OF ACTION**
**Asserted on Behalf of the Nationwide Class, and/or the State Classes**
**and/or the California Class**
**(Violation of Song-Beverly Consumer Warranty Act Civil Code § 1790 *et seq.*)**

125.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

1292560.6

126. The Washing Machines are "consumer goods" within the meaning of Civil Code § 1791 (a).

127. Defendants' implied warranty of merchantability arose out of and/or was related to the sale of the Washing Machines.

128. As is more fully set forth above, Defendants have failed to comply with their obligations under their express warranties and its implied warranties of merchantability.

129. Plaintiffs have suffered and will continue to suffer damages as a result of Defendants' failure to comply with their warranty obligations. Accordingly, Plaintiffs are entitled to recover damages under the Song-Beverly Act, including damages pursuant to Civil Code §§ 1791.1(d) and 1794.

## FOURTH CAUSE OF ACTION
### Asserted On Behalf Of The Nationwide Class and/or the State Classes
### (Breach of Implied Warranty of Merchantability)

130. Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

131. Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes and all the Subclasses.

132. Plaintiffs seek to recover for Defendants' breach of implied warranty.

133. Defendants are merchants in the sale of the Washing Machines to Plaintiffs and the Class members and the Washing Machines are goods under applicable law.

134. Plaintiffs and Class Members are in privity with Defendants in that they purchased their Washing Machines directly from Defendants, or from an actual or apparent agent of Defendants.

135. Plaintiffs and Class Members are also in privity with the Defendants by virtue of the contractual relationship stemming from Defendants' manufacturer's warranty provided in

conjunction with the purchase of the Washing Machines, and which is enforceable by Plaintiffs and the Class as against the Defendants regardless of where, or from whom, the Washing Machines were acquired.

136.   At all times relevant hereto, there was a duty imposed by law which requires that the Washing Machines be reasonably fit for the purposes for which washing machines are used, that they are of fair average quality within their description, and that they be acceptable in trade for their description.

137.   Defendants have not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer, exclusion of the same was and is ineffectual.

138.   Notwithstanding the aforementioned duty, at the time of delivery, the Washing Machines sold to Plaintiffs and the Class were not merchantable, and not fit for the ordinary purposes for which they were sold.  The Washing Machines are not fit for the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing Machines are defective in that they contain design defects that cause them to accumulate mold, mildew and/or foul odors and to produce a moldy odor that permeates consumers' homes and clothing.  Accordingly, clothing is not cleaned in the Machines.

139.   As documented in their own business records and elsewhere, Defendants were notified that the Washing Machines were not merchantable within a reasonable amount of time after the latent defect manifested itself to Plaintiffs and the Class.

140.   As a result of the non-merchantability of the Washing Machines described herein, Plaintiffs and other members of the Class have sustained damages in an amount to be determined at trial.

141.   Alternatively, Plaintiffs seek to recover for Defendants' breach of implied warranty, under the substantially similar laws of the states of purchase, including:  Arizona (A.R.S. § 47-2314), Colorado (C.R.S.A. § 4-2-314), Florida (F.S.A. § 672.314), Georgia (OCGA § 11-2-314), Illinois (810 ILCS 5/2-314), Kentucky (R.R.S 355.2-314), Louisiana (La. C.C. Art. 2524), Massachusetts (MGL § 106-2-314), Michigan (Michigan Uniform Commercial Code, § 440.2314), Minnesota (M.S.A. § 336.2-314), New Jersey (N.J.S.A. 12A:2-314), New York (New York Uniform Commercial Code § 2-314), North Carolina (N.C. Gen. Stat. § 25–2–314), Ohio (tortious breach of warranty), Oklahoma (12A Okla. St. Ann. § 2-314), Pennsylvania (13 Pa. C.S.A. § 2314), Texas (Tex. Bus. & Com. Code § 2.314), Washington (RCW 62A.2-314), and Wisconsin (W.S.A. § 402.314).

## FIFTH CAUSE OF ACTION
### Asserted on Behalf of the Nationwide Class and/or the State Classes
### (Breach of Express Warranty)

142.   Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

143.   Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes and all the Subclasses.

144.   Defendants provided Plaintiffs and Class members with express written warranties, as detailed more fully herein.

145.   Defendants breached this express warranty by delivering Washers that do not deliver as promised due to the self-cleaning defect, and do not perform as intended, because they are susceptible to and likely to experience Mold Problems.

146.   As a result of the foregoing breaches of express warranty, Plaintiffs and other Class members have been damaged in that they purchased Washers that could not perform as warranted and did not receive the benefit of the bargain of their Washer purchases.

- 50 –

147.   Plaintiffs and Class members seek all damages permitted by law in an amount to be proven at trial.

148.   Alternatively, Plaintiffs seek to recover for Defendants' breach of express warranty under the substantially similar laws of the states of purchase.

## SIXTH CAUSE OF ACTION
### Asserted on Behalf of the Nationwide Class and/or the State Classes
### (Violation of State Consumer Protection and Unfair Trade Practices Laws)

149.   Plaintiffs repeat and reallege the allegations of the prior paragraphs, as if fully stated herein.

150.   Plaintiffs assert this cause of action on behalf of themselves and the other members of the Nationwide Class, and each of the State Classes.

151.   Defendants have engaged in unfair, unlawful, and fraudulent business practices by: (1) marketing and selling Washing Machines with Design Defects that cause Mold with normal use and/or create a substantial risk that Mold Problems would occur with normal use; and (2) intentionally failing to disclose and/or concealing these known defects and risks.

152.   Defendants intentionally concealed and/or failed to disclose that the Washing Machines have a Design Defect, and that the Design Defect causes Mold Problems, for the purpose of inducing Plaintiffs and other Class members to purchase the Machines.

153.   The facts concealed and/or not disclosed by Defendants to Plaintiffs and other Class members are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) the Washing Machines.

154.   Plaintiffs Class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosed facts as evidenced by their purchase of the defective Washing Machines.

- 51 –

155.   Had Plaintiffs and other Class members known of the Design Defect, they would not have purchased the Washing Machines, or would have paid less for them.

156.   By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition.

157.   Defendants' acts and practices have deceived and/or are likely to deceive members of the consuming public and the members of the Class.

158.   Defendants knowingly sold Plaintiffs and other Class members Washing Machines with defects that have rendered the Machines essentially unusable for the purposes for which they were sold.

159.   The injury to consumers by this conduct is greatly outweighed by any alleged countervailing benefit to consumers or competition under all of the circumstances. Moreover, in light of Defendants' exclusive knowledge of the defects, the injury is not one that Plaintiffs and other Class members could have reasonably avoided.

160.   Defendants' acts and practices are unlawful because they violate Cal. Code §§ l668, 1709 and 1710, the Song-Beverly Act, Cal. Civil Code § 1790, et seq., Cal. Commercial Code § 2313, the common law duties of good faith and fair dealing, the common law of fraud by omission, and the commercial, consumer protection, and unfair competition laws of various states, including, *inter alia*, New York General Business Law § 349, *et seq.*, the Illinois Consumer Fraud and Deceptive Practices Act (815 Ill. Comp. Stat. § 50 5/2), the Indiana Consumer Fraud and Deceptive Practices Act (Ind. Code § 24-5-0.5 *et seq.*), the Minnesota Prevention of Consumer Fraud Act (§325 F *et seq.*), Michigan's Comp. Laws (§445.903 *et seq.*), the Kentucky Consumer Fraud and Deceptive Business Practices Act (Ky. Rev. Stat. § 367.220 *et seq.*), Florida's Deceptive And Unfair Trade Practices Act (F.S.A., 501.201 *et seq.*), New

Jersey's Consumer Fraud Act (N.J. Rev. Stat. §56: 8-1 *et seq.*), the Arizona Consumer Fraud Act (A.R.S. §§44-1521 *et seq.*), the Louisiana law of redhibition (La C.C. Arts. 2520, *et seq.*), Colorado's Consumer Protection Act (C.R.S. §§6-1-101 *et seq.*), Ohio's Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*), Oklahoma's Consumer Protection Act (15 Okl. St. §751 *et seq.*), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 Pa.C.S.A. §§201-1 *et seq.*), the Maryland Consumer Protection Act (Md. Code Ann. § 13-303 *et seq.*), Washington's Rev. Code §19.86 *et seq.*, the North Carolina Unfair and Deceptive Trade Practices Act (§75-1.1), the Texas Deceptive Trade Practices - Consumer Protection Act, (Tex. Bus. & Com. Code §17.41 et seq.), and Wisconsin's Deceptive Trade Practices Act (Wis. Stat. Ann. §100.18 *et seq.*).

161.    By this Count Plaintiffs plead violations of all of the foregoing statutory and common laws.

<u>**SEVENTH CAUSE OF ACTION**</u>
**Asserted on Behalf of the Nationwide Class and/or the State Classes
and/or the California Class
(Violation of California's Consumer Legal Remedies Act)**

162.    Plaintiffs allege and incorporate the above allegations by reference as if set forth herein at length.

163.    Plaintiffs bring this claim under the Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code §§ 1750, *et seq.*) on behalf of the Nationwide Class and/or the State Classes.

164.    At all times relevant hereto, Plaintiffs were "consumers" as that term is defined in Civ. Code § 1761(d).

165.    At all times relevant hereto, the Washing Machines constituted "goods" as that term is defined in Civ. Code § 1761(a).

166. At all times relevant hereto, Defendants constituted "persons" as that term is defined in Civ. Code § 1761(c).

167. At all times relevant hereto, Plaintiffs' purchase of Defendants' Washing Machine constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

168. At all times relevant hereto, Defendants provided "services" to Plaintiffs and the Class within the meaning of Civil Code § 1761(b).

169. The CLRA provides, in relevant part, that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods . . . have . . . approval, characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods . . . are of a particular standard, quality or grade . . . if they are of another; ... (9) Advertising goods . . . with intent not to sell them as advertised; and (19) Inserting an unconscionable provision in the contract." Civil Code §§ 1770(a)(5),(7), (9) and (19).

170. Defendants made uniform written representations that the Washing Machines are a high quality product that will perform as represented and, as set forth above, made specific representations regarding the capacity and characteristics of the Washing Machines that, as set forth above, were false, deceptive and/or misleading and were made in violation of the CLRA.

171. Defendants engaged in deceptive practices in violation of the CLRA that were designed to induce Plaintiffs and Class Members to purchase the Washing Machines.

172. By engaging in the foregoing unfair and/or deceptive conduct, Defendants actively concealed and failed to disclose material facts about the Washing Machines.

173.   The representations, omissions and acts of concealment set forth above regarding the Washing Machines and the Design Defects are and were material facts that a reasonable person would have considered important in deciding whether or not to purchase a Washing Machine.

174.   Plaintiffs and Class Members justifiably acted or relied upon (to their detriment) the misrepresentations and/or concealment by Defendants as evidenced by their purchase of the Washing Machines.

175.   Plaintiffs and the Class Members suffered injury in fact and/or actual damages as a direct result of Defendants' conduct described herein. Had Defendants disclosed the true quality, nature and drawbacks of the Washing Machines, Plaintiffs and Class Members would not have purchased (or would have paid less for) the Washing Machines.

176.   Plaintiffs and Class Members also are entitled to recover attorneys' fees and costs pursuant to Civil Code §§ 1780 and 1781.

**EIGHTH CAUSE OF ACTION**
**Asserted on Behalf of the Nationwide Class and/or the State Classes**
**(Unjust Enrichment)**

177.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

157.    This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Nationwide Class and/or the State Classes, to the extent that the warranties do not govern all of Plaintiffs' and Class members' claims or there is any determination that Plaintiffs do not have standing to assert any contractual claims asserted against Defendants on because of any alleged absence of contractual privity or otherwise.

158.    Plaintiffs and the members of the Classes conferred a benefit on Defendants, of which benefit Defendants had knowledge.  By their wrongful acts and omissions described herein, including selling the Washing Machines, Defendants were unjustly enriched at the expense of Plaintiffs and the members of the Classes.

159.    Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

160.    It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Washing Machines.

178.    Plaintiffs and the members of the Classes seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

### NINTH CAUSE OF ACTION
**Asserted on Behalf of the Nationwide Class and/or State Classes**
**(Negligent Design and Failure to Warn)**

161.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

162.    Plaintiffs assert this cause of action on behalf of the Nationwide Class and/or the State Classes.

163.    Defendants knew—or by the exercise of reasonable care should have known—that their Washing Machines would have and had the alleged Design Defects.

164.    Defendants knew that Plaintiffs and the other members of the Class— who used Defendants' Washing Machines for their intended use—were members of a foreseeable class of

- 56 –

persons who were and are at risk of suffering serious inconvenience and expense solely because of the Design Defects.

165.    Defendants' suggestion to leave the washer door open (which does not solve the problem anyway), if tried, is a danger to children.

166.    At the time Defendants manufactured, distributed, and/or sold the Washing Machines, they owed a non-delegable duty to persons like Plaintiffs and the other members of the Class to exercise ordinary and reasonable care to properly design the Machines, and they owe a continuing duty to warn about the problem and to repair and/or recall all defective Machines.

167.    Defendants had a pre-sale duty to warn potential purchasers that the Washing Machines carried with them greater risks of foul odors and health hazards than an ordinary consumer would expect when using the Machines in their intended or reasonably foreseeable manner.

168.    Any benefits by way of lower energy or water use are outweighed by the risks inherent in the Washing Machines' design.

169.    Defendants failed to use appropriate design, engineering, and parts in manufacturing the Washing Machines, and in other respects, Defendants breached their duties by being wantonly reckless, careless, and negligent.

170.    As a direct and proximate result of Defendants' wanton recklessness, carelessness, and negligence, Plaintiffs and the other members of the Class were caused to suffer damages and losses—and Plaintiffs and the other members of the Class will have to spend money to repair and/or replace the defective Washing Machines.

179.    Plaintiffs and the other members of the Class have not committed any contributory negligence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

180.    For an order certifying the Class, pursuant to Fed. R. Civ. P. 23(b)(3), appointing Plaintiffs as representatives of the Class, and appointing Plaintiffs' counsel to represent the Class;

181.    For restitution and disgorgement of all amounts obtained by Defendants as a result of their  misconduct, together with interest thereon from the date of payment, to the victims of such violations;

182.    For all recoverable compensatory and other damages sustained by Plaintiffs and the Class;

183.    For actual and/or statutory damages for injuries suffered by Plaintiffs and the Class, in the maximum amount permitted by applicable law;

184.    For payment of costs of suit herein incurred;

185.    For both pre-judgment and post-judgment interest on any amounts awarded;

186.    For appropriate injunctive relief;

187.    For payment of reasonable attorneys' fees and costs, as may be allowable under applicable law; and

188.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

September 23, 2016          /s/ Jonathan D. Selbin
                            Jonathan D. Selbin
                            Jason L. Lichtman
                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                            250 Hudson Street, 8th Floor
                            New York, NY 10013
                            Telephone:  (212) 355-9500
                            Facsimile:  (212) 355-9592
                            jselbin@lchb.com
                            jlichtman@lchb.com

                            James J. Rosemergy
                            CAREY, DANIS & LOWE
                            8235 Forsyth Boulevard
                            Suite 1100
                            St. Louis, MO 63105
                            Telephone:  (314) 725-7700
                            Facsimile:  (314) 721-0905
                            jrosemergy@careydanis.com

                            Steve Schwartz
                            CHIMICLES & TIKELLIS, LLP
                            One Haverford Centre
                            361 West Lancaster Avenue
                            Haverford, PA 19041
                            Telephone:  (610) 642-8500
                            Facsimile:  (610) 649-3633
                            steveschwartz@chimicles.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 23, 2016, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

/s/ *Jason L. Lichtman*
Jason L. Lichtman

4